# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

DONALD J. TRUMP,

*Plaintiff,*

*v.*

MICHAEL D. COHEN,

*Defendant.*

Case No. 23-cv-21377-DPG

## DEFENDANT MICHAEL D. COHEN'S MOTION TO DISMISS
## AND INCORPORATED MEMORANDUM OF LAW

E. Danya Perry
New York Bar No. 2839983
(admitted *pro hac vice*)
E. DANYA PERRY PLLC
157 East 86th Street, 4th Floor
New York, NY 10028
Tel: 646-349-7550
Fax: 646-849-9609
dperry@danyaperrylaw.com

Benjamin H. Brodsky
Florida Bar No. 73748
BRODSKY FOTIU-WOJTOWICZ, PLLC
200 SE 1st Street, Suite 400
Miami, Florida 33131
Tel: 305-503-5054
Fax: 786-749-7644
bbrodsky@bfwlegal.com
docketing@bfwlegal.com

*Counsel for Defendant Michael D. Cohen*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................ 1

LEGAL STANDARD FOR A MOTION TO DISMISS ................................................ 7

ARGUMENT .............................................................................................. 8

    I.      The Complaint Fails to State a Claim for Breach of Fiduciary Duty. ................... 8

            A.     Most of the Allegations of Breaches of Fiduciary Duties Fall Outside of the Statute of Limitations. .......................................... 9

            1.      All Allegations Concerning Events Prior to April 12, 2022 Are Time-Barred. .......................................................... 9

            2.      All Allegations Relating to the Publication of *Disloyal* Are Barred by the Statute of Limitations. ........................................ 12

            B.     The Few Allegations That Are Not Time-Barred Fail to State a Claim for Breach of Fiduciary Duty. .......................................... 14

            1.      Mr. Trump Failed to Properly Plead Any Non-Time-Barred Breaches with Sufficient Specificity .................................... 15

            2.      Mr. Trump Fails to Allege the Required But-For Causation. .................. 16

            3.      Mr. Trump Fails to Properly Allege Any Harm From Mr. Cohen's Purported Breaches. .................................................. 18

    II.     The Complaint Fails to State a Claim for Breach of Contract. ............................ 20

            A.     The Allegations Concerning Violations of the Purported Agreement Are Conclusory and Vague. ................................................ 21

            B.     The Purported Agreement Constitutes an Unenforceable Restrictive Covenant. .................................................................. 22

            1.      The Purported Agreement is Not Reasonable in Time or Scope. ............ 23

            2.      The Purported Agreement Does Not Serve Any Legitimate Business Interest. ............................................................. 24

            3.      The Purported Agreement Violates Public Policy. ................................. 26

            4.      The Purported Agreement is Unreasonably Burdensome. ......................... 27

C.      The Purported Agreement is Unenforceable Under Contract Law........... 27

D.      The Purported Agreement Cannot be Modified by the Court to Make
        an Unenforceable Clause Enforceable. ...................................................... 28

E.      Plaintiff Lacks Standing to Enforce the Purported Agreement. ............... 29

III.   The Complaint Fails to State a Claim for Breach of the Implied Covenant
       of Good Faith and Fair Dealing. ...........................................................................30

IV.    The Complaint Fails to State a Claim for Unjust Enrichment. .............................31

V.     The Complaint Fails to State a Claim for Conversion. .........................................33

CONCLUSION ................................................................................................................ 35

Defendant Michael D. Cohen, by and through counsel, respectfully moves to dismiss the Complaint filed by Plaintiff Donald J. Trump (the "Complaint"), for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## REQUEST FOR HEARING

Given the numerous causes of action and bases for dismissal, Defendant submits that a hearing would be helpful to the Court in resolving the motion. Defendant estimates that two hours will be sufficient time for argument on the motion.

## PRELIMINARY STATEMENT

Former President Donald J. Trump[1] has described his favorite Bible verse as "an eye for an eye,"[2] which fairly captures his long history of exacting brutal retaliation—both broadly against perceived political, professional, and personal enemies, and specifically against Defendant Michael D. Cohen. Some of this retaliatory conduct has been petty and mean-spirited;[3] some of it

---

[1] Plaintiff styles himself as "President Donald J. Trump" in the Complaint's caption. Although he continues in his refusal to accept this fact, Mr. Trump is not the President of the United States of America. *See* 167 CONG. REC. H115 (daily ed. Jan. 6, 2021) (statement of Vice Pres. Michael Pence) (announcing the "state of the vote for President of the United States" showing that now-President Biden had won the election with 306 electoral votes over Mr. Trump's 232 votes).

[2] Jonathan Merritt, *Trump's Bible Fail*, THE ATLANTIC (Apr. 15, 2016), https://www.theatlantic.com/politics/archive/2016/04/trumps-bible-fail/478425/. This has been Mr. Trump's rhetoric for decades, from his admission in 1992 that "[i]f given the opportunity, I will get even with some people that were disloyal to me," to speaking openly at recent campaign events about "leveraging the power of his presidency for political reprisals," as the New York Times put it. Maggie Haberman & Shane Goldmacher, Trump, Vowing 'Retribution,' Foretells a Second Term of Spite, N.Y. TIMES (March 7, 2020), https://www.nytimes.com/2023/03/07/us/politics/trump-2024-president.html.

[3] Examples are legion, but they include the termination of numerous individuals involved in Mr. Trump's first impeachment, including witnesses Ambassador Gordon Sondland and security official Alexander Vindman (and Lt. Col. Vindman's twin brother for good measure). Peter Baker et al., *Trump Fires Impeachment Witnesses Gordon Sondland and Alexander Vindman in Post-Acquittal Purge*, N.Y. TIMES (Feb. 7, 2020), https://www.nytimes.com/2020/02/07/us/politics/alexander-vindman-gordon-sondland-fired.html.

is patently unlawful and includes witness tampering,[4] obstruction,[5] and civil rights violations.[6] Mr. Trump often abuses the court system to this end. Indeed, Mr. Trump recently was sanctioned by another court in this District for abusing the judicial process to punish his perceived enemies. *Trump v. Clinton*, No. 22-14102-CV, 2023 WL 333699, at \*4 (S.D. Fla. Jan. 19, 2023) ("Mr. Trump is a prolific and sophisticated litigant who is repeatedly using the courts to seek revenge on political adversaries. He is the mastermind of strategic abuse of the judicial process. . . ."). This suit combines the worst of Mr. Trump's vindictive impulses. The Complaint, frivolous and scattershot, is an abusive act of pure retaliation and witness intimidation, albeit a ham-fisted one. It must be dismissed as a matter of law.

Some brief background is critical to understanding the nature and timing of this lawsuit. In July 2020, Mr. Cohen, who was then on furlough from prison for crimes committed at Mr. Trump's behest, publicly announced his plan to publish a book about Mr. Trump during his re-election bid. *See Cohen v. United States*, No. 21-CV-10774, 2022 WL 16925984, at \*2 (S.D.N.Y. Nov. 14, 2022). In response, the Trump administration's Bureau of Prisons unlawfully conditioned Mr. Cohen's home confinement on his agreement to a wholesale prior restraint on all

---

[4] *E.g.*, Katie Benner, *Cheney, warning against tampering, says Trump reached out to a Jan. 6 witness*, N.Y. TIMES (July 12, 2022), https://www.nytimes.com/2022/07/12/us/liz-cheney-witness-tampering-trump-jan-6.html.

[5] Among many other instances, Mr. Trump is being investigated for obstructing justice in connection with his possible mishandling of classified documents and was found by special counsel Robert Mueller to have committed a number of acts that could constitute obstruction of justice. *See* Ben Protess, et al., *Donald Trump Faces Several Investigations. Here's Where They Stand.*, N.Y. TIMES (Apr. 25, 2023), https://www.nytimes.com/article/trump-investigations-civil-criminal.html; Devlin Barrett & Matt Zapotosky, *Mueller report lays out obstruction evidence against the president*, WASH. POST (Apr. 18, 2019), https://www.washingtonpost.com/world/national-security/attorney-general-to-provide-overview-of-mueller-report-at-news-conference-before-its-release/2019/04/17/8dcc9440-54b9-11e9-814f-e2f46684196e_story.html.

[6] *See generally*, *The Trump Administration Human Rights Tracker*, COLUM. HUM. RTS. L. REV., https://trumphumanrightstracker.law.columbia.edu/.

speech—including that he refrain from posting on social media and from "engagement of any kind with the media, including print, tv, film, books, or any other form of media/news." *Id.* When Mr. Cohen did not immediately accede to this clear violation of his First Amendment rights, Mr. Cohen's pre-approved transition to home confinement was summarily revoked, and he was remanded to solitary confinement in a filthy, unventilated cell in 100+ degree heat. *Id.* at *3.

Mr. Cohen brought a *habeas corpus* petition and sought injunctive relief before the Honorable Alvin K. Hellerstein in the Southern District of New York. Judge Hellerstein swiftly ordered Mr. Cohen's release from custody, finding that the *"purpose in transferring Cohen from release on furlough and home confinement back to custody was retaliatory in response to Cohen desiring to exercise his First Amendment rights to publish a book critical of the President and to discuss the book on social media.*" *Cohen v. Barr*, No. 20 CIV. 5614, 2020 WL 4250342, at *1 (S.D.N.Y. July 23, 2020) (emphasis added).

