# Exhibit A



132 S. RODEO DRIVE, FOURTH FLOOR
BEVERLY HILLS, CA 90212 • 424.203.1600

100 PARK AVENUE, SIXTEENTH FLOOR
NEW YORK CITY, NY 10017 • 212.799.1400

WWW.HARDERLLP.COM

April 30, 2020

<u>VIA EMAIL</u>
Daniel I. Wolf, Esq.
Gilbert LLP
1100 New York Avenue, NW
Suite 700
Washington, D.C.  20005
wolfd@gilbertlegal.com

Re:     Legal Demand Letter:  Trump Org.-Michael Cohen

Dear Mr. Wolf:

This firm is litigation counsel for The Trump Organization (the "Company").  We continue to read media reports about the efforts of your client, Michael Cohen, to sell the rights to a supposed "tell-all" book revealing information he obtained regarding the Company, its officers, directors, employees and principals during his employment with the Company.  *See "Michael Cohen Is Writing a Secret Tell-All to 'Spill the Beans' on Trump"* (Daily Beast, April 19, 2020); *"Rosie O'Donnell is Helping Michael Cohen With Tell-All Book on Trump"* (New York Post, March 2, 2020); *"Jailed Trump Fixer Michael Cohen Says He Can't Wait to Pen Post Jail Tell-All Book"* (Fox Business, October 4, 2019). Please be advised that any such effort is a breach of Cohen's confidentiality agreement with the Company and otherwise prohibited by New York's Rules of Professional Conduct.  Your client must cease and desist.

***The Confidentiality Agreement Expressly Prohibits Cohen from***
***<u>Disclosing Confidential Information Concerning the Protected Parties</u>***

As we assume you are aware, on or about June 7, 2007, Cohen, as a condition of his employment with the Company, executed a valid and enforceable confidentiality agreement, a copy of which is annexed hereto (the "Confidentiality Agreement").  Pursuant to the terms of the Confidentiality Agreement, Cohen expressly acknowledged and agreed, among other things, that as a "material inducement" to his hiring and "continuation" of his employment, he would not

> "directly or indirectly, disseminate, or publish, or cause to be disseminated or published any Confidential Information in any form, including but not limited to any diary, memoir, book, letter, story, speech, photography, interview, article, essay, account, description or depiction of any kind whatsoever"

or

Daniel I. Wolf, Esq.
April 30, 2020
Page 2

"assist others in obtaining, disseminating or publishing, Confidential Information for any purpose whatsoever."

Pursuant to the terms of the Confidentiality Agreement, "Confidential Information" is expressly defined to include any information obtained by Cohen, in whatever form (i.e., "verbal, written, electronically or photographically recorded, visual or otherwise"), concerning the "personal life" and "business affairs" of Donald Trump, his family, the Company, together with all of their affiliates, officers, directors and employees (collectively, the "Protected Parties"). The Confidentiality Agreement further provides that, prior to publishing any Confidential Information, Cohen shall first obtain the written approval of the Protected Parties, which the Protected Parties may grant or withhold in "their and sole and absolute discretion." Finally, the Confidentiality Agreement provides that, upon request by the Protected Parties, Cohen shall "promptly" return "all Confidential Information furnished to [him] pertaining to such Protected Parties, together with all copies, abstracts, notes, reports, or other materials" containing or otherwise reflecting any Confidential Information.  By email dated July 8, 2019, a copy of which is attached, the Company requested that Cohen promptly return such materials.  The Company reiterates that request now.

There can be no doubt that Cohen was fully aware of the legal obligations contained in the Confidentiality Agreement and that he agreed to comply therewith.  Cohen was a licensed attorney at the time he executed the Confidentiality Agreement, and just above his signature Cohen expressly acknowledged and agreed, as follows:

> "**I ACKNOWLEDGE THAT I HAVE READ, UNDERSTAND AND AGREE TO COMPLY WITH THE FOREGOING, WHICH I RECOGNIZE CREATES A VALID AND BINDING LEGAL OBLIGATION ON ME IN CONSIDERATION OF MY EMPLOYMENT AND CONTINUED EMPLOYMENT BY EMPLOYER**."

### *The Rules of Professional Conduct Prohibit the Disclosure of Confidential Information*

During the entire time Cohen worked for the Company, he was an attorney duly admitted to practice law in the State of New York, and was employed by the Company *as* an attorney. The Attorney Grievance Committee, in its February 26, 2019 opinion "striking" Cohen's "name from the roll of attorneys and counselors-at-law in the State of New York," recognized that Cohen was employed by the Company in the capacity as an attorney. *See In the Matter of Michael D. Cohen*, 170 A.D.3d 30, 2019 NY Slip Op 10381 (1st Dep't, Attorney Grievance Committee 2019) ("Respondent served on several matters as an attorney to President Donald Trump, when the latter was CEO of the Trump Organization").

