**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Miami Division**

PRESIDENT DONALD J. TRUMP,

                Plaintiff,

    v.

MICHAEL D. COHEN,

                Defendant.

Case No.: 23-cv-21377-DPG

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, Donald J. Trump (hereinafter referred to as "Plaintiff"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 12, hereby files this Response in Opposition to Defendant Michael D. Cohen's ("Cohen") Motion to Dismiss and Incorporated Memorandum of Law [D.E. 11].

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION……………………………………………………………………......…..1

II.    MEMORANDUM OF LAW……………………………………………………………......1

    A.  Legal Standard……………………………………………………………….......…..…1

    B.  The Complaint States a Claim for Breach of Fiduciary Duty………………………...…..2

       1.  Florida Law Applies to the Claim for Breach of Fiduciary Duty…………………....2

       2.  Cohen's Breach of Fiduciary Duty is Not Time-Barred……………………………...4

          a.  Florida Law………………………………………………………….......…4

          b.  New York Law……………………………………………………….......…5

       3.  The Allegations in the Complaint State a Claim for Breach of Fiduciary Duty….......8

          a.  Plaintiff Has Sufficiently Pled the Requisite Allegations…………………....9

          b.  Plaintiff is Not Required to Allege "But For" Causation and, Has,
             Indeed Alleged that he Suffered Harm as a Result of Cohen's Conduct…......13

    C.  Count II Properly Alleges a Claim for Breach of Contract……………………...…....14

       1.  Applicable Law………………………………………………………………...…...14

       2.  The Breach of Contract Claim is Sufficiently Pled…………………………...…….15

       3.  Cohen Raises a Series of Fact-Specific Arguments Which Plainly Are Not
          Appropriately Resolved Through a Motion to Dismiss…………………………..…17

       4.  Cohen's Standing Argument is Equally Unavailing……………………………...…19

       5.  Cohen's Arguments are Revealing……………………………………………...…..21

    D.  Count III Is Not Duplicative of Count II…………………………………………......22

    E.  The Unjust Enrichment Claim Has Been Properly Alleged……………………………24

F.  Plaintiff Submits that the Conversion Claim Should Survive…………………………...25

G.  Request for Leave to Amend…………………………………………………………….26

III.     CONCLUSION……………………………………………………………………....27

## I.    <u>INTRODUCTION</u>

In his Motion to Dismiss, Cohen contends that Plaintiff has failed to allege the elements to establish any of the causes of action alleged in the Complaint.  Cohen's arguments in this regard are legally unsupported and Cohen's Motion is should be summarily denied. It bears noting that in the section entitled "Preliminary Statement," Cohen dedicates an inordinate amount of his Motion going beyond what is permissible in a motion to dismiss.  *See* D.E. 11, pp. 1-7. Specifically, Cohen discusses the rulings in unrelated legal matters, makes references to various news articles designed to taint this Court's view of the Plaintiff and this case, unnecessarily injects invectives designed to exacerbate this already caustic matter (*e.g.,* "The Complaint, frivolous and scattershot" . . ."ham-fisted" . . ."tattered old playbook") among other improper statements and arguments that have no place in a motion to dismiss. Rather than belaboring the impropriety of the statements, accusations and arguments made in Cohen's Motion to Dismiss, Plaintiff will elect to focus on the legal arguments raised in the Motion which, as reflected in greater detail below, should be summarily denied.

## II.    <u>MEMORANDUM OF LAW</u>

### A.    **Legal Standard**

Rule 8 of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When ruling on a motion to dismiss, the Court "must accept the facts as pleaded to be true and resolve them in the light most favorable to the plaintiff." *Kaloe Shipping Co. v. Goltens Serv.*, 315 F. App'x 877, 879 (11th Cir.

2009). "The [C]ourt need not engage in extensive analyses of fact-intensive inquiries." *In re Blue Cross Blue Shield Antitrust Litig.*, 2017 WL 2797267, at *7 (N.D. Ala. June 28, 2017) (quoting *In re Webkinz Antitrust Litig.*, 2010 WL 4168845, at *3 (N.D. Cal. Oct. 20, 2010)). Additionally, "[d]ismissal under Rule 12(b)(6) is not appropriate unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Magluta v. Samples*, 375 F. 3d. 1269, 1273 (11th Cir. 2004) (citation omitted).

**B.      The Complaint States a Claim for Breach of Fiduciary Duty.**

*1.      <u>Florida Law Applies to the Claim for Breach of Fiduciary Duty.</u>*

Federal courts sitting in diversity apply the substantive law of the forum state, including choice of law rules. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Mesa v. Clarendon Nat. Ins. Co.*, 799 F.3d 1353, 1358 (11th Cir. 2015). Because the Court's jurisdiction is premised upon diversity of citizenship, the breach of fiduciary duty claim is governed by Florida law. *See Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural law."). The Eleventh Circuit has held that a choice of law analysis necessarily involves three steps: (1) ascertaining the nature of the problem to involved, *i.e.* contracts, torts, etc.; (2) determining what choice of law rule the state of Florida applies to that type of legal issue; (3) applying the proper choice of law rule to the instant facts and concluding which state's substantive law applies. *Acme Circus Operative Co., Inc. v. Kuperstock,* 711 F.2d 1538, 1540 (11th Cir. 1983).

As to torts such as a breach of fiduciary duty, "Florida applies the significant relationship test of the Restatement (Second) of Conflicts of Laws." *Nelson v. Freightliner, LLC*, 154 F. App'x 98 (11th Cir. 2005) (*citing Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980)). The Restatement (Second) provides:

     (1)     The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

     (2)     Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

     (a)     the place where the injury occurred,
     (b)     the place where the conduct causing the injury occurred,
     (c)     the domicile, residence, nationality, place of incorporation and place of business of the parties, and
     (d)     the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of L. § 145 (Am. L. Inst. 1971).

The place where the injury occurred is generally the most important, as "absent special circumstances, '[t]he state where the injury occurred would . . . be the decisive consideration in determining the applicable choice of law.'" *Pycsa Panama, S.A. v. Tensar Earth Techs., Inc.,* 625 F. Supp. 2d 1198, 1220 (S.D. Fla. 2008) (*quoting Bishop*, 389 So.2d at 1001).

The Complaint alleges that Plaintiff is a resident of the state of Florida and suffered injuries as a result of Cohen's conduct. *See* D.E. 1,¶¶1, 134, 144, 151. Plaintiff submits that these allegations sufficiently establish that the harm suffered by Plaintiff was in Florida. In addition, paragraph 10 of the Complaint further supports a determination that Florida law should apply to this claim given that it alleges that:

> Defendant engaged in business activities in Florida in the marketing and selling of the Books (as defined below), the marketing and publication of the Podcast (also defined below), and through additional media appearances and public statements, all of which were accessible and were accessed in this state and which caused injury to Plaintiff within this state while Defendant was engaged in solicitation or service activities within this state and/or products, materials, or things processed, serviced, or manufactured by Defendant were used or consumed within this state in the ordinary course of commerce, trade, or use.

