```
 1                  UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
 2                   CASE NO. 23-CV-21377-DPG

 3

 4   PRESIDENT DONALD J. TRUMP,          )   Pages 1-66
                                         )
 5                    Plaintiff,         )   Miami, Florida
                                         )
 6            vs.                        )
                                         )   July 20, 2023
 7   MICHAEL D. COHEN,                   )

 8                    Defendant.

 9
                   TRANSCRIPT OF DISCOVERY HEARING
10            BEFORE THE HONORABLE EDWIN G. TORRES
                     U.S. MAGISTRATE JUDGE
11

12   APPEARANCES:

13   For the Plaintiff:      ALEJANDRO BRITO, ESQ.
                             Brito, PLLC
14                           2121 Ponce de Leon Boulevard
                             Suite 650
15                           Coral Gables, Florida  33134

16   For the Defendant:      BENJAMIN HENRY BRODSKY, ESQ.
                             MAX AARON EICHENBLATT, ESQ.
17                           Brodsky Fotiu-Wojtowicz, PLLC
                             200 SE 1st Street
18                           Suite 400
                             Miami, Florida  33131
19

20

21

22

23

24

25
```

PROCEEDINGS RECORDED BY COURTROOM DIGITAL RECORDER

```
 1    For the Defendant
      telephonically:            E. DANYA PERRY, ESQ.
 2                               E. Danya Perry PLLC
                                 157 East 86th Street
 3                               4th Floor
                                 New York, New York  10028
 4
                                 LILIAN MARGARITA TIMMERMANN, ESQ.
 5                               E. Danya Perry PLLC DBA Perry Law
                                 700 South Rosemary Street
 6                               Suite 204
                                 West Palm Beach, Florida  33401
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22    Transcribed By:           VERNITA ALLEN-WILLIAMS
      Vernita_Allen-Williams    Official Court Reporter
23    @flsd.uscourts.gov        United States District Court
      305.523.5048              400 North Miami Avenue
24                              Miami, Florida  33128

25
```

12:24PM

PROCEEDINGS RECORDED BY COURTROOM DIGITAL RECORDER

| | | |
|---|---|---|
| 12:24PM | 1 | THE COURTROOM DEPUTY:  The United States District Court |
| 12:24PM | 2 | for the Southern District of Florida is now in session.  The |
| 12:24PM | 3 | Honorable Chief Magistrate Judge Edwin G. Torres presiding. |
| 12:24PM | 4 | Calling case President Donald J. Trump vs. Michael D. |
| 12:24PM | 5 | Cohen, Case No. 23-CV-21377-Judge Gayes. |
| 12:24PM | 6 | Counsel, please state your appearances for the record, |
| 12:24PM | 7 | starting with the plaintiff. |
| 12:24PM | 8 | MR. BRITO:  Good afternoon, Your Honor.  Alejandro Brito |
| 12:24PM | 9 | on behalf of plaintiff. |
| 12:24PM | 10 | THE COURT:  Good afternoon. |
| 12:24PM | 11 | MR. BRITO:  And, Your Honor, if I may, I have two interns |
| 12:24PM | 12 | that wanted to come in.  I just wanted to introduce them to the |
| 12:24PM | 13 | court:  Emily Garcia and Brianna Bartoo (phonetic). |
| 12:24PM | 14 | THE COURT:  Welcome.  Thank you. |
| 12:24PM | 15 | MR. BRODSKY:  Good afternoon, Your Honor.  Ben Brodsky on |
| 12:24PM | 16 | behalf of the defendant.  And with me today is Max Eichenblatt |
| 12:25PM | 17 | from my firm. |
| 12:25PM | 18 | THE COURT:  Good afternoon.  Everybody, have a seat.  And |
| 12:25PM | 19 | I believe we have somebody on the phone.  Who's on the phone? |
| 12:25PM | 20 | MS. PERRY:  Good afternoon, Your Honor.  This is Danya |
| 12:25PM | 21 | Perry, from Perry Law in Manhattan.  And with me is my colleague |
| 12:25PM | 22 | Lilian Timmermann. |
| 12:25PM | 23 | THE COURT:  Very good.  Good afternoon to you. |
| 12:25PM | 24 | Okay.  This is a discovery hearing in the case, I believe |
| 12:25PM | 25 | requested by the defendant; correct? |

12:25PM  1          MR. BRODSKY:  I believe it was plaintiff that filed the

12:25PM  2   motion.

12:25PM  3          MR. BRITO:  It was.

12:25PM  4          THE COURT:  Oh, I'm sorry.  Hold on.  Let me pull up your

12:25PM  5   materials.  Hold on.  Hold on.  Everything's all Willshire

12:25PM  6   (phonetic) in my folder right now.

12:25PM  7          Okay.  Okay.  Go ahead, Mr. Brito.

12:26PM  8          MR. BRITO:  Thank you, Your Honor.  May I proceed sitting

12:26PM  9   down?

12:26PM  10          THE COURT:  Yeah, you can stay seated.

12:26PM  11          MR. BRITO:  Thank you, Your Honor.

12:26PM  12          Your Honor, it's a fairly narrow issue that we're here

12:26PM  13   before the Court on in relation to plaintiff's request for the

12:26PM  14   entry of a confidentiality and protective order.

12:26PM  15          By way of background, this is a dispute between Mr. Trump

12:26PM  16   and his former attorney Michael Cohen.  The claims, in a nutshell,

12:26PM  17   are that Mr. Cohen breached a written confidentiality agreement

12:26PM  18   that existed; and that in addition to breaching the

12:26PM  19   confidentialities that were exchanged during the employment

12:26PM  20   relationship, he also violated his attorney/client privilege by

12:26PM  21   disseminating information based upon the relationship between Mr.

12:26PM  22   Trump and Mr. Cohen.

12:26PM  23          Given the sensitivities of that case in and of itself, we

12:26PM  24   were hoping to enter into a confidentiality and protective order

12:26PM  25   with respect to the exchange of discovery materials.

| | | |
|---|---|---|
| 12:26PM | 1 | Heightening the necessity for the plaintiff to request |
| 12:26PM | 2 | that (unintelligible) is the identity of these parties.  And |
| 12:26PM | 3 | obviously if the two parties are media individuals, they are |
| 12:27PM | 4 | people who the press wants to know information about, it's our |
| 12:27PM | 5 | perspective that the defendant wants to conduct this discovery |
| 12:27PM | 6 | process openly, and we are opposed to that; hence the reason why |
| 12:27PM | 7 | we ask what we believe to be a relatively straightforward request |
| 12:27PM | 8 | for the entry of a confidentiality and protective order, the terms |
| 12:27PM | 9 | of which we -- we put to paper and transmitted it over to the |
| 12:27PM | 10 | defendant for consideration.  The defendant objects to the entry |
| 12:27PM | 11 | of such a confidentiality and protective order, which would |
| 12:27PM | 12 | essentially govern the discovery process, not only in terms of the |
| 12:27PM | 13 | documents and any testimony. |
| 12:27PM | 14 | I know I'm speaking to the Court about something that's |
| 12:27PM | 15 | relatively rudimentary and the Court deals with these with some |
| 12:27PM | 16 | regularity.  I don't want to belabor them all because Your Honor's |
| 12:27PM | 17 | written a couple of decisions that deal with it.  But essentially |
| 12:27PM | 18 | just from an overview, the cases that have come from the Southern |
| 12:27PM | 19 | District of Florida really discover -- or discuss, pardon me, the |
| 12:28PM | 20 | balance between the need for the public to have information |
| 12:28PM | 21 | relative to cases balanced against the interests of the parties; |
| 12:28PM | 22 | especially so when it relates to discovery because discovery |
| 12:28PM | 23 | materials, as Your Honor has ruled in a couple of decisions, those |
| 12:28PM | 24 | that we sent to the Court for consideration for purposes of this |
| 12:28PM | 25 | hearing, expressly provide that discovery materials are not for |

12:28PM   1   the public's consumption; and as a result, we would like the Court

12:28PM   2   to enter a confidentiality and protective order.

12:28PM   3           Underscoring even further the -- the reasons why we

12:28PM   4   believe it's -- it's more than appropriate to do so, putting aside

12:28PM   5   the issues, the facts of the case, the parties, is the fact that

12:28PM   6   there is an ongoing litigation that Mr. Cohen himself filed in

12:28PM   7   Supreme Court in New York against Mr. Trump with respect to the

12:28PM   8   payment of certain fees and identification agreements, so forth.

12:28PM   9           In that very litigation the parties entered into a

12:28PM  10   stipulation and an order for the production and exchange of

12:29PM  11   confidential information, essentially allowing for the designation

12:29PM  12   of both confidential and highly confidential documents, and -- and

12:29PM  13   designating them consistent with what we're asking the defendant,

12:29PM  14   Mr. Cohen, to agree to here, which he is not willing to do.

12:29PM  15           And so given the fact that the parties are already

12:29PM  16   proceeding, it would be standard and typical for a case such as

12:29PM  17   this, especially with the attention that could be drawn from it,

12:29PM  18   we would ask that the Court enter a -- or require the entry of a

12:29PM  19   confidentiality.

12:29PM  20           The final point, I don't want to talk about this simply

12:29PM  21   in a vacuum and -- and express concern about the possibility of

12:29PM  22   publicity over sensitive details.  The Court need look no further

12:29PM  23   than the document request that the defendant served upon the

12:29PM  24   plaintiff here, where they ask for 69 categories of documents,

12:29PM  25   which would include Mr. Trump's tax returns, his financial records

12:30PM    1   for him and his organizations, communications between him and his

12:30PM    2   wife, communications relating to Stephanie Clifford -- otherwise

12:30PM    3   known publicly as Stormy Daniels -- and as well as other matters

12:30PM    4   that relate to ongoing litigations that Mr. Trump is currently

12:30PM    5   dealing with right now; specifically with the attorney general for

12:30PM    6   the State of New York, as well as a criminal matter that is also

12:30PM    7   in play.

12:30PM    8          For all of those reasons, we think it's -- it's

12:30PM    9   abundantly proper to the entry of a confidentiality order.  And we

12:30PM   10   don't want to litigate this in the public.  This is not for

12:30PM   11   public's consumption, and it should be resolved in court by the

12:30PM   12   parties through a cloak of -- of confidentiality as it relates to

12:30PM   13   discovery.  Thank you, Your Honor.

12:30PM   14          THE COURT:  Now, in your discussions with defendant's

12:30PM   15   counsel, was the issue about any particular aspect of your draft;

12:30PM   16   or was it any aspect of your draft?

12:30PM   17          MR. BRITO:  It was a hard no.

12:30PM   18          THE COURT:  As to any part?

12:30PM   19          MR. BRITO:  It was simply:  We're not willing to enter

12:31PM   20   into that.  It's not that they agreed with or disagreed with

12:31PM   21   paragraph 4 or wanted to modify paragraph 7; they just were not

12:31PM   22   willing to enter into what we had proposed to them.

12:31PM   23          In the interest of candor, Judge, what I'd represent to

12:31PM   24   the Court with regard to the New York matter, I learned earlier

12:31PM   25   this week, I shared with counsel a couple of days ago I was aware

| | |
|---|---|
| 12:31PM | 1 | that the parties had entered into a similar agreement.  It's not |
| 12:31PM | 2 | included in your materials; hence the reason why I'm -- I want to |
| 12:31PM | 3 | be transparent with the Court. |
| 12:31PM | 4 | THE COURT:  And how does -- and how does the -- |
| 12:31PM | 5 | How did your proposed order reconcile with that one? |
| 12:31PM | 6 | MR. BRITO:  The only different -- and I have a copy of it |
| 12:31PM | 7 | here and I provided it to counsel -- the only material distinction |
| 12:32PM | 8 | that I have seen, and I really didn't do the line-by-line |
| 12:32PM | 9 | comparison -- but in the New York confidentiality there is a |
| 12:32PM | 10 | designation between confidential and highly confidential.  In the |
| 12:32PM | 11 | one that we propose, it's confidential and highly |
| 12:32PM | 12 | confidential/attorneys' eyes only. |
| 12:32PM | 13 | That -- that -- I did not find attorney's eyes only -- an |
| 12:32PM | 14 | attorney's eyes only designation in the New York version of the |
| 12:32PM | 15 | agreement, but it was proposed in what I had sent to counsel.  But |
| 12:32PM | 16 | we never really got into whether that's even objectionable or not; |
| 12:32PM | 17 | it was simply the concept was -- was not something they would have |
| 12:32PM | 18 | agreed to. |
| 12:32PM | 19 | THE COURT:  Okay.  Okay.  Well, let me take a broader |
| 12:32PM | 20 | question first, then we'll get into the mechanics of anything in |
| 12:32PM | 21 | particular in response. |
| 12:32PM | 22 | MR. BRODSKY:  Thank you, Your Honor.  May it please the |
| 12:32PM | 23 | Court. |
| 12:32PM | 24 | I want to start by noting that I have a slight |
| 12:32PM | 25 | disagreement with the characterization of the confidentiality |

12:32PM    1    order in the New York civil litigation.  In fact, it's not between

12:33PM    2    the parties to this case.  It's between Michael Cohen and Trump

12:33PM    3    Organization, LLC; not Mr. Trump individually.

12:33PM    4            And I would also note -- and also I'll circle back to

12:33PM    5    this shortly -- that the subject matter of Mr. Cohen's suit in the

12:33PM    6    New York State Court is a very narrow issue about unpaid legal

12:33PM    7    fees in contrast to this matter.

12:33PM    8            To Mr. Brito's point, this really is a unique situation.