Mr. Cohen went on to publish that book, entitled "*Disloyal: A Memoir*," in September 2020 ("*Disloyal*"), and a second book "*Revenge: How Donald Trump Weaponized the US Department of Justice Against His Critics*," in October 2022 ("*Revenge*") (together, the "Books"). Mr. Trump alleges that Mr. Cohen's offending statements began well before that: "[b]eginning on [sic] or about 2018…, Defendant committed the first onslaught of fiduciary and contractual breaches against Plaintiff by making numerous inflammatory and false statements about Plaintiff." (Compl. ¶ 64.) Additionally, Mr. Cohen launched a podcast, *Mea Culpa* (the "Podcast") in September 2020. (Compl. ¶ 105.) Yet, *for some five years*, Mr. Trump took no legal (or lawful) action against Mr. Cohen until the filing of this Complaint on April 12, 2023.

This timing is no coincidence: this action almost immediately followed the unsealing of criminal charges against Mr. Trump brought by the District Attorney for the County of New York

("DANY") on April 4, 2023. The DANY indictment relates to the hush money payment scheme between Mr. Trump, Mr. Cohen, and others to influence the 2016 presidential election by paying off an adult film star so that she would not publicize her affair with Mr. Trump. This is the same scheme to which Mr. Cohen had pleaded guilty, and Mr. Trump is well aware that Mr. Cohen is an important government witness against him in the pending criminal matter.

Ripping out another page from his tattered old playbook, Mr. Trump's immediate next move was to do what he always does: attack, threaten, retaliate, intimidate. DANY presently is seeking a protective order necessitated by Mr. Trump's "longstanding and perhaps singular history of attacking witnesses, investigators, prosecutors, trial jurors, grand jurors, judges, and others involved in legal proceedings against him, putting those individuals and their families at considerable safety risk."[7] The judge presiding over Mr. Trump's criminal case—who, along with his family members, has himself been smeared by Mr. Trump and threatened by Mr. Trump's supporters—expressed concerns of his own, admonishing that Mr. Trump "refrain from making

---

[7] *See* Aff. & Mem. of Law in Supp. of Mot. For Prot. Order, Indictment No. 71543-23 (N.Y. Sup. Ct. Apr. 24, 2023). DANY cited to Judge Kaplan's recent opinion in the civil rape case for which Mr. Trump is currently on trial, *Carroll v. Trump*; in turn, that opinion cited a non-exhaustive litany of other examples of retaliation by Mr. Trump. No. 22-cv-10016, 2023 WL 2871045, at *1 & nn.1-2 (S.D.N.Y. Apr. 10, 2023); No. 22-cv-10016, 2023 WL 2612260, at *1-2, 4-5 & nn. 7, 15-16 (S.D.N.Y. Mar. 23, 2023) ("Mr. Trump repeatedly has attacked courts, judges, various law enforcement officials and other officials, and even individual jurors in other matters.") (collecting examples). Mr. Trump has seen fit to make disparaging and provocative remarks about the plaintiff in that case even while the proceedings were underway, just as he has continued to do against the District Attorney and the judge in the criminal case against him. Ja'han Jones, *Trump unleashes unhinged tirade attacking his rape accuser*, MSNBC (May 4, 2023), https://www.msnbc.com/the-reidout/reidout-blog/trump-e-jean-carroll-rape-trial-response-rcna82923; Hugo Lowell, *Donald Trump vows to escalate attacks against Alvin Bragg – sources*, THE GUARDIAN (Apr. 2, 2023), https://www.theguardian.com/us-news/2023/apr/02/donald-trump-escalate-attacks-against-manhattan-da.

statements that are likely to incite violence or civil unrest."[8] Those concerns were well-founded and apply with equal force here. The Complaint in this case is yet another brazen and indeed unlawful attempt to silence a key witness against Mr. Trump. And, once again, Mr. Trump's campaign of retaliation should be shut down.[9]

In his Complaint, Mr. Trump repeatedly claims that Mr. Cohen's statements about him were false. Ignoring the tension between the claim that the statements at once were both false *and* violated confidentiality obligations (and doubtlessly aware of the maxim that truth is a defense, given the many other defamation cases he has brought and lost),[10] Mr. Trump does not expressly include a claim for defamation in his Complaint, although at least one of his causes of action is a defamation claim disguised under the label of another tort. In any event, the five causes of action he does bring are just as baseless as a defamation claim would be. Each one should be dismissed as a matter of law under Federal Rule of Civil Procedure 12(b)(6).

The first cause of action, for breach of fiduciary duty, fails because most of the relevant allegations are time barred; and those that are not lack essential elements of such a claim, namely

---

[8] Pat Milton & Graham Kates, *Judge in Trump criminal case targeted with threats*, CBS NEWS (Apr. 7, 2023), https://www.cbsnews.com/news/judge-juan-merchan-trump-case-threats/. The judge followed up with a remarkably broad protective order, prohibiting Mr. Trump from disclosing any items shared in discovery "without prior approval from the Court." Protective Order at *2, Indictment No. 71543-23 (N.Y. Sup. Ct. May 8, 2023).

[9] In addition to being meritless, Mr. Trump's claims are in violation of Florida law, which prohibits attempts such as this to suppress speech through punishing litigation. *See* Fla. Stat. § 768.295(3) (prohibiting any person from "fil[ing] . . . any lawsuit . . . against another person or entity without merit and primarily because such person or entity has exercised the constitutional right of free speech in connection with a public issue … as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution.").

[10] *E.g., Donald J. Trump for President, Inc. v. CNN Broad., Inc.*, 20-CV-01045, 2020 WL 1082548 (N.D. Ga. Mar. 6, 2020); *Donald J. Trump, v. Mary L. Trump, et al.*, No. 453299/2021, 2023 WL 3239923, at *2 (N.Y. Sup. Ct. May 3, 2023).

they do not plead the allegedly offending statements with sufficient particularity, they do not plead causation, and they do not plead harm.

The second cause of action, for breach of a purported confidentiality agreement (one that is conspicuously missing as an exhibit to the Complaint), fails to allege an intelligible breach; seeks to enforce a restrictive covenant that is facially invalid under relevant law; and fails for lack of standing because the purported agreement is between Mr. Cohen and The Trump Organization and Mr. Trump does not allege that he is a third-party beneficiary of that agreement.

The third cause of action, for breach of the implied covenant of good faith and fair dealing, must similarly be dismissed, as it alleges no cognizable breach of an express term of the purported confidentiality agreement and is purely duplicative of Mr. Trump's defective breach of contract claim.

The fourth cause of action, for unjust enrichment, must be dismissed because Mr. Trump fails to allege any of the elements of the claim, and, instead, merely restates his other (deficient) tort and contract claims.

Finally, the fifth cause of action, for conversion, is time-barred, insufficiently pleaded, legally unavailable to recover fungible property, and fails for lack of standing as Mr. Trump was not the party allegedly harmed.

As set forth in detail below, *none* of the elements of *any* of the claims are pleaded with the requisite particularity, as a matter of law. However, while the actual claims themselves are threadbare, the lengthy Complaint is stuffed with page after page of extraneous—and thoroughly debunked—allegations that have no relevance to those claims. For example, the Complaint recites paragraph after paragraph of the "innumerable positive statements" and allegedly exculpatory statements Mr. Cohen uttered a lifetime ago—when he was, by his own admission, "a demented

follower willing to do anything" for Mr. Trump. *See Disloyal*, at 13;[11] Compl. ¶¶ 14-18, 24-32. Of course, none of this has anything to do with the five causes of action at issue here; when the Complaint is gutted down to the studs and all of the gratuitous invective is stripped away, the claims themselves collapse under their own (light) weight. Each cause of action must be dismissed.

## LEGAL STANDARD FOR A MOTION TO DISMISS

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[L]egal conclusions," "threadbare recitals of the elements of a cause of action," and "conclusory statements, do not suffice." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, unless a plaintiff's well-pleaded allegations have "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570. Accordingly, a complaint cannot "merely recite the elements of a cause of action but must contain factual allegations sufficient to raise the right to relief above the speculative level." *U.S. ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1222 (11th Cir. 2012). Consequently, Rule 8(a)(2) of the Federal Rules of Civil Procedure, requiring a "short

---

[11] As Mr. Trump references and cites to *Disloyal* at length in the Complaint—indeed, the book is central to Trump's conversion claim—the Court is free to consider the book in its entirety on a dismissal motion. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (a court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) its authenticity is not disputed); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 n.16 (11th Cir. 1999) (noting that "when a plaintiff files a complaint based on a document but fails to attach that document to the complaint, the defendant may so attach the document, and therefore, the document, as one that could have or rather in fairness should have been attached to the complaint, is considered part of the pleadings").

and plain statement of the claim," "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

**I.     The Complaint Fails to State a Claim for Breach of Fiduciary Duty.**

Mr. Trump's claim for breach of fiduciary duty should be dismissed. As a preliminary matter, most of the allegations concern statements and events that occurred more than one year ago and are therefore barred by the applicable statute of limitations. And, for the reasons explained below, the remaining allegations that are not time-barred fail due to a variety of other fatal defects.