As the Company's former attorney, Cohen's communications with the Company's officers, directors, owners, employees, representatives, etc. are protected by Rule 1.6 of the New York Rules of Professional Conduct, which provides that "[a] lawyer shall not knowingly reveal

Daniel I. Wolf, Esq.
April 30, 2020
Page 3

confidential information… or use such information to the disadvantage of a client or for the advantage of the lawyer or a third person". N.Y.R. Prof. Cond. 1.6(a). "Confidential information" is defined broadly: "information gained during or relating to the representation of a client, whatever its source, that is (a) protected by the attorney-client privilege, (b) likely to be embarrassing or detrimental to the client if disclosed, or (c) information that the client has requested be kept confidential". N.Y.R. Prof. Cond. 1.6(a)(3).

Note that while that definition includes lawyer-client privileged information, it is not limited *only* to privileged information. It also includes information "likely to be embarrassing or detrimental to the client if disclosed" as well as "information that the client has requested be kept confidential." Thus, Rule 1.6 applies not only to information that Cohen may have received from the Company when the Company was seeking his legal advice, but also includes any non-public information and communications involving the Company, its officers, directors, owners, employees, representatives, etc., which Cohen may have been privy to during their lawyer-client relationship (For the avoidance of any doubt, the Company hereby requests that all non-public information and communications obtained by Cohen involving the Company, its officers, directors, owners, employees, representatives, etc., including any and all Protected Parties, as defined in the Confidentiality Agreement, be kept confidential.)

The Official Commentary to Rule 1.6 confirms the breadth of the protection of client confidentiality:

> A fundamental principle in the client-lawyer relationship is that, in the absence of the client's informed consent, or except as permitted or required by these Rules, the lawyer must not knowingly reveal information gained during and related to the representation, whatever its source…. The lawyer's duty of confidentiality contributes to the trust that is the hallmark of the client-lawyer relationship. The client is thereby encouraged to seek legal assistance and to communicate fully and frankly with the lawyer, even as to embarrassing or legally damaging subject matter. The lawyer needs this information to represent the client effectively and, if necessary, to advise the client to refrain from wrongful conduct. Typically, clients come to lawyers to determine their rights and what is, in the complex of laws and regulations, deemed to be legal and correct. Based upon experience, lawyers know that almost all clients follow the advice given, and the law is thereby upheld.

N.Y. R. Prof. Cond. 1.6 official cmt. ¶ 2.

The official comment also makes clear that this rule applies even in circumstances where the attorney-client privilege is inoperative:

> The principle of client-lawyer confidentiality is given effect in three related bodies of law: the attorney-client privilege of evidence law, the work-product doctrine of civil procedure and the professional duty of confidentiality established

Daniel I. Wolf, Esq.
April 30, 2020
Page 4

in legal ethics codes. The attorney-client privilege and the work-product doctrine apply when compulsory process by a judicial or other governmental body seeks to compel a lawyer to testify or produce information or evidence concerning a client. The professional duty of client-lawyer confidentiality, in contrast, applies to a lawyer in all settings and at all times, prohibiting the lawyer from disclosing confidential information unless permitted or required by these Rules or to comply with other law or court order. The confidentiality duty applies not only to matters communicated in confidence by the client, which are protected by the attorney-client privilege, but also to all information gained during and relating to the representation, whatever its source. The confidentiality duty, for example, prohibits a lawyer from volunteering confidential information to a friend or to any other person except in compliance with the provisions of this Rule, including the Rule's reference to other law that may compel disclosure.

N.Y. R. Prof. Cond. 1.6 official cmt. ¶ 3.

There are a few exceptions to Rule 1.6, none of which applies here. The exceptions include, *inter alia*: (1) where the client gives informed consent to disclosure, (2) where the lawyer reasonably makes disclosures to further the client's best interests in a manner that is reasonable or customary practice in the legal community, or (3) to prevent imminent death, serious bodily harm, or to prevent the client from committing a crime. N.Y.R. Prof. Cond. 1.6(a) & (b). None of these exceptions apply. Instead, Cohen is just seeking to advance his own self interests.