D.E. 1intr, ¶10.

The cases cited by Cohen to support his argument that New York law applies instead of Florid law are inapposite because they involve professional negligence and legal malpractice claims, as opposed to breach of fiduciary duty claims. *See Reichard v. Henderson, Covington, Messenger, Newman & Thomas Co., L.P.A.*, 2018 WL 5016285, at *6 (S.D. Fla. Oct. 16, 2018), *aff'd sub nom. Reichard v. Henderson Covington Messenger Newman & Thomas Co.*, 779 F. App'x 665 (11th Cir. 2019) ("Accordingly, the [c]ourt determines that Ohio law applies to Plaintiff's **professional negligence claim**") (emphasis added); *Shaklee Corp. v. Oberman*, 1993 WL 378268, at *1 (S.D.N.Y. Sept. 20, 1993) ("New York has the predominant interest in issues involving **legal malpractice** allegedly committed by a New York attorney with respect to the performance of his duties in this state") [emphasis added].

Accordingly, Florida law should govern the breach of fiduciary duty claim.[1]

2.   <u>*Cohen's Breach of Fiduciary Duty Is Not Time-Barred*</u>.

a.   *Florida Law*

"Claims for breach of fiduciary duty in Florida are subject to a four-year statute of limitations, which begins to run after the breach and resulting damages have occurred." *See Am. Home Assur. Co. v. Weaver Aggregate Transp., Inc.,* 990 F.Supp.2d 1254, 1271 (M.D. Fla. 2013); *see also* Fla. Stat. § 95.11(3)(o). Therefore, in this case, any claims dating back as far as April 12, 2019 are actionable as a matter of law. The acts complained of in the Complaint, which serve as

---

[1]   Nevertheless, in an abundance of caution, Plaintiff has responded to Cohen's arguments under both Florida and New York law, which results in the same determination – the breach of fiduciary claim should survive Cohen's motion to dismiss.

the basis for Plaintiff's breach of fiduciary claim, do not pre-date April 12, 2019 and, therefore, Plaintiff's breach of fiduciary claim is not time barred.

In his Motion, Cohen incorrectly argues that a two-year statute of limitations period applies under Florida law because Plaintiff's breach of fiduciary duty claim arises from the parties' attorney/client relationship and, therefore, should be viewed as an action for professional malpractice, which has a two-year statute of limitations period. *See* D.E. 11, p. 12.  Under Florida law, attorneys can both be sued for breach of fiduciary duty *and* for professional negligence, each of which are separate and distinct causes of action, the elements of which are well settled. *Arnstein & Lehr LLP v. Etkin & Company, Inc.*, 2016 WL 11501336, *3 (S.D. Fla. Apr. 5, 2016); *Resolution Trust Corp. v. Holland & Knight*, 832 F. Supp. 1528, 1531 (S.D. Fla. 1993) ("The breach of fiduciary duty constitutes a wrong which is distinct and independent from professional negligence but still comprises legal malpractice.") [internal quotations omitted]; *Rocco v. Glenn, Rasmussen, Fogarty & Hooker, P.A.*, 32 So.3d 111 (Fla. 2d DCA 2009).[2] As such, the four-year limitations period applies here.

        b.    *New York Law*

"New York law does not provide a single statute of limitations period for a breach of fiduciary duty claim." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 139 (2009). "Rather, the choice of the applicable limitations period depends on the substantive remedy that the plaintiff seeks." *Id.* "Where the remedy sought is purely monetary in nature, courts

---

[2]     A legal malpractice claim, "has three elements: (1) the attorney's employment, (2) the attorney's neglect of a reasonable duty, and (3) the attorney's negligence [as] the proximate cause of the client's loss." *Cira v. Dillinger*, 903 So.2d 367 (Fla. 2d DCA 2005). To state a cause of action for breach of fiduciary duty, a plaintiff must allege three elements: the existence of a fiduciary duty, a breach of that duty, and plaintiff's damages proximately caused by the breach. *Gracey v. Eaker*, 837 So.2d 348, 353 (Fla.2002).

construe the suit as alleging injury to property within the meaning of CPLR 214(4), which has a three-year limitations period." *Id.* (internal citations omitted); N.Y. C.P.L.R. § 214(4). In *IDT Corp.*, the New York Court of Appeals applied a three-year statute of limitations period to a breach of fiduciary claim that sought damages in the amount of hundreds of millions of dollars, which included the disgorgement of profits. *IDT Corp.*, 12 N.Y.3d at 139.

"A breach of fiduciary cause of action based on actual fraud or a breach of contract, even seeking monetary damages, is governed by a longer six-year limitations period." *Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 667 (S.D.N.Y. 2007); *Speedfit LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 582 (E.D.N.Y. 2014) ("Because the fiduciary duty alleged by plaintiffs arises from a contractual relationship, the six-year statute of limitations applies to plaintiffs' claim"); *Meija–Ricart v. Bear Stearns & Co.,* 95 Civ. 582, 1996 WL 94810 (S.D.N.Y. Mar. 4, 1996) (applying a six-year statute of limitations to a claim for breach of fiduciary duty brought against an investment broker because the parties' relationship was "contractual"); *Ironshore Ins. Ltd. v. W. Asset Mgmt. Co.*, 2012 WL 1981477, at *4 (S.D.N.Y. May 30, 2012) ("for a fiduciary duty claim sounding in contract, New York law applies a six-year statute of limitations").[3]

Here, in applying the six-year statute of limitations provided for under New York law, any conduct dating back to April 2017 is actionable. Even if one were to allow that the three-year limitations period applies, any conduct dating back to April 2020 is actionable. The wrongdoings