12:33PM    9    And the question for the Court is:  Can a defendant who has been

12:33PM   10    accused of serious misconduct, had very inflammatory allegations

12:33PM   11    leveled against him in a publicly filed and publicized complaint

12:33PM   12    and sued for $500 million, which is the number stated in the

12:33PM   13    complaint, be restrained from speaking on the evidence that he

12:33PM   14    develops in his defense?

12:33PM   15            And can he be so retrained over his objection by the

12:34PM   16    plaintiff, Mr. Trump, who's a notorious litigant and perhaps the

12:34PM   17    most well-known person on the planet, who has invoked the Court's

12:34PM   18    jurisdiction, filed a very inflammatory lawsuit seeking

12:34PM   19    $500 million from my client, put it all out in the public eye, and

12:34PM   20    then make a request to have the entire civil proceedings sealed.

12:34PM   21            And of course against this backdrop, Mr. Cohen's

12:34PM   22    resistance to the objection and the plaintiff himself opening the

12:34PM   23    courthouse doors, is the enormous public interest in this dispute

12:35PM   24    and its subject matter, which is a matter of grave concern to the

12:35PM   25    United States of America and, frankly, the entire world.

12:35PM 1    Against that backdrop, we start with the law on

12:35PM 2  confidentiality of court proceedings.  It's the exception; not the

12:35PM 3  rule.  And we're not in a situation where, for example, a media

12:35PM 4  outlet is seeking access to information that the parties have

12:35PM 5  agreed will remain confidential.  To the contrary, one party who

12:35PM 6  has been involuntarily yanked into federal district court, is

12:35PM 7  being told that he must be muzzled in advocating and speaking on

12:35PM 8  the evidence he develops in his defense.

12:35PM 9    It is Mr. Trump's burden to show good cause.  He has not

12:35PM 10  done so here.  Your Honor's opinions on this issue cite the

12:35PM 11  Eleventh Circuit rule on good cause.  It's a balancing test

12:36PM 12  between a litigant's interest in maintaining the confidentiality

12:36PM 13  of certain information, compared to all the other interests that

12:36PM 14  are on the table; the public interest and the private interest of

12:36PM 15  the counterparty litigant.

12:36PM 16    So the first factor which Mr. Brito has not addressed, is

12:36PM 17  whether allowing access would import -- impair court functions or

12:36PM 18  harm legitimate privacy interests.  There has been no showing, not

12:36PM 19  in papers, not in the protective order that was submitted to the

12:36PM 20  Court, why court administration or Mr. Trump's legitimate privacy

12:36PM 21  interests justify putting a cloak of secrecy over these

12:37PM 22  proceedings.

12:37PM 23    Mr. Trump is not your average plaintiff.  He's the

12:37PM 24  subject of many civil proceedings currently under indictment in

12:37PM 25  two separate jurisdictions, and shortly may be indictment -- may

12:37PM 1  be under indictment in two more.  He is someone who has actively

12:37PM 2  sought out the public eye his entire adult life, and he has widely

12:37PM 3  publicized the subject matter of this lawsuit and it's well known.

12:37PM 4      The complaint cites 40-odd news articles in support of

12:37PM 5  its allegations; but it could have cited 4,000.  The public's

12:37PM 6  appetite and interest -- legitimately so -- in the subject matter

12:37PM 7  of this case is enormous; and Mr. Trump has not shown why, having

12:37PM 8  walked into court, he can now say "I want it all to be private."

12:37PM 9      The second factor is the degree of and likelihood of

12:37PM 10  injury if made public.  There is no one on earth perhaps whose

12:38PM 11  life is more public than Mr. Trump's.  He's been involved in, by a

12:38PM 12  recent count, over 4,000 lawsuits in his life; and other than

12:38PM 13  embarrassment, which is not a reason to seal these proceedings, he

12:38PM 14  has no colorable injury if this matter becomes public.  He's

12:38PM 15  already going to trial in a criminal prosecution on the very

12:38PM 16  subject matter of the allegations in this complaint in the State

12:38PM 17  of New York.

12:38PM 18      And, in fact, to that point, one of the major elements of

12:38PM 19  Mr. Trump's claim is that Michael Cohen breached his fiduciary

12:38PM 20  duty to him by disclosing information relating to Stormy Daniels.

12:38PM 21  The Stormy Daniels affair has been the subject of thousands of

12:38PM 22  news articles, prosecutions, and congressional hearings.  It's the

12:38PM 23  subject matter of a pending indictment.  And one may question the

12:38PM 24  wisdom of Mr. Trump coming to this court and filing a civil case

12:39PM 25  about the subject matter of his criminal indictment, but that's

12:39PM  1  not a good reason for him to seal off from the public view what he

12:39PM  2  says about that in support of his allegations that he voluntarily

12:39PM  3  and without coercion came before the Court raising.

12:39PM  4      The next factor goes to the reliability of information.

12:39PM  5  The information Mr. Trump seeks to protect is his own; the words

12:39PM  6  that come out of his mouth in deposition, the documents that he

12:39PM  7  produces from his own files.  He cannot complain that there's

12:39PM  8  going to be unreliable information out there as a result of this,

12:39PM  9  because it's his own information.

12:39PM  10     Whether there will be an opportunity to respond to the

12:39PM  11 information is another factor.  Mr. Trump has the biggest platform

12:39PM  12 on earth.  If he wants to respond to the allegations, that's his

12:39PM  13 prerogative; but he's no David against a Goliath.  He's not at

12:39PM  14 a -- at a disadvantage to rebut what he himself says.

12:40PM  15     And the last factor, Judge, is really the one that comes

12:40PM  16 into play here, which is whether the information concerns public

12:40PM  17 officials or public concerns.  This is not a working day dispute

12:40PM  18 between a lawyer and a client.  The former President of the United

12:40PM  19 States and the presumptive Republican presidential nominee, has

12:40PM  20 brought a lawsuit seeking $500 million in damages against somebody

12:40PM  21 who is likely to be a significant witness against him in the

12:40PM  22 pending criminal prosecution in the State of New York, and the

12:40PM  23 whole world is watching.

12:40PM  24     And not only has he brought this suit without coercion,

12:40PM  25 he has stated in allegations, facts -- if you were to believe them

12:40PM  1  to be true -- that go squarely to those issues.  He states in

12:40PM  2  paragraph 111:  Plaintiff relied -- with respect to the Stormy

12:40PM  3  Daniels matter:  Plaintiff relied on defendant's legal advice and

12:41PM  4  plaintiff acted out of a desire to protect his family from the

12:41PM  5  malicious and false claims made by Clifford.

12:41PM  6       The plaintiff could be our President again.  If he has

12:41PM  7  said in a public filing "I did this only to protect my family, it

12:41PM  8  has nothing to do with my presidential campaign that I was running

12:41PM  9  at the time, and I only did it because Michael Cohen told me to",

12:41PM  10  the public has a right to know whether that is true or false and

12:41PM  11  make that determination on its own.

12:41PM  12       As to the availablity of a less alternative to sealing

12:41PM  13  the documents, there are none.  If Mr. Trump did not want to

12:41PM  14  disclose his tax returns, he did not have to make a claim for

12:41PM  15  economic damages in this case.  But when a plaintiff makes an

12:41PM  16  allegation and seeks damages, the defendant has a right to know;

12:41PM  17  and in this case, the public has the right to know.  If he doesn't

12:42PM  18  want that, then he can withdraw his claim for economic damages or,

12:42PM  19  better yet, he can dismiss this lawsuit altogether.

12:42PM  20       But we're not in an arbitral forum.  We're sitting in a

12:42PM  21  public courtroom in the Southern District of Florida.  He made

12:42PM  22  this choice to be here.

12:42PM  23       Going back to the confidentiality stipulation, I would

12:42PM  24  point out that, again, this is between separate parties, about

12:42PM  25  separate matter, far different than the one at issue here, and it

12:42PM   1   was entered first nearly four years ago.  The world has changed a

12:42PM   2   lot in four years.  Many, many things have happened.

12:42PM   3           THE COURT:  And is it still in existence?  In other

12:42PM   4   words, is it still ongoing and enforceable?

12:42PM   5           MR. BRODSKY:  I believe the case is set to be tried

12:42PM   6   imminently.

12:42PM   7           THE COURT:  And -- and that's pending in the state court

12:42PM   8   in New York?

12:42PM   9           MR. BRODSKY:  Yes, Your Honor.

12:42PM  10           THE COURT:  Okay.

12:42PM  11           MR. BRODSKY:  So we -- we would ask Your Honor to reject

12:43PM  12   and deny the motion for a protective order since the discovery

12:43PM  13   here doesn't concern trade secrets, doesn't concern anything

12:43PM  14   that's of particular commercial value, other than protecting,

12:43PM  15   perhaps, Mr. Trump's political interests or his liberty interests,

12:43PM  16   that justify imposing a protective order.

12:43PM  17           THE COURT:  Now, following up on that point, the -- the

12:43PM  18   protective order at issue, the one that he circulated to you, does

12:43PM  19   it have --

12:43PM  20           My first question is:  Does it have language in there

12:43PM  21   that's broader than what is normally entered in a -- in a

12:43PM  22   commercial dispute?

12:43PM  23           And, No. 2:  Does it actually go as far as what you're

12:43PM  24   characterizing basically as -- as sealing the proceeding?

12:44PM  25           MR. BRODSKY:  Well, first of all, by virtue of filing --

12:44PM  1   by the ability to designate any discovery as confidential

12:44PM  2   effectively does, because it seals off the subject matter of the

12:44PM  3   dispute itself.  It goes further than your average confidentiality

12:44PM  4   order, because it has an attorney's eyes only provision, which

12:44PM  5   usually is reserved for instances where there are trade secrets

12:44PM  6   that are at issue; and if an opposing party got ahold of them,

12:44PM  7   then the cat would be out of the bag; not, you know, the situation

12:44PM  8   here.

12:44PM  9        But, you know, often parties to a commercial dispute will

12:44PM  10  not care if every document is marked confidential, because it's

12:44PM  11  not a matter of public concern and there's no great reputational

12:45PM  12  interests at risk like there are for my client.  But the -- the --

12:45PM  13  so, therefore, the proceedings effectively become sealed because

12:45PM  14  the parties don't care.  Here we do strongly care.

12:45PM  15       THE COURT:  Now, with respect to the -- well, I guess --

12:45PM  16  I guess it somewhat goes to the scope, but ordinarily one -- one

12:45PM  17  issue that comes out in a confidentiality or protective order is

12:45PM  18  putting aside the designation of materials vis-a-vis the parties;

12:45PM  19  right?  So to your point, the attorney's eyes only versus not,

12:45PM  20  putting that aside, the first question I have is:  Is there any

12:45PM  21  basis to not grant relief with respect to disclosing confidential

12:45PM  22  documents to third parties?

12:46PM  23       We're not talking testimony or anything like that; just

12:46PM  24  simply taking a document that's produced in discovery and being

12:46PM  25  able to give it to whoever you want, why is that not a reasonable

| | | |
|---|---|---|
| 12:46PM | 1 | request? |
| 12:46PM | 2 | MR. BRODSKY:  Well, because here Mr. Cohen wants to be |
| 12:46PM | 3 | able to do that and should be able to do that, because he has been |
| 12:46PM | 4 | accused and, frankly, slandered in this complaint across over 150 |
| 12:46PM | 5 | allegations, and there is nothing that's going to be confidential |
| 12:46PM | 6 | that's produced because the plaintiff has put it all at issue. |
| 12:46PM | 7 | We're not the plaintiff seeking to poke around at the edges of |
| 12:46PM | 8 | somebody's trade secret claim or patent infringement claim where, |
| 12:47PM | 9 | in addition to the issues, there may be a lot of sensitive |
| 12:47PM | 10 | business information that's disclosed that the plaintiff -- that |
| 12:47PM | 11 | the plaintiff should not be entitled to see.  We're the defendant. |
| 12:47PM | 12 | The plaintiff has come in and put all of this into the public |
| 12:47PM | 13 | record.  You know, there's not a legitimate claim that they want |
| 12:47PM | 14 | to maintain confidentiality over the subject matter of their |
| 12:47PM | 15 | allegations when they put it all in the public eye. |
| 12:47PM | 16 | THE COURT:  Okay.  And in -- well, I'm trying to envision |
| 12:47PM | 17 | -- well, let me ask you this question as a practical matter.  Your |
| 12:47PM | 18 | point in part is, of course, so much of what's at issue in this |
| 12:47PM | 19 | case is already public anyway, so even if you entered into a |
| 12:47PM | 20 | confidentiality order, it probably wouldn't satisfy the basis, the |
| 12:47PM | 21 | principle of the order; because if it's already public, then by |
| 12:47PM | 22 | definition it can't be confidential. |
| 12:47PM | 23 | MR. BRODSKY:  That's true. |
| 12:47PM | 24 | THE COURT:  But I suppose what -- what nonpublic |
| 12:48PM | 25 | information could come out in a case like this realistically? |

12:48PM  1      Obviously, tax returns.  But they've already been

12:48PM  2  publicized; right?  But what about, for example -- I'll give you

12:48PM  3  an example.  What about a private, you know, financial statements

12:48PM  4  of either -- either Mr. Trump or his -- his business, which would

12:48PM  5  not necessarily have been publicly disclosed; what if something

12:48PM  6  like that was something you requested in discovery.  Why couldn't

12:48PM  7  he maintain that confidential?

12:48PM  8      MR. BRODSKY:  Well, a couple of reasons.