As a threshold matter, New York law applies to breach of duty cases against New York-licensed attorneys. "[W]hile Florida has a strong interest in protecting its citizens from professional negligence by attorneys, its interest in regulating out-of-state conduct by out-of-state attorneys must yield to [New York's] interest in regulating its own attorneys' conduct." *Reichard v. Henderson, Covington, Messenger, Newman & Thomas Co., L.P.A.*, No. 18-CV-61128, 2018 WL 5016285, at *6 (S.D. Fla. Oct. 16, 2018), *aff'd sub nom. Reichard v. Henderson Covington Messenger Newman & Thomas Co.*, 779 F. App'x 665 (11th Cir. 2019); *see also Shaklee Corp. v. Oberman*, No. 91 Civ. 6870, 1993 WL 378268 *1 (S.D.N.Y. Sept. 20, 1990) (holding that "New York has the predominant interest in issues involving legal malpractice allegedly committed by a New York attorney with respect to the performance of his duties in this state."). New York law, therefore, governs this claim.

Moreover, New York law applies, perhaps even more simply, because the parties consent to its application. Where the "parties have acquiesced" to the application of a particular state's law, "the parties may not later argue that another jurisdiction's law should apply." *Medalie v. FSC Sec. Corp.,* 87 F. Supp. 2d 1295, 1298 n.1 (S.D. Fla. 2000); *see also* citing *Am. Fuel Corp. v. Utah*

*Energy Dev. Co.,* 122 F.3d 130, 134 (2d Cir. 1997) ("[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry.") (quoted in *Medalie*, 87 F. Supp. 2d, at 1298 n.1)). As alleged in the Complaint, Mr. Trump's claim for breach of fiduciary duty arises from and is governed by New York law. *See, e.g.,* Compl. ¶¶ 55-59 ("The obligations and standards imposed against attorneys by the state of New York create a fiduciary relationship between the lawyer and his client" and citing various New York rules). Because the Complaint refers to the law of only one state—New York—this Court can assume Mr. Trump's agreement that New York law governs the claim. *See Mich. Paytel, Inc. v. Voiceware Sys., Inc.*, No. 07-80226-CIV, 2007 WL 3283172, at *3 n.2 (S.D. Fla. Nov. 5, 2007) (noting in dicta that "[t]he Court assumes that the parties are relying on Michigan law here because Plaintiff referred to the Michigan statute in its Complaint."); *see also 120 Greenwich Dev. Assocs., L.L.C. v. Admiral Indem. Co*., No. 08 Civ. 6491, 2013 WL 12331487, at *5 n.4 (S.D.N.Y. Sept. 25, 2013) ("[T]he Court need not undertake a choice of law analysis *sua sponte* where parties apply the law of one state and do not dispute application of that state's law.").

**A.    Most of the Allegations of Breaches of Fiduciary Duties Fall Outside of the Statute of Limitations.**

**1.    All Allegations Concerning Events Prior to April 12, 2022 Are Time-Barred.**

Mr. Trump's breach of fiduciary duty claim is subject to a one-year statute of limitations. Under New York law, tort claims arising from reputational injuries—including Mr. Trump's first cause of action—are subject to the same one-year statute of limitations imposed on defamation

claims.[12] Accordingly, all acts that Mr. Trump alleges harmed his reputation before April 12, 2022 are time-barred.

    To prevent procedural gamesmanship, New York law treats as a defamation claim any tort claim that primarily alleges reputational damages. New York "considers claims sounding in tort to be defamation claims where those causes of action seek damages only for injury to reputation, or where the entire injury complained of by plaintiff flows from the effect on his reputation." *Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) (internal quotations and alterations omitted). That is because "unlike most torts, defamation is defined in terms of the injury, damage to reputation, and not in terms of the manner in which the injury is accomplished." *Morrison v. Nat'l Broad. Co.*, 227 N.E.2d 572, 574 (N.Y. 1967). "Under New York law, the statute of limitations for a defamation claim is one year." *McKenzie v. Dow Jones & Co.*, 355 F. App'x 533, 535 (2d Cir. 2009) (citing N.Y. C.P.L.R. § 215(3)).

---

[12] Although the skeletal relevant allegations in the Complaint make choice-of-law analysis challenging, under the applicable "most significant relationship" test, New York law applies. *Frey v. Minter*, 829 F. App'x 432, 434 (11th Cir. 2020) ("Florida resolves conflict-of-laws questions for torts using the 'significant relationships test' as set forth in the Restatement (Second) of Conflict of Laws." (citing *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980)). Most importantly, the parties' one-time relationship was centered in New York where Mr. Cohen was, "[b]eginning in or about the fall of 2006[,] . . . an attorney to Plaintiff, both for Plaintiff personally, and as counsel to Trump Organization LLC." Compl. ¶ 13. Additionally, the purported misconduct occurred in New York, where the parties resided. The residency factor "is of neutral weight because all parties are [now] from different locations." *Nix v. ESPN, Inc.*, No. 1:18-CV-22208-UU, 2018 WL 8802885, at *4 (S.D. Fla. Aug. 30, 2018). Because the purportedly damaging statements were accessible globally, "there is 'little reason in logic or persuasiveness to say that one state rather than another is the place of injury'" for choice of law purposes. *Id.* (quoting Restatement (Second) of Conflicts of Laws § 145 cmt. 3 (1971)). "In sum, the Restatement factors weigh in favor of applying New York law . . . ." *Id.*, at *5.

Although Mr. Trump styles his claim as a "breach of fiduciary duty," the harm he claims to have suffered from those purported "breaches" is *purely reputational*.[13] *E.g.*, Compl. ¶ 103 ("[Defendant's actions were taken…] to Plaintiff's embarrassment and detriment, and at Plaintiff's expense."); *id.* ¶ 129 ("Defendant engaged in misconduct when he breached the fiduciary duty of confidentiality he owed to Plaintiff by disclosing . . . attorney-client communications; and falsehoods and misstatements that have damaged Plaintiff's reputation."); *id.* ¶ 99 ("For example, Defendant baldly asserts that Plaintiff 'lies' with 'frequency and ferocity . . . about damn near everything.'"); *id.* ¶ 101 ("Defendant recycles his false attacks on Plaintiff as a racist and bigot, and attacks Plaintiff as corrupt, among other insults.") (footnotes omitted). All of these threadbare allegations of injury identify or allude to reputational harm as the justification for Mr. Trump's entitlement to recovery. As such, no matter how it is styled, this is a defamation claim under New York Law.

Because Mr. Trump "seek[s] damages only for injury to reputation" and "the entire injury complained of by [Mr. Trump] flows from the effect on his reputation," New York law requires the breach of fiduciary duty claim to be brought under the one-year statute of limitations for a defamation claim. *Hengjun Chao*, 476 F. App'x at 895. As courts in the Southern District of New York have explained, the applicable statute of limitations is for the "essence of the action" regardless of the "labels" a party "appl[ies] to their claims." *Riddell Sports Inc. v. Brooks*, 872 F. Supp. 73, 76 (S.D.N.Y. 1995) (quoting *Santagada v. Lifedata Med. Servs., Inc.*, No. 92 CIV. 6110,

---

[13] As with all of Mr. Trump's allegations, the alleged injury here is largely unspecified and unclear. As described in Section I.B.2-3 *infra*, the undefined causal connection between Mr. Cohen's alleged actions and Mr. Trump's alleged harms renders inscrutable the nature of the injury for which Mr. Trump seeks redress (to the tune of $500 million). Indeed, as described below, Mr. Trump elides any description of the harm he suffered in favor of demanding eye-popping blanket damages that are untethered from any injury. Compl. ¶¶ 133–138.

1993 WL 378309, at *4 (S.D.N.Y. Sept. 22, 1993)). Similarly, courts applying Florida law agree that a "contrary result would allow [Plaintiff] to circumvent the statute of limitations by simply re-describing the [defamation] action to fit a different category of intentional wrong." *Tymar Distrib. LLC v. Mitchell Grp. USA, LLC*, 558 F. Supp. 3d 1275, 1288 (S.D. Fla. 2021) (alterations in original) (quoting *Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002)).

Accordingly, because they are subject to a one-year statute of limitations as disguised defamation claims, Mr. Trump's breach of fiduciary duty claims concerning conduct prior to April 12, 2022 are time-barred.[14] *Id.* ("It is well-settled in New York that a plaintiff cannot save an untimely defamation claim by fashioning the claim under some other rubric, thereby to avail himself of a longer limitations period."). This disposes *entirely* of Mr. Trump's cause of action for breach of fiduciary duties because none of the remaining allegations are plausibly articulated, as explained in Section I.B.1, *infra*.

### 2. All Allegations Relating to the Publication of *Disloyal* Are Barred by the Statute of Limitations.

Even if all of Mr. Trump's allegations were not time-barred under New York's statute of limitations for defamation, the allegations related to statements in *Disloyal* would still be untimely under the applicable statute of limitations for breaches of fiduciary duties against lawyers. Mr. Trump's central allegations—and the only ones alleged with any specificity, albeit still deficiently—relate to statements in *Disloyal*, which was published in September 2020. All of these

---

[14] Even if Florida law were to apply to these claims, they would be subject to a two-year statute of limitations under Florida's single action rule. *Elof Hansson Paper & Bd., Inc. v. Parodi Caldera*, No. 11-20495-CIV, 2011 WL 13115565, at *3 (S.D. Fla. June 27, 2011) ("[U]nder Florida's single publication/single action rule, 'a cause of action sounding in tort is limited to the two-year statute of limitations for defamation if it is premised on the defamatory remark.'" (quoting *MYD Marine Distribs., Inc., v. Donovan Marine, Inc.*, No. 07–61624–CIV., 2009 WL 701003 (S.D. Fla. Mar. 16, 2009)). Thus, the analysis set forth in Section I.A.2 below would apply.

allegations—brought only after Mr. Cohen testified before the grand jury that indicted Mr. Trump—are time-barred and must be disregarded.