Under the cases interpreting Rule 1.6, the Company is entitled to injunctive relief in court against Cohen to prevent the disclosure of its confidences. In *Johnson v. Medisys Health Network*, 2011 WL 5222917 (E.D.N.Y. Jun. 1, 2011), the U.S. District Court in New York entered an injunction precluding the plaintiff, who was the defendant's former general counsel, from disclosing client confidences in violation of Rule 1.6. In *IBM v. Murray*, 1990 WL 283846 (Conn. Super. Jun. 29, 1990), the court held that IBM could obtain a temporary injunction against its former lawyer, a member of the New York bar, who had threatened to publicly disclose confidential communications with the company in a filing with the state government. Applying Rule 1.6, the Court held that an injunction was available to enforce the lawyer's professional obligations to IBM, and rejected his free speech argument.

To the extent Cohen contends he is entitled to disclose client confidences in a book because he gave testimony pursuant to a congressional subpoena which disclosed such confidences, Cohen is not correct. While case law has held that material that is "already public" may not be enjoined under Rule 1.6, *Fischman v. Mitsubishi Chemical Holdings*, 2019 WL 3034866 at *2 (S.D.N.Y. Jul. 11, 2019), this implied exception extends no farther than the client confidences he has already disclosed in his congressional testimony given pursuant to a subpoena. Thus, even if it is assumed that Cohen may discuss his public congressional testimony in a book, he may not say anything in the book beyond the words he used during his

Daniel I. Wolf, Esq.
April 30, 2020
Page 5

congressional testimony as they pertain to the confidences of the Company (including Mr. Trump).

In addition to the availability of injunctive relief, Rule 1.6, by its express terms, imposes an "informed consent" requirement before confidential information may be disclosed. "Informed consent" includes a requirement that "the lawyer has communicated information adequate for the person to make an informed decision." N.Y. R. Prof. Cond. 1.0(j).

To allow the Company to make an informed decision as to whether to authorize Cohen to publish confidential information, a right that the Company has both under Rule 1.6 and also under the terms of its employment contract with Cohen, the Company must receive adequate information regarding what Cohen proposes to disclose so that it may make an informed decision. Thus, the Company is entitled to a *pre-publication review* of the book Cohen seeks to publish, so that it is fully informed on what confidential information Cohen proposes to publish, and can grant or withhold its consent to publish same.

Based on the foregoing, we hereby demand that Cohen:

(1) immediately confirm in writing his agreement that, no later than 120 days prior to publication or upon completion of a final text of his proposed book, whichever is *earlier*, that Cohen will provide the Company the full text of his proposed book for a pre-publication review by the Company to determine whether it wishes to authorize the publication of any confidential information received by Cohen during his lawyer-client relationship with the Company;

(2) immediately agree in writing to forego publication of his proposed book until such prepublication review is completed; and

(3) immediately agree in writing to abide by the terms of his employment agreement and Rule 1.6, and not publish any information protected thereunder unless and until he receives informed, written consent from the Company.

Please provide these written confirmations to us within **24 hours** of transmission of this letter. Should we not receive such written confirmations, the Company reserves the right to seek injunctive relief against Cohen in a court of competent jurisdiction and to seek any and all other legal remedies available, to the maximum extent of the law.

You are officially on notice of this dispute and therefore you are required to undertake immediate steps to affirmatively preserve, and not delete, any and all physical and electronic documents, materials, information, and data that pertain in any way to Cohen's representation of the Company, including without limitation all emails, text messages, instant messages (IMs), letters, memoranda, articles, social media postings (including all drafts as well as final versions of all written communications), as well as all other types of written, physical and digital materials including handwritten notes, typewritten notes, summaries, charts, receipts, audio recordings, video recordings, photographs, telephone call logs, calendar entries of all types,

Daniel I. Wolf, Esq.
April 30, 2020
Page 6

financial data and information, etc. that pertain in any way or might otherwise be relevant or related to the foregoing matters. All sources of documents, materials, information, and data should be preserved, including without limitation, physical files, electronic and digital files, computer servers, email servers, backup tapes, cloud storage, personal computers, hard drives, smart phones, tablets, and other types of storage devices including external drives, thumb drives, zip drives, disks and DVDs. Failure to affirmatively preserve such documents and materials could result in severe sanctions imposed by a court which could include, among other remedies, monetary sanctions, evidentiary sanctions, issue sanctions and/or the striking of an answer and entry of a default judgment.

This letter is not intended as a full or complete statement of all relevant facts, applicable law, causes of actions or legal remedies, and nothing herein is intended as, nor should it be deemed to constitute, a waiver or relinquishment of any of our client's rights, remedies, claims or causes of action, all of which are hereby expressly reserved.

We look forward to your prompt response to this letter.

Very truly yours,

CHARLES J. HARDER Of
**HARDER LLP**

cc:   Alan Garten, Esq.
      Ryan J. Stonerock, Esq.
      Dilan A. Esper, Esq.
      Steven H. Frackman, Esq.