---

[3]        In *Ironshore Ins. Ltd.*, the Southern District of New York declined to dismiss a breach of fiduciary claim for untimeliness at the motion to dismiss stage. *Id*. at *4. The court recognized that New York law typically applies a three-year statute of limitations if money damages are sought. *Id.* The court also noted, however, that "for a fiduciary claim sounding in contract, New York law applies a six-year statute of limitations." *Id.* "A claim for breach of a fiduciary duty may be pursued under a contract theory of liability "as long as the asserted basis of liability has its genesis in a contractual relationship." *Id.* The court denied defendant's motion to dismiss for untimeliness on the grounds that the plaintiff "assert[ed] a cause of action for breach of fiduciary duty, arising from the contractual relationship between [the parties]." *Id.*

complained of in the Complaint, which serve as the basis for Plaintiff's breach of fiduciary claims, do not pre-date April 2020. Cohen assumes that a shortened statute of limitations period applies under New York law by incorrectly arguing that "tort claims arising from reputational injuries . . . are subject to the same one-year statute of limitations imposed on defamation claims." *See* D.E. 11, pp. 9-10. Cohen cites to *Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) to support his proposition that Plaintiff's claims are subject to the same one-year statute of limitations period as a defamation claim. However, a plain reading of *Hengjun Chao* demonstrates that the decision had little to do with the applicable statute of limitations of non-defamation tort cases. Rather, in *Hengjun Chao*, the plaintiff brought a defamation claim in addition to other tort claims. *Id.* at 895. The court held that the lower court correctly dismissed the non-defamation tort claims because "the factual allegations underlying each of [plaintiff's] tort claims [were] virtually identical to the facts underlying his defamation claim." *Id.* The non-defamation tort claims were not dismissed for untimeliness under the one-year statute of limitations period. *Id.* Therefore, *Hengjun Chao* is not applicable to the instant case.

Cohen also cites to *Morrison v. Nat'l Broad. Co.*, 19 N.Y.2d 453 (1967) to support his argument that Plaintiff's breach of fiduciary duty claim is disguised as a defamation claim and is, therefore, subject to a one-year statute of limitations. However, *Morrison* is inapplicable because there was only one cause of action in that case, which alleged that the plaintiff "ha[d] been brought into public scorn, contempt, and obloquy; has been held up as an object of scorn, shame, and contempt * * *; and his professional standing and reputation had been seriously and pecuniarily damaged." *Id.* at 457 (internal quotations omitted). The court found that that claim essentially constituted a defamation claim and, for that reason, found that the one-year statute of limitations

period applied. *Id.* at 458.[4] In attempting to tightly cast the claim solely as a defamation claim, Cohen is essentially reading the Complaint to suggest that everything that he improperly stated about the Plaintiff is false and defamatory. The Complaint demonstrates otherwise. Given the nature of the allegations in the Complaint that Cohen revealed both historical information that was not subject to public disclosure ***and separately*** made material misrepresentations about Plaintiff, the claim alleged is not a defamation claim but rather properly pled as a breach of fiduciary duty claim.

Finally, the damages being sought by Plaintiff are not limited to "reputational damages," as Cohen contends. Rather, in his Complaint, Plaintiff requests "an award of restitutionary damages in an amount equal to or greater than the total actual monetary gain received by Cohen in connection with the publication, promotion, and/or sale of the Books," which constitute the ill-gotten gains received by Cohen. *See* D.E. 1, ¶¶134-136. Therefore, based on a plain reading of the four corners of the Complaint, Cohen cannot claim that the only damages being sought by Plaintiff are "reputational damages."

3.    *The Allegations in the Complaint State a Claim for Breach of Fiduciary Duty.*

"The elements necessary to state of cause of action for breach of fiduciary duty are: 1) existence of a fiduciary duty; 2) a breach of that duty; and 3) damage proximately caused by that duty."[5] *Brouwer v. Wyndham Vacation Resorts, Inc.*, 336 So. 3d 372, 373 (Fla. 5th DCA 2022).

---

[4]    Similarly, *Riddell Sports Inc. v. Brooks*, 872 F. Supp. 73 (S.D.N.Y. 1995) is not applicable because the "essence" of Plaintiff's breach of fiduciary duty claim is not a defamation claim. Plaintiff's reliance on *Tymar Distribution LLC v. Mitchell Grp. USA, LLC*, 558 F. Supp. 3d 1275 (S.D. Fla. 2021) is also misplaced in that the court in that case was dealing with a defamation claim and the question was whether the harm was to a specific business relationship or to personal reputation.

[5]    Similarly, under New York law, the elements required to plead a breach of fiduciary duty are: (1) defendant owed plaintiff a fiduciary duty; (2) defendant committed misconduct; and (3) [plaintiff] suffered damages caused by that misconduct. *See Burry v. Madison Park Owner LLC*,

*a.  Plaintiff Has Sufficiently Pled The Requisite Allegations.*

Pursuant to both Florida and New York law, the attorney-client relationship creates a fiduciary relationship. Indeed, "[t]he relationship between an attorney and his or her client is a fiduciary relationship of the very highest character."[6] *Elkind v. Bennett*, 958 So. 2d 1088, 1091 (Fla. 4th DC A 2007); *In re Marks' Est.*, 83 So. 2d 853, 854 (Fla. 1955) ("An attorney and client relationship is one of the closest and most personal and fiduciary in character that exists"). It is axiomatic that the attorney-client relationship "place[s] a fiduciary duty on the part of the attorney." *FDIC v. Martin,* 801 F. Supp. 617, 620 (M.D. Fla. 1992). The **attorney** "is under a duty at all times to represent his client and handle his client's affairs with the utmost degree of honesty, forthrightness, loyalty and fidelity." *Id.* (citation omitted).

Therefore, as to the first element, there is no question that Cohen owed a fiduciary duty to Plaintiff. Indeed, the Complaint alleges that Cohen was an attorney licensed to practice in the state of New York and that his fiduciary duties stemming from that relationship survive the attorney-client relationship. *See* D.E. 1, ¶¶ 53-60.

Cohen argues that the Complaint fails to state a cause of action because it does not specifically state what Cohen's breach is and, instead, is "rife with conclusory allegations." *See* D.E. 11, p. 15. However, contrary to what Cohen argues in his motion to dismiss, the Complaint specifically alleges the violations that Cohen has committed as follows:

---

84 A.D.3d 699, 700 (2011). Plaintiff states that, under New York law, an attorney's violation of a disciplinary rule does not *per se* give rise to a cause of action for breach of fiduciary duty. *See* D.E. 11, p. 15. However, the very cases cited by Plaintiff make clear that a claim of breach of fiduciary duty should be sustained when the three elements cited above are met. *See Margrabe v. Sexter & Warmflash, P.C.*, 353 F. App'x 547, 549 (2d Cir. 2009); *Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison L.L.P.*, 351 F. App'x 472, 474 (2d Cir. 2009).

[6]      New York law also recognizes that an attorney owed a fiduciary duty to a client.  *Mut. Benefits Offshore Fund, Ltd. v. Zeltser*, 172 A.D.3d 648, 649 (2019).

65.     Defendant's most egregious breaches of fiduciary duty and contract arise in connection with the publication of his books and podcast, discussed in further detail herein.