12:48PM  9      One, I think that by putting it at issue, he has waived

12:48PM  10  his confidentiality.  He has said:  I've suffered an enormous --

12:48PM  11  hundreds of millions of dollars of damages, including economic

12:48PM  12  damages, so he's put it at issue.  He's not a defendant in a

12:48PM  13  punitive damages suit who doesn't want to turn over his personal

12:49PM  14  financial statements and have them publicized.  He has said:

12:49PM  15  These are my damages.  I have been harmed, so that's first and

12:49PM  16  foremost.

12:49PM  17      Second of all, even if you were to ascribe some interest

12:49PM  18  and privacy in that, query whether the President of the United

12:49PM  19  States -- you know, the former President and the presumptive

12:49PM  20  Republican nominee, even has such a privacy interest in his

12:49PM  21  personal financial information, the numerous other factors which

12:49PM  22  basically weigh down the scale in favor of disclosure say this is

12:49PM  23  a case where, in fact, it should not apply.

12:49PM  24      You know, this isn't Michael Cohen attempting to use the

12:50PM  25  federal judicial system for his advantage for a fishing

12:50PM  1  expedition.  I'm -- I'm certain he'd love if this case were

12:50PM  2  dismissed.  But at this point, having been accused and having this

12:50PM  3  huge damages threat hanging over his head, he frankly has -- I

12:50PM  4  believe he has the right to defend himself in the public eye.

12:50PM  5          THE COURT:  Now, let me ask you this question on that

12:50PM  6  point too.  Say that the Court entered a protective order that

12:50PM  7  precluded certain materials to be turned over and directly to a

12:50PM  8  third party, I mean let's say that was the extent of the order,

12:50PM  9  how would that prevent Mr. Cohen from doing what you just said he

12:50PM  10 wants to do?

12:50PM  11         MR. BRODSKY:  Your Honor, if you were to say, for

12:51PM  12 example, financial information, you know, without further order of

12:51PM  13 the Court would be -- could be marked confidential, I don't think

12:51PM  14 we would oppose that.

12:51PM  15         THE COURT:  All right.  All right.  So maybe the problem

12:51PM  16 is -- well, let me --

12:51PM  17         Actually before I get there, let me go back to you, Mr.

12:51PM  18 Brito, and have you respond to the broader point he is making;

12:51PM  19 which is in the nature of this case, unlike the average case  --

12:51PM  20 the average case being somebody sues for damages of a -- of a --

12:51PM  21 of a big-money defendant and then wants a whole slew of financial

12:51PM  22 discovery, and the big-money defendant is the one who's seeking a

12:51PM  23 confidentiality order because they didn't bring a lawsuit, number

12:52PM  24 one; and, number two, they have a lot of financial materials and

12:52PM  25 trade secret information that they don't want disclosed just

| | |
|---|---|
| 12:52PM | 1 |
| 12:52PM | 2 |
| 12:52PM | 3 |
| 12:52PM | 4 |
| 12:52PM | 5 |

because they've been sued.

And so his argument is that this is a different boat
because the plaintiff is raising a very public lawsuit, and then
it's the plaintiff who wants everything protected.

MR. BRITO:  I think we have to take into consideration:
What is the nature of this case?  This is not a competitor suing a
competitor.  This -- and I heard counsel's talk about the fact
that my client filed this suit without coercion.  I'm not sure
I've ever encountered a litigant who filed a lawsuit under
coercion.  I think litigants file a lawsuit because they feel they
have no other choice but to do so.  And in this instance, you have
a client -- I'm sorry.  I'm sorry -- you have a client suing his
former attorney for disclosing confidences.  That's the answer to
Your Honor's question in a nutshell, because it -- it really
belies the arguments that I heard from counsel with respect to:
Well, Mr. Trump voluntarily filed this lawsuit without coercion.
He did file this lawsuit against his former attorney for writing
books and -- and speaking to anyone who would listen on any forum
possible about the relationship that he had with his client and
information that was imparted to him by his client, in violation
not only of his ethical obligations but a written confidentiality
agreement.

He also agreed by virtue of the confidentiality agreement
that he signed when he started his relationship to maintain this
information confidential.  He violated that grossly by writing two

12:54PM  1   books, having podcasts, and -- and being on -- on every news

12:54PM  2   channel that would have him where he would disclose more and more

12:54PM  3   information that he was not entitled to do, and now he's coming

12:54PM  4   before the Court and asking the Court:  Allow me to continue to do

12:54PM  5   this, number one.

12:54PM  6       And number two:  Allow me to ask the plaintiff in this

12:55PM  7   case to divulge such things, Your Honor, as in the document

12:55PM  8   request -- because we're not dealing with this in a vacuum -- all

12:55PM  9   contract agreements or other documents from 2006 until the present

12:55PM  10  reflecting the existence of an attorney-client or employment

12:55PM  11  relationship between Mr. Cohen and Mr. Trump.

12:55PM  12      That is going to invite, if we read the letter of the

12:55PM  13  request, a production of a vast array of documents; not all of

12:55PM  14  which are public, not all of which are in the books, but would be

12:55PM  15  responsive as this -- this one request, and there are several that

12:55PM  16  are similar in breadth of what it is that's being asked of my

12:55PM  17  client.

12:55PM  18      They're -- they're turning this on its head, Your Honor,

12:55PM  19  with respect to the fact that the public has a concern over the

12:55PM  20  resolution of this dispute, and that Mr. Trump put this claim at

12:55PM  21  issue.  Your Honor, he did so; and the reason why he did so is

12:55PM  22  because there was a violation of the confidentiality that we're

12:56PM  23  simply seeking to maintain.  It's irrelevant to --

12:56PM  24      THE COURT:  The problem is -- the problem -- I hear what

12:56PM  25  you're saying.  The problem is that, you know, if he were seeking,

|         |    |                                                                      |
|---------|----|----------------------------------------------------------------------|
| 12:56PM | 1  | for example, an injunction that stopped him from violating, you       |
| 12:56PM | 2  | know, or talking to somebody or disclosing, then that -- that          |
| 12:56PM | 3  | would be one thing.                                                    |
| 12:56PM | 4  |         He's seeking money damages for the -- for what he              |
| 12:56PM | 5  | believes is a breach of fiduciary duty; right?                         |
| 12:56PM | 6  |         MR. BRITO:  Right.                                             |
| 12:56PM | 7  |         THE COURT:  And so -- and to some extent, from his             |
| 12:56PM | 8  | perspective, right, the damage was done when the disclosures were      |
| 12:56PM | 9  | made.  It's in the public domain.  So now even -- even in the          |
| 12:57PM | 10 | example that you just gave me, a document evidencing the existence     |
| 12:57PM | 11 | of a -- of a -- of an attorney-client relationship, right, in and      |
| 12:57PM | 12 | of itself, of course, that's not privileged; right?  Unless -- I       |
| 12:57PM | 13 | mean there's a lot of law that says a retainer agreement, for          |
| 12:57PM | 14 | instance, is not privileged.  And that's going to be an exhibit in     |
| 12:57PM | 15 | a case; correct?                                                       |
| 12:57PM | 16 |         MR. BRITO:  It -- well, there's not an engagement letter;      |
| 12:57PM | 17 | there's a confidentiality agreement and there's going to be            |
| 12:58PM | 18 | invoices and there's going to be a series of documents --              |
| 12:58PM | 19 |         THE COURT:  Right.                                             |
| 12:58PM | 20 |         MR. BRITO:  -- that will be exhibits.  I -- I'm not that       |
| 12:58PM | 21 | far down the road towards dealing with trial exhibits.                 |
| 12:58PM | 22 |         THE COURT:  Right.                                             |
| 12:58PM | 23 |         MR. BRITO:  I'm simply talking about discovery and             |
| 12:58PM | 24 | avoiding this from becoming -- and I don't mean this in a              |
| 12:58PM | 25 | disparaging way to anyone -- I don't want this to become a circus      |

| 12:58PM | 1 | from the standpoint of a -- a series of documents that would |
|---------|---|--|
| 12:58PM | 2 | reflect the -- the relationship; not necessarily the formation of |
| 12:58PM | 3 | it, as Your Honor is focusing on with regard to the engagement |
| 12:58PM | 4 | letter, but the existence of a relationship.  That could be |
| 12:59PM | 5 | broadly read by virtue of the definitions provided to discuss |
| 12:59PM | 6 | anything that was shared between attorney and client that may not |
| 12:59PM | 7 | have found its way onto a book, that may not have found its way |
| 12:59PM | 8 | onto a podcast that is not publicly disclosed.  They're not asking |
| 12:59PM | 9 | for simply "Give us documents relating to the claims."  They want |
| 12:59PM | 10 | to open up the entire relationship from 2006, 17 years of a |
| 12:59PM | 11 | relationship that they want to make public to the world, when it |
| 12:59PM | 12 | was, by its nature, it was a privileged relationship, it was an |
| 12:59PM | 13 | attorney-client relationship, it was a confidential employer |
| 12:59PM | 14 | relationship.  And we're just simply seeking to extend what Mr. |
| 01:00PM | 15 | Cohen signed; not only in his relationship with the plaintiff, Mr. |
| 01:00PM | 16 | Trump, but what he and his counsel agreed to in New York with |
| 01:00PM | 17 | respect to the Trump Organization.  We could dance on that head |
| 01:00PM | 18 | and try to make the distinction between Mr. Trump and the Trump |
| 01:00PM | 19 | Organization as being two different parties; but at the end of the |
| 01:00PM | 20 | day, Mr. Cohen remains the same.  Mr. Cohen agreed to have a |
| 01:00PM | 21 | confidential document in a case where he is the plaintiff.  In the |
| 01:00PM | 22 | New York action, he's the plaintiff, and in that case those |
| 01:00PM | 23 | documents are confidential, and he gets the benefit of that |
| 01:00PM | 24 | confidentiality, despite his role there. |
| 01:00PM | 25 | THE COURT:  Who is the one who wanted the confidentiality |

23

01:00PM
01:00PM
01:00PM
01:00PM
01:00PM
01:00PM
01:00PM
01:00PM
01:00PM
01:00PM
01:00PM
01:00PM
01:01PM
01:01PM
01:01PM
01:01PM
01:01PM
01:01PM
01:01PM
01:01PM
01:01PM
01:01PM
01:01PM
01:02PM
01:02PM

1    agreement in New York?  Do you know?

2             MR. BRITO:  I don't.

3             THE COURT:  You just found out about it.

4             MR. BRITO:  I just found out about it, but I did ask the

5    question:  Was it done over objection?  My understanding is it was

6    done by agreement of the parties.

7             THE COURT:  Okay.

8             MR. BRITO:  And so who was the initiator?  I can't speak

9    to that.  I can certainly find out.  But at the end of the day, it

10   was agreed to by Mr. Cohen and his attorneys, but yet now he

11   doesn't want to agree to it, but I think that's for reasons that

12   I -- I appreciate counsel's argument, but I don't think that's the

13   reason why Mr. Cohen really wants to publicize anything and

14   everything.  And I -- I understand what the Court's asking me

15   about in terms of:  Well, when we go to trial, how are we going to

16   deal with the logistics of documents that are being designated as

17   confidential? I'm not -- that's for another day.  I'm talking

18   about right now so that, number one, we can deal with not only the

19   document production, but the first thing that they asked us for

20   once we once we had our Rule 16 conference:  We want to take Mr.

21   Trump's deposition yesterday.  That's fine.  We'll -- we'll make

22   Mr. Trump available for deposition.  But for a variety of reasons,

23   it's not something that we want on TMZ or any other media network

24   and now all of a sudden that deposition is videotaped and

25   publicized when in no other has his deposition -- or in limited

01:02PM   1   instances have the depositions been made public because of the

01:02PM   2   nature of the subject matter.

01:02PM   3         It's fine that Mr. Trump is the former President of the

01:02PM   4   United States, it's fine that he is the presumptive candidate.

01:02PM   5   But what we're talking about is a client suing -- the client suing

01:02PM   6   his attorney for divulging information, and the attorney's

01:02PM   7   response to that is:  I want to reveal it all.

01:03PM   8         And counsel said that Mr. Trump is not your average

01:03PM   9   litigant.  I couldn't agree more.  I don't think anybody would

01:03PM  10   disagree with that statement.  And he is unique by virtue of his

01:03PM  11   standing, but that doesn't negate his right to privacy in

01:03PM  12   relationship to the statements he made to his counsel.  And the

01:03PM  13   fact that --

01:03PM  14         THE COURT:  Then why -- I hear what you're saying on

01:03PM  15   that, but I guess the other problem is that you have the legal

01:03PM  16   issue is whether there is good cause to do this; right?

01:03PM  17         MR. BRITO:  And I can go through the elements, but again,

01:03PM  18   I didn't want to belabor them because I know Your Honor has

01:03PM  19   authored enough to understand what those elements are.

01:03PM  20         THE COURT:  No, I hear you.  So there's that issue as to

01:03PM  21   whether the cause can be established in the case; but put that

01:03PM  22   aside for the moment.

01:03PM  23         I suppose one of the -- one of the points you're making

01:03PM  24   and one of the strongest arguments that you have is that given the

01:03PM  25   nature of the case, he's seeking essentially to enforce the

01:03PM  1  privilege that he was entitled to from his point of view.

01:03PM  2          MR. BRITO:  Correct.

01:03PM  3          THE COURT:  And -- and so he doesn't want -- and so by --

01:04PM  4  by enforcing it, he doesn't then want to open up an avenue for the

01:04PM  5  defendant or anybody associated with the defendant to then do

01:04PM  6  further disclosures that the plaintiff deems to be privileged;

01:04PM  7  right?

01:04PM  8          MR. BRITO:  Correct.