Absent application of the one-year statute of limitations for defamation claims, Mr. Trump's breach of fiduciary duty claim is still subject to a two-year statute of limitations. New York's "borrowing statute" (N.Y. C.P.L.R. § 202), requires that, "[w]hen a nonresident [of New York] sues on a claim that accrued outside of New York, the cause of action must be commenced within the time period provided by New York's statute of limitations, *as well as* the statute of limitations in effect in the jurisdiction where the cause of action in fact accrued." *Windsearch, Inc. v. Delafrange*, 90 A.D.3d 1223, 1223 (N.Y. 3d Dept. 2011) (emphasis added). Because Mr. Trump is (i) not a New York resident, and is (ii) bringing a claim that he alleges accrued in Florida,[15] New York's borrowing statute requires him to comply with both New York's and Florida's statutes of limitations.

Even if the Court were to disregard New York's one-year statute of limitations for defamation, Florida's (and thereby also New York's under the borrowing statute) two-year statute of limitations for Mr. Trump's claim for breach of duty applies. *Tambourine Comercio Internacional SA v. Solowsky*, 312 F. App'x 263, 280 (11th Cir. 2009) ("a claim styled as one for

---

[15] A cause of action accrues where the injury is sustained. *Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Trust Co.*, 585 F. Supp. 3d 540, 569 (S.D.N.Y. 2022) ("the cause of action accrues where the plaintiff resides and sustains the economic impact of the loss, rather than where the defendant committed the wrongful act." (citation omitted)); *Smith v. Soros*, No. 02 CIV.4229, 2003 WL 22097990, at *5 (S.D.N.Y. Sept. 5, 2003), *aff'd*, 111 F. App'x 73 (2d Cir. 2004) (rejecting argument that because "the injury [was] to [plaintiff's] professional reputation" the "harm is 'non-economic,'" and instead holding that "[t]he injury to [plaintiff's] professional reputation and subsequent loss of business opportunities, are, however, still economic loss as opposed to physical injury. Accordingly, the cause of action for the plaintiff's purely economic injury to her professional reputation accrues at her residence."). In this case, Mr. Trump alleges that his purported injury was sustained in the state of Florida.

13

'breach of fiduciary duty[,]' [] when brought against a law firm or attorney for actions relating to the attorney-client relationship, is treated as a malpractice claim subject to the two-year statute of limitations.") (rejecting plaintiff's argument that "a breach of fiduciary duty claim based on the attorney-client relationship can give rise to . . . an intentional tort subject to the four-year statute of limitations"); Fla. Stat. § 95.11(4)(b) ("[a]n action for professional malpractice . . . whether founded on contract or tort" has a two-year statute of limitations).

As such, all of Mr. Trump's allegations relating to conduct pre-dating April 2021 (two years before this action commenced) are time-barred. It follows that each and every allegation relating to statements in *Disloyal* is time barred (and has been since September 2022) because that book was published in September 2020. Compl. ¶ 73.

### B.   The Few Allegations That Are Not Time-Barred Fail to State a Claim for Breach of Fiduciary Duty.

The narrow remainder of Mr. Trump's breach of fiduciary duty claim that is not time-barred should be dismissed for three independently sufficient reasons. Even deferring to Mr. Trump's mislabeling of his defamation claim as a breach of fiduciary duty, the Complaint satisfies none of the elements required to plead a breach of fiduciary duty, namely that: "(1) defendant owed [plaintiff] a fiduciary duty, (2) defendant committed misconduct, and (3) [plaintiff] suffered damages caused by that misconduct." *Burry v. Madison Park Owner*, 84 A.D.3d 699–700 (N.Y. 1st Dept. 2011) *First*, Mr. Trump fails to allege, with sufficient particularity, the acts that Mr. Cohen committed in breach of his fiduciary duty within the limitations period. *Second*, Mr. Trump fails to allege, in any manner, that Mr. Cohen's purported breaches were the but-for cause of Trump's purported damages. *Finally*, Mr. Trump does not sufficiently allege that Mr. Cohen's purported breaches harmed him.

### 1.     Mr. Trump Failed to Properly Plead Any Non-Time-Barred Breaches with Sufficient Specificity.

The alleged breaches that are not time-barred are not pleaded with sufficient—or indeed with any—particularity. Merely asserting that Mr. Cohen breached one or more disciplinary rules is insufficient to state a claim. *See Hays v. Page Perry, LLC*, 627 F. App'x 892, 895 (11th Cir. 2015) (affirming dismissal where plaintiff alleged a violation of applicable rules of professional responsibility because "a dereliction of ethical obligations cannot establish civil liability" (quotations omitted)). "New York courts have held that an attorney's breach of a disciplinary rule does not *per se* give rise to a cause of action for breach of fiduciary duty." *Margrabe v. Sexter & Warmflash, P.C.*, 353 F. App'x 547, 549 (2d Cir. 2009); *Trautenberg v. Paul Weiss*, 351 F. App'x 472, 474 (2d Cir. 2009) (observing that, "standing alone," an attorney's "disciplinary rule violation does not create a cause of action for breach of fiduciary duty"). Mr. Trump here has stated only that, as his attorney, Mr. Cohen had certain ethical obligations, which he violated. This is insufficient to make out a claim.

As discussed above in Section I.A, alleged breaches occurring before April 12, 2021, including all alleged breaches related to Mr. Cohen's first book (*Disloyal*), are time-barred. For the remaining allegations, in lieu of specific instances of alleged breach, the Complaint is rife with conclusory allegations that Mr. Cohen disclosed unspecified "confidential information" or "privileged details." *See* Compl. ¶ 98 ("*Revenge* also purports to reveal confidential information about [Mr. Trump].");  *id*. ¶ 109 ("In the more than 250 episodes of the Podcast produced to date, [Mr. Cohen] repeatedly and consistently reveals, or purports to reveal, confidential information gleaned by nature of his prior attorney-client relationship with Plaintiff, as well as information pertaining to Plaintiff's personal and private life.");  *id*. ¶ 116 ("Defendant has made countless other

media appearances wherein he discusses his prior attorney-client relationship with Plaintiff, and purports to disclose privileged details of their prior interactions and dealings.").

This is not enough to state a claim. *See Nixon v. Blumenthal*, 409 F. App'x 391, 392 (2d Cir. 2010) (affirming dismissal in part because "the complaint provide[d] no details about what kind of confidential information was disclosed"). Indeed, Mr. Trump appears to acknowledge that only non-public information (that remained non-public after Mr. Cohen's compelled congressional testimony) was subject to confidentiality obligations under New York's rules of professional responsibility. *See* Compl. ¶ 72; Ex. A, Cease and Desist Letter at 3 ("Thus, Rule 1.6[…] also includes any non-public information and communications[…]the Company hereby requests that *all non-public information* and communications [...]be kept confidential." (emphasis added)).[16]

### 2. Mr. Trump Fails to Allege the Required But-For Causation.

Mr. Trump's failure to allege but-for causation provides another independently sufficient basis to dismiss this claim. Under New York law, a former client must allege but-for causation to sustain a breach of fiduciary duty claim against his erstwhile attorney.[17] *Ulico Cas. Co.*, 56 A.D.3d

---

[16] Because Mr. Trump references and cites to the cease and desist letter, the Court is free to consider the letter in its entirety on a dismissal motion. *See supra* n. 11.

[17] In dicta, one Second Circuit case posited that "New York law applies the lower 'substantial factor' standard of causation to a breach of fiduciary duty claim for which the remedy of restitution is sought." *Nordwind v. Rowland*, 584 F.3d 420, 434 (2d Cir. 2009). Counsel is unaware of a single New York state court applying that distinction to a breach of fiduciary duty claim brought against an attorney since New York appellate courts in 2004 "rejected the 'substantial factor standard'" in "breach of fiduciary duty claims against an attorney." *Sheehy v. New Century Mortg. Corp.*, 690 F. Supp. 2d 51, 65 n.12 (E.D.N.Y. 2010) (citing *Weil, Gotshal Manges v. Fashion Boutique*, 10 A.D.3d 267, 271 (N.Y. 1st Dept. 2004)). Even when legal malpractice plaintiffs seek "restitutionary" remedies, New York courts still apply the but-for causation requirement. *See, e.g.*, *Baugher v. Cullen & Dykman LLP*, 2017 N.Y. Slip Op. 33153, 3 (N.Y. Sup. Ct. 2017), https://casetext.com/case/baugher-v-cullen-dykman-llp-3 (denying re-argument on dismissal of legal malpractice claim seeking disgorgement for failing to allege but-for causation) (citing *Ulico Cas. Co.*, 56 A.D.3d at 1). That remedy-neutral approach to malpractice claims is then applied

1, 10–11 (N.Y. 1st Dept. 2008) ("to recover under a claim for damages against an attorney arising out of the breach of the attorney's fiduciary duty, the plaintiff must establish the 'but for' element of malpractice, irrespective of how the claim is denominated in the complaint."). To allege but-for causation, Mr. Trump was required to plead and to allege facts to establish that if not for Mr. Cohen's conduct, Mr. Trump "would not have sustained any ascertainable damages." *Kerik v. Tacopina*, 64 F. Supp. 3d 542, 564 (S.D.N.Y. 2014) (quotation omitted). "This causation requirement, a high bar to attorney malpractice liability, seeks to insure a tight causal relationship exists between the claimed injuries and the alleged malpractice, and demands a nexus between loss and injury." *Flutie Bros. v. Hayes*, No. 04 CIV. 4187, 2006 WL 1379594, at *5 (S.D.N.Y. May 18, 2006) (quotation omitted).