67.     *Disloyal* purports to reveal confidential information about Plaintiff, as defined by the Confidentiality Agreement, and as contemplated by the New York Rules of Professional Conduct.

*68.*     *Disloyal* also provides fictionalized accounts of Defendant's interactions with Plaintiff that are prohibited by the Confidentiality Agreement, and which are intended to be embarrassing or detrimental to Plaintiff, and redound to Plaintiff's disadvantage, in violation of the New York Rules of Professional Conduct.

79.     Throughout *Disloyal*, Defendant uses quotation marks to fabricate verbatim conversations, and falsely put words directly in Plaintiff's mouth.

81.     *Disloyal*'s forward nods both to the unprecedented breaches of fiduciary duties found therein, and further suggests Defendant's bad faith in publishing the confidential information: "this is a book the President of the United States does not want you to read."

83.     Defendant describes an exchange in which Plaintiff is verbatim described as asking for Defendant's "help" on an "issue" regarding a "rogue board" at Trump World Tower, which Defendant represented solicitation of his "assess[ment] [of] a serious situation" to which he "determine[d] strategy on a critical business matter."

84.     Defendant claims that he "research[ed] the issues" on the "rogue board" issue, describes his legal "conclu[sion] that the board had indeed wrongly accused" Plaintiff, "and recorded that conclusion in a three-page memorandum outlining the allegation, the controversial issues and the way to proceed, as I saw it."

85.     Defendant describes working on various real-estate and other business matters for Plaintiff in a legal capacity as Plaintiff's "personal attorney," including the Running Horse golf project, Meadowlands development, and Trump Network.

86.     Defendant claims to describe verbatim a 2011 conversation he had with Plaintiff regarding the legal and real-estate strategies for acquiring what would become Trump Winery.

87.     Defendant describes the legal work he did in connection with Trump University, and the Plaintiff's alleged approving reaction.

88.     Defendant represents that he stole from Plaintiff by "l[ying]" to inflate expenditures Plaintiff owed to him in an effort to "sneakily up[] my bonus.

89.     Defendant represents that "[o]f course" he "cash[ed] in on [his] relationship with" Plaintiff.

90.     Defendant likewise intended to disclose confidential information, claiming time and again that he "was dealing with the personal and extremely confidential matters that could make or break" Plaintiff.

91.     At bottom, Defendant's account is indeed incredible; he concedes that he must distinguish between "the time [he] lied" and "the time he told the truth" in prior testimony.

92.     Defendant repeatedly wrongfully calls Plaintiff racist.

93.     Defendant incorrectly declares that Plaintiff "didn't care about American national security."

94.     Defendant repeatedly misrepresents that Plaintiff engaged in illegal or unethical conduct as to matters in which Defendant purportedly represented Plaintiff.

97.     In *Revenge*, Defendant repeatedly disclaims responsibility for any wrongdoing that resulted in his pleading guilty to multiple felonies; and details how, in his view, he was railroaded by federal prosecutors at Plaintiff's direction.

100.    For example, Defendant baldly asserts that Plaintiff "lies" with "frequency and ferocity . . . about damn near everything."

101.    Defendant recycles his false attacks on Plaintiff as a racist and bigot, and attacks Plaintiff as corrupt, among other insults.

104.    Beyond publication of the Books, Defendant has also made numerous false public statements about Plaintiff through various forms of traditional media (including television, radio, in print, etc.) as well as via the internet, many of which violate Defendant's fiduciary duties with respect to Plaintiff, and Defendant's contractual obligations regarding Plaintiff.

105.    Many such statements were published in Defendant's podcast, entitled *Mea Culpa*, which he launched in September 2020 (the "Podcast").

108.    Promotional materials advertising Defendant's Podcast clearly state his malicious intent and retributive motive to harm Plaintiff at any cost: Defendant states that he is on "a mission to right the wrongs [Defendant] perpetrated," allegedly on behalf of Plaintiff, and "dismantle the Trump legacy" now that Defendant finds himself "imprisoned in his home, [with] his life, reputation and livelihood destroyed."

109.    In the more than 250 episodes of the Podcast produced to date, Defendant repeatedly and consistently reveals, or purports to reveal, confidential information gleaned by nature of his prior attorney-client relationship with Plaintiff, as well as information pertaining to Plaintiff's personal and private life.

111.    For example, in February 2021, September 2021, January 2022, and April 2022, Defendant hosted Stephanie Clifford on his Podcast, delving into the details of her allegations against Plaintiff and revealing purported client confidences about Defendant's role in that matter, but failing to make plain that Plaintiff relied on Defendant's legal advice, and Plaintiff acted out of a desire to protect his family from the malicious and false claims made by Clifford.

112.    Further, in November 2021, Defendant aired a "Best of *Mea Culpa*: Stormy Daniels" episode.

113.    Although he was former counsel to Plaintiff in regards to this matter, Defendant stated, "I should not have gotten involved into it, and then would that have stopped him from maybe being President," adding his own hopes that her pending defamation case (which she lost against the President) would move forward, because "I think it's important."

114.    On March 16, 2023, in the days after Defendant's appearances before the Manhattan District Attorney's grand jury regarding its investigation into the payment to Clifford, Defendant released a new episode claiming, "Exclusive!! Stormy Daniels Tells All…" only to re-air his first Interview with her from February 2021, discussing her allegations against Plaintiff, but beginning with his own purported interactions with the grand jury.

115.    Defendant has also recently hosted episodes of the Podcast that discuss Defendant's putative legal exposure and falsely implicate confidential information,

including with guests who have historically been hostile towards Plaintiff, Norm Eisen, Elie Honig, and Glenn Kirschner.

116.    Defendant has made countless other media appearances wherein he discusses his prior attorney-client relationship with Plaintiff, and purports to disclose privileged details of their prior interactions and dealings.

117.    During one such appearance, for example, Defendant discussed that he testified in front of the Manhattan District Attorney's grand jury, and suggested that Plaintiff was, by virtue of Defendant's knowledge of confidential information, criminally exposed.

*See* D.E. 1.

These allegations demonstrate that the Complaint does, in fact, specify how and why Cohen breached his fiduciary duties to Plaintiff. Cohen relies on the contention that "asserting that Mr. Cohen breached one of more disciplinary rules is insufficient to state a claim." *See* D.E. 11, p. 15. However, the case cited to by Cohen is inapplicable because it refers to a legal malpractice claim as opposed to a breach of fiduciary duty claim. *See Hays v. Page Perry, LLC*, 627 F. App'x 892, 896 (11th Cir. 2015) ("Hays's complaint fails to state an allegation of legal malpractice by Page Perry, Parker, Terry, or MacIntyre that is plausible on its face"). Florida law is clear that "the mere inclusion of the duty of confidentiality in the Rules of Professional Responsibility does not prevent the breach of this duty from being enforced as a tort." *Elkind v. Bennett*, 958 So. 2d 1088, 1092 (Fla. 4th DCA 2007). In addition, reliance on that case displays a disregard for the specific allegations in the Complaint.