01:04PM  9          THE COURT:  Broadening the harm that he is alleging

01:04PM  10  occurred?

01:04PM  11         MR. BRITO:  Correct.  And there's no -- there's no

01:04PM  12  countervailing interests in relation to the Court's good cause

01:04PM  13  analysis that could be articulated by Mr. Cohen as to why he can't

01:04PM  14  receive these documents under the auspices of his confidentiality

01:04PM  15  order and not reveal it to the public.

01:04PM  16         THE COURT:  Right.

01:04PM  17         MR. BRITO:  With regard to the attorney's eyes only, the

01:04PM  18  reason why we injected that in there, Your Honor, is because

01:04PM  19  you -- you were -- you were (unintelligible) in your comment about

01:05PM  20  the scope of the request.  And request No. 66 in their document

01:05PM  21  request seeks:  all financial statements reflecting your assets

01:05PM  22  and liabilities from January 2016 to the present.  Category 68 is:

01:05PM  23  all spreadsheets, memoranda, financial statements, and other

01:05PM  24  documents containing any analysis or calculation of the value of

01:05PM  25  the Trump brand, including calculation of goodwill to the Trump

01:05PM    1    organization.

01:05PM    2         THE COURT:  The problem though with that argument is

01:05PM    3    since he was his lawyer for a good chunk of time, he's already --

01:05PM    4    he's already privy to all that.  He could recall, without me

01:05PM    5    entering any order, he could go in front of a microphone and say:

01:05PM    6    This is what I remember he was worth on that particular time

01:05PM    7    period.

01:05PM    8         MR. BRITO:  Up until a point.  His relationship ceased to

01:05PM    9    exist by virtue of the fact that he no longer represented Mr.

01:05PM   10    Trump, he was indicted, he was sent to the federal penitentiary

01:05PM   11    for his unlawful conduct.  And during that period of time when he

01:06PM   12    was not the President's attorney, he is not entitled to see all of

01:06PM   13    this financial that he would not otherwise see, but for the fact

01:06PM   14    that he -- and I'm really assuming, just for purposes of answering

01:06PM   15    Your Honor's question -- that even during the time he was the

01:06PM   16    attorney he would have seen this information, which I'm not so

01:06PM   17    sure, but that's a separate point.

01:06PM   18         I don't think that the scope of his representation was

01:06PM   19    such that it would capture all of his financial information.  I

01:06PM   20    think his role was far more limited, far more nuanced than simply

01:06PM   21    serving in the capacity as general counsel, because I know that

01:06PM   22    Mr. Trump has a general counsel that has represented him for a

01:06PM   23    vast period of time, during the time that Mr. Cohen was there and

01:06PM   24    through the present.  That individual would probably be privy to a

01:06PM   25    lot more information than Mr. Cohen.  Mr. Cohen wasn't the do-all

27

01:06PM    1    be-all attorney for Mr. Trump.

01:06PM    2        But I appreciate what Your Honor's saying; he might have

01:06PM    3    had the right to see some aspects of the financial discovery to a

01:06PM    4    point.  And then when he ceases being a lawyer, he's not entitled

01:06PM    5    to that, and so we don't think he should be entitled to see that

01:06PM    6    under a going forward basis under this demand, Your Honor.  As I

01:07PM    7    mentioned, he's violated his -- his ethical violations plainly and

01:07PM    8    he's breached the confidentiality agreement that he signed,

01:07PM    9    plainly.  I have zero confidence that this gentleman is going to

01:07PM   10    abide by a confidentiality that's in place in this case, I just

01:07PM   11    don't, unfortunately.

01:07PM   12        I -- obviously I appreciate the Court's involvement in

01:07PM   13    the event that that would happen.  But the concern is:  Once the

01:07PM   14    cat's out of the bag, that's a problem for -- for any party that

01:07PM   15    wants to protect a privileged communication, especially, as noted

01:07PM   16    by counsel, somebody who's right now looking at two federal

01:07PM   17    indictments.  And we have to -- we have to keep that in mind as

01:07PM   18    well, Your Honor, to the extent that Mr. Cohen wants to publicize

01:07PM   19    information.  And it's not that we're hiding information that's

01:07PM   20    relative to a criminal indictment, but certainly it's going to be

01:07PM   21    fodder for whatever it is that's taking place in other courtrooms.

01:07PM   22    But with respect to those, I think we have to be mindful of the

01:07PM   23    fact that there are those proceedings taking place and there are

01:07PM   24    rules that govern that.  I -- I don't pretend to.  I've never

01:07PM   25    practiced criminal defense in my life and I won't, but --

01:08PM   1      THE COURT:  Another problem with that is that

01:08PM   2   technically, I guess, Mr. Cohen is a witness at least to one of

01:08PM   3   those proceedings; right?

01:08PM   4      MR. BRITO:  I -- I would presume as much.  I -- I don't

01:08PM   5   have access to the witness list; and again, I don't get involved

01:08PM   6   in cases I know nothing about, such as criminal matters --

01:08PM   7      THE COURT:  Right.

01:08PM   8      MR. BRITO:  -- but I would presume you're right.

01:08PM   9      THE COURT:  And so then I can't enter an order, for

01:08PM  10   example -- and that's the reason that it's difficult, it's not so

01:08PM  11   simple, because, for example, in that case I can't enter an order

01:08PM  12   that precludes him from testifying as to anything that he has

01:08PM  13   learned in connection with that proceeding; right?

01:08PM  14      Theoretically something here could; right?  I mean, there

01:08PM  15   is some overlap between the allegations in this complaint and the

01:08PM  16   New York proceeding; is there not?

01:08PM  17      MR. BRITO:  I -- I'm sure that there's some.  There's got

01:08PM  18   to be some component.  I can't speak to the depth of that

01:08PM  19   component --

01:08PM  20      THE COURT:  Right.

01:08PM  21      MR. BRITO:  -- certainly, and that has to be a factor

01:08PM  22   here.  And I don't think that factor is simply allowing Mr. -- Mr.

01:09PM  23   Cohen to have full access and full ability to disclose.  I don't

01:09PM  24   think that that's the rational response to the problem that Your

01:09PM  25   Honor's highlighting.

29

01:09PM 1      I think to a certain extent -- and we haven't really

01:09PM 2 discussed this amongst each other -- but there may be a scenario

01:09PM 3 whereby there may be a staggered discovery process that may need

01:09PM 4 to be employed until such time as Mr. Cohen testifies, because his

01:09PM 5 testimony, to the extent he's going to be called as a witness, is

01:09PM 6 framed based upon his knowledge and his knowledge as he has it

01:09PM 7 today; not his knowledge as he's acquired it from discovery that

01:09PM 8 he wasn't otherwise aware of, if he were to testify tomorrow, he

01:09PM 9 would have to testify based on what he knows as of that moment.

01:09PM 10 If he testifies six months from now after we've exchanged

01:09PM 11 discovery, he's going to say:  Well, now not only do I know this

01:09PM 12 but I also know the following because of the discovery that --

01:09PM 13 that we got in my case.  And I'm sensitive to that, and maybe it

01:09PM 14 needs to be compartmentalized in terms of what discovery is fair

01:09PM 15 play now as it relates to the allegations of the complaint; and

01:10PM 16 then everything else that I don't think relates to the allegations

01:10PM 17 of the complaint and that they're seeking information on, which

01:10PM 18 may have, as we talked about, some depth in the criminal

01:10PM 19 proceedings.

01:10PM 20      But I -- I think they are apples and oranges to a great

01:10PM 21 extent.  There is obviously some overlap.  We can deal with the

01:10PM 22 overlap, but I think we should segregate the discovery that's

01:10PM 23 being sought by the claims, make it subject to a confidential

01:10PM 24 disclosure; not because we don't want the defendant to defend

01:10PM 25 himself.  He'll have access to the information that he's

|          |    |                                                                        |
|----------|----|------------------------------------------------------------------------|
| 01:10PM  | 1  | requested; just don't publicize it.  Because there is, as Your         |
| 01:10PM  | 2  | Honor's orders state, discovery doesn't share the same benefit.        |
| 01:10PM  | 3  | Discovery materials do not share the same benefit to public access     |
| 01:10PM  | 4  | as filings do.  And so the -- the discovery process doesn't need       |
| 01:10PM  | 5  | to be measured by the good cause standard; it's discovery.  It's       |
| 01:10PM  | 6  | not something subject -- it's not subject to public consumption.       |
| 01:10PM  | 7  | That's really what we're talking about right now.                      |
| 01:11PM  | 8  | We're probably going to be back before you at a later                  |
| 01:11PM  | 9  | date when -- to the extent that there needs to be a trial in this      |
| 01:11PM  | 10 | case and to the extent it goes forward, we'll have that                |
| 01:11PM  | 11 | conversation then to the extent that there's filings that are          |
| 01:11PM  | 12 | going to be made.                                                      |
| 01:11PM  | 13 | Right now what's at issue before the Court is the                      |
| 01:11PM  | 14 | defendant's motion to dismiss the complaint and that's been fully      |
| 01:11PM  | 15 | briefed and we'll deal with that.  I don't foresee a lot more          |
| 01:11PM  | 16 | filings down the pike that would warrant the disclosure of any of      |
| 01:11PM  | 17 | this confidential information.  And to the extent that that            |
| 01:11PM  | 18 | happens, file it under the confidential rules that exist.  To the      |
| 01:11PM  | 19 | extent that they challenge the confidentiality agreement,             |
| 01:11PM  | 20 | certainly they can come behalf the Court and say that, you know,       |
| 01:11PM  | 21 | we're taking it too far.                                               |
| 01:11PM  | 22 | But we should honor and protect a client and the                      |
| 01:11PM  | 23 | information that the client imparted to the attorney and not now       |
| 01:12PM  | 24 | make it for public consumption because at its core, the reason why     |
| 01:12PM  | 25 | we're here is because the defendant did exactly that to begin          |

01:12PM   1   with.  He made confidential information and privileged information

01:12PM   2   and untruthful information subject to public consumption.  And

01:12PM   3   we -- we don't want that to continue, because we want to right the

01:12PM   4   wrong that occurred by virtue of the defendant's disclosure, and

01:12PM   5   an additional disclosure is simply not going to accomplish that.

01:13PM   6        We're not seeking an injunction because the events

01:13PM   7   happened in a way that it wasn't in the plaintiff's best interest

01:13PM   8   to move forward with an injunction because that would have not

01:13PM   9   volunteered a lot of information to the public eye, we're simply

01:13PM   10  seeking a suit for monetary damages that should take its course

01:13PM   11  but it should be done through confidentiality, which happens just

01:13PM   12  about every day in every courthouse with respect to protecting the

01:13PM   13  parties' interests; especially in this one, especially because of

01:13PM   14  the parties, and especially because of the fact that we're talking

01:13PM   15  about an attorney-client privilege relationship, Your Honor.

01:13PM   16        THE COURT:  Then the other question I have though is in

01:13PM   17  terms of policing it, there's -- assuming we entered into one, in

01:14PM   18  many respects there's going to be a big fight as to whether or not

01:14PM   19  anything is actually confidential because so much is -- is

01:14PM   20  publicly disclosed or known, either about the incidents involving

01:14PM   21  New York, involving a whole slew of things.  And so then it can't

01:14PM   22  be confidential now if it's already in the public domain; so how

01:14PM   23  am I going to police that?

01:14PM   24        MR. BRITO:  Well, there's -- the two things.

01:14PM   25        Number one, again, I want to highlight and inject facts

01:14PM   1   into our conversation so that we really look at this, as I

01:14PM   2   mentioned earlier, one of the requests is:  Give us all

01:14PM   3   communication between you and Melania Trump.  There's no way,

01:14PM   4   shape, or form that any of that would ever be public.  Now,

01:14PM   5   there's written communications between husband and wife with

01:14PM   6   respect to a third party, that's just so far out of bounds in

01:14PM   7   relation to what this case is about that it would be

01:14PM   8   objectionable.  But it goes to the point of:  What is it that Mr.

01:15PM   9   Cohen is trying to accomplish here?  He's not trying to serve a

01:15PM  10   public interest, he's not trying to serve a private interest, he's

01:15PM  11   trying to raise a scandal, and he wants to disclose as much as he

01:15PM  12   can about his adversary in a way that simply demeans him in

01:15PM  13   public.  It doesn't serve the purpose of this case.  That's the

01:15PM  14   more specific point.

01:15PM  15          The more general point to Your Honor's question is by

01:15PM  16   virtue of the fact that there is a written communication that

01:15PM  17   talks about a subject, and in that subject there is a line that

01:15PM  18   has information that has already been public, that does not negate

01:15PM  19   the privacy of the balance of the document.  And so it would have

01:15PM  20   to be done, to the extent that there is going to be that fight

01:15PM  21   that Your Honor's forecasting that may happen, is:  Is the

01:15PM  22   document itself public, or is a part of it public?

01:15PM  23          If a part of it is not public and part of it is, the

01:16PM  24   whole document is subject to -- to confidentiality.  And we're

01:16PM  25   talking about, again, the former President of the United States.

33

01:16PM  1   The documents that have been requested here, and the -- the good

01:16PM  2   faith conference that we had with respect to our responses when we

01:16PM  3   told him some of the responses to these requests was that they

01:16PM  4   want us to broaden the scope and now we need to ask other

01:16PM  5   agencies, representatives, entities, that's going to comprise the,

01:16PM  6   quote/unquote, you in this request that we're being asked to

01:16PM  7   provide.  That, again, in itself is now going to essentially

01:16PM  8   require us to dig into a certain level of governmental

01:16PM  9   documentation, which I'm not prepared to get into because it has

01:16PM  10  nothing to do with this litigation.