The only causal allegation in the entire Complaint is an impermissibly conclusory claim that "Defendant's breaches directly caused Plaintiff's damages." Compl. ¶ 134. The failure to properly allege a necessary element of the claim—here, but-for causation—is a failure to state the claim at all, requiring the dismissal of Mr. Trump's legally infirm breach of fiduciary duty claim. *Flutie Bros.*, 2006 WL 1379594, at *8. It is also unlikely that Mr. Trump could plausibly plead causation for any harm given that any possible information at issue was already widely available through court filings, congressional testimony, and steady stream of media reports.

---

wholesale to breach of fiduciary duty claims against attorneys. *Robinson v. Day*, 2011 N.Y. Slip Op. 33758, 11 (N.Y. Sup. Ct. 2011), https://casetext.com/case/robinson-v-day-3; *Weil, Gotshal Manges*, 10 A.D.3d at 271 ("We take this occasion to note that the court erred in holding that the 'but for' standard of causation, applicable to a legal malpractice claim, does not apply to the claim for breach of fiduciary duty. Instead, it applied the less rigorous 'substantial factor' causative standard. We have never differentiated between the standard of causation requested for a claim of legal malpractice and one for breach of fiduciary duty in the context of attorney liability. The claims are coextensive.").

### 3.    Mr. Trump Fails to Properly Allege Any Harm From Mr. Cohen's Purported Breaches.

To sustain his breach of fiduciary duty claim, Mr. Trump was also required to allege that Mr. Cohen's purported breaches injured Mr. Trump. *See, e.g., Hearst Mags. v. McCaffery*, 967 N.Y.S.2d 867, at \*2 (N.Y. Sup. Ct. 2012) ("the essential elements of a claim for breach of a fiduciary duty include not only that the fiduciary . . . committed misconduct in that capacity, but also that the misconduct caused damages to the party owed the fiduciary duty"); *Kyle v. Heiberger Assoc.*, 901 N.Y.S.2d 907, at \*4 (N.Y. Sup. Ct. 2009) ("essential to a breach of fiduciary duty claim against an attorney, as well as to a legal malpractice claim is proof that the acts of an attorney proximately caused compensable damages …. If there are no damages, there can be no cause of action." (internal quotations and citation omitted)). He does not; indeed, in most instances, Mr. Trump does not even attempt to make any such allegation.

When Mr. Trump does actually assert harm, he does so in only a conclusory fashion, insufficient to state a cause of action. The only specific "harm" Mr. Trump identifies is that Mr. Cohen's breaches "have damaged Plaintiff's reputation." Compl. ¶ 129. Yet again, this is insufficiently specific as a matter of law. *Galloway v. Wittels*, 2014 N.Y. Slip Op. 30006, 9 (N.Y. Sup. Ct. 2014), https://casetext.com/case/galloway-v-wittels-1 (dismissing claim where "plaintiff's allegations are merely speculative and conclusory, which is insufficient to maintain a claim for breach of fiduciary duty."). Mr. Trump's generalized "claims that his reputation has been ruined by the Defendant" while "fail[ing] to assert any facts that establish actual damage to his reputation" do not comply "with the *Iqbal* standard." *Warner v. Schmidt*, No. 8:11-CV-0128-T-17EAJ, 2011 WL 2784492, at \*2 (M.D. Fla. July 15, 2011); *see also Bernstein v. O'Reilly*, No. 17 CIV. 9483, 2019 WL 10995111, at \*5 (S.D.N.Y. Mar. 5, 2019).

Moreover, it is a mystery in what way Mr. Trump's reputation could possibly have suffered. Mr. Trump's ignominy is globally known and had been well before Mr. Cohen published his book. It is the product of decades of Mr. Trump's own actions, which he has thrust onto a global stage for all to see. As just one example, it is impossible to imagine how Mr. Cohen sharing his view that Mr. Trump is "racist" and a "bigot" in his 2022 book (Compl. ¶ 101) remotely moved the needle on the public's perception of Mr. Trump. By 2022, Mr. Trump's reputation was already shaped by a lifetime of Mr. Trump's actions and statements, all of which were widely documented long before Mr. Cohen's book went to press.[18]

In a second feeble effort to identify any sort of harm, the Complaint concludes that Mr. Cohen "derived a significant benefit," namely "monetary gain in the form of compensation, advances, royalties, proceeds and/or profits received for his role in the writing, publication, promotion, and/or sale of the Books," stating, without more, that Mr. Cohen's compensation for his books came "at Plaintiff's expense." Compl. ¶ 133. There is no explanation at all, let alone a plausible one, as to how Mr. Cohen's gain was at Mr. Trump's expense.

Moreover, Mr. Trump does not identify which allegedly proscribed disclosures of "confidential information"—the purported *breaches* of Mr. Cohen's fiduciary duties—resulted in the income from the book sales that was at Mr. Trump's "expense." (Mr. Trump does not even bother to assert that Mr. Cohen's purported breaches on his Podcast and in other media appearances inflicted any harm.) Because Mr. Trump fails to allege what harm he has suffered and

---

[18] *See, e.g.*, German Lopez, *Donald Trump's long history of racism, from the 1970s to 2020*, Vox (Aug. 13, 2020), https://www.vox.com/2016/7/25/12270880/donald-trump-racist-racism-history; David W. Dunlap, *1973 | Meet Donald Trump*, N.Y. Times (July 30, 2015) (noting that the first time Mr. Trump appeared in the New York Times was on the front page in 1973 with the headline, "Major Landlord Accused of Antiblack Bias in City"), https://archive.nytimes.com/www.nytimes.com/times-insider/2015/07/30/1973-meet-donald-trump/.

which of Mr. Cohen's purported statements "caused damages to the party owed the fiduciary duty," he fails to state a claim for breach of fiduciary duty. *Hearst Mags.*, 967 N.Y.S.2d, at *2.

## II. The Complaint Fails to State a Claim for Breach of Contract.

Trump has a well-documented history of using unenforceable confidentiality agreements as a cudgel against former employees, business associates, campaign workers—even his ex-wives. *See, e.g.*, *Denson v. Donald J. Trump for President, Inc.*, 530 F. Supp. 3d 412, 422 (S.D.N.Y. 2021).[19] This case is no different. Almost immediately after the DANY grand jury's criminal charges against Mr. Trump were unsealed—and less than a month after Mr. Cohen testified before that grand jury—Mr. Trump suddenly seeks to enforce a still unseen "Confidentiality Agreement."

Notably, Mr. Trump does not attach the purported "Confidentiality Agreement" (hereinafter the "Purported Agreement") that, in his second cause of action, he alleges Mr. Cohen breached.[20] Instead, he cherry-picks the few snippets from the Purported Agreement that he believes support his claim.[21]

---

[19] *See also* Michael Kranish, *Trump long has relied on nondisclosure deals to prevent criticism. That strategy may be unraveling*, WASH. POST (Aug. 7, 2020), https://www.washingtonpost.com/politics/trump-nda-jessica-denson-lawsuit/2020/08/06/202fed1c-d5ad-11ea-b9b2-1ea733b97910_story.html ("For decades, Donald Trump has relied on broadly worded nondisclosure agreements as a powerful weapon against anyone who would say something critical of him.").

[20] This omission appears purposeful. In April 2020, an attorney for the Trump Organization (not Mr. Trump) sent a putative "cease and desist" letter to Mr. Cohen's attorney (Compl. ¶¶ 5, 72) that claimed to attach the Purported Agreement. However, it did no such thing, and it was never produced despite a demand from Mr. Cohen's attorney. The undersigned attorneys *thrice* requested the elusive Purported Agreement after the Complaint was filed in this case, but to date, each of those requests was ignored and the Purported Agreement still has not been provided. In the increasingly likely event that it does not exist, Mr. Cohen will exercise all rights and remedies available to him.

[21] Trump does not even include what law governs the Purported Agreement. Mr. Cohen and the Court are therefore left with the language quoted and may presume that New York law applies, given that the parties and the Trump Organization were all based in New York at the time it allegedly was signed. However, Florida law is fully consistent with New York law for relevant

Mr. Trump then proceeds to allege violations of the Purported Agreement in surpassingly conclusory fashion. The lack of clarity as to these allegations is a sufficient basis, standing alone, to dismiss Mr. Trump's breach of contract claim. However, even if the allegations were intelligible enough to allow his claim to proceed, what little is alleged makes clear that the Purported Agreement is unenforceable because it constitutes an invalid restrictive covenant under Florida and New York law. Moreover, because the agreement is between Mr. Cohen and the Trump Organization, Mr. Trump would lack standing to enforce it in any event. Mr. Trump's failure to state a claim, the unenforceability of the underlying contract, and Mr. Trump's lack of standing to enforce the contract are all independently sufficient reasons to dismiss the second cause of action.