> b.  *Plaintiff is Not Required to Allege "But-for" Causation And Has, Indeed, Alleged That He Suffered Harm As A Result of Cohen's Conduct.*

Next, Cohen contends that New York law requires a "but for" causation allegation as part of a breach of fiduciary claim.  *See* D.E. 11, pp. 16-17. As noted above, Florida law governs (and Florida imposes no such "but for requirement to allege a breach of fiduciary duty claim).  Standing

alone, that is sufficient grounds to disregard this argument. In support of his argument, Cohen cites to a singular New York case to argue that there is an elevated requirement of causation which mirrors the causation requirement in a legal malpractice claim. *See Ullico Cas. Co.*, 56 A.D.3d 1, 10-11 (N.Y. 1st Dept. 2008). Nevertheless, even assuming *arguendo* that New York law were to apply, Plaintiff's Complaint alleges what is necessary. As Cohen recognizes in his Motion to Dismiss, Plaintiff has alleged that "Defendant's breaches directly caused Plaintiff's damages" and has also alleged that "[i]n addition, due to the egregious and deliberate nature of Defendant's wrongdoing, the outrageous and wide-spanning nature of his breach of attorney-client privilege, and his conscious and wanton disregard for Plaintiff's rights as a client and/or former client, Plaintiff is entitled to an award of punitive damages."  *See* D.E. 1, ¶¶134, 137. Nothing further is required to be alleged to meet the purported "but for" causation pleading requirement necessary to allege that Cohen violated nis fiduciary duties to Plaintiff.

Finally, Cohen contends that Plaintiff has failed to allege that he suffered harm resulting from Cohen's breach of fiduciary duty.  The Complaint makes clear that Cohen's contention is simply wrong. *See* D.E. 1, ¶¶6, 10, 108, 129, 134-138.

## C.      Count II Properly Alleges a Claim for Breach of Contract.

### 1.      *Applicable Law.*

"Florida enforces choice-of-law provisions unless the law of the chosen forum contravenes strong public policy." *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.,* 761 So.2d 306, 311 (Fla. 2000). Here, the Confidentiality Agreement contains a choice-of-law provision which designates New York law as the applicable law.

14

2.      *The Breach of Contract Claim is Sufficiently Pled.*

"The elements of a breach of contract claim under New York law are well established: 'to recover from a defendant for breach of contract, a plaintiff must prove, by a preponderance of the evidence, (1) the existence of a contract between [herself] and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach.'" *Grewal v. Cuneo Gilbert & LaDuca LLP*, 2018 WL 4682013, at *4 (S.D.N.Y. Sept. 28, 2018), *aff'd*, 803 F. App'x 457 (2d Cir. 2020) (*quoting Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011)). "A plaintiff's claim should not be dismissed if [he] has an arguable claim under the contract." *See Lamoureux v. Trustco Bank*, 592 F. Supp. 3d 14, 27 (N.D.N.Y. 2022).

In his Motion to Dismiss, Cohen complains that Plaintiff does not attach the Confidentiality Agreement to his Complaint. Plaintiff's declining to attach a copy of the contract to his Complaint is of no consequence. *See Malmsteen v. Berdon, LLP*, 477 F. Supp. 2d 655, 666 (S.D.N.Y. 2007) (pursuant to New York law, attaching a contract to a complaint is not necessary so long as (1) Plaintiff discloses sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about, (2) whether there is a legal basis for recovery, and (3) properly alleges the explicit terms of the contract upon which plaintiff wishes to base a breach of contract claim); *Boca Raton Sailing v. Scottsdale Ins. Co.*, 2019 WL 7904805, at *2 (S.D. Fla. Mar. 18, 2019) ("[Plaintiff] need not attach a disputed contract to a complaint in order to survive a motion to dismiss."); *Mirabal v. Bank of Am. Corp.*, 2015 WL 12817702, at *2 (S.D. Fla. Oct. 1, 2015) ("Plaintiff need not attach a copy of the contract in federal court."). In addition, Cohen reverts to his penchant in raising issues (and referencing external sources) that are outside the four corners of the Complaint, which are expressly prohibited in a motion to dismiss.

15

Plaintiff is only required to allege sufficient factual matter to allow this Court to draw a reasonable inference that [Cohen] is ***plausibly liable for a breach of contract***; Plaintiff has done so here. See *Ashcroft*, 556 U.S. at 678. The instant Complaint expressly alleges that Cohen signed a confidentiality agreement entitled "Employee Agreement of Confidentiality" (the "Confidentiality Agreement"). *See* D.E. 1, ¶61. Second, the Complaint claims that pursuant to that Confidentiality Agreement, Cohen "agree[d] not to directly or indirectly disseminate, or publish, or cause to be disseminated or published any Confidential Information in any form, including but not limited to any diary, memoir, book, letter, story, speech, photography, interview, article, essay, account, description or depiction of any kind whatsoever, whether fictionalized or not." *Id.* at ¶ 62. Third, the Complaint states that:

> Defendant committed multiple material breaches of the Confidentiality Agreement by, among other acts, causing the Books to be published and releasing the Podcast, thereby disclosing actual information and/or disclosing misleading, fabricated, or fictionalized information about Plaintiff, his personal life, his business affairs, and his attorney-client relationship, without prior authorization or consent from Plaintiff.

*Id.* at ¶ 143.

Fourth, the Complaint alleges that "[a]s a direct and proximate result of Cohen's breach of the Confidentiality Agreement, Plaintiff has sustained, and will continue to sustain, significant damages in an amount to be determined at trial, including, but not limited to, actual, compensatory, and incidental damages, plus interest and the costs of this action." *Id.* at ¶ 144. These allegations are sufficient to survive Cohen's Motion to Dismiss. Plaintiff's Complaint allows this Court to draw a reasonable inference that Cohen is plausibly liable for a breach of contract, both under Florida law and New York law, and Cohen's argument that the breach of contract claim must be

dismissed as "too conclusory and vague to identify a plausible material breach" is dispelled by the plain allegations in the Complaint.