01:16PM  11       But the request is such that they want us to broaden the

01:16PM  12  scope and -- and look back to when Mr. Trump was the President.

01:16PM  13  And are we talking about now governmental files that need to be

01:16PM  14  disclosed?  And how do we even manage to deal with classified

01:16PM  15  information or confidential information?

01:16PM  16       THE COURT:  Well, he's not supposed to have that anyway.

01:17PM  17       MR. BRITO:  I understand.

01:17PM  18       THE COURT:  In other words, the answer would be none;

01:17PM  19  right?

01:17PM  20       MR. BRITO:  That's what we said.  And they said

01:17PM  21  (unintelligible) because you should broaden the scope to add a

01:17PM  22  variety of -- and I appreciate we're not talking about the other

01:17PM  23  litigation --

01:17PM  24       THE COURT:  Right.

01:17PM  25       MR. BRITO:  -- in the west coast of Florida, but they say

01:17PM 1   broaden the scope because we did say no, and they didn't like that

01:17PM 2   response, and so I'm concerned about how far are we going with

01:17PM 3   this.

01:17PM 4            THE COURT:  But the solution to -- I hear your point.

01:17PM 5   The solution for that is properly scoped out discovery, which

01:17PM 6   obviously you're entitled to -- to litigate.  But that doesn't

01:17PM 7   necessarily answer the question of -- of the effect of a

01:17PM 8   confidentiality order in a case like this, which is so very

01:17PM 9   public.  But it's hard to enforce a confidentiality order like

01:17PM 10  that in many respects because so much of it is public.

01:17PM 11           So then, in other words, that's the problem that I have

01:17PM 12  in this case, which is unusual, because in most litigation the

01:18PM 13  public doesn't have this swath of information about a subject well

01:18PM 14  in advance; right?  And so here -- and so, therefore, entering

01:18PM 15  into a confidentiality order and enforcing it is a much easier

01:18PM 16  thing, but here it's a little more complicated.

01:18PM 17           MR. BRITO:  But that's why I'm suggesting it needs to be

01:18PM 18  done on a document-by-document basis, which it would be done

01:18PM 19  otherwise in any situation.  And simply because if there was a

01:18PM 20  document --

01:18PM 21           THE COURT:  The problem in your draft is -- and -- and I

01:18PM 22  -- to some extent maybe I agree with you.  But the problem with

01:18PM 23  your existing draft that you have is that it basically, as is true

01:18PM 24  in many -- much litigation, it puts the presumption of

01:18PM 25  confidentiality up front, and basically requires the nonmovant --

01:18PM   1   rather the -- not the nonmovant, the other side to challenge it;

01:18PM   2   and here I don't know if that presumption should apply.  That's

01:18PM   3   the problem, because otherwise -- because -- because there are

01:19PM   4   going to be far more fights about that, and what we're going to be

01:19PM   5   dealing with is, is this a confidential document or not, if the

01:19PM   6   presumption is that everything is confidential.  That's one

01:19PM   7   concern I have about whether this case is different.

01:19PM   8            And perhaps if you change that presumption, so put the

01:19PM   9   onus on you as the party -- where a party is seeking to protect

01:19PM  10   the information to obtain confidentiality, then maybe that's the

01:19PM  11   better thing to do.  Do you see what I'm saying?

01:20PM  12            MR. BRITO:  I -- I do.

01:20PM  13            THE COURT:  So, for example, you raised -- and you

01:20PM  14   raised a compelling argument with respect to documents that you

01:20PM  15   consider to be to this day privileged, they've not been disclosed;

01:20PM  16   right?  They are subject to attorney-client privilege.  They were

01:20PM  17   communications to and from a privileged group; right?  And -- and

01:20PM  18   that document -- the defendant seeks that document in -- in

01:20PM  19   production, and one of the arguments you're making is that has to

01:20PM  20   do with the entire purpose of the lawsuit:  We're trying to

01:20PM  21   enforce my client's rights to have privileged communications with

01:20PM  22   the lawyer that you're alleging he violated; right?

01:20PM  23            MR. BRITO:  Uh-huh.

01:20PM  24            THE COURT:  So that is very -- that type of document I

01:20PM  25   can enforce readily; right?  Because you can declare something

01:20PM  1   privileged, and the presumption at that point goes to the

01:20PM  2   privilege holder; right?

01:21PM  3        So that category I think of what you're talking about I

01:21PM  4   think I could deal with and should deal with, frankly, because

01:21PM  5   it's -- it's -- your client is claiming that it's a privileged

01:21PM  6   communication.  And the whole relationship between the plaintiff

01:21PM  7   and the defendant here was for a great degree of time a privileged

01:21PM  8   environment; right?  Because he was a lawyer; plaintiff was the

01:21PM  9   client; right?

01:21PM  10       MR. BRITO:  Uh-huh.

01:21PM  11       THE COURT:  So you see if I'm looking at it as a

01:22PM  12  privilege, that I think we can do.  That's much easier to do, and

01:22PM  13  maybe, you know, maybe I should definitely -- we should definitely

01:22PM  14  focus on that first because that is something I think could be

01:22PM  15  readily enforced.

01:22PM  16       Once you -- once you start going beyond that, that's when

01:22PM  17  it becomes more difficult.

01:22PM  18       MR. BRITO:  And when we go beyond that, I think not only

01:22PM  19  do we go beyond that in terms of the difficulties Your Honor is

01:22PM  20  envisioning, but I think we only go beyond that because the

01:22PM  21  requests go beyond the claims and the defenses in the case.

01:22PM  22       THE COURT:  And of course --

01:22PM  23       MR. BRITO:  And we'll deal with it then, agreed.

01:22PM  24       THE COURT:  Obviously off the top of my head, I don't

01:22PM  25  know that any communication between the plaintiff and his current

PROCEEDINGS RECORDED BY COURTROOM DIGITAL RECORDER

01:22PM 1   wife matters, but maybe they do, I don't know.  On the face of it
01:22PM 2   you raise a good point; an overbroad -- remedy for an overbroad
01:23PM 3   request is -- is to deny a motion to compel; right?
01:23PM 4        MR. BRITO:  Right.  But I think despite I think the fight
01:23PM 5   that you're envisioning happening, which is -- is potential, I
01:23PM 6   think is worth the trouble of having.  I'm prepared to engage in
01:23PM 7   that, quote/unquote, fight --
01:23PM 8        THE COURT:  Right.
01:23PM 9        MR. BRITO:  -- because of the privacy interests that
01:23PM 10  we're trying to protect.
01:23PM 11        THE COURT:  Right.
01:23PM 12        MR. BRITO:  It's critical.
01:23PM 13        THE COURT:  I think that -- I think I could do that, and
01:23PM 14  I think I -- I could see, you know, your argument is they're
01:23PM 15  privileged communications that remain and that should be enforced,
01:23PM 16  I think that I can do, and the presumption would be with the
01:23PM 17  privilege holder, that one category.
01:23PM 18        But the way your draft now is, it presumes everything at
01:23PM 19  that point, as is traditional.  Your draft is a traditional
01:23PM 20  confidentiality agreement that I enter all the time.  The problem
01:23PM 21  is that taking into account the defendant's position and the
01:23PM 22  enforceability of this.  That's the other thing:  I don't want to
01:23PM 23  enter an order that just becomes, you know, an unenforceable
01:24PM 24  document because it becomes -- it becomes unwieldy in terms of how
01:24PM 25  many things are going to be in issue.

01:24PM  1       One of the issues -- one of the concerns that I have is

01:24PM  2  maybe -- maybe the way to do this is at the very least, even if I

01:24PM  3  agree with you that we have to come up with some way to protect

01:24PM  4  someone from abusing litigation, just to scandalize, on the other

01:24PM  5  hand, the presumption for that may have to be on you; you being --

01:24PM  6  not you personally, I mean on the plaintiff --

01:24PM  7       MR. BRITO:  I understand.

01:24PM  8       THE COURT:  -- as opposed to the defendant.

01:24PM  9       MR. BRITO:  I understand what Your Honor is suggesting,

01:24PM  10  and I think that that would be acceptable.  I would invite the

01:24PM  11  Court to -- to modify the confidentiality as you think it's the

01:24PM  12  best to fit the circumstances, of course.

01:24PM  13       But again, if we drill down on what it is that the claims

01:24PM  14  are focused upon, in terms of the disclosure of information by

01:24PM  15  client to attorney, the presumption that there will be other

01:25PM  16  communications, or that there were communications between client

01:25PM  17  and attorney that are already public, I don't think that that's --

01:25PM  18  I don't think that that's going to be something that is going to

01:25PM  19  be all that prevalent in this case.  I don't think we're going to

01:25PM  20  find that there was communication between these two individuals

01:25PM  21  that have already reached the hands of the media.  They should not

01:25PM  22  have.  They should have remained privileged and confidential.

01:25PM  23       And the concern that I have is, again, if in fact the

01:25PM  24  media has obtained information that was supposed to have been made

01:25PM  25  privileged or maintained as privileged was disclosed by the

01:25PM  1   recipient, i.e., the attorney, without authorization, and now

01:25PM  2   we're going to endorse the repeated disclosure of information --

01:25PM  3   that maybe is not exactly my point, but gives context because

01:25PM  4   that's probably what we're going to hear, is that:  Judge, we

01:25PM  5   should be entitled to the following documents because it discusses

01:26PM  6   this topic, which is one of the topics that Mr. Cohen raised in

01:26PM  7   his book or one of his two books, and so we should be able to get

01:26PM  8   all of this communication without it being deemed confidential

01:26PM  9   about communications regarding this subject matter because he's

01:26PM  10  already disclosed the subject matter, that now we're just feeding

01:26PM  11  the unlawfulness of Mr. Cohen's conduct by giving context to a

01:26PM  12  statement, which is not what my client wants to happen.

01:26PM  13          My client wants -- to the extent that they want

01:26PM  14  information about what it is that was disclosed and whether that

01:26PM  15  was confidential or privileged information, we'll provide it to

01:26PM  16  them and them only; but that doesn't mean that now everybody gets

01:26PM  17  to understand the totality of the circumstances to prove whether

01:26PM  18  the statement was false or true or unlawfully disclosed.  That's

01:26PM  19  for trial.  For discovery that shouldn't be consumed by the

01:26PM  20  public, and that's the fight that I think Your Honor's probably

01:26PM  21  envisioning because they're going to say:  Well, this is subject

01:26PM  22  matter -- and I don't want to pick one because I don't want to

01:27PM  23  highlight any one because there are several that are raised in Mr.

01:27PM  24  Cohen's book, he's already talked about that topic.  Okay, fine.

01:27PM  25  Talking about a topic is different than, going back to my analogy,

01:27PM  1   it's one line in a multipage e-mail, that doesn't mean that the

01:27PM  2   multipage e-mail gets disclosed or is deemed lacking in

01:27PM  3   confidentiality just because the subject matter has been out

01:27PM  4   there.  That should remain confidential.  He disclosed a topic

01:27PM  5   about this e-mail, but the e-mail itself should not be subject to

01:27PM  6   to production publicly.  It should still be maintained

01:27PM  7   confidential; that's the point I'm trying to make, and that's the

01:27PM  8   fight that I think we probably end up having and Your Honor is

01:27PM  9   envisioning taking place.

01:27PM  10          But I just wanted to make that distinction, because I

01:27PM  11   think if we were talking about the fact that Mr. Cohen's

01:27PM  12   disclosures he showed a memo that he wasn't supposed to, and now

01:27PM  13   that memo in its entirety is publicly consumed and disclosed,

01:28PM  14   that's -- that would be an argument, but that's not what happened

01:28PM  15   here.  He talked about snippets, events, conversations.  And those

01:28PM  16   -- the snippets, events, and conversations are going to be

01:28PM  17   memorialized in a variety of different documents that we don't

01:28PM  18   want the public to have access to until we have to try this case.

01:28PM  19          THE COURT:  Okay.  Your response.

01:28PM  20          MR. BRODSKY:  So first I think it's important to point,

01:28PM  21   Mr. Trump's counsel's comments about some of the requests in

01:28PM  22   context and demonstrate why his justifications for wanting to keep

01:28PM  23   them private ring hollow.

01:28PM  24          We didn't ask for, you know, e-mails or text messages

01:29PM  25   between Melania Trump and Donald Trump or about Stormy Daniels out

01:29PM    1    of some purulent curiosity.  Mr. Trump alleged in his suit that

01:29PM    2    the reason why he made the hush money payment to Stormy Daniels

01:29PM    3    was to protect his family.  Okay?  We're -- that's at issue in the

01:29PM    4    case.  I mean, we're not randomly assailing him.  He's laid out,

01:29PM    5    you know, his history with Mr. Cohen in a publicly filed document.

01:29PM    6            And there is, of course, a looming question about waiver

01:29PM    7    here because, of course, when you voluntarily put something out

01:29PM    8    into the public domain, your privilege is deemed to have

01:29PM    9    disappeared for better or worse.

01:30PM   10            As to the point that the Court made about sort of the

01:30PM   11    confidentiality order swallowing the case, which I think is a real

01:30PM   12    concern here, you can see, Your Honor, in -- and anybody can --

01:30PM   13    I'll just give you an example.

01:30PM   14            In paragraphs 83 and 84 -- it's not that many specific

01:30PM   15    items about matters at hand for Mr. Trump that he actually alleges

01:30PM   16    were disclosed.  But the ones that he does allege, one of the

01:30PM   17    primary ones is this issue about a rogue board at Trump World

01:30PM   18    Tower and how Mr. Cohen was assisting Mr. Trump with that.  If you

01:30PM   19    go on to Google and search Trump World Tower Michael Cohen, there

01:30PM   20    are many, many articles from long before their relationship

01:31PM   21    fractured about Michael Cohen's involvement in Trump World Tower

01:31PM   22    and that issue.