**A.   The Allegations Concerning Violations of the Purported Agreement Are Conclusory and Vague.**

The Complaint includes only vague and conclusory allegations that Mr. Cohen disseminated "confidential information." *E.g.*, Compl. ¶ 67 ("*Disloyal* purports to reveal confidential information about Plaintiff"), *id.* ¶ 98 ("*Revenge* also purports to reveal confidential information about Plaintiff"), *id.* ¶ 109 ("In the more than 250 episodes of the Podcast produced to date, Defendant repeatedly and consistently reveals, or purports to reveal, confidential information gleaned by nature of his prior attorney-client relationship with Plaintiff"), *id.* ¶ 121 ("Defendant chose to capitalize on his confidential relationship with Plaintiff to pursue financial gain"). These threadbare allegations are insufficiently definite as a matter of law to plead a violation of any nondisclosure agreement. *Iqbal*, 556 U.S. at 678 ("[L]egal conclusions,"

---

purposes. The laws of both jurisdictions will therefore be cited, and this Court need not conduct a choice of law analysis. *See Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1171 (11th Cir. 2009) (when the laws of competing states are substantially similar, "the court should avoid the conflicts question and simply decide the issue under the law of each of the interested states." (internal quotations and citations omitted)).

"threadbare recitals of the elements of a cause of action," and "conclusory statements, do not suffice.").

"[T]o meet the *Iqbal-Twombly* standard [in a breach of contract claim], there must be allegations of fact sufficient to state a plausible claim of a material breach." *Santander Consumer USA Inc v. Sandy Sansing Nissan Inc*, No. 3:22CV8084, 2022 WL 17478257, at *2 (N.D. Fla. Sept. 21, 2022). Where, as here, "there is not even one clear example of a" contract provision "together with a description of facts that show its breach," the claim must be dismissed as "too conclusory and vague to identify a plausible material breach." *Id.*

### B. The Purported Agreement Constitutes an Unenforceable Restrictive Covenant.

Under both New York and Florida law, restrictive covenants in employment contracts must be "reasonable in time and area, necessary to protect the employer's legitimate interests, not harmful to the general public and not unreasonably burdensome to the employee." *Ashland Mgmt. Inc. v. Altair Invs. NA, LLC*, 59 A.D.3d 97, 102 (N.Y. 1st Dept. 2008), *aff'd as modified*, 14 N.Y.3d 774 (2010) (internal quotations and citations omitted); Fla. Stat. § 542.335 (requiring that restrictive covenants be "reasonable in time, area, and line of business" and the "person seeking enforcement of a restrictive covenant shall plead and prove the existence of one of more legitimate business interests justifying the restrictive covenant"). "The term 'restrictive covenant' encompasses all contractual restrictions on post-employment behavior, including confidentiality provisions." *Audiology Distribution, LLC v. Simmons*, No. 8:12-CV-02427, 2014 WL 7672536, at *7 (M.D. Fla. May 27, 2014) (internal citations omitted); *see also Denson*, 530 F. Supp. 3d at 432.

The confidentiality provision in the Purported Agreement abjectly fails on each prong of the *Ashland* test (failing even one prong would render it unenforceable), and, for identical reasons, under Florida's restrictive covenant statute.

### 1.    The Purported Agreement is Not Reasonable in Time or Scope.

The first prong of the *Ashland* test—and analogous Florida law—requires any restrictive covenant to be "reasonable in time and area." 59 A.D.3d at 102; Fla. Stat. § 542.335(1)(c) (noting that contractually specified restraints that are "overbroad" or "overlong" are unenforceable). The Purported Agreement's restrictive confidentiality covenant is reasonable in neither time nor area.

The Complaint alleges that under the terms of the Purported Agreement, Mr. Cohen would be prohibited from disclosing confidential information in perpetuity—not just during his term of employment but "*at all times thereafter*." Compl. ¶ 62 (emphasis added). This is patently unreasonable and is therefore unenforceable. In New York, the law "disfavors agreements to keep non-trade-secret information confidential for a duration that is not limited even where the agreement is drafted explicitly to contain no limitation." *Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 470–71 (S.D.N.Y. 2021); *Denson*, 530 F. Supp. 3d at 431-32 (finding confidentiality provision in employment contract for Mr. Trump's presidential campaign was unenforceable under New York law in part because the provision was unlimited in time). Under Florida law, a confidentiality provision of this type is presumptively unreasonable if it exceeds two years in duration, Fla. Stat. § 542.335(1)(d)(1); *see Audiology Distribution*, 2014 WL 7672536, at *8 (finding confidentiality provision of indefinite duration to be unreasonable) (internal quotations and citations omitted).

The restrictive covenant in the Purported Agreement is also virtually unlimited in scope. Under its terms, assuming the contract exists, Mr. Cohen is prohibited from divulging any information whatsoever about the "personal lives and/or business affairs" of Mr. Trump or members of Mr. Trump's family, the business affairs of the Trump Organization, "or an [sic] of its affiliates, officers, directors, or employees." Compl. ¶ 63. Information about one's personal life and business affairs is hardly tailored or specific, and the embargoed subjects go well beyond

proprietary information or trade secrets and include virtually any and all utterances of the Trump name. Such a broad and vague restriction is unenforceable as a matter of law.

Indeed, a federal court recently found unenforceable a strikingly similar confidentiality provision in an employment contract imposed by Mr. Trump's presidential campaign. *Denson*, 530 F. Supp. 3d at 432. The confidentiality provision at issue in *Denson* prohibited disclosure of "Confidential Information," including the information regarding the "personal life," "relationships," and "political and business affairs" of Mr. Trump, "any of his family members," and the "more than 500 companies" that Mr. Trump was associated with at the time. *Id.* The *Denson* court found such a provision was not reasonable to protect any legitimate business interest because it had "no time limitation" and was so broad as "to encompass any matter that relate[d]" to the employment at issue. *Id.* at 432–33.

Likewise, under Florida law, a restrictive covenant this broad in time and scope is unenforceable as written. *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1232 n.8 (11th Cir. 2009) (noting that, under Florida law, indefinite restrictive covenants regarding confidential information have been found to be presumptively unreasonable). The Purported Agreement's unreasonable scope in both "time and area" renders it inherently unenforceable.

### 2.   The Purported Agreement Does Not Serve Any Legitimate Business Interest.

Even if the Purported Agreement passed the *Ashland* test's first prong, its failure to pass the second prong would still render it unenforceable. Under this prong, restrictive covenants in employment contracts can be enforceable only to the extent they are "necessary to protect the employer's legitimate interests." 59 A.D.3d at 102. Florida law also requires "legitimate business interests" to justify a restrictive covenant. Fla. Stat. § 542.335(1)(b). Mr. Trump has made no such showing.

24

Confidentiality agreements in the employment context typically seek to protect business interests by preventing the competitive use or dissemination of proprietary or trade secret information. The applicable Florida statute provides a non-exhaustive list of the types of information that might be reasonably restricted to protect legitimate business interests, including: trade secrets or "[v]aluable confidential business or professional information that otherwise does not qualify as trade secrets; substantial customer, patient, or client relationships; and customer, patient, or client goodwill." Fla. Stat. § 542.335(1)(b). The statute also requires that the "person seeking enforcement of a restrictive covenant shall plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant." *Id.* at § 542.335(1)(c). Finally, it makes clear that "[a]ny restrictive covenant not supported by a legitimate business interest is unlawful and is void and unenforceable." *Id.* at § 542.335(1)(b).

None of the suggested "legitimate business interests" are alleged anywhere in the Complaint. The Complaint also fails to plead or prove the existence of any other legitimate business interest served by a lifelong, all-encompassing restraint on a former employee's speech. And, of course, it could not: definitionally, information about the "personal lives" of an entire family—who are not even parties to the employment agreement between an employee and his corporate employer—does not implicate *any* business interests, let alone any legitimate ones. *See Denson*, 530 F. Supp. 3d at 433 (finding the similar nondisclosure provision at issue in that case to go "far beyond" what was "necessary to protect" any "legitimate interests").

Nor do the alleged violations of the Purported Agreement concern any legitimate business interest. Tellingly, although the Complaint repeatedly refers to Mr. Cohen's dissemination of "confidential" information, such information is almost exclusively about Mr. Trump himself, rather than the Trump Organization (Mr. Cohen's employer and the purported counterparty). And,

to the extent the Complaint alleges a violation of Mr. Trump's personal interests in enforcing the restrictive covenant, it does so in only the vaguest possible terms. *See supra* Section II.A. Such "[g]eneralized statements of concern cannot substitute for proof." *Gould & Lamb, LLC v. D'Alusio*, 949 So. 2d 1212, 1214 (Fla. 2d DCA 2007) (upholding trial court's ruling of no legitimate interest where the employer "spoke in the briefest and most general terms" of a desire to protect vague categories of information); *see also Blue-Grace Logistics LLC v. Fahey,* No. 8:21-CV-2523, 2023 WL 424285, at *4 (M.D. Fla. Jan. 26, 2023) (finding restrictive covenant unenforceable and noting that "[t]hroughout the motion, Blue-Grace repeatedly speaks of 'confidential' and 'proprietary' information, but it never explains exactly what that information is or what makes it proprietary or confidential. Even where it describes the information with slightly more detail, it fails to explain the information's value.").