> 3. _Cohen Raises a Series of Fact-Specific Arguments Which Plainly Are Not Appropriately Resolved Through a Motion to Dismiss_

In addition to his Rule 12(b)(6) argument (which is addressed above), Cohen then raises a host of arguments that he and his counsel plainly know cannot be addressed through a motion to dismiss. By way of example, Cohen contends that the Confidentiality Agreement is not reasonable in time or scope.  _See_ D.E. 11, p. 23.  It is well settled that this argument is not an appropriate basis to seek dismissal under Rule 12(b)(6). _See, e.g., TrueSource, LLC v. Niemeyer_, 2021 WL 9507721, at *3 (E.D.N.Y. Jan. 21, 2021) (denying a motion to dismiss for a breach of contract claim because "the reasonable length and geographic scope of a restrictive covenant is a fact dependent inquiry that rarely, if ever, can be decided as a matter of law"); _Liberty Mut. Ins. Co. v. Guereschi_, 2020 WL 1307315, *4 (W.D.N.Y. Mar. 19, 2020) (whether non-compete agreement is unenforceable under New York law "not properly considered" on a motion to dismiss)_; Advance 2000, Inc. v. Harwick_, 2019 WL 6725977, *5-6 (W.D.N.Y. Dec. 11, 2019) ("reasonableness, and therefore the enforceability, of Defendants' noncompete provisions must be decided after an 'intensely fact-based' inquiry."); _Installed Bldg. Prod., LLC, v. Cottrell_, 2014 WL 3729369, *7 (W.D.N.Y. July 25, 2014) ("the Court cannot hold at [motion to dismiss stage] that the non-compete at issue is unenforceable"); _Nostrum Pharm., LLC v. Dixit_, 2014 WL 4370695, at *6-7 (S.D.N.Y. Sept. 2, 2014) (denying motion to dismiss breach of three-year non-compete agreement because resolution of enforceability was "intensely fact-based" and "not one that lends itself to resolution on a motion to dismiss."); _SD Prot., Inc. v. Del Rio_, 498 F. Supp. 2d 576, 585 (E.D.N.Y. 2007) (holding, on a motion to dismiss, that without "specific facts" having been developed through discovery, it would

be "premature" to determine whether a restrictive covenant was reasonable under the circumstances).

Much like the above cases noted, the cases "which Defendant relies upon were decided in the context of a preliminary injunction, summary judgment, or at trial." *Id.* [internal citations omitted]. Indeed, the primary case that Cohen relies upon throughout his motion, *Denson v. Donald J. Trump for President, Inc.*, 530 F. Supp. 3d 412 (S.D.N.Y. 2021) was resolved through a motion for summary judgment.[7]

Similarly, Cohen also argues that the Confidentiality Agreement: (a) does not serve a legitimate business interest[8], (b) violates public policy, (c) is unreasonably burdensome, (d) is unenforceable, and (e) cannot be modified through "blue-penciling." *See* D.E. 11, pp. 24-28. Not surprisingly, Cohen does not cite to a single decision where similar arguments were raised and the court ultimately dismissed a breach of contract as a result such arguments.[9] The reason for that is simple – these arguments involve factual inquiries which cannot be made at this stage of the proceedings. It stands to reason that Cohen, even as a disbarred attorney, and his counsel know this, yet elected to raise these arguments nevertheless for reasons that only they can explain.

---

[7]     The *Denson* case can also be easily distinguished given that the employee in *Denson* was a national phone bank administrator while the employee in the instant case is an attorney.

[8]     Cohen's argument as to the absence of legitimate business interests alleged in the Complaint is belied by the plain allegations of the Complaint.  *See* D.E. 1, ¶¶83-87, 90, 109, 111, 115-117.

[9]     The only instance where Cohen cites to a decision that dismissed an action through a motion to dismiss, *Cambridge Capital LLC v. Ruby Has LLC*, 565 F.Supp.3d 420, 470-71 (S.D.N.Y. 2021), is relied upon by Cohen to support his procedurally improper "blue-pencil" argument. Moreover, the *Ruby Has* decision makes clear that the Court dismissed the breach of contract claim given that "a meeting of the minds on any of the material terms of an agreement" were alleged.  *Id.* As such, this decision does not impact the determination that Plaintiff is asking this Court to make – that Cohen's arguments in support of his motion to dismiss the breach of contract are not supported by existing law.

Putting aside the procedural impropriety of raising these arguments at this time, the arguments are likewise substantively devoid of merit – as will be demonstrated during the appropriate time during this litigation.

### 4.      *Cohen's Standing Argument Is Equally Unavailing.*

Next, Cohen contends that Plaintiff does not possess standing to enforce the Confidentiality Agreement.  *See* D.E. 11, p. 29. This argument is in conflict with the stated grounds for dismissal under Rule 12(b)(6) in Cohen's Motion given that, "while a challenge to a litigant's standing may sometimes be raised on a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), *such challenges are more-often properly raised on a motion for lack of subject-matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1)*." *Hilton v. Deutsch Bank Nat. Tr. Co.*, 2015 WL 5335772, at *8 (N.D.N.Y. Sept. 14, 2015) (emphasis added). "The distinction is important because a typical dismissal under Rule 12(b)(6), i.e., for failure to state a claim, is an adjudication on the merits with preclusive effect." *All. For Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89 (2d Cir. 2006); *see also Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n. 3 (1981); *see also Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir.1996). "Presenting and considering a challenge to lack of Article III standing under Rule 12(b)(1) avoids the needs to fashion a modified approach to a Rule 12(b)(6) motion that concerns standing." *Pyramid Crossgates Co.*, 436 F.3d at 89 (*quoting Rent Stabilization Ass'n of City of New York v. Dinkins*, 5 F.3d 591, 594 & n. 2 (2d Cir.1993)). Here, Cohen's Motion to Dismiss clearly indicates that Cohen is bringing a Rule 12(b)(6) motion to dismiss as opposed to a 12(b)(1) motion to dismiss and, thus, he has not properly raised his standing challenge. *See* Motion to Dismiss [DE 11], p. 7

Nevertheless, to the extent that the Court elects to construe Cohen's standing argument as one brought under Rule 12(b)(1), the "allegations [in the Complaint] are taken as true and

construed in a light most favorable to the complainant. *Hart v. Town of Guilderland*, 2020 WL 4500699, at *2 (N.D.N.Y. Aug. 5, 2020). Those allegations demonstrate that standing exists and that the attempt to dismiss this claim on this basis should be denied.

Under well settled law, "[t]o establish Article III standing, 'a plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Glob. Network Commc'ns, Inc. v. City of New York*, 2008 WL 215892, at *3 (S.D.N.Y. Jan. 22, 2008) (*citing Raines v. Byrd*, 521 U.S. 811, 818-19 (1997) (*quoting Allen v. Wright*, 468 U.S. 737, 751 (1984)). More specifically, constitutional standing requires: (1) that the plaintiff suffered an injury in fact—an invasion of a legally protected interest, which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotations omitted).