01:31PM   23            This was not -- you know, none of these items are secret

01:31PM   24    hidden matters that Mr. Cohen handled for Mr. Trump.  Everything

01:31PM   25    with Mr. Trump is in the bright glare of the public eye, often

01:31PM 1   intentionally.  He -- he does that.  That's what he wants.  And so

01:31PM 2   it's somewhat hard to reconcile what is an undeniable

01:31PM 3   attention-seeking behavior and sort of freewheeling nature of his

01:31PM 4   private affairs, and now has claimed after he went into court and

01:31PM 5   raised all these things saying:  Well, now it all has to be

01:31PM 6   private.  It's particularly hard to reconcile because, for

01:31PM 7   example, Mr. Cohen wrote the book, which is -- Mr. Trump is not

01:32PM 8   suing on, in 2020, okay.  This wasn't:  Oh, Michael Cohen's gone

01:32PM 9   rogue.  We've got to rush into court.  Okay?  He waited a long

01:32PM 10  time with all those -- that information swirling out there.  Not

01:32PM 11  coincidentally, immediately after it was disclosed that Mr. Cohen

01:32PM 12  had testified before the grand jury in that case in Manhattan

01:32PM 13  before the DA, Mr. Trump filed this suit.  Draw the conclusion

01:32PM 14  from that which you may.  It's -- you're right:  This is not your

01:32PM 15  average case, and it's not your average litigant's request to keep

01:32PM 16  the private -- to keep their affairs private.

01:32PM 17          We would suggest, Your Honor, the appropriate way to do

01:32PM 18  this is if there is something that Mr. Trump is going to produce

01:32PM 19  and he believes is so private that it cannot be added to the

01:32PM 20  mountain of information about him, then it's incumbent on him to

01:32PM 21  move for protection.  It's incumbent on him to move for

01:33PM 22  protection.

01:33PM 23          And we'll request from you -- from you, Judge, after we

01:33PM 24  deal with this issue that Mr. Brito promptly provide dates for his

01:33PM 25  client's deposition.  We provided materials showing we've been

01:33PM  1    asking for those dates for quite some time.  Once the Court enters

01:33PM  2    whatever order it deems appropriate, we'll get dates for Mr.

01:33PM  3    Trump.  And I wouldn't object, Judge, that there will be a certain

01:33PM  4    period of time, for example, after Mr. Trump's deposition, where

01:33PM  5    that will remain private presumptively and then it won't be.  And

01:33PM  6    Mr. Brito can come to the Court and say:  This has to be private,

01:33PM  7    this has to be private, this has to be private, and we'll abide by

01:33PM  8    that and not -- we would never violate the Court's orders, but

01:33PM  9    that's the right way to do it here.  The burden is on Mr. Trump.

01:33PM  10         THE COURT:  And with respect to -- with respect to my

01:33PM  11   point on something where he is declaring it to be privileged, that

01:34PM  12   some document -- I suppose there could also be testimony, but to

01:34PM  13   make it easier, for a document that he's declaring was privileged

01:34PM  14   and the privilege remains intact, meaning he hasn't waived it,

01:34PM  15   right, how do I deal with that?

01:34PM  16         Why can't -- we'll just take that as an easier

01:34PM  17   subcategory of document, right?  His argument is that the whole

01:34PM  18   reason that he filed this lawsuit is because he believes that his

01:34PM  19   ethical -- ethical obligations owed to him by Mr. Cohen have been

01:34PM  20   violated and he's now seeking recompense.  So to the extent that

01:34PM  21   there is a document production that involves attorney-client

01:34PM  22   communications at the time, right, at least as to those category

01:34PM  23   of documents, why couldn't those category of documents be

01:34PM  24   presumptively privileged upon his request; and putting that

01:34PM  25   category of documents at least in a presumptive privilege that you

44

| | |
|---|---|
| 01:35PM | 1 |
| 01:35PM | 2 |
| 01:35PM | 3 |
| 01:35PM | 4 |
| 01:35PM | 5 |

would then have to overcome, as is tradition?

MR. BRODSKY:  Well, query whether producing documents to the opposing side maintains the privilege.  He could lob documents, I suppose, on matters that he claims are privileged and, for example, irrelevant to the case.

THE COURT:  That's a good question.  Would you actually ask him to produce privileged documents?  Because you may want to ask him to produce documents that are not in the public domain that Mr. Cohen knows exists because he was -- he was privy to them during the relevant period, and in the public world they're privileged, right, but you may -- you may include it in a document request because you think it helps your defense.

As to that category, to make it easier, why wouldn't he be entitled to have a presumptive privilege protection on that category?

MR. BRODSKY:  Well, I don't think he would have a privilege because he's disclosing it to his adversary, right, that's going to be used in a public proceeding and it's not privileged once it's turned over, so that sort of evaporates; right?  Once it's turned over, I suppose he may lob documents and say:  These are with my other counsel.  This doesn't have to do with you.  You weren't privy to it.  I'm not relying on this in my case or whatever, I don't know what they're going to do.

THE COURT:  Uh-huh.

MR. BRODSKY:  But any documents that are relevant to this

45

01:36PM  1   case have to be turned over and relevant to our defenses; and,

01:36PM  2   therefore, they are not privileged.  That's the cost --

01:36PM  3        THE COURT:  I'm not so sure I agree with that.  In other

01:36PM  4   words, what you're saying is if I, the defendant, deem a -- an

01:36PM  5   otherwise privileged document to be relevant in my defense, and I

01:37PM  6   request it under the Court's rules, if the plaintiff complies with

01:37PM  7   the request -- right -- even if by putting privileged on it, let's

01:37PM  8   assume that.  In other words, the act of production itself in

01:37PM  9   response to your request would be a waiver of the privilege; is

01:37PM  10  that what you're saying?

01:37PM  11       MR. BRODSKY:  I -- I don't see how it could be otherwise.

01:37PM  12  At that point let's imagine there was an ironclad confidentiality;

01:37PM  13  we couldn't share it, but we use it in our defense, you know,

01:37PM  14  there wouldn't be a silo, you know, there wouldn't be a glass

01:37PM  15  bubble over that category of documents that would be the subject

01:37PM  16  of public proceedings motions, for summary judgment, trial, et

01:37PM  17  cetera.

01:37PM  18       THE COURT:  Right.

01:37PM  19       MR. BRODSKY:  But I think that the privilege is waived.

01:37PM  20  I think that's, you know, in a malpractice -- in attorney

01:37PM  21  malpractice claims, that happens all the time, you know.  The --

01:37PM  22  the plaintiff comes in and says:  You committed malpractice

01:37PM  23  against me because you didn't check the box, you checked the wrong

01:38PM  24  box, okay.  The lawyer says:  Well, okay.  Send over all your

01:38PM  25  communications to me.  We're adverse now.  You know, the privilege

46

01:38PM   1   doesn't apply anymore; you've put it at issue.  It's a sword and a

01:38PM   2   shield question.  So, you know --

01:38PM   3         THE COURT:  Assuming it's produced in your example --

01:38PM   4   that's a good example -- in your example the fact that the client

01:38PM   5   produces it to the lawyer is deemed a waiver of the privilege?

01:38PM   6   Not necessarily using at trial, because obviously that's more of a

01:38PM   7   public -- a public disclosure; right?

01:38PM   8         But simply the act of producing it in -- in a -- I've

01:38PM   9   never handled a legal malpractice case -- is that deemed to be a

01:38PM  10   privilege waiver?

01:38PM  11         MR. BRODSKY:  Yes.  I mean, I see it, Mr. Eichenblatt

01:39PM  12   sees it.  All these people are outside of the attorney-client

01:39PM  13   relationship, you know.  The cover has been blown.

01:39PM  14         THE COURT:  Right.  So then what prevents the client in

01:39PM  15   that from saying:  Well, I'm not giving it to you until I -- until

01:39PM  16   trial, because I don't know if I want to waive the privilege to it

01:39PM  17   until the end of the case?

01:39PM  18         MR. BRODSKY:  Well, then that -- well, then you have an

01:39PM  19   issue that you have complying with turning over responsive

01:39PM  20   documents that you're relying on for your case, and you're not

01:39PM  21   complying with your discovery obligations.

01:39PM  22         But there is a cost --

01:39PM  23         THE COURT:  But in that who wins?  Who wins that battle?

01:39PM  24         MR. BRODSKY:  That's the cost of the plaintiff coming

01:39PM  25   into court and suing his or her attorney.  I mean, that's the

01:39PM  1   tradeoff.

01:39PM  2           THE COURT:  Is that right?  Do you do legal malpractice?

01:39PM  3           MR. BRITO:  I don't, but I know from having seen the case

01:39PM  4   law on this -- first of all, this is not a legal malpractice case.

01:39PM  5   That is a distinction with respect to the conversation that we're

01:40PM  6   having.

01:40PM  7           THE COURT:  But isn't it really?

01:40PM  8           MR. BRITO:  We just briefed this, Judge.

01:40PM  9           THE COURT:  But it's a breach of fiduciary claim.

01:40PM  10          MR. BRITO:  Based upon disclosure of information as

01:40PM  11  opposed to negligence; that's the distinction.

01:40PM  12          THE COURT:  Right.

01:40PM  13          MR. BRITO:  And the case law is different as it relates

01:40PM  14  to a malpractice case.

01:40PM  15          THE COURT:  On this issue?

01:40PM  16          MR. BRITO:  It is.  And this is a disclosure of

01:40PM  17  information, a breach of the confidence, as opposed to failure to

01:40PM  18  perform your duties to the level -- the applicable standard and so

01:40PM  19  forth with regard to a negligence claim, which would be the thrust

01:40PM  20  of a malpractice case.

01:40PM  21          But in the scenario made by Mr. Brodsky for the

01:40PM  22  defendant, it's:  Heads, you win.  Tails, you lose because now the

01:41PM  23  plaintiff has to comply with a request that's been made to them

01:41PM  24  that would otherwise require them to divulge a privileged document

01:41PM  25  that they don't want to have produced.

48

01:41PM  1    There is -- it's a forced waiver of privilege, which that

01:41PM  2  is inconsistent with the principles of waiver.  It has to be a

01:41PM  3  knowing and voluntary relinquishment of a right.  You can't force

01:41PM  4  a party to waive their privilege --

01:41PM  5    THE COURT:  Right.

01:41PM  6    MR. BRITO:  -- simply because you're in dispute.  And

01:41PM  7  again, context matters.  We're talking about an unauthorized

01:41PM  8  disclosure of privileged information by the attorney, and now the

01:41PM  9  attorney wants to come back and say:  Well, give me more so that I

01:41PM  10  can disclose more.  And what you give me now is -- is for public

01:41PM  11  consumption.

01:41PM  12    The privilege is lost.  Forget confidentiality.

01:41PM  13  Privilege is lost as to that issue.  That's -- that's not the law,

01:41PM  14  Judge.  I don't do malpractice cases, but that's clearly not the

01:41PM  15  law.

01:41PM  16    MR. BRODSKY:  So I would point the Court to the Savino

01:41PM  17  case, which is a Florida Supreme Court case, which is the

01:42PM  18  granddaddy case about the at issue waiver when a client sues his

01:42PM  19  or her attorney.  And the district courts of appeal in Florida

01:42PM  20  have, you know, varying ways that they express that.  But the

01:42PM  21  general notion is that when there's some affirmative act by the

01:42PM  22  plaintiff here that puts protected information at issue, and

01:42PM  23  asserting the privilege over that would prejudice our rights.

01:42PM  24    The privilege is waived.  I mean that -- and I'm -- I --

01:42PM  25  listen, I -- I will leave it to the Court, but that's my

49

01:42PM   1   understanding.  Otherwise, you know, it's a sword and shield that

01:42PM   2   were at issue, or any number of ways you can articulate it.  That,

01:42PM   3   you know, by saying:  You gave me bad advice, or:  I gave you

01:42PM   4   advice, and then you improperly disclosed it and it was

01:42PM   5   confidential, part of this case is going to be saying:  Well, who

01:43PM   6   -- who else knew about this?  Okay.

01:43PM   7         You -- you say that we improperly discussed the fact that

01:43PM   8   we worked -- we did work in the Trump World condo and that was top

01:43PM   9   secret and nobody knew about it.  I mean, we're going to get and

01:43PM  10   we're entitled to get all of the communications Mr. Trump has had

01:43PM  11   with others about that.

01:43PM  12         THE COURT:  Yeah, but that would not be privileged

01:43PM  13   though.  That would be different; right?  If he communicated the

01:43PM  14   facts to, I don't know, whoever works for him who is not a lawyer,

01:43PM  15   right, then there would be no privilege to that.

01:43PM  16         MR. BRODSKY:  Well, for example, if there are

01:43PM  17   communications --

01:43PM  18         It wouldn't necessarily be privileged if -- if it later

01:43PM  19   it became public knowledge, the subject matter.  I could think of

01:43PM  20   a situation where Mr. Trump says:  Well, I talked to Johnny Jones

01:44PM  21   about the Trump World Tower, and he thinks I should do this.  What

01:44PM  22   do you think I should do?  Okay?  Well:  I told Johnny Jones, you

01:44PM  23   know, there's going to be a fight over -- I -- I can't imagine

01:44PM  24   there would be a fight over the privilege of that document because

01:44PM  25   it goes squarely to Mr. Trump's claims, but what are we going to

01:44PM   1   do?  I mean, he's going to say we can't get his -- we can't use

01:44PM   2   his privileged information, you know, his communications with us

01:44PM   3   in defending ourselves, what is our defense going to be?