Because the Purported Agreement fails to serve any legitimate business interest, it is unenforceable under both New York and Florida law.

### 3.   The Purported Agreement Violates Public Policy.

The restrictive covenant also runs afoul of the third prong of the *Ashland* test, as well as its Florida equivalent: that the restriction not be "harmful to the general public." 59 A.D.3d at 102; *see also White v. Mederi Caretenders Visiting Servs. of Se. Fla., LLC*, 226 So. 3d 774, 785 (Fla. 2017) (noting that restrictive covenants "against public policy" are "void"). Where a nondisclosure provision operates to "chill" speech "about matters of public interest," it is "harmful not only to" the party subject to the provision, "but also to the general public." *Denson* at 433.[22] There is no

---

[22] The defendant in *Denson*, Donald J. Trump for President, Inc., appeared to acknowledge as much when, to settle the claims in that case, it agreed to release "all employees, contractors, and volunteers from any nondisclosure or non-disparagement obligations to the Campaign contained in any agreements signed by them in connection with the 2016 election." 1:20-cv-04737, ECF No. 82-1.

doubt that information about Mr. Trump—a former President and current candidate for President—are matters of the highest public concern. *See Rodin v. City of Coral Springs, Fla.*, 229 F. App'x 849, 853 (11th Cir. 2007) (finding speech to be a matter of public concern if it "may relate to the political, social or other interest of the community") (quoting *Anderson v. Burke Cnty., Ga.*, 239 F.3d 1216, 1220 (11th Cir. 2001)). And the Purported Agreement here, as in *Denson*, certainly "chills" Mr. Cohen's speech about a matter of public interest, namely, information about a current presidential candidate. 530 F. Supp. 3d at 433. It is therefore paradigmatically harmful to the general public. *See id.*

### 4.   The Purported Agreement is Unreasonably Burdensome.

The Purported Agreement also fails the fourth prong of *Ashland*, which mandates that a nondisclosure agreement not be "unduly burdensome." 59 A.D.3d at 102.[23] The court in *Denson* found the analogous nondisclosure provision in that case to be "unduly burdensome" because of the provision's "vague, overbroad, and undefined terms." 530 F. Supp. 3d at 433. As in *Denson*, it is "difficult if not impossible for" Mr. Cohen "to know whether any speech might be covered by one of the broad categories of restricted information," or "whether that speech may relate to a matter that President Trump will determine is confidential." *See id.* It is therefore unduly burdensome under New York law. *See id.*

### C.   The Purported Agreement is Unenforceable Under Contract Law.

Even putting aside the heavy burden Mr. Trump must meet to justify a restrictive covenant, the Purported Agreement is "unenforceable under basic principles of contract law." *Denson*, 530

---

[23] Florida law generally does not consider this factor in evaluating whether a restrictive covenant is enforceable. *Brown & Brown, Inc. v. Johnson*, 34 N.E.3d 357, 361 (N.Y. 2015) ("Florida law explicitly prohibits courts from considering the harm or hardship to the former employee."). Regardless, the Purported Agreement is unenforceable under Florida law for all the other reasons stated in this Section.

F. Supp. 3d at 433. Analyzing very similar terms in a restrictive covenant that Mr. Trump's presidential campaign argued was enforceable against a former employee, the court in *Denson* held that the agreement was too vague and indefinite to manifest assent as a matter of contract law: given "the broad categories of information covered by the non-disclosure provision," it would be "impossible for Denson to know what speech she has agreed to forego, and there is no possibility of mutual assent." *Id.* at 433–34. The Purported Agreement is equally as broad as the provision at issue in *Denson*, and therefore fails for the same reasons. *See also Aldora Aluminum & Glass Prod., Inc. v. Poma Glass & Specialty Windows, Inc.*, 683 F. App'x 764, 768 (11th Cir. 2017) ("[A] contract containing ambiguous material terms is unenforceable because 'the parties never reached a meeting of the minds regarding an essential term of the agreement.'") (quoting *King v. Bray*, 867 So. 2d 1224, 1226 (Fla. 5th DCA 2004)).

> **D.    The Purported Agreement Cannot be Modified by the Court to Make an Unenforceable Clause Enforceable.**

While modifications or "blue penciling" to an otherwise unenforceable restrictive covenant might be appropriate at times—for example, when a court limits the duration of an otherwise unlimited nondisclosure clause in ordering injunctive relief—it would be impossible here. Such blue-penciling would surely, at a minimum, involve reducing the time-limit of the restrictive covenant to a duration that would have expired years ago and would not cover Mr. Cohen's Books, Podcast, or media appearances. *See Cambridge Cap. LLC*, 565 F. Supp. 3d at 470–71 (noting that New York law disfavors confidentiality of unlimited duration); Fla. Stat. § 542.335(1)(d)(1) (restrictive covenants are presumptively unreasonable when they are for more than two years). According to the Complaint, some five or so years have elapsed since Mr. Cohen's employment terminated; indeed, by the time he published *Disloyal*, more than two years had elapsed since his

employment ended. *See* Compl. ¶¶19, 64. Accordingly, even if this Court were able to engage in blue-penciling, the resulting provision would not cover the alleged conduct in the Complaint.

Further, blue-penciling is not an available remedy outside of the context of granting injunctive relief. *Denson*, 530 F. Supp. 3d at 435–36 (noting that blue-penciling "takes place in the context of granting injunctive relief"); *Wrap-N-Pack, Inc. v. Eisenberg*, No. 04-CV-4887, 2007 WL 952069, at *7 (E.D.N.Y. Mar. 29, 2007) (explaining that "while a court has the discretion to pare or 'blue pencil' a restrictive covenant . . ., the same is not true in other contexts"). Mr. Trump seeks only damages in this case, rather than injunctive relief. Compl. ¶ 31. Consequently, even if the restrictive covenant could be subject to blue-penciling for the purposes of injunctive relief, it would be of no help to Mr. Trump here.

### E.    Plaintiff Lacks Standing to Enforce the Purported Agreement.

In the scant four paragraphs Plaintiff devotes to the Purported Agreement Compl. ¶¶ 61-64, it is clear enough that the parties to it were Mr. Cohen and the Trump Organization. *See id.* ¶ 61 ("As a material condition of his employment *with the Trump Organization*, Defendant signed a confidentiality agreement entitled 'Employee Agreement of Confidentiality' . . . " (emphasis added)). Nowhere does Mr. Trump allege that he is a third-party beneficiary to it, or that he is the only party capable of enforcing the contract. Mr. Trump consequently has no standing to enforce the contract under either Florida or New York law.

A non-party may enforce a restrictive covenant under Florida law only if "the restrictive covenant expressly identified the person as a third-party beneficiary of the contract and expressly stated that the restrictive covenant was intended for the benefit of such person." Fla. Stat. § 542.335(f)(1). Similarly, under New York law, a third party may enforce a contract only if the contract "clearly evidence[s] an intent to permit enforcement by the third party" or if "no one other

than the third party can recover if the promisor breaches the contract." *Debary v. Harrah's Operating Co.*, 465 F. Supp. 2d 250, 263 (S.D.N.Y. 2006) (internal quotations and citations omitted).

Although Mr. Trump is identified in the Purported Agreement, he does not allege that it includes either an express statement of intent to benefit him, or any clear evidence of "an intent to permit enforcement by" him. As alleged, the Purported Agreement, at best, would confer a cause of action upon only the Trump Organization against Mr. Cohen for the invocation of Mr. Trump's name; that is entirely distinct from conferring such a right upon Mr. Trump to bring this suit.

 Moreover, Mr. Trump and the Trump Organization surely knew how to include such third-party beneficiary provisions if they wanted him to enjoy standing to enforce the Purported Agreement. *See Denson*, 530 F. Supp. 3d at 420 (Trump 2016 campaign required employees to sign agreements providing that Mr. Trump was "an intended third party beneficiary of this agreement" and would "be entitled to the benefit of this agreement and to enforce this agreement."). No such provisions are alleged to have been included in the Purported Agreement. Consequently, Mr. Trump lacks standing to bring his second cause of action.

## III. The Complaint Fails to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

Mr. Trump's third cause of action, alleging a claim for a breach of the implied covenant of good faith and fair dealing, cannot stand under either New York or Florida law.

Under New York law, such a claim must be dismissed where it is duplicative of a breach of contract claim. *N.Y.U. v. Contint'l Ins. Co.,* 662 N.E.2d 763, 770 (N.Y. 1995). There is no doubt that Mr. Trump's cause of action under this claim is duplicative of his breach of contract claim: the only breach Mr. Trump alleges is that Mr. Cohen violated "his confidentiality and non-disclosure obligations owed to Plaintiff through his unauthorized disclosure of confidential

information protected under the Confidentiality Agreement." Compl. ¶ 149. This claim must therefore be dismissed under New York law.

Mr. Trump's claim fares no better under Florida law, which similarly provides that "a breach of the implied covenant of good faith and fair dealing cannot be advanced when the allegations underlying that claim are duplicative of the allegations supporting the breach of contract claim." *Bradman v. Mental Health Network, Inc.*, No. 08-61376-CIV, 2008 WL 5110525, at *2 (S.D. Fla. Dec. 2, 2008) (citing cases). Accordingly, under Florida law, his claim for a breach of the implied covenant of good faith and fair dealing must likewise be dismissed.