As alleged in the Complaint:

141.    Defendant, at all relevant times, has been bound by the confidentiality and non-disclosure obligations set forth in the Confidentiality Agreement.

142.    Defendant materially breached the Confidentiality Agreement by disclosing confidential information, misstatements, and misrepresentations likely to be embarrassing or detrimental to Plaintiff without Plaintiff's consent.

143.    Specifically, Defendant committed multiple material breaches of the Confidentiality Agreement by, among other acts, causing the Books to be published and releasing the Podcast, thereby disclosing actual information and/or disclosing misleading, fabricated, or fictionalized information about Plaintiff, his personal life, his business affairs, and his attorney-client relationship, without prior authorization or consent from Plaintiff.

144. As a direct and proximate result of Defendant's breach of the Confidentiality Agreement, Plaintiff has sustained, and will continue to sustain, significant

damages in an amount to be determined at trial, including, but not limited to, actual, compensatory, and incidental damages, plus interests and the costs of this action.

*See* D.E. 1, ¶¶141-144.

These allegations meet the requirements necessary to establish Article III standing. To the extent that Cohen seeks to inject another fact-specific, and unavailing, argument as to whether the fact that he signed the Confidentiality Agreement in order to be employed by The Trump Organization somehow impacts whether Plaintiff can allege a claim for breach of the Confidentiality Agreement, Cohen's motion to dismiss is not the appropriate vehicle for such an unsupported argument. More importantly, Cohen's argument simply ignores what is alleged in paragraphs 1 and 3 of the Complaint, which clearly state that "[t]his is an action arising from Defendant's multiple… breaches of contract *by virtue of Defendant's past service as Plaintiff's employee and attorney*[,]" and "Defendant breached the contractual terms *of the confidentiality agreement he signed as a condition of employment with Plaintiff*…." *See* D.E. 1, ¶¶1, 3 [emphasis added].

5.     *Cohen's Arguments Are Revealing*

In footnote 20 of his Motion to Dismiss, Cohen contends that his attorneys asked three times after the Complaint was filed that he be provided with a copy of the Confidentiality Agreement and that "in the increasingly likely event that it does not exist, Mr. Cohen will exercise all rights and remedies available to him." *See* D.E. 11, p. 20, n. 20. This contention is plainly not appropriate for a motion to dismiss, yet it warrants a brief response. In arguing that he requested the production of discovery documents prior to the commencement of discovery, Cohen is apparently laying the foundation for his contention that he either did not sign the Confidentiality Agreement or does not possess the Confidentiality Agreement, both of which are fanciful arguments. Cohen, as the former attorney for Plaintiff, is clearly well aware that he signed such a

Confidentiality Agreement (as did others). It further strains credulity to suggest that Cohen does not possess the Confidentiality Agreement (as does his contention that, since his receipt of the April, 2020 cease and desist letter, he never received the Confidentiality Agreement which was the subject to the letter). To the extent that Plaintiff does not elect to participate in Cohen's charade by not responding to Cohen's request for a document that he knows he signed and he likely possesses, this should not be the subject of further discussion. As alleged in the Complaint, and as will be demonstrated in discovery (through proper discovery channels), Cohen signed the Confidentiality Agreement. *See* D.E. ¶¶ 3, 61, 140.

In contrast to his passing attack on Plaintiff in footnote 20, Cohen dedicates ten (10) pages of his Motion articulating specific, detailed (albeit unavailing) reasons as to why he believes that the Confidentiality Agreement, which he claims not to possess, is not enforceable. When juxtaposed with the arguments raised in pages 20 through 30 of the motion to dismiss, footnote 20 is revealed to be highly disingenuous.

For the reasons contained herein, Cohen's Motion to Dismiss Count II should be denied.

### D.    Count III Is Not Duplicative of Count II.

Count III alleges a claim for breach of the implied covenant of good faith and fair dealing. "Under New York law, the covenant of good faith and fair dealing is implied in all contracts." *Kingsland v. Xerox Corp.*, 829 F. Supp. 2d 194, 200 (W.D.N.Y. 2011); *see also 511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153, 746 N.Y.S.2d 131, 773 N.E.2d 496 (2002). In interpreting New York law, the Supreme Court of New York has held that "[i]t is axiomatic that a claim for breach of the covenant of good faith and fair dealing cannot survive absent a valid breach of contract claim[.]" *Richstone v. Everbank Reverse Mortg. LLC*, 27 Misc. 3d 1201(A), 910 N.Y.S.2d 408 (Sup. Ct. 2009). New York law "implies a covenant of good faith

and fair dealing, pursuant to which neither party to a contract shall do anything which has the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Semper v. New York Methodist Hosp.*, 786 F. Supp. 2d 566, 584 (E.D.N.Y. 2011) (*quoting Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir.2006) (internal quotation marks and citation omitted)). "The implied covenant" is a limited, gap-filling cause of action; it "will only aid and further the explicit terms of the agreement." *Waxman v. Cliffs Nat. Res. Inc.*, 222 F. Supp. 3d 281, 295 (S.D.N.Y. 2016) (*quoting In re Solutia, Inc.*, 2007 WL 1302609, at *10 (Bankr. S.D.N.Y. May 1, 2007)). It does not permit a "court to create contract terms that the parties have not negotiated for." *Id.*

Cohen contends that Count III should be dismissed because it is duplicative of Count II. In making this argument, Cohen misapprehends the nature of the allegations in Count III, which are based on acts engaged in by Cohen in the manner that he performed his contractual obligations, which differs from Plaintiff's breach of contract claim.  "[T]o simultaneously plead breach of contract and implied covenant claims under New York law, a plaintiff must allege an implied duty that is consistent with the express contractual terms but base its implied covenant theory on allegations that are distinct from the factual predicate for its contract claims." *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, 2009 WL 321222, at *5 (S.D.N.Y. Feb. 9, 2009). "While independent obligations beyond those stated in the contract will not be inferred, a plaintiff adequately states an implied covenant claim by alleging conduct that subverts the contract's purpose without violating its express terms." *Id*.

Count II alleges the breach of the Confidentiality Agreement. In Count III, Plaintiff alleges that "Defendant was obligated to refrain from engaging in any conduct that would destroy or injure Plaintiff's rights to the benefit of the Confidentiality Agreement, including each and every material

provision contained therein," which relates to the manner in which Cohen was obligated to carry out his obligations under the Confidentiality Agreement. These allegations are sufficient to plead a claim for breach of the implied covenant of good faith and fair dealing, which should not be dismissed.