01:44PM   4          THE COURT:  Well, I guess my question though is --

01:44PM   5   without getting too far afield -- but on this point maybe it is a

01:44PM   6   waiver if ultimately the case goes to trial; and at that point you

01:44PM   7   have to decide:  Do I want to press my case or not?

01:44PM   8          But in the course of discovery there may be a period

01:44PM   9   where the fact that I had to turn it over to my former client --

01:44PM  10   lawyer, in and of itself was not deemed privileged unless I

01:44PM  11   affirmatively then decide that I want to either, A, use it, or, B,

01:45PM  12   proceed with the litigation, because the Court will deem it a

01:45PM  13   waiver if I don't allow the defendant to use it.

01:45PM  14          MR. BRODSKY:  I would -- I would suggest to the Court

01:45PM  15   that the, you know, that there is a -- there has been a waiver.

01:45PM  16   That doesn't mean if there's no further waiver, that would happen.

01:45PM  17   But putting that to one side, again --

01:45PM  18          THE COURT:  Uh-huh.

01:45PM  19          MR. BRODSKY:  -- I think the appropriate thing to do

01:45PM  20   would be if Mr. Brito believes there are, for example, privileged

01:45PM  21   communications that are still privileged --

01:45PM  22          THE COURT:  Right.

01:45PM  23          MR. BRODSKY:  -- and are the subject matter of

01:45PM  24   confidentiality, then but put the burden on him to come before the

01:45PM  25   Court.

01:45PM   1           I -- I don't want to have every single document produced

01:45PM   2   be marked confidential.  I don't think that's fair or appropriate

01:45PM   3   either.  I don't think Mr. Trump's shown good cause.

01:45PM   4           And the same thing goes for testimony.  You know, there's

01:45PM   5   going to be a lot of stuff that we can justifiably ask him that's

01:46PM   6   not going to have to do with any conversation he had with Mr.

01:46PM   7   Cohen.

01:46PM   8           THE COURT:  Right.

01:46PM   9           MR. BRODSKY:  And those -- you know, that's fair game.

01:46PM  10   So that's why I would -- you know, I agree with the Court that the

01:46PM  11   burden's on him, and let him come before the Court and -- and show

01:46PM  12   why.  And if it -- it will become apparent if Mr. Trump's trying

01:46PM  13   to abuse that by turning things that are not, in fact, within

01:46PM  14   that, you know, narrow universe into something greater, but the

01:46PM  15   burden should be on him.

01:46PM  16           THE COURT:  Now, I guess -- let me broaden the

01:46PM  17   discussion, because I know -- I know you had raised just now --

01:46PM  18   you had raised just now the question of other discovery that you

01:46PM  19   intended to produce to proceed with.

01:46PM  20           Are you going to wait for the completion of discovery to

01:46PM  21   take his deposition, for example?

01:46PM  22           MR. BRODSKY:  No.

01:46PM  23           THE COURT:  Okay.  So then you're going to want his

01:46PM  24   deposition sooner rather than later?

01:47PM  25           MR. BRODSKY:  Yes, Your Honor.

52

01:47PM  1          THE COURT:  Okay.  And then with respect to -- obviously,

01:47PM  2   we'll -- the production we'll have to deal with when we deal with

01:47PM  3   it.

01:47PM  4          But with respect to this issue, ordinarily, of course,

01:47PM  5   there's agreement between the parties to do a confidentiality

01:47PM  6   order, because it's in the plaintiff's interest to get the

01:47PM  7   defendant to move.  Here it's a different scenario.  We have one

01:47PM  8   party who opposes the entirety.  And, alternatively if the Court

01:47PM  9   -- says to the Court:  If you're going to enter one, it should be

01:47PM  10  very narrow.  Right?  And then another party, the plaintiff, who

01:47PM  11  wants a more broader kind of confidentiality agreement.

01:47PM  12         So, number one, I guess to some extent I don't think I've

01:47PM  13  dealt with that unique situation, so I may want to have -- you've

01:47PM  14  probably done the research on this.  Can you put together

01:47PM  15  something pretty quickly on your end?

01:47PM  16         MR. BRITO:  We can submit a brief.  On these legal

01:47PM  17  issues, Your Honor?

01:47PM  18         THE COURT:  Yes.

01:47PM  19         MR. BRITO:  Sure.

01:48PM  20         THE COURT:  So just to make life more efficient, you want

01:48PM  21  to just wait for his brief and then file seven days later?

01:48PM  22         MR. BRITO:  Please.

01:48PM  23         THE COURT:  Does that work?

01:48PM  24         MR. BRITO:  Please.

01:48PM  25         THE COURT:  Why don't we do that.  And then for now, I

PROCEEDINGS RECORDED BY COURTROOM DIGITAL RECORDER

53

01:48PM   1   take it there is no immediate production, like, next week ready to

01:48PM   2   go out; right?  You're still haggling through the what's going to

01:48PM   3   be the scope?

01:48PM   4            MR. BRITO:  This is -- well, this is really the first --

01:48PM   5            THE COURT:  Right.

01:48PM   6            MR. BRITO:  -- (unintelligible) to be clear --

01:48PM   7            THE COURT:  Right.

01:48PM   8            MR. BRITO:  -- because our position was we are not

01:48PM   9   comfortable producing any documents and/or allowing Mr. Trump to

01:48PM  10   sit for a deposition until this confidentiality issue is resolved.

01:48PM  11            THE COURT:  Right.

01:48PM  12            MR. BRITO:  And then separate and apart from that, yes,

01:48PM  13   there's going to be a request-by-request analysis as to -- which

01:48PM  14   we've already engaged in and we have responded, we had a meet and

01:48PM  15   confer with.

01:48PM  16            THE COURT:  Right.

01:48PM  17            MR. BRITO:  But this is really the first hurdle.

01:48PM  18            THE COURT:  Right.  So -- so I guess to some extent, I

01:48PM  19   will resolve the confidentiality order as quickly as I can to move

01:48PM  20   things forward.  And then, you know, if they want to take his

01:49PM  21   deposition sooner rather than later, then you'll just produce him

01:49PM  22   sooner rather than later.

01:49PM  23            And then for -- for -- don't let this issue be a delay.

01:49PM  24   At this point I'll temporarily issue on the transcript of any

01:49PM  25   deposition a protective order until I finalize my work on this

| | | |
|---|---|---|
| 01:49PM | 1 | request.  So that way to the extent that -- |
| 01:49PM | 2 | In other words, don't let this be the reason to not take |
| 01:49PM | 3 | a deposition you otherwise would be agreeable to take.  Does that |
| 01:49PM | 4 | make sense? |
| 01:49PM | 5 | MR. BRITO:  The transcript and the video? |
| 01:49PM | 6 | THE COURT:  Yes. |
| 01:49PM | 7 | MR. BRITO:  I just want to be clear. |
| 01:49PM | 8 | THE COURT:  Right.  Because obviously there's no time |
| 01:49PM | 9 | restriction on that.  Because if you agree -- my point to you is |
| 01:49PM | 10 | if you all agree he has a slot of time to get deposed in two |
| 01:49PM | 11 | weeks, I may not be done with this in two weeks, but go forward, |
| 01:49PM | 12 | because I'll enter an oral protective order that until I finalize |
| 01:49PM | 13 | this, we'll keep things -- everything cannot be disclosed until |
| 01:50PM | 14 | I -- until the parameters have been set forth in the final order. |
| 01:50PM | 15 | MR. BRITO:  Understood, Your Honor.  If I could just |
| 01:50PM | 16 | leave you with one final thing? |
| 01:50PM | 17 | THE COURT:  And obviously on the docket, you all are |
| 01:50PM | 18 | working together, and at some point you're going to have to have |
| 01:50PM | 19 | judicial intervention on the scope of discovery. |
| 01:50PM | 20 | MR. BRODSKY:  That's what I was going to ask, Your Honor, |
| 01:50PM | 21 | if we could get time from, you know, now. |
| 01:50PM | 22 | THE COURT:  Yes. |
| 01:50PM | 23 | MR. BRODSKY:  We would like to set that.  I think we've |
| 01:50PM | 24 | sort of reached an impasse. |
| 01:50PM | 25 | THE COURT:  Oh, okay.  Why don't we do that? |

01:50PM  1   MR. BRODSKY:  Yeah, that would be great.

01:50PM  2   THE COURT:  Because you know you're going to have at

01:50PM  3   least one issue in this case.

01:50PM  4   MR. BRITO:  Judge, I didn't bring my phone with me.  I

01:50PM  5   left it in my car today.  I just don't want to commit to a date

01:50PM  6   without looking at my calendar, but I can let counsel know.

01:51PM  7   THE COURT:  Sure.

01:51PM  8   MR. BRODSKY:  Well, yeah.  I mean, I guess --

01:51PM  9   THE COURT:  It won't be tomorrow, so don't worry about

01:51PM  10   it.  Hold on.  I just had a span of time open up.  August 17th has

01:51PM  11   opened up.  I was going to have something that week.  So

01:51PM  12   August 17th presumptively.  Why don't we do 9:30?  Maedon will

01:51PM  13   remind me of the time, and then -- and then I'll give you a couple

01:51PM  14   hours, and hopefully we can hash out anything you all can't agree

01:51PM  15   upon at that point.

01:51PM  16   MR. BRITO:  Can I communicate back to counsel today --

01:52PM  17   THE COURT:  Right.

01:52PM  18   MR. BRITO:  -- when I get back to my office?

01:52PM  19   THE COURT:  Sure.  We'll go ahead and pencil that in.  If

01:52PM  20   you tell us otherwise, then give me a proposed alternative; but

01:52PM  21   that time period has opened up.

01:52PM  22   MR. BRITO:  Okay.

01:52PM  23   MR. BRODSKY:  The other thing we would ask, Judge, you

01:52PM  24   order the plaintiff to give dates here now, because we don't want

01:52PM  25   to wait to then have another hearing to ask for dates.  So that

01:52PM  1   was part of why we included those materials:  We would like some

01:52PM  2   deadline by which the plaintiff is required to give dates.

01:52PM  3         THE COURT:  Well, rather than that:  When do you want to

01:52PM  4   depose him?

01:52PM  5         MR. BRODSKY:  When he's available.  I'm guessing the

01:52PM  6   problem is not going to be my schedule, but --

01:52PM  7         THE COURT:  If you're willing to accommodate his

01:52PM  8   schedule:  In the next few weeks I can take it?

01:52PM  9         MR. BRITO:  It would be impossible for me to give him a

01:52PM  10  date right now.

01:52PM  11        MR. BRODSKY:  That's what I'm saying.

01:52PM  12        THE COURT:  I'm not going to force you to, but if he

01:52PM  13  wants to take the deposition sooner rather than later, our

01:53PM  14  discovery cutoff in the case is not till February.

01:53PM  15        So how about three proposed dates within the next

01:53PM  16  45 days?  How's that?

01:53PM  17        MR. BRODSKY:  Perfect.  Thank you.

01:53PM  18        THE COURT:  Okay.  So three proposed dates for him to

01:53PM  19  take the deposition within the next 45 days.

01:53PM  20        MR. BRODSKY:  The dates -- the deposition needs to occur

01:53PM  21  within the next 45 days?

01:53PM  22        THE COURT:  Correct.

01:53PM  23        MR. BRODSKY:  Yeah.  Thank you.

01:53PM  24        THE COURT:  Because you told me you didn't want to wait

01:53PM  25  for the production.

01:53PM  1   MR. BRODSKY:  No, we're ready.

01:53PM  2   THE COURT:  So three proposed dates within the next

01:53PM  3   45 days.  Okay?  Communicate that to him.  Obviously, if there's

01:53PM  4   still disagreement, I can resolve it on the 17th; but then

01:53PM  5   hopefully we won't need to do that.  But hopefully by the 17th

01:53PM  6   I'll have --

01:53PM  7   You know, you're going to file something next week --

01:53PM  8   today's Thursday -- by Wednesday?

01:53PM  9   MR. BRODSKY:  Yes.

01:53PM  10   THE COURT:  Make it short.

01:53PM  11   MR. BRODSKY:  Wednesday is fine.

01:53PM  12   THE COURT:  Yes, make it short because it's a

01:53PM  13   straightforward issue.  The issue you're raising is:  Is there

01:53PM  14   really good cause to enter any protective order in this case

01:54PM  15   because of the nature of the case?  And your opposition, you're

01:54PM  16   opposed to it, that's unique.  And then you can respond seven days

01:54PM  17   after he files his.

01:54PM  18   So that takes us then into the week of July 31.  Say so

01:54PM  19   hopefully by August 11th I'll be done with that order; and then so

01:54PM  20   by the time that we get to the -- to that hearing on the 17th, if

01:54PM  21   that works, you'll have that in place, and you'll have that in

01:54PM  22   place for purposes of --

01:54PM  23   Chances are the deposition will be sometime in around

01:54PM  24   then.

01:54PM  25   MR. BRODSKY:  The last point I'd like to raise, Your

58

01:54PM   1   Honor, is sort of the temporary or provisional protective order

01:54PM   2   applies to documents as well?

01:54PM   3            THE COURT:  Yes.  Although, when is your first production

01:54PM   4   going out as a practical matter?

01:54PM   5            MR. BRITO:  Probably sometime next week I would say.

01:54PM   6            THE COURT:  Okay.

01:54PM   7            MR. BRODSKY:  There's one document particularly we would

01:54PM   8   like before President Trump's deposition, and that's the

01:54PM   9   agreement; that's the purported confidentiality agreement.