## IV.    The Complaint Fails to State a Claim for Unjust Enrichment.

Mr. Trump's fourth cause of action, framed as a claim for unjust enrichment, seeks recovery from Mr. Cohen for earnings he received from publication of the Books and the Podcast. Mr. Trump fails to state a claim. As an initial matter, Mr. Trump has not alleged *any* of the three elements of a cause of action for unjust enrichment: that (1) plaintiff conferred a benefit on the defendant; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff. *Fito v. Attys.' Title Ins. Fund, Inc.*, 83 So.3d 755, 758 (Fla. 3d DCA 2011); *see also Bazak Int'l Corp. v. Tarrant Apparel Grp.*, 347 F. Supp. 2d 1, 4 (S.D.N.Y. 2004) (describing analogous elements under New York law and noting that "[t]he essence of a claim for unjust enrichment is that one party has parted with money or a benefit that has been received by another at the expense of the first party").

Mr. Trump entirely fails to allege that he conferred any benefit on Mr. Cohen that Mr. Cohen accepted and retained through his publication of the Books or the Podcast. Nor does he allege, except in the most conclusory manner, any inequity that would result if Mr. Cohen did not

pay Mr. Trump for the alleged value of conferring this nonexistent benefit. *See* Compl. ¶ 156 ("As a result of the foregoing, Defendant was unjustly enriched, at Plaintiff's expense, by virtue of his own wrongful, intentional, and egregious actions."); *id.* ¶ 157 ("It is against equity and good conscience to permit Defendant to retain such enrichment."). Accordingly, Mr. Trump's unjust enrichment claim fails. *Paladin Shipping Co. v. Star Cap. Fund, LLC*, No. 10-21612-CIV, 2010 WL 3419397, at *3 (S.D. Fla. Aug. 27, 2010) (holding that where a plaintiff fails to allege that a plaintiff conferred a benefit on a defendant, the plaintiff "do[es] not state a cause of action for unjust enrichment"); *United States v. Cent. Med. Sys., LLC*, No. 6:14-cv-512, 2019 WL 1117267, at *4 (M.D. Fla. Mar. 11, 2019) (granting motion to dismiss where complaint contained merely "a 'recitation of the elements' of an unjust enrichment claim").

The little that Mr. Trump does allege simply duplicates his claims for breaches of fiduciary duties and breach of contract. Compl. ¶ 153. That duplication is impermissible under both New York and Florida law. "An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012); *Licul v. Volkswagen Grp. of Am., Inc.*, No. 13-61686-CIV, 2013 WL 6328734, at *7 (S.D. Fla. Dec. 5, 2013) (holding that "where the unjust enrichment claim relies upon the same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of relief but rather is duplicative of those legal causes of action"). As with Mr. Trump's second cause of action, he cannot dress up a claim of breach of contract or fiduciary duty as an unjust enrichment claim. Because it "merely restates [Plaintiff's] other causes of action, it fails as a matter of law" and must be dismissed. *Licul*, 2013 WL 6328734, at *8.

## V.     The Complaint Fails to State a Claim for Conversion.

Mr. Trump's fifth cause of action arises from a bonus Mr. Cohen allegedly caused to be paid to himself while working for the Trump Organization. This claim for conversion fails for four independently sufficient reasons.

*First*, the conversion claim is time-barred under both New York and Florida law. N.Y. C.P.L.R. § 214(3) (three-year limitations period); Fla. Stat. § 95.11(3)(h) (four-year limitations period). Under the law of both states, the claim would have accrued at the moment of conversion, regardless of when that conversion was discovered. *Vigilant Ins. Co. of Am. v. Hous. Auth. of City of El Paso, Tex.*, 660 N.E.2d 1121, 1126 (N.Y. 1995); *R.R. v. New Life Cmty. Church of CMA, Inc.*, 303 So. 3d 916, 923 (Fla. 2020). Under even the most generous potentially-applicable statute of limitations—New York's four years—the conversion needed to occur in or after April 2019 for this claim to be timely. Instead, the claim is over two years too late, and Trump alleges no basis for tolling or suspending the limitations period.

The Complaint alleges that Mr. Cohen "intentionally took property" when he "represented that his expenditure [for manipulating online polling at Trump's behest] was $50,000." Compl. ¶¶ 162-63 (citing *Disloyal*, at 315-16). As *Disloyal* makes clear, that conversation, which Mr. Trump now claims constituted an act of conversion, occurred in January 2017. *See Disloyal*, at 315 ("The morning [Cohen] returned to work back in New York [after a vacation over Christmas 2016 and the New Year] …, [Trump Organization CFO] Allen Weisselberg appeared at [Cohen's] door" to discuss Mr. Cohen's bonus for working for the Trump Organization the prior year.).

Even if Mr. Trump were to revise this claim to allege that the conversion occurred when Mr. Cohen stopped working for the Trump Organization in January 2017 (Compl. ¶ 19), when the last installment of Cohen's 2016 Trump Organization bonus was disbursed in December 2017

(*Disloyal*, at 318), or when Cohen stopped working for Mr. Trump personally in June 2018 (Compl. ¶ 19), it would still be barred by the statute of limitations. Accordingly, the conversion claim should be dismissed with prejudice.

*Second*, Mr. Trump cannot bring a claim for conversion of Trump Organization property. "[T]o state a claim for conversion, one must allege facts sufficient to show ownership of the subject property and facts that the other party wrongfully asserted dominion over that property." *Edwards v. Landsman*, 51 So. 3d 1208, 1213 (Fla. 4th DCA 2011); *Shak v. Adelphi Univ.*, 549 F. Supp. 3d 267, 275 (E.D.N.Y. 2021) (noting that under New York law, a claim for conversion must allege that "plaintiff had ownership, possession or control over the property before its conversion"). As set forth in *Disloyal*, the bonus in question was for Mr. Cohen's work for the Trump Organization. (*Disloyal*, at 315-18). Whether phrased in terms of failure to satisfy the elements of a conversion claim or lack of standing, *see, e.g.*, *Triton II, LLC v. Randazzo*, No. 18-CV-61469, 2018 WL 4932342, at *6 (S.D. Fla. Oct. 10, 2018) (member of LLC lacks standing to bring direct claim for conversion of LLC funds), Mr. Trump has no conversion claim.

*Third*, the conversion claim also fails to allege that Mr. Trump made a demand for the allegedly converted funds, or that such a demand would have been futile. *See Ginsberg v. Lennar Fla. Holdings, Inc.*, 645 So. 2d 490, 500 (Fla. 3d DCA 1994); *Thyroff v. Nationwide Mut. Ins. Co.*, 360 F. App'x 179, 180 (2d Cir. 2010) (noting that under New York law, "a conversion does not occur until the defendant refuses to return the property after demand or until he sooner disposes of the property") (internal quotations and citations omitted). Demanding the converted property (or showing the futility in doing so) "is an essential element in any claim for conversion and failure to make such a demand or allege the futility of doing so is fatal." *Ginsberg, Inc.*, 645 So. 2d at 500.

*Fourth*, an action for conversion of money is legally insufficient "unless it is alleged that the money converted was in specific tangible funds of which claimant was the owner and entitled to immediate possession," as "[a]n action of conversion does not lie to enforce a mere obligation to pay money." *Ehrlich v. Howe*, 848 F. Supp. 482, 492 (S.D.N.Y. 1994) (collecting cases); *Triton II*, 2018 WL 4932342, at *6 ("In order for money to be an appropriate subject for a conversion claim, there must be an obligation for the receiver to keep intact or deliver *the specific money at issue*.") (emphasis added) (internal quotations and citations omitted). "Although the specific *amount* of money may be identifiable . . ., this fact standing alone does not create a tort cause of action for conversion." *Triton II*, 2018 WL 4932342, at *7 (emphasis added). Because Mr. Trump alleges that Mr. Cohen converted fungible funds, not a specifically-identifiable asset, he "cannot state a claim for conversion as a matter of law." *Id.*

## **CONCLUSION**

For the forgoing reasons, Mr. Cohen respectfully requests that the Court dismiss the Complaint with prejudice.

Dated: May 8, 2023

Respectfully submitted,

By: */s/ Benjamin H. Brodsky*

|  |  |
|---|---|
| E. Danya Perry | Benjamin H. Brodsky |
| New York Bar No. 2839983 | Florida Bar No. 73748 |
| (admitted *pro hac vice*) | BRODSKY FOTIU-WOJTOWICZ, PLLC |
| E. DANYA PERRY PLLC | 200 SE 1st Street, Suite 400 |
| 157 East 86th Street, 4th Floor | Miami, Florida 33131 |
| New York, NY 10028 | Tel: 305-503-5054 |
| Tel: 646-349-7550 | Fax: 786-749-7644 |
| Fax: 646-849-9609 | bbrodsky@bfwlegal.com |
| dperry@danyaperrylaw.com | docketing@bfwlegal.com |

*Counsel for Defendant Michael D. Cohen*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by Notice of

Electronic Filing generated by CM/ECF, on May 8, 2023, on all counsel or parties of record.

By: <u>/s/ *Benjamin H. Brodsky*</u>
Benjamin Brodsky, Esq.

36