       **E.**       **The Unjust Enrichment Claim Has Been Properly Alleged.**

       In response to Count IV, which alleges a claim for unjust enrichment, Cohen contends that Plaintiff has not alleged the elements of such a claim under Florida or New York law. *See* D.E. 11, p. 31. The Complaint demonstrates otherwise. In the motion, Cohen contends that the Complaint does not allege that Plaintiff "conferred any benefit on Mr. Cohen that Mr. Cohen accepted and retained through his publication of the Books or the Podcast." *Id.* In making this argument, Cohen injects elements into the applicable standard that are not otherwise supported by existing caselaw. Namely, the claim only requires that an allegation that a benefit was conferred and accepted.  It does not, despite Cohen's attempts to the contrary, require an allegation that the benefit was intended used for any particular purpose, *i.e.,*, "through his publication of the Books or the Podcast." The Complaint is replete with allegations of the benefits that were conferred to Cohen and which he retained as a result of the role he played, and the information he was exposed to, when working for Plaintiff.[10] *See, e.g.,* D.E. 1, ¶¶ 13, 20, 21, 66-68, 74, 78-80, 83-87. Indeed, the purpose of Cohen's book, the aptly named *Disloyal*, "was to share a purported non-public insider's account of Plaintiff that would breach both his fiduciary duties and those he assumed under the Confidentiality Agreement: access to 'the real real Donald Trump— the man very, very, very few people know.'" D.E., ¶77.

---

[10]      The issue of whether Cohen accurately or truthfully represented what information he was privy to is for another day.

Cohen further contends that Plaintiff fails to allege "any inequity that would result if Mr. Cohen did not pay Mr. Trump for the alleged value of conferring this nonexistent benefit." D.E. 11, pp. 31-32. To put this in context, Cohen is contending that he, as an attorney, did not receive a benefit from representing Donald Trump over numerous years and that his unauthorized disclosure of confidential information gained during that relationship is in no way inequitable or improper, despite his ethical obligations as a former attorney and a party to a Confidentiality Agreement.[11] This argument is beyond fanciful and should be summarily rejected. Despite Cohen's arguments to the contrary, the Complaint alleges that Cohen was conferred substantial benefits during his representation of the Plaintiff and utilized such benefits for purposes of obtaining selfish, financial profit at the expense of Plaintiff. Such conduct is highly inequitable and constitutes unjust enrichment.

**F.      Plaintiff Submits that the Conversion Claim Should Survive.**

Cohen contends that the conversion claim is time-barred. "A Rule 12(b)(6) motion to dismiss "on statute of limitations grounds is appropriate only if it is 'apparent from the face of the complaint' that the claim is time-barred." *Tello v. Dean Witter Reynolds. Inc.*, 410 F.3d 1275, 1288 (11th Cir. 2005) (*quoting LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004)). Rather than refer to a particular allegation in the Complaint that would support his argument that Count V is time-barred, he refers to his own book (without any hint of irony). Despite the references to Cohen's book in the Complaint, it stands to reason, given the nature of the claims against Cohen, that he mispresented information in the book, Plaintiff submits that Cohen is not

---

[11]      *See* D.E. 1, ¶153 ("Defendant callously disregarded the fiduciary duties owed to his former client, Plaintiff, and, in addition, intentionally and blatantly breached the clear and unambiguous terms of the Confidentiality Agreement.")

the proper authority and the book is not a proper resource for this Court to rely upon in rendering a determination as to when Cohen committed an unlawful act.

The second argument raised by Cohen, *i.e.*, that the property that he converted is property belonging to the Trump Organization and not Plaintiff, is not properly raised in a motion to dismiss given the factual nature of such an argument. The third argument raised, which is that no demand was made on Cohen to return the property that he converted, is clearly contravened by the fact that "demand and refusal are not necessary where a defendants' original possession of the funds was unlawful." *Pearson v. Deutsche Bank AG,* 2023 WL 2610271, *23, n. 18 (S.D. Fla. Mar. 23, 2023) (*citing Mullenmaster v. Newbern*, 679 So. 2d 1186, 1887 (Fla. 4th DCA 1996) (concluding that demand was not required for conversion claim where defendants' original possession of the disputed funds was unlawful)). As alleged in the Complaint, "Defendant fraudulently misrepresented the amount owed to him for reimbursement and converted $74,000 in funds to which he was not entitled." *See* D.E. 1, ¶165. Stated another way, Cohen's possession of the disputed funds was unlawful and, thus, no demand is required under Florida law.

As such, Count V should not be dismissed.

**G.    Request For Leave to Amend.**

Assuming, *arguendo*, that this Court may consider granting any part of Cohen's Motion to Dismiss, Plaintiff respectfully requests leave to amend the Complaint to provide further particularized allegations of fact supportive of Plaintiff's claims (or standing). *Thompson v. County of Franklin*, 15 F.3d 245, 249 (2d Cir.1994) (*quoting Warth v. Seldin*, 422 U.S. 490, 518 (1975)) (When analyzing a standing question under Rule 12(b)(1) or 12(b)(6), "it is within the district court's power to allow ... the plaintiff to supply, by amendment to the complaint or affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing).

III.    <u>**CONCLUSION**</u>

     **WHEREFORE**, Plaintiff respectfully requests that the Court deny Defendant's Motion to

Dismiss in its entirety. To the extent that the Court grants any portion of the Motion to Dismiss,

Plaintiff respectfully requests leave to amend.

Dated:  June 5, 2023                Respectfully submitted,
                                   **BRITO, PLLC**
                                   *Counsel for Plaintiff*
                                   2121 Ponce de Leon Boulevard
                                   Suite 650
                                   Coral Gables, FL 33134
                                   Office:  305-614-4071
                                   Fax:  305-440-4385

                               By: <u>/s/ *Alejandro Brito*</u>
                                   **ALEJANDRO BRITO**
                                   Florida Bar No. 098442
                                   Primary: abrito@britopllc.com
                                   Secondary: apiriou@britopllc.com

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on June 5, 2023 the foregoing was served via the Court's

CM/ECF System upon:

Benjamin H. Brodsky, Esq.
Max Eichenblatt, Esq.
Brodsky, Fotiu-Wojtowicz, PLLC
200 SE 1st Street, Suite 400
Miami, Florida 33131
bbrodsky@bfwlegal.com
max@bfwlegal.com
docketing@bfwlegal.com

*Counsel for Defendant*

Danya Perry, Esq. *(Pro Hac Vice)*
E. Danya Perry, PLLC
157 East 86th Street
4th Floor
New York, NY 10028
Dperry@danyaperrylaw.com

*Counsel for Defendant*

By: <u>*/s/ Alejandro Brito*</u>