01:54PM   10           THE COURT:  So you do want to wait for that?

01:55PM   11           MR. BRODSKY:  Well, just -- Mr. Brito says he has it.

01:55PM   12   We'll agree that it will be subject to confidentiality; so if we

01:55PM   13   could have an order that that has to be turned over, you know, in

01:55PM   14   a week?

01:55PM   15           THE COURT:  Does that make it easier for you then?

01:55PM   16           MR. BRITO:  You don't need an order.  I'm agreeing to it,

01:55PM   17   Judge.

01:55PM   18           THE COURT:  And then I'll -- I'll -- everything until I

01:55PM   19   enter a final order is presumptively confidential.  How's that?

01:55PM   20           MR. BRODSKY:  Great.

01:55PM   21           THE COURT:  So that way you won't have that problem.

01:55PM   22           MR. BRODSKY:  Thank you.

01:55PM   23           THE COURT:  And you can rely on that.

01:55PM   24           MR. BRODSKY:  Thank you.

01:55PM   25           MR. BRITO:  Your Honor, I just wanted to leave you with

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
| 01:55PM  | 1  | one final thing, just in relation to the -- one of the last |
| 01:56PM  | 2  | arguments that was raised by counsel is the uniqueness of this |
| 01:56PM  | 3  | privilege issue and the disclosure, the voluntary disclosure. |
| 01:56PM  | 4  | THE COURT:  Right. |
| 01:56PM  | 5  | MR. BRITO:  And the best way for me to provide the Court |
| 01:56PM  | 6  | (unintelligible) is a dispute between employer and employee, where |
| 01:56PM  | 7  | the employee reveals trade secret information to someone else. |
| 01:56PM  | 8  | To the extent that the employer seeks to sue the employee |
| 01:56PM  | 9  | for doing that and the employee says:  Well, let's engage in |
| 01:56PM  | 10 | discovery.  Send me the documents that -- that relate to the |
| 01:56PM  | 11 | actual trade secret information that I provided; not the totality |
| 01:56PM  | 12 | of your business, but I gave a particular component of a trade |
| 01:56PM  | 13 | secret, I disclosed that to your competitor, and then at that |
| 01:56PM  | 14 | point the employer is going to ask the employer:  Give me |
| 01:56PM  | 15 | everything that would fall within the trade secrets, and that no |
| 01:56PM  | 16 | longer is marked as confidential or proprietary or no longer bears |
| 01:56PM  | 17 | the designation of being a trade secret because you disclosed it |
| 01:57PM  | 18 | to me in discovery. |
| 01:57PM  | 19 | THE COURT:  Right. |
| 01:57PM  | 20 | MR. BRITO:  And that's clearly not the case. |
| 01:57PM  | 21 | THE COURT:  You're probably right.  But what was the name |
| 01:57PM  | 22 | of that case?  Sariano?  Soriano? |
| 01:57PM  | 23 | MR. BRODSKY:  The Florida Supreme Court case from which |
| 01:57PM  | 24 | the district courts is Savino vs. Luciano, 92 Southern 2d, 817. |
| 01:57PM  | 25 | And then there are First DCA cases, including the First |

01:57PM   1   Southern case.  610 Southern 2d, 454, is the point cite.

01:57PM   2        The Third District's case is the Tenet Healthcare case,

01:57PM   3   761 Southern 2d, 1140.

01:57PM   4        So there -- my source may be a bit dated, but that will

01:58PM   5   at least give the Court kind of the initial lead on the cases

01:58PM   6   about malpractice and the waiver of privilege.

01:58PM   7        MR. BRITO:  And that's the distinction that I brought up

01:58PM   8   to the Court.  This is not a malpractice case; it is viewed

01:58PM   9   differently in federal court.

01:59PM   10       THE COURT:  This is the holding in the case:  When a

01:59PM   11  party has filed a claim based upon a matter of ordinary privilege,

01:59PM   12  the proof of which will necessarily require that the privileged

01:59PM   13  matters be offered in evidence, we think that he has waived his

01:59PM   14  right to insist that pretrial discovery in the matter is

01:59PM   15  privileged.  The defendant has either expressly or impliedly

01:59PM   16  waived the right to insist upon the privileged nature of the audit

01:59PM   17  and report.

01:59PM   18       I guess that's the operative language; isn't it?  Is a

01:59PM   19  given document that you're requesting of the plaintiff one which

02:00PM   20  will necessarily require him to use; right?

02:00PM   21       MR. BRODSKY:  If he's going to say that he told this

02:00PM   22  privileged confidence that we then disclosed, the first part of

02:00PM   23  the part of that proof is:  I told you a privileged confidence.

02:00PM   24  That goes into evidence necessarily?  How is he going to --

02:00PM   25       THE COURT:  I guess it depends though; right?  It

02:00PM 1   depends.  In other words, we're not going to be able to answer it

02:00PM 2   now obviously, but it depends, I guess, is my reading of it.  But

02:00PM 3   again, I -- we'll take it a step at a time.

02:00PM 4       If you want to include any of that, by the way, because

02:00PM 5   what I'm envisioning -- I might as well tell you now so you can

02:00PM 6   think about it -- is at the very least granting your motion for a

02:00PM 7   protective order with respect to at minimum a privileged thing

02:00PM 8   that you deem to be attorney-client privilege would then be

02:01PM 9   presumptively confidential.

02:01PM 10      And then even if you're right that that there may be a

02:01PM 11  waiver there, the timing of that waiver may be -- may be -- could

02:01PM 12  be put off, right, in other words?  But for purposes of disclosing

02:01PM 13  it, if he deems something to be attorney-client privilege, I think

02:01PM 14  that should be presumptively not disclosable.  And then we can

02:01PM 15  argue it later, but presumptively not disclosable.

02:01PM 16      That would be one category of protection which goes to

02:01PM 17  your point.

02:01PM 18      MR. BRITO:  Discovery versus trial disclosure?

02:01PM 19      THE COURT:  Right.  But then you have the broader -- I

02:01PM 20  think that's easy; although, this little wrinkle of whether that's

02:01PM 21  a waiver or not is something you need to consider.  He's luring

02:01PM 22  you into something, so you have to do this research to make sure

02:01PM 23  he's wrong.

02:01PM 24      MR. BRODSKY:  Or right.

02:01PM 25      THE COURT:  Or right.  Whatever, either way.  Because

02:02PM 1   obviously you don't want to -- you don't want to -- you don't want

02:02PM 2   to screw that up, right, in other words?  But -- so that I think

02:02PM 3   is easy.

02:02PM 4          What's really hard though in this case is anything that

02:02PM 5   goes beyond the scope of attorney-client privilege and you're just

02:02PM 6   dealing with documents that are confidential in a very public

02:02PM 7   case, well, at that point then, at the very least, the presumption

02:02PM 8   of confidentiality may have to be switched, and I may have to have

02:02PM 9   you assert and convince me why this particular document should not

02:02PM 10  be disclosed.

02:02PM 11         That way that -- that gives you a filter.  You're not

02:02PM 12  going to be -- if I do that, and I think I can, then as the

02:02PM 13  plaintiff you're going to recognize that you're then not going to,

02:02PM 14  as a practical matter, be able to do that for everything that gets

02:02PM 15  produced.  You're only going to do that for that -- for something

02:02PM 16  that you think really matters, right, and it would really injure

02:02PM 17  the plaintiff, who is a very public figure; right?

02:03PM 18         I think that may be a solution; to grant you relief under

02:03PM 19  a nontraditional -- in a nontraditional case.

02:03PM 20         MR. BRITO:  And so to follow up on that, and just to kind

02:03PM 21  of put it in my own words, to the extent that there's two buckets

02:03PM 22  of documents, (unintelligible) nonconfidential, which is the

02:03PM 23  easiest, but then the privileged documents, which I would not

02:03PM 24  produce and I would just make the subject of a privilege log.

02:03PM 25         THE COURT:  That's true.  He's basically saying maybe

02:03PM  1   that's -- that's the first thing you should do.

02:03PM  2        MR. BRITO:  Unless and until I -- if -- if I elect that I

02:03PM  3   need to use any of those documents --

02:03PM  4        THE COURT:  Right.

02:03PM  5        MR. BRITO:  -- in the case, and then we've got to wrestle

02:03PM  6   with what Mr. Brodsky brought up --

02:03PM  7        THE COURT:  Right.

02:03PM  8        MR. BRITO:  -- with regard to whether or not I'm making

02:03PM  9   that document unprivileged by its use.

02:03PM  10       THE COURT:  Right.

02:03PM  11       MR. BRITO:  And in the third bucket --

02:03PM  12       THE COURT:  Well, that's clearly true; right?  If you

02:03PM  13  need to use it, right, if you need to use it, then you're going to

02:03PM  14  have to make that call.

02:03PM  15       MR. BRITO:  Right.  And then -- and the third component

02:03PM  16  is the confidential documents, which we'll just have to deal with.

02:03PM  17  And I -- and I'm requesting be continued to be covered under

02:04PM  18  confidentiality.  I think what Your Honor is (unintelligible) is:

02:04PM  19  Fine.  But if it's challenged, then I'm going to look to you, Mr.

02:04PM  20  Brito, to explain to me why it is that it bears that designation.

02:04PM  21       THE COURT:  No.  What I'm saying is you're the one that

02:04PM  22  needs to challenge it.  You're the one that needs to raise it;

02:04PM  23  because ordinarily it's presumptively confidential.  Simply by you

02:04PM  24  marking it confidential in a traditional agreement, all right, you

02:04PM  25  mark it conidential, that that puts the burden on the the

02:04PM  1   receiving party to affirmatively seek relief; right?

02:04PM  2        MR. BRITO:  I'm not disagreeing with you.  What I'm

02:04PM  3   saying --

02:04PM  4        THE COURT:  Here it's presumptively, one, nothing would

02:04PM  5   be presumptively confidential other than privilege; right?  And

02:04PM  6   then -- unless you then seek relief to make it confidential.

02:04PM  7   Okay?

02:04PM  8        MR. BRITO:  I guess we're saying the same thing two

02:05PM  9   different ways.

02:05PM 10        THE COURT:  It's a burden in your case though.

02:05PM 11        MR. BRITO:  I agree with the burden, but I think

02:05PM 12   mechanically I wasn't assuming there was a presumption.  But if I

02:05PM 13   designate a document as confidential, the -- the defendant has the

02:05PM 14   right to question my designation -- just to question my

02:05PM 15   designation anything (unintelligible), then I bear the burden to

02:05PM 16   come to you and explain why I designated it as confidential --

02:05PM 17        THE COURT:  Oh, I see, yes.

02:05PM 18        MR. BRITO:  -- because in the interim --

02:05PM 19        THE COURT:  Right.

02:05PM 20        MR. BRITO:  -- in the interim there's going to be another

02:05PM 21   dispute as to:  Well, produce that document.  And it's now -- it's

02:05PM 22   not confidential.  I eventually come before the Court and I

02:05PM 23   convince you that it is, that's too late.

02:05PM 24        I think the process is it's confidential, I'm still

02:05PM 25   producing it to the other side under confidentiality, they

02:05PM  1   question my designation on a document-by-document basis, then I

02:05PM  2   have the to bear the burden that that designation is appropriate

02:05PM  3   and it should be maintained.  If it is, it stays and it's

02:05PM  4   confidential; if it's not, then it's not.

02:05PM  5          THE COURT:  So it's not a cat out of the bag kind of

02:05PM  6   thing?

02:05PM  7          MR. BRITO:  Correct.  That's the mechanics that I was

02:05PM  8   kind of going through in my head.

02:06PM  9          THE COURT:  All right.  Okay.  Well, that's kind of what

02:06PM  10  I'm thinking.  But again, I'm not going to make -- I'm going to

02:06PM  11  consider what --

02:06PM  12         Because his argument is there shouldn't be one at all.  I

02:06PM  13  agree only that that's viable.  That's a viable argument here,

02:06PM  14  except for attorney-client privilege documents because just

02:06PM  15  because he's a public figure, that doesn't mean he's not entitled

02:06PM  16  to privilege; right?  And so that's a different animal.  That's

02:06PM  17  one bucket, as you point out.

02:06PM  18         It's on the nonprivilege documents that you believe are

02:06PM  19  confidential is what we're really going to have a fight.  His

02:06PM  20  argument is unless it's privileged, there is no confidentiality;

02:06PM  21  right?  I can do whatever I want with it, and it's out there.

02:06PM  22         Your argument:  It should be protected.

02:06PM  23         MR. BRITO:  Correct.

02:06PM  24         THE COURT:  So his argument is:  There's no good cause to

02:06PM  25  do that.  And so that -- that I need to resolve in that order.

02:06PM 1   Okay?

02:06PM 2           MR. BRODSKY:  Thank you, Judge.

02:06PM 3           THE COURT:  All right.  Thank you.

02:06PM 4           MR. BRITO:  Thank you for your time, Your Honor.

02:07PM 5           THE COURTROOM DEPUTY:  All rise.  Court's now adjourned.

02:07PM 6           THE COURT:  So we agreed August 17th, unless --

02:07PM 7           MR. BRITO:  Unless --

02:07PM 8           THE COURT:  We'll pencil it in.

9           (Proceedings concluded.)

10                    C E R T I F I C A T E

11   I certify that the foregoing is a correct transcript from the

12   digital audio recording of proceedings in the above-entitled

13   matter.

14

15   Dated:  8/19/23            s/Vernita Allen-Williams, RMR, FCRR

16

17

18

19

20

21

22

23

24

25