# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 23-CV-21377-DPG


PRESIDENT DONALD J. TRUMP,        ) PAGES: 1 - 113
                                  )
              PLAINTIFF,          )
                                  ) DATE OF PROCEEDINGS:
                                  ) AUGUST 17, 2023
                                  )
         VS.                      ) 10TH FLOOR
                                  ) JAMES LAWRENCE KING
                                  ) FEDERAL JUSTICE
MICHAEL D. COHEN,                 ) BUILDING.
                                  )
_____DEFENDANT._____ )



TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING
OF THE DISCOVERY HEARING BEFORE EDWIN G. TORRES,
UNITED STATES CHIEF MAGISTRATE JUDGE,
AT 99 N.E. FOURTH STREET,
MIAMI, FLORIDA, 33132.


APPEARANCE OF COUNSELS
FOR THE PLAINTIFF:          ALEJANDRO BRITO, ESQ.,
                            BRITO, PLLC
                            2121 PONCE DE LEON BOULEVARD
                            SUITE 650
                            CORAL GABLES, FLORIDA  33134

FOR THE DEFENDANT:          BENJAMIN HENRY BRODSKY, ESQ.,(VIA ZOOM)
                            MAX AARON EICHENBLATT, ESQ.,
                            BRODSKY FOTIU-WOJTOWICZ, PLLC
                            200 SE 1ST STREET
                            SUITE 400
                            MIAMI, FLORIDA  33131

Transcribed By:
Quanincia S. Hill, Registered Professional Reporter
Federal Official Court Reporter
400 North Miami Avenue
Miami, Florida  33128

Office No.:  (305)523-3634  E-mail:  Quanincia_hill@flsd.uscourts.gov

<u>APPEARANCES-CONTD.</u>

FOR THE DEFENDANT      E. DANYA PERRY, ESQ.
                           LILIAN MARGARITA TIMMERMANN, ESQ.
                           E. DANYA PERRY PLLC
                           157 EAST 86TH STREET, 4TH FLOOR
                           NEW YORK, NEW YORK   10028

*<u>Transcribed By:</u>*
*Quanincia S. Hill, Registered Professional Reporter*
*Federal Official Court Reporter*
*400 North Miami Avenue*
*Miami, Florida   33128*

*Office No.:  (305)523-3634  E-mail:  Quanincia_hill@flsd.uscourts.gov*

1              (Whereupon, this commences the transcription of the

2      electronic recording of the above-styled proceedings.)

3              **THE COURTROOM DEPUTY:**  Calling case *President Donald J.*

4      *Trump versus Michael Cohen*, case number 23-21377, civil, Judge

5      Gayles.

6              Counsel, please state your appearances for the record,

7      starting with the plaintiff.

8              **ATTORNEY BRITO:**  Good morning, Your Honor.  Alejandro

9      Brito on behalf of the plaintiff.

10             **ATTORNEY PERRY:**  Good morning, Your Honor.  Danya Perry

11     on behalf of Mr. Cohen.

12             **ATTORNEY EICHENBLATT:**  Good morning, Your Honor.  Max

13     Eichenblatt on behalf of Mr. Cohen.

14             **THE COURT:**  Good morning.  Everybody.

15             **ATTORNEY BRODSKY:**  And good morning, Your Honor.

16             **THE COURT:**  Oh, I forgot.

17             **ATTORNEY BRODSKY:**  Ben Brodsky by telephone.  Thank you

18     for allowing me to appear remotely today.

19             **THE COURT:**  All right.  Good morning.

20             This is a discovery hearing in the case which you

21     requested by that plaintiff, or no, by the defendant.  Okay.  I

22     know that there's a pending issue from last time having to do

23     with the motions for the request for protective order.  The

24     parties have briefed the issue and I'll be issuing an order

25     soon on that.  I found that the plaintiff's proposal was too

1    restrictive and the defendant's proposal was too permissive.

2    So I'm trying to bridge the gap between the two.  And of

3    course, once we enter the confidentiality order, that will

4    govern the case, it will -- it can be modified based upon

5    circumstances.  So we'll have to address that.

6         Okay.  Turning then over to the counsel for the

7    defendant, what's the issue you wish to raise today?

8         **ATTORNEY PERRY:**  Your Honor, may I remain seated.  I

9    think it's going to be a slog through a number of discovery

10   requests.

11        So Your Honor, we're here today because having brought

12   a broad sweeping $500 million action against my client, the

13   plaintiff in this case has put up any number of roadblocks to

14   discovery that we wish to take, both with respect to document

15   discovery and with respect to his upcoming deposition that he's

16   currently scheduled for for September the 6th.

17        **THE COURT:**  September the 6th.  Okay.

18        **ATTORNEY PERRY:**  Yes, Your Honor.

19        **THE COURT:**  Three weeks from today.

20        **ATTORNEY PERRY:**  The first issue before Your Honor

21   today relates to its resistance to our reasonable

22   proportionment discovery requests for documents.  We have, I

23   believe, some agreement with respect to a number of them, but

24   having met and conferred, weren't able to come to terms with

25   respect to the bulk of them.  And I'm certain we'll go through

1    many of them, if not all of them, point by point.  But

2    generally speaking, our discovery is relevant to explore four

3    key issues in the case and Your Honor will hear this I'm sure

4    time and time again as we go through the specific requests.

5    But first, confidentiality.  What information's really

6    confidential and at what time.

7         Our theory of the case, theory of defense, is that many

8    of the things or all of the things that Mr. Cohen said really

9    cannot be confidential because they were broadly and publicly

10   known.

11        **THE COURT:**  But I don't understand the -- if the --

12   does this relate to the protective order issue?

13        **ATTORNEY PERRY:**  No, Your Honor.  Thank you for making

14   a distinction.

15        No.  What we're talking about are the allegations in

16   the case, some of them relate to Mr. Trump's claim that

17   Mr. Cohen breached his duty of confidentiality and his

18   fiduciary obligations as his attorney.  And so what we're

19   arguing, one of our defenses here is that nothing that

20   Mr. Cohen said breaches any obligations because everything was

21   widely and publicly known.  So there are specific examples, I

22   mean, about specific incidents that happened while Mr. Cohen

23   was working for the Trump Organization, and that is discussed

24   in Mr. Cohen's book.  And there's an allegation that this

25   constitutes a breach of privilege; whereas our defense will be,

1   actually, no, that was reported else where and it's publicly

2   known.  So that's just a one broad defense.  But it does come

3   in time and again with respect to specific requests.

4          **THE COURT:**  Okay.  Give me an example.  Let me pull up

5   the materials here.

6          **ATTORNEY PERRY:**  Your Honor, it might be more simple to

7   go through.  I think there's just about 25 specific requests

8   were better in context.

9          **THE COURT:**  Right.  Let's do this.

10          **ATTORNEY PERRY:**  And so may be I'm wasting my breath

11   and your time by giving the overview because of course it's

12   really the questions will be in the weeds here.

13          **THE COURT:**  Right.  Let me pull it up.  I know I saw

14   them.  Hold on one second.  I'm sorry.

15          **ATTORNEY PERRY:**  Of course.

16          **THE COURT:**  Oh, I know what's happening.

17          Okay.  Here we are.

18          Okay.  All right.  So which request am I looking for,

19   request for production?

20          **ATTORNEY PERRY:**  So, let's see, we have agreement on a

21   number of them.  So I believe the first group of documents that

22   -- where we had disagreement --

23          **THE COURT:**  Okay.

24          **ATTORNEY PERRY:**  -- are, let's see, Requests 2 through

25   4 where we are seeking documents reflecting Mr. Cohen's

1   purported attorney-client and employment relationships with

2   Mr. Trump and two entities, the organization and the campaign.

3          **THE COURT:**  All contracts, agreements from 2006 to the

4   present reflecting existence of an attorney-client and/or

5   employment relationship.

6          Is that the first one you're talking about?

7          **ATTORNEY PERRY:**  Yes, Your Honor.

8          **THE COURT:**  And what was the objection?

9          **ATTORNEY PERRY:**  I'm not certain that it -- Mr. Brito

10  did produce a purported confidentiality agreement, an NDA, that

11  were the subject, no doubt, of further discussion.  But that's

12  all that they've produced.  And I believe that's all they plan

13  to produce.

14         Just to be clear, we've gotten one production of five

15  documents, most of which consist of pages taken -- of from

16  Mr. Cohen's books of photos that were taken with an iPhone or

17  something.  So there's really not been much to date.

18         We've been told that we would get additional documents

19  on a rolling basis, but have been given no deadline or no date

20  certain why which we will receive those.  And so some of the

21  relief that we will -- we seek from Your Honor is a deadline so

22  that we can have those in advance of the deposition scheduled

23  scheduled for September 6th.

24         But we have met and conferred about Requests 2 through

25  4.  And I don't want to misstate the nature of the objection.

1  I'm not certain what it is.  So...

2        **THE COURT:**  Okay.  Have all documents been produced for

3  2 through 4?  Is it just that one document?

4        **ATTORNEY BRITO:**  No, Your Honor.  It is the contention

5  that they're not clear as to my objection.  It's to line about

6  the fact that Mr. Brodsky wrote an e-mail summarizing where he

7  we confer or he articulates exactly what was discussed --

8        **THE COURT:**  Okay.  Do I have that e-mail?  It is

9  something I can work off of?

10       **ATTORNEY BRITO:**  It is, Your Honor.  It is -- I think

11  it's number 3.  I don't necessarily agree with the totality of

12  the e-mails, but they understand the nature of the objection

13  because it was discussed with Mr. Brodsky.  I have three in my

14  materials that were submitted by the defendant.  It's the

15  e-mail dated July 18th.

16       **THE COURT:**  All right.  I can look at your material.

17  This is the defendant's materials.

18       **ATTORNEY BRITO:**  Yes, Your Honor.

19       **THE COURT:**  Yada, yada, yada.

20       Okay.  While I look that up, tell me what the nature of

21  the issue is.

22       **ATTORNEY BRITO:**  The issue here is, as it relates to

23  number 2, is they've asked for a contract that would establish

24  the existence of an attorney-client or employee relationship

25  between Mr. Cohen and Mr. Trump --

1       **THE COURT:**  Right.

2       **ATTORNEY BRITO:**  -- fair game with respect to the

3   contract that's been produced.  We believe they've had it all

4   along.  But nevertheless, we produced the confidentiality

5   agreement that was signed by both parties.  The objection, as

6   it relates to the balance of request number 2, is that it asks

7   for all contracts, agreements of four other documents from 2006

8   to the present reflecting the existence of any attorney-client

9   relationship.  So that would be all communications from my read

10  of the way that this is worded, just any communication between

11  the two of them that would stem from an attorney-client

12  relationship would be other documents establishing that

13  relationship.

14      So what I communicated to Mr. Brodsky is there's no

15  dispute that Mr. Cohen, I don't believe there ought to be a the

16  dispute that Mr. Cohen was the attorney.  And there is a

17  written employment agreement separate and apart from him

18  serving as counsel, which has been produced.  What other

19  documents do you need to establish what I believe to be a

20  non-controversial fact that is essentially an undisputed fact,

21  Mr. Cohen was Mr. Trump's attorney.  What else do we need to

22  establish as it relates -- there's other document requests that

23  are going to talk about specifics.

24      **THE COURT:**  Well, as to -- but as to the -- I

25  understand your point as to the broader point.  But as to the

1    creation, modification or termination had of an attorney-client

2    relationship between Cohen and the three entities identified,

3    have you produced all of those?

4           **ATTORNEY BRITO:**  Creation, yes, because it's one

5    agreement.  There is no separate retention letter concerning

6    his employee.  Mr. Cohen resigned.  So there is no termination

7    letter or termination agreement.  And is it was more

8    termination, I'm sorry.

9           **THE COURT:**  Modification, was there.

10          **ATTORNEY BRITO:**  I don't believe there's any

11   modification.  We have Mr. Cohen's personnel file.  And that is

12   going -- to the extent that that captures not just the

13   attorney-client but also the employment relationship, again,

14   that's at a step -- that's a separate request.

15          **THE COURT:**  Was that produced?

16          **ATTORNEY BRITO:**  It has not yet been produced.  I'm in

17   the process of obtaining it.  We did not object to that

18   request.  So that's -- that's where we stand.  But --

19          **THE COURT:**  Okay.  So from your vantage point, it's the

20   other documents at issue?

21          **ATTORNEY BRITO:**  That's my -- that's articulated in

22   Mr. Brodsky's e-mail that that's exactly what I told him my

23   issue was.  At the bottom of page one of the e-mail that he

24   crafted on July 18th, it says, "plaintiff does not object to

25   providing contracts or agreements reflecting the existence of

1    an attorney-client or employment relationship between the

2    parties.  But it does object to a request for, quote, other

3    documents.  That's overbroad.

4          **THE COURT:**  Okay.  Turning back to the plaintiff.

5          **ATTORNEY PERRY:**  I don't believe that actually --

6          **THE COURT:**  Is that the issue?

7          **ATTORNEY PERRY:**  Yes, Your Honor.  I don't believe we

8    did receive an employment agreement.  So if such a thing

9    exists, we --

10         **ATTORNEY BRITO:**  Wholeheartedly, I have produced the

11   employment agreement.  It's the employment agreement,

12   non-confidentiality agreement.  And then I've produced,

13   contrary to what every counsel stated, at least 50-something

14   odd pages, because one of the requests that they asked for was

15   identify where in the book Mr. Cohen made statements that would

16   be in violation of the rights that my client has by contract or

17   otherwise.  So we sent them those specific pages after

18   Mr. Brodsky and I spoke.

19         So they do have the employment agreement.  And it's not

20   -- I have a copy of it in front of me right now.  I'm happy to

21   give them another one.  But again, I think they had it all

22   along, Mr. Cohen, I'm sorry, had it all along and we had to

23   produce it.

24         **THE COURT:**  Okay.

25         **ATTORNEY PERRY:**  May be this is just a labelling

```
1    problem.  We do have an agreement.  We believe it's just a
2    confidentiality agreement.  If that's all it is, then that
3    works.
4         ATTORNEY BRITO:  It's just for purposes of candor,
5    Judge, the document's entitled Employment Agreement of
6    Confidentiality.  It's the same document we're speaking about.
7         ATTORNEY PERRY:  But it's not the terms of employment.
8    It's the terms of confidentiality.  But in any event, it's --
9    if that's all there is.
10        So we would -- I think there's -- there's -- what we're
11   asking for in this request or request number 2 is -- are
12   documents with respect to relationship between Mr. Cohen and
13   Mr. Trump.  What they have for you is just an agreement between
14   Mr. Cohen and the Trump Organization.  So that is an important
15   distinction here.  And so we do stand on our request for
16   anything that reflects a relationship between Mr. Cohen and
17   Mr. Trump, who is the only plaintiff here.
18        THE COURT:  He's saying there's nothing else?
19        ATTORNEY PERRY:  So if he's saying that, I mean, we --
20        THE COURT:  He that in his e-mail.  So there's nothing
21   else.  Obviously, you could verify that.  You're not obviously
22   seeking to compel the other documents part because that would
23   be overbroad, wouldn't it?
24        ATTORNEY PERRY:  Your Honor, no.  We're not.  We will
25   accept that representation.
```

1          **THE COURT:**  Okay.

2          **ATTORNEY PERRY:**  And I do think a lot of the other

3    requests would capture the information.

4          **THE COURT:**  I believe you can verify that because

5    number one, you're going to depose Mr. Trump; number two,

6    you're going to depose the person with the most knowledge

7    probably in the organization, you know, or somebody in HR or

8    somebody.  So if that turns out to be incorrect, then you're

9    also going to get a copy of the entire personnel files.  So you

10   would think if there was anything else, it would be there too.

11         So subject to verification, if that's all he has,

12   that's all he has.  Now, that may if that may help your case,

13   it doesn't matter.  I'll accept the representation that there's

14   no other agreement that follows.  My categorization of these

15   requests is any documents that created, modify, or terminate an

16   employee relationship between the parties.  So it's a much more

17   of a formal document.  And then obviously, you have a lot of

18   other requests to deal with the issues with the case itself.

19   So that's 2 through 4.  I'm fine with that representation.

20         What's the next issue?

21         **ATTORNEY PERRY:**  So the next one is number 5 and 6.

22         **THE COURT:**  Okay.

23         **ATTORNEY PERRY:**  These relate to contracts and

24   agreements between Mr. Trump, Trump Organization, campaign and

25   Cohen and Associates.  So this is just --

14

```
 1        THE COURT:  Now, in fairness, I don't -- do I have in

 2   your materials, er Mr. Brito, that you include your response?

 3        ATTORNEY BRITO:  What we did, Your Honor is we --

 4        THE COURT:  Did you formally respond or did we have an

 5   ambiguous response?

 6        ATTORNEY BRITO:  No.  No.  There there's a formal

 7   response that's that was served timely.  And that was included

 8   in the materials that defendant's counsel was charged with the

 9   responsibility of sending over to you.  So it was a packet of

10   materials that that were forwarded to the Court which included

11   our response and the cases that we relied upon.

12        ATTORNEY EICHENBLATT:  It's in Defendant's 2, Your

13   Honor, in our response materials.

14        THE COURT:  I see it now.  Okay.

15        Well, I guess I should go back a step to 2 to 4.  I get

16   there's -- one could interpret that as being an objection.  So

17   let me go back to 2 to 4.

18        As to number 4, I guess there's an objection there that

19   you -- your request defined it as Trump Campaign.  Is that --

20   is that -- should I worry about that particular request?  Did

21   you mean the Trump -- cause obviously -- did he have an

22   arrangement -- is the Trump Campaign an actual entity?

23        ATTORNEY PERRY:  It is.  And --

24        THE COURT:  And it's defined as an entity?

25        ATTORNEY PERRY:  It is an entity.
```

1          **THE COURT:**  Okay.

2          **ATTORNEY PERRY:**  And is there are allegations with

3     respect to the campaign.  And so that's what we've requested.

4     And what I understood Mr. Brito to be saying is that there are

5     no responsive documents.

6          **THE COURT:**  But as to number 4, I guess you objected on

7     that basis.

8          **ATTORNEY BRITO:**  I did, because it's a bit different

9     than what I just heard.  And I'll read to you from the actual

10    request for production of the documents, definition number 21,

11    which says the term, quote, Trump Campaign, closed quote,

12    refers to the Trump Campaign For President For the United

13    States and Donald J. Trump For President, Inc.  I don't

14    understand what the Trump Campaign For President of the United

15    States is, if that's a distinction, if that a long term for an

16    entity.  I understand the Donald J. Trump for President, Inc.

17    to be an entity.  But not the Trump Campaign For President of

18    United States, I can't even and don't understand what that

19    would refer to, who that would capture, hence the reason for my

20    objection because it's not limited to just this request, Your

21    Honor.  There are, I believe, other requests to this Trump

22    Campaign.

23         **THE COURT:**  As to this request though, the issue is

24    does any entity that relates to a campaign have an agreement

25    with Mr. Cohen of any kind?

1    **ATTORNEY BRITO:**  No, Your Honor.

2    **THE COURT:**  Okay.

3    **ATTORNEY BRITO:**  It's only one.  But again, in the

4    interest of making sure they didn't waive any positions --

5    **THE COURT:**  That's fine.  Okay.  So number 4 needs to

6    be -- I'll just object to the objections.  I'll object.

7    I'll just overrule the objection so you can make clear

8    that there is no other document as it relates to the 'Inc.'

9    that you referred to or any other organization under which

10   Mr. Trump ran a presidential campaign.  How's that?

11   **ATTORNEY BRITO:**  And Your Honor, that's fine, Your

12   Honor.  And for purposes of context, just so you're familiar,

13   each response that you're reviewing, were before, I believe we

14   came before you on the confidentiality issue.  Hence the reason

15   why you're also going to see objection with respect to

16   confidentiality.  We had not yet teed that up or received a

17   from you.

18   **THE COURT:**  I got you.

19   Okay.  All right.  Now.  We move on with that

20   clarification.

21   So you've said the next one is 5 and 6.  Is that the

22   one.

23   **ATTORNEY PERRY:**  Yes, Your Honor.

24   **THE COURT:**  Okay.

25   **ATTORNEY PERRY:**  So that's just meant to capture, I

```
 1    mean, you know, the objection here is --
 2          THE COURT:  Is that any different though, I mean,
 3    fundamentally?
 4          ATTORNEY PERRY:  Fundamentally, no.  So I trust that
 5    their representation will be the same.
 6          THE COURT:  Right.  Next one.
 7          ATTORNEY PERRY:  The next one we get to jump all the
 8    way to 18.
 9          THE COURT:  Excellent.
10          ATTORNEY PERRY:  And this relates to any
11    confidentiality agreements prepared by Mr. Cohen in the course
12    of his employment.  And here is --
13          THE COURT:  So any -- just so I understand, the way I
14    read it is you're requesting of any -- if Mr.  Cohen drafted
15    any non-disclosure agreement for somebody, you're asking for
16    that?
17          ATTORNEY PERRY:  Yes.
18          THE COURT:  How is that relevant?
19          ATTORNEY PERRY:  Our argument is that --
20          THE COURT:  My understanding is that they're reliable.
21    There are a lot of nondisclosure and confidentiality agreements
22    that may have been used by the plaintiff.  So then -- as
23    opposed to just a one.  So now that we have -- so understanding
24    that, along with the many that he may have entered into, why
25    would they need to produce all of them?
```

1          **ATTORNEY PERRY:**  We are going to be questioning

2     the authenticity of the NDA that plaintiff has produced.  And

3     is --

4          **THE COURT:**  But how would they document that Mr. Cohen

5     drafted help in that regard --

6          **ATTORNEY PERRY:**  It --

7          **THE COURT:**  -- involving another person.

8          **ATTORNEY PERRY:**  It tends to show that he was the

9     drafter of these NDAs.  And there's certain formats to them.

10    And he, as the person responsible for getting them done and

11    getting them signed, we believe that it's, of course, our

12    position that he did not sign his own.  He was the person

13    ultimately responsible for these things and so would, you know,

14    be in charge of not just drafting them but providing them to

15    the employee, making sure they get signed, putting them in the

16    file.  And so if there are --

17         **THE COURT:**  He's going to deny that he entered into a

18    non-disclosure agreement is what you're saying.

19         **ATTORNEY PERRY:**  He certainly does not remember doing

20    so and believes that he did not.  And so this was part of his

21    job.  And he was pretty mindful of that when he was presented,

22    or he was asked to sign one.  And in his memory, this is a long

23    time ago, he resisted.

24         **THE COURT:**  Because when did he enter into a

25    relationship with the Trump Organization to begin with?

1          **ATTORNEY PERRY:**  I believe it was 2007 or so.

2          **ATTORNEY BRITO:**  I think that's right.

3          **THE COURT:**  And what's the day that he.

4          **ATTORNEY PERRY:**  Maybe 2006, Your Honor.

5          **THE COURT:**  Okay.

6          **ATTORNEY PERRY:**  I don't have it in front of me.

7          **THE COURT:**  What's the date of the agreement,

8    Mr. Brito?

9          **ATTORNEY PERRY:**  January '07.

10          **ATTORNEY BRITO:**  June 7th, 2007.

11          **THE COURT:**  Okay.

12          **ATTORNEY PERRY:**  So, I mean, that's really it.  It

13   shows this was part of his responsibilities.

14          **THE COURT:**  I guess I'm not understanding.  So if he's

15   -- had starts working for the guy in 2007, they're saying that

16   then it would have been his obligation on day one to draft the

17   agreement for himself.  Is that what you're saying?  Would

18   there have been a lawyer already working for Mr. Trump?

19          **ATTORNEY PERRY:**  I'm not -- I think he was the only

20   game in town at that point.

21          **THE COURT:**  Well, in other words, there's no dispute,

22   right, that Mr. Trump would have had many lawyers prior to

23   2007?

24          **ATTORNEY PERRY:**  I'm not sure exactly what his initial

25   date of employment is.  And again, I don't think the agreement

1    we have reflects the terms of his employment or th start date

2    or anything else other than purportedly and NDA.  So that's

3    just one of the issues that we're exploring.  We're entitled to

4    -- to documents in support of our contention that this was not

5    an NDA that he signed and that it was, you know -- that's

6    something we really do need to explore.  We're at this point,

7    it's difficult to prove that negative, but he did not signe it.

8           **THE COURT:**  Are you getting those or requesting by

9    signature?

10          **ATTORNEY BRITO:**  Requesting -- well, we do not have the

11   original.  We've requested it.

12          **THE COURT:**  They've not produced it.

13          **ATTORNEY PERRY:**  It's not yet produced.

14          **THE COURT:**  That's not what this is talking about,

15   right, cause this is talking about documents prepared by him in

16   the scope of his employment.

17          **ATTORNEY PERRY:**  Your Honor, of all the requests, I,

18   you know, don't --

19          **THE COURT:**  I'm not finding the relevance of it.  But

20   that doesn't mean that you won't be able to show me down the

21   road or you -- that doesn't mean that you might not be able to

22   identify in particular -- I mean, he might have a thousand

23   non-disclosure agreements.  So you're not seriously asking him

24   to produce a thousand non-disclosure agreements for everybody

25   from the janitor up to the people at the highest level, right?

1        **ATTORNEY PERRY:**  So we'd be prepared to put this one on

2    ice for now and see what develops.

3        **THE COURT:**  As for now, I'll sustain the objection.

4    But you can come back to it once a showing is made that the

5    objection should be revisited or that you want to narrow the

6    request --

7        Okay.  The next ones.

8        **ATTORNEY PERRY:**  The next ones are 26 and 27.

9        **THE COURT:**  Okay.

10       **ATTORNEY PERRY:**  Relating to documents with respect to

11   -- that -- that relate to or reference Mr. Cohen's involvement

12   in the criminal case brought by the District Attorney of

13   Manhattan.

14       For us, this really goes to the plaintiff's motive for

15   bringing this lawsuit.  A lot of these issues have been very

16   public facing for years.  And it was within a week or so

17   approximately ten days, after the filing of the indictment in

18   the Manhattan District Attorney's case that the plaintiff chose

19   to bring this lawsuit against Mr. Cohen.

20       **THE COURT:**  So your request is non-privilege

21   correspondence or communications with others relating to or

22   referencing Mr. Cohen's involvement and the criminal

23   proceedings brought against you, right, by the Manhattan

24   District Attorney from February 1, 2023 until the present.

25       Okay.  So this would be sort of, for example, he has

```
 1   internal corporate communication with somebody in the Trump
 2   Organization about Mr. Cohen --
 3           ATTORNEY PERRY:  Correct.  Appearing as a witness --
 4           THE COURT:  Appearing as a witness?
 5           ATTORNEY PERRY:  Correct.
 6           THE COURT:  Okay.
 7           ATTORNEY PERRY:  And perhaps concocting ways to get
 8   back at him given that the judge in that case issued some sort
 9   of not a gag order per se but admonished him against
10   intimidating witnesses.  And so he then filed this lawsuit.
11           So any communications reflecting his motives.
12           THE COURT:  And that would tend to show what?
13   Referencing Mr. Cohen's involvement, that would tend to show
14   what from your perspective?
15           ATTORNEY PERRY:  That he brought this lawsuit as
16   retribution or retaliation for Mr. Cohen's involvement as a
17   witness in that case is not because he has a legitimate gripe
18   with him relating to the claims in the case.
19           THE COURT:  Okay.
20           ATTORNEY PERRY:  It's motive, Your Honor.
21           THE COURT:  Okay.  So then on that one, I'll ask for a
22   response from them.
23           ATTORNEY BRITO:  Yes, Your Honor.
24           With respect to these communications, as you may
25   surmise, and I may confirm, Mr. Trump is obviously someone who
```

23

```
 1    has a lot of public statements and social media platforms as
 2    well just from a public standpoint.  To the extent that he has
 3    been vocal about his defense in any of the proceedings brought
 4    against him, that is going to be captured by media outlets,
 5    social media platforms, whether set by you or otherwise, that
 6    would be captured by this.  And I think the problem with this,
 7    the requests, as a starting point, is that the way that it's
 8    written is -- it's extremely broad.  Because it talks about the
 9    request for any communications, which reference his involvement
10    in the criminal proceedings.  And the concern that we have is
11    the breadth of that.  And I don't want to get into --
12             THE COURT:  Why is that so broad?  I don't understand.
13             ATTORNEY BRITO:  Because of the fact that it's --
14             THE COURT:  It's very limited in time.
15             ATTORNEY BRITO:  I don't take issue with the time.
16             THE COURT:  All right.
17             ATTORNEY BRITO:  I'm taking issue with --
18             THE COURT:  It requires a specific reference to Cohen
19    himself, and is obviously a Twitter or whatever of social media
20    thing is publicly available.  But I guess what they're looking
21    for is internal correspondence within the organization.
22             ATTORNEY BRITO:  My apologies.  I didn't mean to
23    interrupt.
24             THE COURT:  Internal e-mails or communications with a
25    non-privileged nature with somebody within his organization
```

1    that identified Mr. Cohen and the Manhattan proceeding.  I

2    guess that's specific enough, don't you think?

3            **ATTORNEY BRITO:**  As you worded it, it is.

4            **THE COURT:**  Okay.

5            **ATTORNEY BRITO:**  As I read the request, I differed as I

6    communicated to the Court.

7            **THE COURT:**  Okay.

8            **ATTORNEY BRITO:**  If we're talking about simply internal

9    as opposed to what's in the public eye, and the defendants have

10   the ability to obtain it and utilize as they deem appropriate,

11   with that refining of the request, I'm happy to respond to that

12   request because my understanding is that the answer will be

13   none.

14           **THE COURT:**  Okay.

15           **ATTORNEY BRITO:**  I will confirm that.  But if there are

16   documents, we will produce those internal communications that

17   are non privileged.  I'm just very sensitive to the fact that I

18   don't engage in criminal defense work and I don't want to

19   overstep the line in light of the fact that there are criminal

20   proceedings.  I've been asked to -- any waiver of Fifth

21   Amendment right --

22           **THE COURT:**  Right.

23           **ATTORNEY BRITO:**  -- I need to be very mindful of that.

24           **THE COURT:**  If he sent an internal communication to the

25   janitor about Mr. Cohen related to the Manhattan proceeding,

1    you can try to fight the privilege, but I don't think that

2    would fall.  But the bottom line is, at least you have to see

3    if there is anything and then fight over whether or not it's

4    privileged or not.

5            **ATTORNEY BRITO:**  That would be above my pay grade in

6    the first place to argue that that privileges; number 2 --

7            **THE COURT:**  Right.  So first identify the documents.

8            **ATTORNEY BRITO:**  Fair.  With the Court's refining of

9    that request, I'm fine.

10           **THE COURT:**  Okay.  Yeah.  This one would include

11   obviously internal correspondence, e-mail.  It would include

12   actual correspondence between anybody of the non-privileged

13   communications, so no attorney-client, obviously.  It's not

14   responsive and it further limits the time period.  Why wouldn't

15   it be the date of the filing of the lawsuit?

16           **ATTORNEY PERRY:**  I mean, logically, he could continue

17   to make the same types of statements about why he's pressing,

18   continuing to prosecute this case.

19           **THE COURT:**  Well, how about for a more -- we'll say

20   when did the discovery period begin in the case?  Like June 1,

21   something like that.  So June 1st.  So for the February 1

22   through June 1, that will be -- I'll narrow the time period.

23   But I think otherwise that may be, potentially, not relevant

24   for impeachment purposes.

25           The other parts of the objection are overruled with

1    respect to confidentiality because obviously, that will be --

2    it may not be confidential.  It may be a third-party

3    communication.  So again, I just don't know.  So you will have

4    to take it document by document.  First, figure out what there

5    is, if there's anything.  If there's nothing, there's nothing.

6    Okay.  So I'll compel 26 with that caveat.

7           **ATTORNEY PERRY:**  And 27 is similar, Your Honor.

8           **THE COURT:**  Okay.

9           **ATTORNEY PERRY:**  So then we go to 34 and 35, where we

10   have requested --

11          **THE COURT:**  And just so I understand, what's the

12   difference between 26 and 27?

13          **ATTORNEY PERRY:**  26 relates to the District Attorney's

14   investigation.  And 27 relates to the Attorney General's

15   investigation in New York.

16          **THE COURT:**  Oh, okay.  But I thought that was the same

17   criminal proceeding.  Am I right?

18          **ATTORNEY PERRY:**  No, Your Honor.  There's a civil

19   enforcement action brought by the Attorney General of New York,

20   in which Mr. Cohen also is the witness.

21          **THE COURT:**  Okay.  I appreciate that.  Okay.  All

22   right.  Same modifications.

23          And as to that one, the date is different, February of

24   2019.  Is that the date?

25          **ATTORNEY PERRY:**  Yes, Your Honor.  That's the date when

1    Mr. Cohen began to cooperate with the Attorney General's

2    Office.  It was earlier in time.  It was -- it began in 2019.

3              **THE COURT:**  Okay.  Okay.

4              **ATTORNEY BRITO:**  So, Your Honor, that date is okay per

5    the Court?

6              **THE COURT:**  It's fine with me.  Is it fine with you?  I

7    guess I understand the logic of it because the logic would be

8    that after the filing of that action, there might be some

9    communication evidencing Mr. Trump's retaliatory motives

10   towards Mr. Cohen.  So I guess the date of that would make

11   sense.  It wouldn't be February 2023, right?

12             To make it easier, how about I'll narrow it for

13   February 1 of 2019 to February 1 of 2023 for this one, right,

14   to make it easier for you?

15             Okay.  So the same modification.  Was that change --

16             **ATTORNEY PERRY:**  Well, Your Honor, I can -- I feel --

17   it would make sense, in my mind at least, to have the outside

18   date be the same as the outside date for the --

19             **THE COURT:**  Remember, you're getting temporal -- the

20   temporal scope of it would be different, right?

21             **ATTORNEY BRITO:**  Correct.  The starting date --

22             **THE COURT:**  I think the temporal scope would be

23   different.  So...

24             **ATTORNEY PERRY:**  The starting date would be, obviously,

25   different, but they both would continue -- I mean, one could

1    conceive of communications that would go through June 1st.  He

2    brought the lawsuit against Mr. Cohen in April.  And so --

3         **THE COURT:**  Probably -- I understand that's your theory

4    of it, but from my point of view, after February 1st of 2023,

5    he's probably focussed now on the Manhattan criminal matter

6    more so than he would be on the Attorney's General proceedings.

7    So just for purposes of making it easier, respond to it.  I

8    think that's the link.  Okay.

9         Okay.  What's the next one?

10        **ATTORNEY PERRY:**  34 and 35 are requests to pinpoint

11   where within the defendant's books and podcast --

12        **THE COURT:**  And why is that a request for production?

13   I assume you have an interrogatory that does this.

14        **ATTORNEY BRITO:**  No, Your Honor.

15        **ATTORNEY PERRY:**  We don't yet.  This relates is --

16        **THE COURT:**  How do you deal with that from a production

17   point of view?  What is it he's supposed to produce?

18        **ATTORNEY PERRY:**  The specific pages.  I mean, he did

19   produce some from the two books and specific, you know, you

20   know, either snippets or citations, you know, to where within a

21   particular podcast there are, you know, he bases his claims.

22   And so, I mean, he did it, to some extent, in response to

23   request 34.

24        **THE COURT:**  Okay.

25        **ATTORNEY PERRY:**  But we don't have a verification that

```
 1    this is it.  And he specifically left it open ended that there

 2    may be --

 3          THE COURT:  Like, he you refers to pages made -- pages

 4    of the book referenced in the complaint.

 5          Is that correct or no?

 6          ATTORNEY PERRY:  He does -- he has provided certain

 7    pages.  But again, has left open that there may be, you know,

 8    any number of other pages or the entirety of the book where,

 9    you know, they also my client --

10          THE COURT:  Is that redacted as a request for

11    production as opposed to interrogatories?

12          ATTORNEY PERRY:  A thousand suspenders, I suppose.  But

13    we will also be a issuing an interrogatory.

14          THE COURT:  Okay.

15          ATTORNEY PERRY:  But it's a bit odd that they've made

16    some form of production in response to this request.

17          THE COURT:  Well, what have they produced?  Tell me

18    that.

19          ATTORNEY PERRY:  Several pages from each book.

20          THE COURT:  Okay.  So you produced them?

21          ATTORNEY BRITO:  We did.

22          THE COURT:  So is there -- all right.

23          ATTORNEY BRITO:  It wasn't worth the fight.  But we

24    just --

25          THE COURT:  Got it.  It is easier to just take the
```

1    pages --

2        **ATTORNEY BRITO:**  Because the pages are cited in the

3    complaint line and verse, quotes --

4        **THE COURT:**  Let me make it clear then:  Other than what

5    you've now produced, is there anything else?

6        **ATTORNEY BRITO:**  No, Your Honor, as to 34.

7        **THE COURT:**  As to 34.

8        Okay.  Next one.

9        **ATTORNEY PERRY:**  And 35, we, you know, the plaintiff

10   has objected, although has said they would consider producing

11   or identifying portions of the podcast.

12       We just don't have final --

13       **THE COURT:**  Okay.  Hold on.  Paragraph 109 relates to a

14   podcast, a podcast I guess Mr. Cohen participated in --

15       **ATTORNEY PERRY:**  Yes.

16       **THE COURT:**  -- that revealed confidential information

17   about him.

18       **ATTORNEY BRITO:**  And my position was, Your Honor, I'm

19   not sure how I can reproduce communications or correspondence

20   related to an oral interview given on a podcast.  That was one

21   of the things I communicated to counsel.

22       **THE COURT:**  Technically, of course, that would be a no,

23   right, none.  But what if he wrote an e-mail to his sons,

24   saying, hey, did you hear that I think that's terrible,

25   whatever he would have said about that podcast to a

1   non-privileged source.

2       **ATTORNEY BRITO:**  I'm sorry, I couldn't tell you if

3   those still exist.  But I'm happy to see if there's no

4   documents.  The issue of the podcast is the one that I

5   corresponded with Mr. Brodsky, spoke to Mr. Brodsky and said, I

6   don't know how I can give you what you're asking for because of

7   the nature of it.

8       **THE COURT:**  Right.

9       Well, so I'll overall the substance of objection.  But

10  if the answer's none, then it's none, right?

11      **ATTORNEY BRITO:**  Right.  The objection at the time was

12  the confidentiality component.  But if there is no answer,

13  there's no answer.

14      **THE COURT:**  Right.

15      And when you were talking about the privileged nature,

16  In other words, if he wrote an e-mail to you, right, I just

17  heard this podcast, I think it violates his NDA, right, that

18  would be privileged.

19      **ATTORNEY BRITO:**  Right.

20      **THE COURT:**  Okay.  Other than that though, would there

21  be any privileged to it?

22      **ATTORNEY BRITO:**  No, only to the extent I needed to

23  invoke.  And I know I don't need to --

24      **THE COURT:**  Right.

25      **ATTORNEY BRITO:**  -- invoke my attorney-client privilege

1    in response to it.

2         **THE COURT:**  Right.

3         **ATTORNEY BRITO:**  Your Honor, due to the sensitivities

4    of this case, I didn't want leave anything to chance so I

5    articulated the privilege.  But short of that, it was really

6    the confidentiality component that we didn't want this in a

7    public forum.

8         **THE COURT:**  Okay.  So with that understanding then,

9    I'll require a better response than 35 for production of

10   anything else that exists.

11        **ATTORNEY BRITO:**  It would probably be none, but, yes, I

12   understand.

13        **THE COURT:**  Okay.  Next one.

14        **ATTORNEY PERRY:**  Then we have a series of requests that

15   relate to communications either with or with respect to

16   Stephanie Clifford.  Those are 37 to 40, 44 to 46, 48 to 52.

17        **THE COURT:**  And who is Stephanie Clifford?  I'm sorry.

18        **ATTORNEY BRITO:**  That's Stormy Daniels.

19        **THE COURT:**  Okay.

20        **ATTORNEY PERRY:**  And that's, you know, all over the

21   complaint.  Yet, plaintiff --

22        **THE COURT:**  Give me an example of what the complaint

23   alleges vis-a-vis with Daniels or with Clifford.

24        **ATTORNEY PERRY:**  There's -- get very specifically, but

25   there are paragraph after paragraph in which the plaintiff

1    claims that Mr. Cohen lied about the relationship and about the

2    payments to her.  And then, for example, begins paragraph 28 in

3    the complaint.

4            THE COURT:  Uh-huh.

5        ATTORNEY PERRY:  And then it's just kind of scattered

6    throughout the complaint.  And then there are also allegations

7    about podcasts involving both Ms. Clifford and Mr. Cohen.

8            THE COURT:  Okay.  And just so I understand, the

9    relevance of it goes to the breach of fiduciary duty claim.  Is

10   that how he -- what he's saying in that paragraph?

11       ATTORNEY PERRY:  Yes.  Yes.  It's directly relevant.  I

12   mean, he's -- the plaintiff's claiming that you're -- Mr. Cohen

13   breached his duty of confidentiality, his attorney-client

14   privilege and also lied about the relationship with Ms.

15   Clifford and that he's suffered what he calls vast reputational

16   and other damage as a result.  And so we're entitled -- I mean,

17   he's put it squarely at issue.  And so we're entitled to

18   explore it and to defend ourselves against all those

19   allegations, which again, are at the very center of this

20   complaint.

21           THE COURT:  What paragraph is that again?  I'm sorry.

22           ATTORNEY EICHENBLATT:  28 through 31 of the complaint,

23   and also I believe paragraph 111.

24           THE COURT:  Okay.  Let me actually pull it up so I can

25   see.

```
 1          ATTORNEY EICHENBLATT:  All of which are incorporated by
 2    reference into each of the counts about breach of
 3    confidentiality and fiduciary duty.
 4          THE COURT:  The motion to dismiss is still pending,
 5    right?
 6          ATTORNEY EICHENBLATT:  It is.
 7          ATTORNEY PERRY:  Yes, Your Honor.
 8          THE COURT:  You said 28 through --
 9          ATTORNEY EICHENBLATT:  28 through 31.
10          THE COURT:  31.
11          ATTORNEY EICHENBLATT:  And paragraph 111, Your Honor.
12    Still reading through those, all are mention her more or less
13    by name.
14          And the paragraphs following 31 discuss Mr. Cohen's,
15    the criminal investigation proceedings against him, which of
16    course also involve Ms. Clifford.  And those go on for three or
17    four pages.
18          THE COURT:  Okay.
19          ATTORNEY PERRY:  So, Your Honor, the plaintiff is the
20    individual who put these allegations at the heart of his
21    complaint and has argued that effectively, he, the plaintiff,
22    had nothing to do with these payments.  It was all Mr. Cohen's
23    idea, and that he made the payments and arranged them himself
24    and did it to keep the payments, quote, a secret both from his
25    own wife, oddly, and from Mr. Trump's wife as well.  And it
```

1    goes on and on.

2         And so we're entitled -- and again, claimed vast

3    damages result.

4         So we're entitled to explore the truth of that and the

5    -- what Mr. Trump did and did not know and do with respect to

6    that relationship and the payments and entitled to show that in

7    fact these were not -- it is not as described, to put it

8    mildly, in the complaint.

9         **THE COURT:**  Okay.  Counsel, any response?

10        **ATTORNEY BRITO:**  Yes, Your Honor.

11        The request is framed or extremely broad in the context

12   of request.  For example, request number 37, all documents

13   communications, and correspondence reflecting the existence of

14   a relationship, keeping in mind the fact that there's previous

15   litigation between Mr. Trump and Ms. Clifford, which, to my

16   understanding, resulted in an award of attorney's fees being

17   ordered to be paid by Ms. Clifford to Mr. Trump for a

18   defamation claim.  I understand, and I'm not a hundred percent

19   certain but I was checking to confirm, I think that matter was

20   ultimately settled and it would be subject to a confidentiality

21   agreement in itself, that litigation regarding the alleged

22   payments and so forth.

23        But at the end of the day, let's put this into context.

24   My client is alleging what he is alleging by virtue of the fact

25   that the defendant held a podcast where he had an ongoing

1    communication with Ms. Clifford about whatever they discussed.

2    That podcasts says what it says with respect to revealing

3    either confidential or privileged information or otherwise.  To

4    now require the broad scope of the documents that they are

5    requesting, which would be all encompassing anything regarding

6    maintaining a relationship whatsoever between Ms. Clifford and

7    Mr. Trump I think is extremely broad.

8         **THE COURT:**  How is that broad?  In other words, did he

9    deny that there was any relationship?

10        **ATTORNEY BRITO:**  She did.  He did.  And now they're

11   asking for documents which talk about any relationship

12   whatsoever.

13        **THE COURT:**  I guess I'm not understanding.

14        **ATTORNEY BRITO:**  I don't think that there's any

15   documents that are going to be generated by virtue of this

16   particular request.  But I feel compelled to have to object by

17   virtue of the fact that they're asking for any document

18   whatsoever.

19        **THE COURT:**  But they're saying documents reflecting

20   this personal relationship, including communications with

21   Ms. Clifford.  So how is that overbroad though?  In other

22   words, I don't understand why -- I don't understand the

23   overbreadth objections.  But you didn't objection on the basis

24   of overbreadth.

25        **ATTORNEY BRITO:**  No.  I think that I objected on the

```
 1   grounds of relevance.

 2          THE COURT:  All right.

 3          ATTORNEY BRITO:  Because I don't think this is relevant

 4   to the claims of the defense being raised nor proportional to

 5   this case.

 6          THE COURT:  I don't know about proportionate.  How is

 7   it irrelevant given the references to Ms. Clifford that I've

 8   been reading in the complaint.

 9          ATTORNEY BRITO:  The references are more to what

10   Mr. Cohen said about Ms. Clifford, not necessarily the

11   relationship that existed between or the lack thereof.

12          THE COURT:  But he's saying that they're all lies.

13          ATTORNEY BRITO:  I understand.

14          THE COURT:  Right.

15          ATTORNEY BRITO:  Well, not necessarily.  I think what

16   he's saying is that the information that was disclosed was

17   either a lie or information that should not have been disclosed

18   with respect to how that matter was resolved.

19          THE COURT:  Well, that's not what I read.  In other

20   words, I was looking at I think the complaint, paragraph 130,

21   the defendant engaged in misconduct when he breached the duty

22   of confidentiality by disclosing confidential information,

23   misstatements and or misrepresentations likely to be

24   embarrassing or detrimental to the plaintiff.

25          ATTORNEY BRITO:  Right.  But that's just 130.
```

1    That's --

2          **THE COURT:**  No.  I'm just picking one example.

3          **ATTORNEY BRITO:**  Right.  But that's not related to --

4          **THE COURT:**  Paragraph 119:  Plaintiff refutes the truth

5    of any and all disclosures made by defendant that are contained

6    in the podcast and other media appearances.

7          **ATTORNEY BRITO:**  Correct.

8          **THE COURT:**  Defendant's improper, self serving and

9    malicious statements about his former client constituted

10   repeated and substantial violations of fiduciary obligations.

11         **ATTORNEY BRITO:**  Right.  That's not to limited to

12   Stormy Daniels, I'm sorry, Ms. Clifford.  The allegations

13   regarding Ms. Clifford, as we read earlier on in the complaint,

14   really relate to just reciting what it is that Mr. Cohen said

15   during the podcast or what he said Mr. Costello.

16         **THE COURT:**  Do you want to amend the complaint?  That's

17   not what they're saying now.

18         **ATTORNEY BRITO:**  Okay.

19         **THE COURT:**  I know what you're saying in response to

20   the discovery disputes.  But there are a hundred and, 124

21   factual allegations in the complaint, many of which relate to

22   Ms. Daniels or Ms. Clifford, whatever her name is.

23         **ATTORNEY BRITO:**  Right.

24         **THE COURT:**  So I can't -- paragraph 99, plaintiff

25   refutes the truth of any and all disclosures made by defendant

1   that are contained in <u>Revenge</u>.  Is <u>Revenge</u> the name of the

2   book.

3          **ATTORNEY BRITO:**  It is.

4          **THE COURT:**  But it's throughout here.

5          **ATTORNEY BRITO:**  And the book is -- talks about a lot

6   more than Ms. Daniels.

7          **THE COURT:**  I understand.  But this request is only

8   talking about Ms. Daniels, right?

9          **ATTORNEY BRITO:**  Right, as it relates to 37, Your

10  Honor.

11         **THE COURT:**  In other words, I don't know how I can find

12  that the complaint hasn't given rise to the issue of

13  Ms. Daniels.  So now, if you look at 37, 37 is asking for

14  documents, communications reflecting the existence of a

15  personal relationship with Ms. Clifford, including communicate

16  communications with Ms. Clifford.

17         So I don't think it's overbroad.

18         **ATTORNEY BRITO:**  Well, the response will be because I

19  don't think there's going to be any documents.  Again, like I

20  said, I've got to preserve privilege.

21         **THE COURT:**  Sure.  So I'm compelling 37.

22         **ATTORNEY PERRY:**  And Your Honor, 38 is much the same.

23         **THE COURT:**  38, compelling.  Those are communications

24  with Mr. Cohen.

25         **ATTORNEY BRITO:**  Correct.

1          **THE COURT:**  Right, relating to Ms. Clifford.

2          **ATTORNEY PERRY:**  39.

3          **ATTORNEY BRITO:**  Well, the issue with --

4          **THE COURT:**  39.

5          **ATTORNEY BRITO:**  The issue with regard to 38, Your

6    Honor, would be whether or not those documents remain

7    privileged.  To the extent there are, you would take -- only

8    there would be would they remain privileged by virtue of the

9    fact that there's communication between Mr. Trump and Mr. Cohen

10   during the time that Mr. Cohen was serving as counsel.

11         **THE COURT:**  By filing the lawsuit about the privilege

12   issue though, that potentially is going to be admissible.

13         **ATTORNEY BRITO:**  We had that conversation with Your

14   Honor the last time.  And I don't know if the Court had already

15   fashioned the results of that other than, as we discussed, it

16   would be a document.

17         **THE COURT:**  Right.  But it has, for purposes of

18   compelling the identification of the documents or the

19   disclosure of the documents, clearly, that has to be done.

20         Whatever's left over for consideration is, A, will it

21   ultimately be admissible, B, can it be disclosed.  And that is

22   related to the -- I remember talking about that with you at the

23   confidentiality order issues.  So I understand what your point

24   is on that.  But in terms of producing them, as between the two

25   parties here --

1           **ATTORNEY BRITO:**  Okay.

2           **THE COURT:**  -- not disclosing any third parties,

3      obviously, I think that has to be compelled.

4           **ATTORNEY PERRY:**  Your Honor, the next request are all

5      of the same thing, 38, 39 and 40.

6           **THE COURT:**  All right.  Do you want to argue any of

7      those?

8           **ATTORNEY BRITO:**  I do.  39 is communications between

9      Mr. Trump and Mrs. Trump discussing references relating to

10     Stephanie Clifford.

11          **THE COURT:**  Okay.

12          **ATTORNEY BRITO:**  And we objected not only on relevance

13     and proportionality, but also invoked the husband-wife

14     privilege to the extent that there is any communication, which

15     again, I find to be highly unlikely.  I just didn't want to

16     be --

17          **THE COURT:**  Is there a privilege though in that sense?

18          **ATTORNEY BRITO:**  I would think so between husband and

19     wife.  I would.

20          **THE COURT:**  Cause that has -- the -- my understanding

21     of the privilege under our federal rule, right, is that the

22     privilege protects a spouse from being compelled to testify

23     against somebody else, right, against a spouse?  Does that

24     apply to production of a document?  Is that your understanding

25     on the defense side?

1        **ATTORNEY PERRY:**  No, Your Honor.  In any event, it's --

2        **THE COURT:**  Invoking a privilege, what's your

3    understanding of what he's talking about?

4        **ATTORNEY PERRY:**  I don't know.  I don't agree that

5    there is a privilege.  But in any event, it would be incumbent

6    upon him to produce a privilege log and for us to then argue it

7    page by page, document by document, not to just invoke some,

8    you know, perhaps non-existent privilege ex ante.

9        **THE COURT:**  Okay.  Comply then --

10       **ATTORNEY BRITO:**  I'm trying to find it in a case that

11   Your Honor was asking me about with respect to --

12       **ATTORNEY PERRY:**  Your Honor, there also is crime fraud

13   exception in New York, which I take it would cover any such

14   communications.  And so this could be something --

15       **THE COURT:**  From a husband to a wife privilege?

16       **ATTORNEY PERRY:**  Yes.

17       **THE COURT:**  Really?

18       **ATTORNEY PERRY:**  Yes.  There is case law on that.  We

19   haven't, obviously, briefed this because it hasn't been a live

20   issue because he has not produced a privilege log.  So I think

21   it's pretty hard to argue something of this magnitude on the

22   fly, but that is my understanding of New York case law at

23   least.  I mean, we could argue he's failed -- he's waived the

24   privilege, and if any, by not having produced the log.  Then --

25       **THE COURT:**  Well, I'm not going to do that at this

1    early stage.

2         ATTORNEY PERRY:  I'm sort of saying this is a little a

3    little difficult to do on the fly when we don't have anything

4    specific in front of us.

5         ATTORNEY BRITO:  Your Honor, if memory serves me

6    correct, as it relates to the husband and wife privilege in the

7    context of a civil matter, state law governs as opposed to

8    federal law.  I think from a criminal standpoint, I think Your

9    Honor's recollection was correct with respect to federal law

10   applying.  You said that federal law applies, which I believe

11   it does, that's Florida statute 90.504, which provides that a

12   spouse has a privilege during or after a marital relationship

13   to refuse to disclose or prevent another from disclosing

14   communications which were intended to be made in confident

15   between the spouses while they were husband and wife.

16        THE COURT:  And why would Florida law apply?

17        ATTORNEY BRITO:  By virtue of the fact that this

18   privilege we're invoking is in a civil context as opposed to a

19   criminal context.

20        THE COURT:  And then, in other words, why would Florida

21   law apply as opposed to New York?

22        ATTORNEY BRITO:  Well, Mr. Trump is a citizen of the

23   state of Florida.

24        THE COURT:  But at the time the communications were

25   made.

44

1        **ATTORNEY BRITO:** There's been -- I think it could be a

2 blend. It could be New York as well as Florida, depending on

3 the dates that we look at. But at a minimum, there is some

4 Florida components to it. I just don't have the specific dates

5 at the top of my mind.

6        **ATTORNEY BRODSKY:** Your Honor, this is Ben Brodsky.

7 Can I offer some brief argument on this?

8        **THE COURT:** Sure.

9        **ATTORNEY BRODSKY:** I would echo what my cocounsel said.

10 First of all, maybe it's privileged. Maybe it's not. But he

11 has to log it. Check's on the wall. He's put it squarely at

12 issue, which is probably a waiver by virtue of paragraph 111

13 where he said that he paid off Stormy Daniels merely to protect

14 his fan base. And so, you know, there are a couple of

15 procedural problems with Mr. Trump's objections because he's

16 not complying with his obligations to give us notice of what

17 the log is -- what communications are. You don't just get to

18 say it's privileged, so I don't need to tell you anything.

19        And number two, of course we're going to have the issue

20 whether the log is produced whether he waived it by virtually

21 of putting in square in issue at paragraph 111.

22        **THE COURT:** And just while we wait through the argument

23 on 111, how would that be waived again, assuming there was

24 something?

25        **ATTORNEY BRODSKY:** He says that he made -- the

1    allegation is that Mr. Cohen failed to make plain that

2    Mr. Trump -- relied on Mr. Trump's legal advice and that

3    Mr. Trump acted on that to protect his family from the

4    malicious and false claims made by Ms. Clifford.  If Mr. Trump

5    had a communication with Mrs. Trump saying, 'I'm going to pay

6    her off so we can bury this and I can go on with the campaign'

7    as opposed to this, 'this never happened, I'm sorry, I'm going

8    to fix this and I'm only doing this for x-y-z reason,' then of

9    course that's all relevant to testing the veracity of his

10   allegations and his motivations as opposed to the fact that he

11   actually did it.

12        **ATTORNEY BRITO:**  And Your Honor, just to give you the

13   counter part, the New York state laws CPLR50-4502(b), which

14   provides that there's a privileged for any confidential

15   communications between spouses as follows, quote:  A husband or

16   wife should not be required or without the consent of the other

17   living be allowed to disclose the confidential communication

18   made by one to the other during the marriage.

19        **THE COURT:**  So there's a general privilege.

20        **ATTORNEY BRITO:**  There's a general privilege both in

21   Florida and New York with respect to that divulging

22   information.  I think Your Honor was correct about what the

23   federal rule is, but I think that only applies.  I did this

24   briefly.  I can brief it Your Honor wants.  I believe that only

25   applies with the criminal context and not a civil context.

1        **THE COURT:**  Well, taking that at the face value that

2    you're right on that, I guess their argument is that we need to

3    know there is something that could be argued about it and we

4    don't know that at this point.  You can't just do a blanket

5    privilege.

6        How do you deal with that?

7        **ATTORNEY BRITO:**  Through a privilege log.

8        **THE COURT:**  Right.  Okay.  So I won't rule on the

9    privilege yet, but I'll accept your proffer that it could be

10    privileged.  And so therefore, documents responsive to, what

11    number was that?  39?

12        **ATTORNEY BRITO:**  39.

13        **THE COURT:**  39 may not be produced but those have to be

14    logged if any responsive documents actually exists.

15        Now, that was 39?

16        **ATTORNEY BRITO:**  It is, Your Honor.

17        **THE COURT:**  Now, the other thing would be there's no

18    time limitation.  Wouldn't there have to be a time limitation

19    for the relevant time?  Because when did this happen?  2016,

20    right?  So 2016 and '17?  When did he allegedly breach the --

21        **ATTORNEY PERRY:**  Well.

22        **THE COURT:**  -- the confidentiality agreement?

23        **ATTORNEY PERRY:**  That's a great question.  And is it's

24    not -- it's really not specified in the complaint, which is

25    part of the problem which is why this is so broad.

1          **ATTORNEY BRITO:**  It's in paragraph 25, Your Honor.

2    April of 2008.

3          **ATTORNEY PERRY:**  Is that the only incident where you're

4    alleging that he breached?

5          **ATTORNEY BRITO:**  That's paragraph 25, which that delves

6    into the specifics that the Court was looking for in relation

7    to paragraph 29, 30, and 31.

8          It says that Mr. Costello met with the defendant in

9    April of 2018.  And it goes into the conversation between the

10   defendant and Mr. Costello.

11         **THE COURT:**  And is your allegation is that was the

12   first breach in terms of the disclosure of this topic?

13         **ATTORNEY BRITO:**  That would be what we came to find out

14   at the time that the statement was made.  We didn't find out

15   about it at that time.

16         **THE COURT:**  No.

17         **ATTORNEY BRITO:**  But we understand that it was made

18   back April of 2018.

19         **THE COURT:**  Okay.

20         **ATTORNEY PERRY:**  But then paragraph 111 goes into a

21   number of podcasts where these matters were discussed.  And

22   then more generally, I mean, the complaint is rife with

23   allegations that Mr. Cohen made disclosures particularly with

24   respect to Ms. Daniels.  And the --

25         **THE COURT:**  I guess my question though is:  Just for

1    timing, the time purposes of that, for example, are current

2    communications between Mr. Trump and Mrs. Trump may not be

3    responsive to the issue that you're raising.

4            **ATTORNEY PERRY:**  It may not be.

5            **THE COURT:**  Right.

6            **ATTORNEY PERRY:**  But I think that's something that we

7    could -- we would have to handle on a case-by-case basis.

8            The issue here is the affair, the alleged affair, was

9    in 2006.

10           **THE COURT:**  Right.

11           **ATTORNEY PERRY:**  And so there could be communications.

12   Look, if --

13           **THE COURT:**  2016?

14           **ATTORNEY PERRY:**  No.  The affair was in 2006.

15           **THE COURT:**  Okay.

16           **ATTORNEY PERRY:**  I believe.  Perhaps a little later.

17   But I believe it was as early as that.

18           **THE COURT:**  Okay.

19           **ATTORNEY PERRY:**  And I know it was when Mr. And

20   Mrs. Trump's child was months old.  So I believe it would have

21   been in '06.

22           And so responsive -- you know, there could be documents

23   responsive to this where Mrs. Trump was aware in relatively

24   real time about that affair.  And that would obviate and give a

25   lie to all of these allegations that Mr. Trump do nothing about

1   it.

2        **THE COURT:**  I agree with you.  But with respect to the

3   -- when was it publicly disclosed as opposed to the 2018

4   communication was an internal communication?  When was it

5   publicly disclosed that -- that, for example, there had been an

6   allegation of a payoff?

7        **ATTORNEY PERRY:**  That, I believe, was in 2016, shortly

8   before the presidential election.

9        **THE COURT:**  That was a publicly disclosed that...

10       **ATTORNEY PERRY:**  Yes.  Ms. Daniels came out and there

11  were -- it was -- I'm sorry.  No.  I take that back, Your

12  Honor.  I apologize.  I don't believe so.  That's when there

13  were payments made or began to be made.  So I don't believe it

14  came out at that time.  I can't tell you off the top of my head

15  exactly when it --

16       **THE COURT:**  When was the -- when was the first Cohen

17  disclosure alleged in that complaint made, not to Mr. Costello,

18  but in terms of the --

19       **ATTORNEY PERRY:**  There were discussions in connection

20  with his plea allocution --

21       **THE COURT:**  Right.

22       **ATTORNEY PERRY:**  -- in 2019.

23       **THE COURT:**  Right.

24       **ATTORNEY PERRY:**  It was already public by then.

25       **THE COURT:**  And when was the publication of the book?

1        **ATTORNEY PERRY:**  That was right before the 2020

2   presidential election.

3        **ATTORNEY BRITO:**  September 8th, 2020 is when the book,

4   Disloyal, was published.

5        **THE COURT:**  Okay.

6        **ATTORNEY PERRY:**  But that was not very far from the

7   first publication of these allegations.  Again, it was -- it

8   was already open and notorious by the time Mr. Cohen pled

9   guilty in 2019.

10        **THE COURT:**  Right.

11        **ATTORNEY PERRY:**  All right.  And I think the Court --

12        **THE COURT:**  All right.  For purposes of time, it is --

13   there's no beginning time because if in fact the relationship

14   goes back to 2006 or '7, then the only limitations I'm placing

15   is through December 31, 2020, which I think is a reasonable

16   period.  And that has to be logged.

17        Okay.  So I'll compel that one in that respect.

18        Anything else with respect to those, 39?

19        **ATTORNEY PERRY:**  I don't know if Mr. Brito --

20        **ATTORNEY BRITO:**  That was 39, Your Honor.

21        **THE COURT:**  That was 39?

22        **ATTORNEY BRITO:**  Yes.

23        **ATTORNEY PERRY:**  40, documents with respect to the NDA

24   that was executed by Ms. Daniels.  In light of Your Honor's

25   rulings, I would have to imagine that would be producible.

1          **THE COURT:**  Right.  That would be the same.

2      Okay.

3          **ATTORNEY PERRY:**  And then the next one is a series from

4  44, 45, 46.

5          **THE COURT:**  Okay.

6          **ATTORNEY PERRY:**  Which relate to the Essential

7  Consultants, documents relating to Essential Consultants, which

8  is the entity set up by Mr. Cohen in order to make those

9  payments.  So it's really kind of more of the same.

10          **THE COURT:**  I'm sorry.  I don't -- I lost you.

11          **ATTORNEY PERRY:**  Yeah.  Sorry, Your Honor.  I sometimes

12  assume everyone has the in-the-weeds knowledge of this stuff

13  that I do.

14      The -- Mr. Cohen set up a -- essentially an entity

15  known as Essential Consultants in order to make payments to

16  Ms. Daniels.  And then payments were made by Mr. Trump, I

17  believe, also to Essential Consultants.  And so that was kind

18  of the middle-man entity in all of these dealings and what we

19  think is highly relevant.

20          **THE COURT:**  Okay.  Now, is the -- is anything in the

21  complaint challenging the making of payments?

22          **ATTORNEY PERRY:**  Yes.  It's part in parcel of the

23  allegations that this was all Mr. Cohen setting this up kind of

24  on the sly and on his own and without, you know, really sharing

25  it with Mr. Cohen.  It was all his, quote, unquote, idea.  And

```
 1   he's the one who not only had the idea but then executed on it.

 2   And given that that's the entity and that was the sole purpose

 3   for this entity.

 4        THE COURT:  Okay.

 5        ATTORNEY PERRY:  It's kind of squarely in the middle of

 6   this whole issue.

 7        THE COURT:  Okay.  All right.  Back to you.

 8        ATTORNEY BRITO:  Your Honor, they just contradicted

 9   what they just told you to the previous request, which is in

10   relation to why they were asking for documents related to

11   Mrs. Trump.  And I'm trying to find a -- here.  Paragraph 111.

12        THE COURT:  I'm sorry.  I'm not following you.

13        ATTORNEY BRITO:  Your Honor asked the question whether

14   there's allegations in the complaint that he's denying making

15   the payment --

16        THE COURT:  Uh-huh.

17        ATTORNEY BRITO:  -- the plaintiff making the payment.

18   And the allegation here is that in the face of these

19   disclosures, the defendants ignoring the fact that the

20   plaintiff relied on defendant's legal advice, the plaintiff

21   acted out of a desire to protect his family from malicious and

22   false claims made by Ms. Clifford.  I'm not saying -- I'm not

23   addressing the issue of whether the payment was made or not

24   made.  But I don't see the allegation that the defendant is

25   relying upon that states that there's a denial of the payment
```

1    being made.  And whether we see here if there was any conduct

2    that was engaged in by the plaintiff, it was based upon the

3    advice by the defendant.

4         Whether or not there was another entity created by the

5    defendant for purposes of what counsel has argued to you is not

6    relevant to what we're talking about.  What's the purpose?

7    What's the relevance of this entity and any communications with

8    this entity?  In short answer to Your Honor's question, I

9    haven't seen it and I don't believe there is an allegation in

10   here about a denial of payment.  That's not at issue.  It's not

11   even an issue in this case as far as I understand it.

12        **THE COURT:**  What about paragraphs 25 through 32?

13   Aren't those allegations about the payment, who's idea it was

14   and that particular thing?

15        **ATTORNEY BRITO:**  It reflects what it is that the

16   defendant stated to Mr. Costello.

17        **THE COURT:**  Okay.  Why can't they impeach that?

18        **ATTORNEY BRITO:**  Well, he's asking for documents, which

19   presumably he always possesses.  As I heard counsel state,

20   Essential Consultants --

21        **THE COURT:**  That's not a basis for denial of the

22   request to produce that.

23        **ATTORNEY BRITO:**  No. No.  I understand that.  I'm not

24   saying it is.  But I'm saying why can't he impeach him?  He has

25   the documents.  If he's going to be able --

1          **THE COURT:**  So what if you have the similar documents.

2    You can't just say, well, you have documents related to that.

3    You're the one who participated in it.  But that doesn't

4    necessarily mean, A, he has all of them; B, he doesn't know

5    other documents that he didn't see that are responsive that

6    further his point cause he's -- he's going to try and impeach

7    these allegations in the complaint by saying that there was --

8    Mr. Trump was entirely aware and entirely participated in the

9    -- in the use of that scheme, which is also, by the way, a

10   violation of tax law.  But that's another issue.

11         So as to one of the issues that is pending, so how do I

12   prevent him from trying to impeach that by not compelling a

13   request that goes to communications that are with Mr. Trump

14   about that, those -- that entity?

15         **ATTORNEY BRITO:**  What I'm trying to avoid, Your Honor,

16   is really a dispute.

17         **THE COURT:**  Yeah.  How do I get around that?  You're

18   the one who draft these allegations.

19         **ATTORNEY BRITO:**  I understand.  But I don't think that

20   that necessarily requires us to go through the entirety of the

21   litigation involving the parties.  What I'm trying to do is

22   fine tune what it is specifically that they're looking for when

23   they ask me for all documents, all communications referencing

24   this entity not related to Ms. Daniels or any other entity.

25   It's just this entity, period.

1              If they want to refine it so that it's limited to -- if

2      I resubmitted time a limited scope as it relates to the

3      payment --

4              **THE COURT:**  Why?  But why wouldn't that be even

5      potentially relevant?  Because if in fact that entity is an on

6      go -- was at the time an entity that was being used for other

7      purposes by the organization, why wouldn't that be a fact that

8      the defendant can use to impeach the plaintiff?

9              **ATTORNEY BRITO:**  Well, at this point, all I've heard

10     from counsel is that this is an entity that Mr. Cohen created,

11     not that the organization created.  And I want to make it

12     clear.

13             **THE COURT:**  So that's for --

14             **ATTORNEY BRITO:**  I am also not into the weeds of the

15     details of what transpired.

16             **THE COURT:**  So therefore, how would that jibe with your

17     argument that it's overbroad because it's not limited in its

18     scope by topic?

19             **ATTORNEY BRITO:**  Because for -- we don't make reference

20     to Essential Consultants in the lawsuit at all.  And so they

21     injected this entity into their document request.

22             **THE COURT:**  Right.

23             **ATTORNEY BRITO:**  I'm asking why was the relevance of

24     this company they're responsive to --

25             **THE COURT:**  They're saying that it was the company that

1    he --

2         **ATTORNEY BRITO:**  That was used for the payment --

3         **THE COURT:**  Right.

4         **ATTORNEY BRITO:**  -- of this -- if you want to limit it,

5    what I'm asking the Court is to require them to limit it to

6    whatever it is that they're claiming is relevant to this

7    particular case.  And that's --

8         **THE COURT:**  But it's limited in time, right?

9         **ATTORNEY BRITO:**  It's limited in time but un limited in

10   relation.  If they want to limit it to communications

11   referencing Essential Consultants as it relates to Ms. Daniels.

12        **THE COURT:**  That's my point.  Let's assume that there's

13   a communication that Trump is used an entity for catering

14   purposes, okay, and so there's an ongoing business relationship

15   between that entity, and that assumes, of course, it's a real

16   entity.  His argument is that it's not a real entity.  It was

17   just a fake thing.

18        So -- but let's assume that it's a real entity, right.

19        If they're in communication with a real entity that

20   related to catering during that period of time, that does --

21   that's relevant, isn't it?  Because at that point, that would

22   be either impeaching him on his defenses or impeaching the

23   plaintiff on the allegation that the plaintiff had nothing to

24   do with that entity.

25        **ATTORNEY BRITO:**  But at this point, we don't even have

```
 1   -- we don't have any basis to have an understanding as to what
 2   these defenses are that relate to Essential Consultants.  I'm
 3   hearing this argument from counsel as to the relevance of that
 4   entity.  And I don't know that Mr. Cohen is going to hang his
 5   hat on his defense that Essential Consultants was used for A
 6   reason or B reason.  But at this point, I'm strained by the
 7   pleadings that if this is irrelevant broadly worded.  If they
 8   want to ask for Essential Consultants during this time period
 9   as it relates to either a payment to Ms. Daniels or relation to
10   Ms. Daniels period, I understand that request, which is now
11   opening up.  Because candidly, Judge, I don't know, if it's an
12   entity that engaged in one transaction, multiple transactions
13   or no transactions.  I don't know.
14         THE COURT:  But for purposes of a request for
15   production, and since it's the limited in time, it would be
16   different if they ask for 30 years worth of data, I mean,
17   obviously, your argument would have more legs.  But it's
18   limited in time by definition.  The complaint is alleging that
19   this whole scheme had nothing to do with the plaintiff, that
20   the plaintiff was not privy to any of that.  That was all the
21   machinations of this out-of-control lawyer who then is
22   disclosing that to Mr. Costello that it was his idea, right.
23   And so the plaintiff was going to use this Mr. Costello to
24   support that idea.  That's what was in the complaint.
25         So given all of the allegations, they're asking for
```

1    documents and evidence and communications of payments made to

2    this entity for that period of time.  So I don't see how,

3    because from the plaintiff's point of view, the answer may be

4    none, right, because it's not a real entity.  He created it.

5    So you so see my point?

6            **ATTORNEY BRITO:**  Yes, Your Honor.  I do.

7            **THE COURT:**  And the answer to that and the answer to

8    the question may be very relevant either to impeach the

9    defendant or impeach the plaintiff.  I just don't know.  I

10   don't know as I sit here today how useful it will be but it's

11   potentially relevant.

12           So I'll overrule the objection on 44 and compel it.

13           **ATTORNEY BRITO:**  That was 45, Your Honor.

14           **THE COURT:**  I thought it was 44.  I'm sorry.

15           **ATTORNEY PERRY:**  44, 45 and 46.

16           **THE COURT:**  Okay.  What's the difference between 45 and

17   46?

18           **ATTORNEY PERRY:**  One, 40 -- I'm sorry, 40 -- well, 44

19   relates to payments made to Essential Consultants.  45 is

20   documents and correspondence referencing Essential Consultants.

21           **THE COURT:**  I see.

22           **ATTORNEY BRITO:**  And 46 is a specific statement that

23   Mr. Trump made to reporters that he knew nothing about any NDA

24   between Ms. Clifford and Mr. Cohen and/or Essential

25   Consultants.  That's quite specific.

1       **THE COURT:**  Yeah.  In other words, so you're asking for

2   documents referring to his statement like what?  A transcript

3   of --

4       **ATTORNEY PERRY:**  No.  Discussing.  I mean, if there are

5   non-privileged documents, in which he's discussing, let's say

6   with a PR professional, you know, how he would address these,

7   you know, the NDA, then that would be responsive.

8       **THE COURT:**  I'm not going to compel 46.  So I'll compel

9   45 and 44 because that's an appropriate request.

10      Okay.  The next one.

11      **ATTORNEY PERRY:**  Can I have one moment, Your Honor?

12      **THE COURT:**  We have a half hour, by the way, for timing

13   purposes.

14      **ATTORNEY PERRY:**  Thank you.

15      Your Honor, I just want to check real quickly or my

16   cocounsel's going to check if we have other document requests

17   that will capture really what we're trying to get out with 46,

18   which is Mr. Trump's, any communications or documents with

19   respect to his knowledge, or not, of the NDA.  And so this one

20   is very specific.  And -- but if we have a broader one, then I

21   don't think we --

22      **THE COURT:**  I don't think you have a request for

23   production relating to that NDA.

24      **ATTORNEY PERRY:**  Well, we would too.

25      **THE COURT:**  Yeah.

1      **ATTORNEY PERRY:**  And so I just wanted to check.  We do,

2    Your Honor.  So I apologize and I'll withdraw.

3      **THE COURT:**  Okay.  Anything on the request for

4    production?

5      **ATTORNEY PERRY:**  Yes.  Just a few more.

6      48 to 52 are very much in the same vein as the one

7    we've just been discussing.  It's all about, you know,

8    Ms. Clifford and allegations that relate to her and to payments

9    and other --

10     **THE COURT:**  It's too broad though.  48 is too broad the

11   way it's written.  There are plenty of requests that are

12   dealing with -- I've compelled plenty of documents dealing with

13   Ms. Clifford.  But here, you're asking very -- it's actually

14   more specific.  But -- I don't know how I would reveal or

15   respond to that.

16     **ATTORNEY PERRY:**  Well, I mean, it's his claim that he

17   relied on Mr. Cohen's legal advice.  And so how is he

18   substantiating that?

19     **THE COURT:**  But I've compelled tons of documents

20   dealing with Ms. Clifford.  So you can ask him that, obviously.

21   But in other words, if I'm producing -- I don't know what I'm

22   producing that if I were the defendant, in this case because

23   I'm the plaintiff, if I'm the plaintiff, except for what I've

24   already compelled to be responsive to 48.

25     So it's cumulative because I've already compelled

1    documents that would involve communications to and fro

2    Ms. Clifford or about Ms. Clifford.  So it's obviously subsumed

3    within them.  So beyond responding to that, I don't know how I

4    would find that.

5          Is there -- there is a broad request, isn't there?

6    Communications with Mr. Cohen about Ms. Clifford was one of the

7    ones he compelled, right?

8          **ATTORNEY PERRY:**  Yes.

9          **THE COURT:**  Yeah.  So let's assume then that I don't

10   need to deal with that.

11         Next one.

12         **ATTORNEY PERRY:**  Okay.  Your Honor.

13         49 relates to documents that relate sort of more

14   broadly to the same issues with respect to another woman who

15   was part of this quote, unquote, 'catch-and-kill program,'

16   Ms. McDougal.

17         **THE COURT:**  The what program?  Catch and --

18         **ATTORNEY PERRY:**  Yes.  This is -- Mr. Packer, who was

19   the head of I believe it was American Media, was, you know, at

20   least the criminal indictment relates to a -- an agreement by

21   -- amongst the plaintiff here, Mr. Pecker and others to find

22   women who alleged affairs or other -- made other allegations

23   against the plaintiff here and paid them money essentially in

24   advance to not publicize their allegations.

25         And so this relates to kind of the broader program of

```
 1   which Ms. Daniels was a part.

 2         THE COURT:  In other words what you're saying is there

 3   were similar payments for a different person?  Is that what

 4   you're saying?

 5         ATTORNEY PERRY:  Yes, Your Honor.

 6         THE COURT:  Okay.  And was the other person a

 7   Ms. McDougal?

 8         ATTORNEY PERRY:  Yes.

 9         THE COURT:  And how would that be relevant?

10         ATTORNEY PERRY:  Well, part of the issue here is that

11   we, you know, Mr. Trump has made very, very broad allegations

12   and has not really pinpointed what they relate to.  There are

13   some that are very specific, and that's of course useful and

14   allows us to defend ourselves.  But there are others that

15   Mr. Cohen, you know, breached confidentiality.  And it's

16   therefore difficult for us to really mount a defense.

17         And so this is really aimed at, you know, trying to

18   respond to the broader allegations of a breach of

19   confidentiality and of a contract.

20         THE COURT:  I'm not following you.  I'm sorry.  In

21   other words, how is --

22         ATTORNEY PERRY:  Your Honor, this may be proof -- I

23   mean, this is us with one of the other requests.  We can kind

24   of wait and see how the case evolves.  So we can put a pin in

25   this one and not press it.
```

1          **THE COURT:**  So just so -- you haven't waived the issue.

2    So I'll sustain the relevant objection subject to your either

3    narrowing or showing me that it is narrowed.  How's that?

4          **ATTORNEY PERRY:**  Thank you, Your Honor.  And that also

5    has the benefit of, I think, moving this along so that we can

6    get to the deposition.  But so that would be the same for

7    request 50 through 52.

8          **THE COURT:**  Right.  Like what's Resolution Consultant?

9          **ATTORNEY PERRY:**  It relates, again, more broadly to

10   another program.

11         **THE COURT:**  Okay.  Okay.  So I'll sustain the objection

12   for now.

13         Okay.  Next issue.

14         **ATTORNEY PERRY:**  Here, 53 through 55 generally relate

15   to documents to defend ourselves against, you know, allegations

16   that Mr. Cohen is lying about and revealing confidences about

17   Mr. Trump in terms of whether he has used racial epithets or

18   has made reference to a person's race or ethnic origin or

19   national origin.

20         **THE COURT:**  Where is that in the complaint?

21         **ATTORNEY PERRY:**  There are numerous allegations that

22   Mr. Trump breached his live, breached his confidentiality

23   obligations and his contract by calling Mr. Trump, quote,

24   unquote, a racist but not very specifically.

25         One of the -- so one of them is in paragraph 92.  One

1    is in paragraph ninety, I'm sorry, 101.  I believe there are

2    others.  But it's part of his more general allegation that

3    Mr. Cohen has caused him reputational and other damage, which

4    is still not specified.  And we need to rebut.

5        So I guess to be a little more specific, while Your

6    Honor's considering our -- amongst our arguments are that this

7    information, you know, quote, unquote, information is not

8    confidential, that Mr. Trump himself has disclosed his -- his

9    views, what are viewed as discriminatory and racist views to

10   other people and in fact publicly.  And that Mr. Cohen sharing

11   his opinion or his view, that Mr. Trump is racist and bigoted,

12   didn't actually hurt Mr. Trump's reputation because he already

13   has a reputation for those -- for those things.  And that he in

14   fact, in a way, seeks to promote that as his reputation in any

15   event.

16       **THE COURT:**  Well, I guess since -- just so I

17   understand, there is one allegation here that that refers to

18   race, that Mr. Cohen wrongfully accused him that he's a racist

19   in a podcast.  Is that what you're referring to?  Is that what

20   92 refers to.

21       **ATTORNEY EICHENBLATT:**  Your Honor, for instance,

22   paragraph 101 says, "defendant recycles his false attacks on

23   plaintiff as a racist and bigot and attacks plaintiff as

24   corrupt among other insults."  And paragraph 92 says,

25   "defendant repeatedly wrongfully calls plaintiff a racist."

1      **THE COURT:**  But is there any count that that really

2  relates to though?

3      **ATTORNEY EICHENBLATT:**  Well, all of these counts are

4  incorporated into the breach of fiduciary duty, breach of

5  confidentiality agreement counts.

6      **THE COURT:**  So what you're saying is that it would

7  relate to damages because everybody else knows he's a racist?

8  Is that the idea?

9      **ATTORNEY EICHENBLATT:**  Certainly.  But he's also,

10  apparently, making a claim that these are breaches of a

11  fiduciary duty of confidentiality.

12      **THE COURT:**  And how would -- and how would -- I think

13  you broke -- this case was broken my computer.  How would

14  producing any allegations of racial discrimination against him

15  relate to that?

16      **ATTORNEY EICHENBLATT:**  Well, Your Honor --

17      **THE COURT:**  How would that further the issue?

18      **ATTORNEY EICHENBLATT:**  Since he's arguing that sharing

19  falsehoods about Trump constitutes a breach of confidentiality

20  agreement, proving the truth of those statements is a core

21  defense to the breach of contract claims.  And the question of

22  relevance is a good one.  But, of course, these are

23  incorporated directly into each of these counts.  So if they're

24  relevant enough to be considered material to each of these

25  counts and incorporated by reference and listed repeatedly in

```
 1    the factual allegations, we are entitled to discovery because

 2    the discovery's framed by the pleadings themselves.

 3            THE COURT:  Okay.  Any response to that?

 4            ATTORNEY BRITO:  Your Honor, to the extent that the

 5    defendant has a belief that my client is a racist or bigot, as

 6    he published in his book, the reliance on that statement is on

 7    the defendant not my client to demonstrate what others believe

 8    or have accused him of being.  To the extent that there's other

 9    complaint or allegations that were made by other parties not

10    related to this case, that the defendant saw, never saw, heard

11    about, never heard about, but never relied upon for making his

12    conclusionary statement about my client.  His belief about my

13    client really has no relevance to this to the extent --

14            THE COURT:  Why wouldn't it be relevant to damages, I

15    guess?

16            ATTORNEY BRITO:  It's not.  We haven't even gotten that

17    far.  We're going to get to that over the next category of

18    requests for production of documents.  That's going to be more

19    to discuss.  But we haven't gotten into what the damage theory

20    is in this case.  They haven't -- you know, there's an

21    allegation in the complaint of --

22            THE COURT:  So you think -- you're thinking that

23    damages may not encompass that type of issue?  Is that what

24    you're saying?

25            ATTORNEY BRITO:  It would be a function of -- if we get
```

1    into that, it's going to be a function of reputational damage.

2    And how we get into dealing with reputational damage is going

3    to be a challenge from an evidentiary standpoint by virtue of

4    the fact that this is such a public individual, no different

5    than --

6            **THE COURT:**  But in other words, that's an issue from

7    the get-go of the filing of the complaint, right?

8            **ATTORNEY BRITO:**  It is.  It is.  I welcome that and I

9    understand that's part of what we're dealing with.  But we have

10   to be sensitive to that reality and no different than the --

11   than the defendant asking for complaints regarding racial

12   discrimination charges would be that my client brings in a

13   series of individual witnesses to come and testify to counter

14   that he is not a racist.  He is not only -- I don't want to --

15   again, I'm trying to avoid cases within the case for purposes

16   of establishing this issue.

17           It really boils down to what is it the defendant relied

18   upon to make the statement, not about what others have said

19   about my client.

20           **THE COURT:**  Yes.  But you're seeking damages.  So how

21   is it that a jury would be able to assess that without knowing

22   that?

23           **ATTORNEY BRITO:**  How would other lawsuits, an I don't

24   mean to question the Court, I'm not asking this question but

25   I'm speaking out loud, how would the filing of other lawsuits

1      that charge racial animus, the lawsuits themselves,

2      irrespective of how those things were resolved, how would that

3      delve into the issue of reputational damage or otherwise?  It

4      wouldn't.  It would really boil down to what is it that this

5      gentleman relied upon in making that determination.  He had to

6      have some basis, whether just an out right belief without facts

7      or if he had something to rely upon.

8           **THE COURT:**  Well, what if he could proffer that he

9      knows about -- I mean, this request is very broad, any and all

10     allegations of racism.  So I grant you that.

11          But what if he were to say, well, identify a particular

12     case that he was knowledgeable about as a source of his

13     conclusion, for example?

14          **ATTORNEY BRITO:**  Then let's talk about.  Let's see what

15     the allegation was, what the issues are, how it was resolved if

16     it was resolved.  That's a little more of a practical approach

17     to this.  But just any and all, it's just -- it's really

18     disproportionate in my mind.  And we object on that basis.

19          **THE COURT:**  Okay.  On that topic, I guess I'm partly

20     with the plaintiff on this that it may be -- the topic is not

21     off limits.  I'm making that clear.  For purposes of request

22     for production as it's currently worded, maybe it's overbroad.

23     And so I'll sustain that objection for now.  But for example,

24     it could be narrowed, number one; number two, I'm not saying

25     that the topic is off limits because I think the topic could

```
 1    very much be relevant.  But for purposes of producing that,

 2    that is a relevant and proportional issue.  How proportionate

 3    with producing any allegation that was ever raised and his

 4    records of racism in anyway be proportionate to this relevant

 5    minor issue.

 6            So for instance, if it comes out at deposition, for

 7    example, that Mr. Trump knows that he's been accused of racism

 8    in particular by this person, we now have a much more narrower

 9    subset to then get into document production about, if that

10    makes sense.

11            ATTORNEY BRITO:  Understood, Your Honor.

12            THE COURT:  The topic may be very, very relevant

13    because it's in the complaint and it may go to damages.  But

14    I'm with Mr. Brito on this that to some extent, at least from

15    an over breadth point of view, if not as a practical matter, it

16    -- I can't compel the existing request.

17            So I'm with you on that.

18            ATTORNEY PERRY:  I understood, Your Honor.  So perhaps

19    we can --

20            THE COURT:  I'll --

21            ATTORNEY PERRY:  -- meet and confer and come back to

22    Your Honor with any concerns.

23            THE COURT:  Or give me a new request.  In other words,

24    narrow the request.  And obviously, Mr. Mr. Cohen, may know

25    about a particular allegation that was one of the reasons that
```

1    he said, right, oh, he's a racist, right?  Or at least then

2    we're not talking about any instances within the Trump

3    Organization or somebody bringing an allegation of racism,

4    which is very broad.  But now we're talking about one

5    situation.  Well, that's a different animal.

6          **ATTORNEY PERRY:**  Sure, Your Honor.  Okay.

7          **THE COURT:**  I'll deny the motion without prejudice.

8          **ATTORNEY PERRY:**  Okay.

9          **THE COURT:**  Go ahead.

10         **ATTORNEY PERRY:**  And then mindful of the clock, we do

11   have a couple more requests we want to talk about and perhaps

12   we can get a little more quickly because we did want to get

13   into the issues of -- in the upcoming deposition.  But I think

14   hopefully we can do these quickly.  And if not, we can do the

15   same, put a pin in and meet and confer and come back to Your

16   Honor.  But the other requests we'll see if we can accomplish

17   this quickly.

18         But 59 through 60 and 64 relate to the issue that we've

19   just been discussing to some extent, which is the question of

20   damages.

21         **THE COURT:**  All right.  Probably would stay the same.

22         **ATTORNEY PERRY:**  Yes.  Gotcha.

23         Okay.  59 is all documents or other evidence showing

24   how the disclosures alleged in the complaint caused you any

25   damages.  And the plaintiff's point, as Mr. Brito just made, is

1    that this is too soon and he hasn't fully calculated his

2    damages.

3            THE COURT:  Put a pin on that one.  You're entitled --

4    what damages disclosure have you gotten, by the way, in the

5    26A?

6            ATTORNEY PERRY:  We haven't gotten any disclosures.

7            THE COURT:  Okay.

8            ATTORNEY BRITO:  Your Honor, I think the parties

9    glossed over that because we jumped into discovery so quickly.

10           THE COURT:  Okay.  Well, that's what 26A is for.  So

11   you have a little time.

12           Okay.  I'm not going to compel it to be due tomorrow,

13   but let's get to 26A disclosure so you can come up with a game

14   plan for yourselves.  And then we'll come back to damages,

15   discovery, once.  But I need to have some baseline, and I would

16   like to give the plaintiff some opportunity to think that true.

17           Okay.  So, yeah.  I agree to put a pin on that, those

18   that relate to damages.  You're entitled to that information.

19   It's just how you get it and when.

20           ATTORNEY PERRY:  For sure, Your Honor.  Okay.

21           So I think we can put this to the side.

22           THE COURT:  Okay.  Right.  So just formally, for the

23   record, we're deferring.  I'm going to defer on those.

24           Okay.  So the issue with the deposition.

25           ATTORNEY BRITO:  Right.  Before we do that, just so

1     it's clear, since you mentioned what you just said about being

2     on the record, we'd like to just articulate so we're all clear

3     as to what Your Honor is asking deferring on the questions.

4          **THE COURT:**  Right.

5          **ATTORNEY BRITO:**  I think counsel didn't bring up

6     request numbers 54 and 55 either because they're no longer

7     proceeding.  In the interest of time, we'll table that and

8     confer.  And then the balance of the request was 59, 60, 61,

9     64, and 65 through 69.

10         **THE COURT:**  Is that correct?

11         **ATTORNEY PERRY:**  Yes, Your Honor.

12         **THE COURT:**  Okay.  Thank you.

13         **ATTORNEY BRITO:**  Appreciate that.

14         **THE COURT:**  Anything else?

15         **ATTORNEY PERRY:**  Yes, Your Honor, just with respect to

16    the upcoming deposition.

17         So we are scheduled to proceed on September 6th, as I

18    noted.  But Mr. Brito recently e-mailed us to request kind of a

19    prescreening of the intended topics that we wish to pursue.

20    And we've informed him that we intend to pursue all of them as

21    relevant both to the claims and to impeachment and motive.  And

22    we just want to front this for Your Honor to avoid any further

23    delay or game playing.

24         We, of course, don't have to disclose our questions in

25    advance to Mr. Brito but we thought it was worthwhile to try

1    and confirm the scope of the deposition.  We want to mitigate

2    the risk of preparing for this deposition only to have

3    Mr. Trump fail to appear.

4           So I don't -- I believe Your Honor has those topics.

5           **THE COURT:**  Why would he fail to appear?

6           **ATTORNEY PERRY:**  Well, if this issue is unresolved.

7    I'm not assuming he would do that.  I just -- I want to see if

8    there's a way that we can come to an understanding in advance

9    to avoid a last minute adjournment.

10          **THE COURT:**  Okay.  Let me turn to Mr. Brito.  What's

11   your understanding of what the issue is?

12          **ATTORNEY BRITO:**  The issue is, Your Honor, is I sent an

13   e-mail to Mr. Brodsky on August 2nd.  And I didn't ask him to

14   tell me the questions.  That's obviously not -- would not be

15   appropriate to do that.  But what I did ask is for two things:

16   Number one, to deal with the issue of the location of the

17   deposition given the security interests that exists.  They had

18   noticed the deposition for their office.  I know that that's

19   probably not the appropriate way to conduct the deposition.

20   We're still in a discussion about that in terms of where the

21   deposition would be conducted.  I had suggested even doing it

22   by ZOOM.  They said they would not agree to doing the

23   deposition by ZOOM.

24          And as to the scope of the deposition, I said, I'd like

25   to know whether you intend to ask the president any questions

related to the six topic:  Number one, the events surrounding

January 6th, 2021; any -- the New York state charges alleged

payments made to Ms. Clifford; three, any allegations that

David Pecker was involved in any alleged transactions involving

Ms. Clifford which Your Honor just ruled on; any alleged

relationship between Mr. Trump and Karen McDougal, which Your

Honor addressed as well just a few minutes ago; the handling of

classified documents after Mr. Trump left the White House, and

is any issues related to any of the criminal and civil cases

involving Mr. Trump or the Trump Organization.

I just wanted to know before we get into that because I

don't want like --

**THE COURT:**  What's let's assume the answer's yes in

part, now what?

**ATTORNEY BRITO:**  Criminal counsel is going to get

involved in and ask for some sort of relief or protective order

or limitation, because again, these are all matters that I've

identified that, two things:  Number one, I'm not involved in;

number two, I don't really think have a strong relationship to

this case.  And I didn't want the deposition, as much as I had

told the Court, I don't want discovery to be fodder for the

media and sensationalize what we're dealing with here by virtue

of the asked questions, number one, that aren't related to this

case; and number two, as Your Honor probably picked up, would

have criminal implications.

1          My client doesn't have the -- doesn't have the

2     obligation to testify regarding any of these aspects, being

3     asked about any of these criminal aspects.  I don't know

4     whether he would invoke his Fifth Amendment right or not.  But

5     I don't think he should even be put in that situation in this

6     case to have to do so by virtue of the fact that this case

7     doesn't deal with January 6th, 2021 and any election

8     insurrection.  It doesn't deal with Mr. Packer or Ms. McDougal

9     and to the extent even the classified documents for that

10    matter.

11         **THE COURT:**  I generally agree with you.  However, the

12    problem is that how do I do that in the abstract, right.

13    Because, for example, the -- one could come up with a question

14    that might touch upon some of those topics that go to his --

15    his credibility, right.  And remember:  Credibility is always

16    fair game for a plaintiff or defendant, but in this case, the

17    plaintiff.

18         So in the abstract, I generally agree with you.  You

19    should just be talking about this case, right.  But one could

20    formulate a question that is -- that goes to a -- and that

21    seeks an answer that may be relevant to the plaintiff's

22    credibility, right?

23         **ATTORNEY BRITO:**  I do understand that.  But at the

24    expense of the possibility of having the plaintiff have to

25    testify about a subject matter of which he is now the subject

1    of a criminal defendant.

2         **THE COURT:**  He has every right to -- he has every right

3    to decline to answer that question.

4         **ATTORNEY BRITO:**  I understand.  But there is, as of

5    right now, he is not being asked those questions.  He's not

6    being required to answer those questions.  He is not even

7    required to testify in his defense.  And what I don't want is

8    what --

9         **THE COURT:**  But I just -- in other words, I don't

10   understand.  In other words, he has every right not to

11   incriminate himself.

12        **ATTORNEY BRITO:**  And there's a visceral reaction that

13   jurors or people in the media, and just people in general have

14   to someone invoking their right.  As much as people in this

15   room understand and respect it, I think lay people having a

16   reaction to that when somebody invokes that privilege as

17   opposed to simply answering the question yes or no.

18        **THE COURT:**  He's invoked the privilege before.

19        **ATTORNEY BRITO:**  On several separate matters, but

20   nothing in relation to the January 20th -- the January 6th

21   events, which clearly have nothing to do with this case.

22        **THE COURT:**  Right.

23        **ATTORNEY BRITO:**  And I tried to segregate that and

24   trying to make it clear.  I'm not trying to limit issues in

25   this case.  I'm trying to limit issues that clearly are not

1    issues in this case.  The classified documents, not an issue in

2    this case nor could it be, just from a temporal standpoint.

3         So what we're talking about in this case is what did

4    Mr. Cohen reveal that he should not have revealed, whether by

5    confidence or by privilege and is not in relation to whether my

6    client has a response to certain questions related to events

7    that post date them by months, if not years, just for purposes

8    of trying to establish credibility.

9         I think they're going to have a lot of opportunities to

10   question my client about things that they believe would

11   question his credibility that don't necessarily implicate his

12   criminal rights.  And that's what are very sensitive --

13        **THE COURT:**  Well, how would you structure this though?

14   For purposes of the discovery limitations, how would you

15   structure it.

16        **ATTORNEY BRITO:**  Those topics that I've identified, and

17   I tried to be as vanilla as I could about them, are not fair

18   game for now.  If, for example, charges are dismissed or may be

19   trial ensues, and subsequent to that, they want to ask the

20   plaintiff about that.  Once the case is over, I would

21   understand.  But while this is pending, and is given the amount

22   of attention that these criminal matters are attracting, I

23   don't think that this is the right place for a -- a really a

24   nonparty to get fodder for his continued media circus, cause

25   he's still in the media just about every day that he gets an

1    opportunity to talk about the event -- the events of the day

2    that are being spoken up about simply because he gets an

3    opportunity to ask my client about them in this case that has

4    nothing to do with what he's talk about in the media today,

5    which is the criminal indictments that have been coming down

6    over the past several months.

7         This is not a forum for that and it shouldn't be his

8    ongoing breaches of the contract that we have, which is the

9    reason why we're here, we would be seeking that continued harm

10   because he's continually on CNN, he's continually on MSNBC

11   talking about, well, what do you think about Mr. Trump's latest

12   indictment.  And I don't want what's going to be questioned

13   about him in this case to feed that because it's not

14   appropriate and it's not relevant.

15        And again, I just want to bring this because I want to

16   avoid a fight at the -- not fight.

17        **THE COURT:**  Well, I guess the premise of your question

18   is that, obviously, he's going to get seven hours, right.  So

19   if he wants to waste his time getting none answers, that, to

20   some extent, is his problem.

21        **ATTORNEY BRITO:**  It is.  But I'm not concerned about

22   their problem.  I'm concerned about my client's problem.

23        **THE COURT:**  Right.  So I that's what I'm saying.  I

24   guess I don't understand the -- to the extent they ask a

25   question, for example, you know, is it true that you were

1    hiding classified documents in your house, right.  And he says,

2    well, I'm declining to answer that because on Fifth Amendment

3    grounds, right?

4         **ATTORNEY PERRY:**  Right.

5         **THE COURT:**  What I'm not understanding though is what

6    is the problem doing that?

7         **ATTORNEY BRITO:**  There's a couple.  Number one, to the

8    extent that if my client were to answer a question that

9    tangentially relates to any of these topics or any of the

10   criminal indictments, and that answer serves as the basis for a

11   future claim by one of the prosecutors that there was a waiver

12   of that Fifth Amendment right, I don't want to be responsible

13   for that.

14        **THE COURT:**  But how do I deal with that?  In other

15   words, if he decides to answer a question --

16        **ATTORNEY BRITO:**  No.

17        **THE COURT:**  -- what you're saying is if he decides to

18   ignore you and he wants to answer a question just because,

19   right?

20        **ATTORNEY BRITO:**  The question shouldn't be -- should

21   not be posed as it relates to any of the criminal indictments

22   because the criminal indictments all post date the events that

23   we're speaking about in relation to this case.  There's just a

24   hard line.  And these events are taking place after.  You know,

25   we're talking about the election.  We're talking about the

```
1    January 6th event.  We're talking about the classified
2    documents.  All of these things are well past what we're
3    dealing with in this matter.
4          So they shouldn't even be asked.  And that's the line
5    I'm asking the Court to draw is we should not be touching upon
6    these topics.
7          And so, for now, I'm not saying forever, I'm saying for
8    now.
9          THE COURT:  You want him to be re-deposed later on?  Is
10   that necessary?  Is that what you're saying?
11         ATTORNEY BRITO:  No.  I'm trying to take a reasonable
12   position so that I'm not ignoring the fact that may be down the
13   road, there is a possibility that the landscape changes.  I
14   don't want to say, hard no, ever, you can't ask that because I
15   understand that the Court is probably not inclined to do that.
16   But what I'm saying is for right now, given the sensitivity, I
17   don't think they should be asking these questions because that
18   implicates a lot of criminal aspects that are very problematic
19   and potentially prejudicial to my client and has no probative
20   value whatsoever for the defendant in this case other than to
21   claim, well, we want to challenge his credibility on certain
22   events.
23         There's a lot they can ask Mr. Trump to delve into his
24   credibility that doesn't have to implicate the criminal
25   aspects.  And that's the balance that I'm asking the Court to
```

1   strike.  And I understand Your Honor's concern about the --

2   doing this in a vacuum.  But I think it's not a vacuum.

3          I have been very clear.  These are the topics that I

4   have laid it out for them so they understood exactly what my

5   concern was.  And they said, we're going to ask.  We're not

6   taking anything off the table.  And I don't think that's

7   appropriate either.

8          **THE COURT:**  Well, the -- well, I mean -- to some extent

9   I understand there reasons why you're raising it.  The issue

10  I'm having a hard time figuring out is, well, how do I -- how

11  do I say that an entire topic is off limits in a deposition?  I

12  don't do that for any other plaintiff or any other party,

13  right.  I don't, in other words, why wouldn't -- why would this

14  party have the benefit of that as opposed to everybody else?

15  Because I don't -- I don't even do that for corporate

16  depositions, in 30(b)6 designation, for example, because

17  that's --

18         **ATTORNEY BRITO:**  This isn't your normal plaintiff.

19         **THE COURT:**  Yeah.  No.  But he is.  He's suing somebody

20  for damages.  It's a civil action.  All right.

21         **ATTORNEY BRITO:**  And it should be -- it shouldn't delve

22  into criminal matters.  That's my point.

23         **THE COURT:**  My point to you simply is there is a

24  protection built into the system.  In this situation where

25  questions that could not have any possible bearing on

1    credibility are being asked because the person has a pending

2    criminal case, right.  This is not the first time somebody in

3    that position is being -- is involved in a civil case.  I mean,

4    this happens.

5         **ATTORNEY BRITO:**  We cited to the cases that talk about

6    the fact that you can't utilize a civil case in order to gain

7    information in a criminal procedure.

8         **THE COURT:**  Precisely.  But in those same cases though,

9    there's a -- in other words, there's a privilege.  There is a

10   privilege.  And one of the grounds for instructing a witness

11   not to answer is on the ground of privilege.  And he has a

12   Fifth Amendment privilege, you can instruct him not to answer.

13   You see, that's the part that I'm having a hard time

14   understanding.  Why do I need to do some kind of special rule

15   for this plaintiff that doesn't apply to any other plaintiff,

16   right?

17        **ATTORNEY BRITO:**  And to be clear, I'm not asking for a

18   special rule.

19        **THE COURT:**  You are.  You're asking for -- you're

20   asking in advance that I declare by fiat this topic is off

21   limits.

22        **ATTORNEY BRITO:**  It's a protective order that a would

23   limit the subject of testimony and other cases that that

24   happens as well.  You can't ask about, you know -- there's a

25   protective orders that come into play that would --

1     **THE COURT:**  The whole deposition would be subject to
2  protective order.
3     **ATTORNEY BRITO:**  Well, no, no.  Protective order from
4  the standpoint of including questions and topics being
5  discussed as opposed to --
6     **THE COURT:**  I've never issued -- in 20 years of being a
7  judge, I've never issued an order in advance that says you
8  shall not ask that question.
9     **ATTORNEY BRITO:**  You should not touch upon this topic.
10    **THE COURT:**  Or touch upon that topic.
11    **ATTORNEY BRITO:**  And in other cases, the ones that
12  we've cited to, and I'm not asking this but I'm answering the
13  Court's questions.  The courts have stayed the proceedings
14  pending the resolution of a criminal matter to avoid this
15  concern.  And so they'll stay the civil cases, allow the
16  criminal cases to play out.  And again, I'm not asking that --
17    **THE COURT:**  Right.  In other words like the *CVS,*
18  *Welling* (phonetic) kind of situation.
19    **ATTORNEY BRITO:**  I'm not familiar with what you're --
20    **THE COURT:**  There was a case I remember using because I
21  had a client whom criminal matters.  And so I remember a case
22  called *CVS versus Welling* (phonetic), or something to that
23  effect, that I cited back in 1994.
24     So but my -- in my recollection, that case was, see, I
25  was representing the defendant.  And so I said you can't -- you

1    can't use your lawsuit as a way of damaging my defendant

2    because if -- he didn't want to invoke the Fifth Amendment.

3    And -- but he was a defendant in the case.  And so there's

4    actual case law dealing with when a defendant can seek a stay

5    because of Fifth Amendment concerns versus when a plaintiff can

6    seek a stay.  There's all sorts of law on this.  But frankly, I

7    wasn't prepared to deal with it.  I do know there was a case.

8         **ATTORNEY EICHENBLATT:**  Your Honor, I apologize for

9    interrupting.  I have a citation that you're talking about.

10   The rule in the Eleventh Circuit is as to when the stay should

11   be granted to prevent unconstitutional infringement, it

12   requires, basically, that the plaintiff show that invocation of

13   the privilege in the instant matter will result in a certain

14   loss by automatic summary judgment.

15        So unless the, you know, the only entitlement would be

16   if by raising -- invoking the Fifth Amendment, that would

17   automatically mean that the plaintiff's case would be dismissed

18   at summary judgment stage.  There's been no showing of that

19   here.

20        **THE COURT:**  Right.

21        **ATTORNEY BRITO:**  Your Honor, the cases that I was

22   relying upon in our materials, one is *U.S. versus Stewart*.

23   This is from 1989.  It's from the Tenth circuit.  But it talks

24   about --

25        **THE COURT:**  That's a criminal case?

1    **ATTORNEY BRITO:**  It is, Your Honor.  And it talks about

2    the district court having the authority under Rule 16

3    prohibiting parties from abusive discovery procedures,

4    including attempts to avoid the limitations of criminal

5    discovery through the use of civil discovery.

6        **THE COURT:**  That's clearly not relevant, right?  Do you

7    have any civil case?

8        **ATTORNEY BRITO:**  I do.  I was just starting with that

9    principle.

10       **THE COURT:**  Yeah.

11       **ATTORNEY BRITO:**  And the other case is the Northern

12   District of Florida.  It's *Obukwelu versus Tallahassee*

13   *Memorial*.  It's behind tab D, as in David, of our materials.

14       **THE COURT:**  Okay.

15       **ATTORNEY BRITO:**  In that decision, the Court goes on to

16   say the Fifth Amendment privilege against self incrimination,

17   shields one asserting that privilege from being incriminated by

18   his or her own compelled testimony or consequences.  A party

19   is, quote, protected by the privilege.  A party who is

20   protected by the privilege may rightfully refuse to answer

21   unless and until he's protected at least so the use of his

22   compels answers and the evidence derived therefrom any

23   subsequent criminal case of which he's a defendant.  Closed

24   quote.

25       It goes on to state --

1          **THE COURT:**  Isn't that what I'm saying?

2          **ATTORNEY BRITO:**  It is.  The last quote is what I

3     wanted to refer the Court.

4          **THE COURT:**  Okay.

5          **ATTORNEY BRITO:**  Information protected by the privilege

6     against self incrimination may not be discoverable in a civil

7     proceeding under Rule 26B.

8          And so what I am saying is an extension of what Your

9     Honor's saying.  I agree that there could be Fifth Amendment.

10    They can't use that in -- his answer can't be used in a civil

11    context whatsoever.  And from that perspective, there's no

12    point in them asking these questions that are more going to, in

13    all likelihood or almost 100 percent certain, to receive a

14    privileged response to his questions.

15         And so hence, the reason why I'm asking that the Court

16    in essence stay examination of this -- of these topics in these

17    cases that are presently pending in criminal courts pending

18    resolution, dispute or resolution in this case.

19         **THE COURT:**  But the problem is that in many instances,

20    I don't know that any of that is actually relevant.  You see my

21    point?  In other words, there's a rule that deals, for example,

22    with the admission of extrinsic evidence of criminality to

23    impeach somebody, right.  That's rule 603 or 605.  So it's

24    specific issues relating to that.

25         So here, there's -- there's -- it's premature even to

1    invoke that, right, because it's requires an admission.

2         So on that ground, that topic, it would be premature.

3    So for example, if he invokes some things, if he were to invoke

4    the Fifth Amendment privilege, for example, to a question that

5    he's being asked having to do with, I don't know, the --

6    whichever one of this -- the one in Fort Pierce, what's that

7    about?  The documents?

8         **ATTORNEY BRITO:**  The documents.

9         **THE COURT:**  The only way it could be prejudicial in

10   this case, if it was relevant, if the Fort Pierce litigation

11   was relevant to this case, they would then be able to move for

12   for relief in this case because the plaintiffs invoked the

13   Fifth Amendment.  You see what I'm saying?

14        So for example, here, if he invokes the Fifth Amendment

15   to a question having to do with Stormy Daniels, they're going

16   to be able come in and move to dismiss on the grounds that he's

17   basically -- he's precluded from pursuing the litigation

18   because he's shielding them from information.  Right.  There's

19   a remedy for that:  Either a dismissal or a stay.  Right.  But

20   what if it had nothing to do with this litigation?  It has to

21   do with something that occurred years after, years after their

22   relationship ended.  Right.  In 2022, in fact.  Right.  Well,

23   if it has no relevance and it would not otherwise be admissible

24   under 603 or 605, then any request to dismiss or any request

25   for dispositive relief based upon the invocation would be

1    denied.  You see what I'm saying?

2         **ATTORNEY BRITO:**  I wholeheartedly understand what

3    you're saying.

4         **THE COURT:**  Right.

5         **ATTORNEY BRITO:**  My concern is more so to matters

6    outside of this case, the consequence of that question and

7    answer.

8         **THE COURT:**  Well, the Government can't use his

9    invocation against him in that case.

10         **ATTORNEY BRITO:**  I don't want Mr. Cohen to be able to

11    use that.  So if I understand where the Court is headed, which

12    it would be allotted deposition, they use that time at their

13    peril, they ask questions at their peril.

14         **THE COURT:**  Right.

15         **ATTORNEY BRITO:**  The privilege could be invoked if

16    necessary.  I'd like then, if the Court is not inclined to

17    limit the scope of the questioning --

18         **THE COURT:**  Right.

19         **ATTORNEY BRITO:**  -- I'd like to put some protections to

20    preclude because I know Your Honor's still wrestling with their

21    confidentiality and how far it's going to extend.  As it

22    relates to the deposition, whether it be transcript, video or

23    any commentary associated with it, that this not be disclosed

24    outside the context of this litigation, in particular in the

25    social media or public media forum by the defendant or anyone

```
 1   else.  It should be for part of this case because that's what

 2   this case is about.  It should be this case.

 3          Even if the -- my -- I suspect they're going to ask him

 4   had these questions related to the topics that I've raised

 5   simply to get a privileged response from my client and then

 6   they go out the following evening on NBC and say, on MSNBC and

 7   say, he invoked his Fifth Amendment privilege to this question,

 8   this question, this question.

 9          Why should that -- why should that be happening?  What

10   is my question to myself and to --

11       THE COURT:  But doesn't that -- because what if he

12   answers the question in a way that it could be used against

13   him?  Why isn't that issue related to the protective order

14   issue that would apply across the board?  You see my point?

15       ATTORNEY BRITO:  I'm not following.

16       THE COURT:  In other words, if there's a protective

17   order having to do with depositions, for instance, well, that

18   would include that, right?

19          ATTORNEY BRITO:  That's what I'm asking.

20          THE COURT:  Right.  Yeah.

21          So the resolution of that concern is probably something

22   that should be done in the protective order.  And I guess

23   that's what you're saying is I should deal with it there.

24          ATTORNEY BRITO:  If you're not inclined to agree with

25   my request that we limit the scope of the examination, then my
```

1    alternative request to the Court is that we have a restriction

2    on who can access it, who can share or utilize the deposition

3    testimony, whether it be by audio, video or both.  It shouldn't

4    go out.

5         **THE COURT:**  Well, on that, I have no problem saying

6    that I'll definitely hear you out on that because you may have

7    a very leg to stand on, but I don't have to decide that for

8    purposes of this issue.  You see my point?  I will take it up

9    just so you understand.  Unless I -- I will have a protective

10   order already in place before the deposition, which you'll

11   remind me is the 6th.

12        **ATTORNEY PERRY:**  Yes, Your Honor.

13        **THE COURT:**  So i intend to get an order out next week.

14   So it will be well in advanced.  And if there's some dispute

15   about, which I'm sure there will be, I can obviously try to

16   deal with that as well if I can sneak you in.

17        Would this have -- I will keep it in mind because

18   you've already requested in your proposal, my recollection of

19   it, having to do with depositions, generally, for example, and

20   use of the dep -- so the topic is on the table.  And I do agree

21   with you that that merits consideration.  Right.  So I will --

22   so on that, I'm deferring.  And I will take it up.

23        On the broader question that you're asking me to

24   basically say this is off limits, I will say to the defendant

25   that it's a seven-hour deposition.  You've got a lot to cover

1   on issues that are on 123 paragraphs of that factual

2   alligation.  Obviously asking questions to elicit answers that

3   are -- cannot possibly be used in this case is a waste of your

4   time.  Right.  So if the defendant understands that.

5         The reason I'm hesitating to grant the relief you're

6   asking is there could theoretically be a question that would

7   relate to this that somehow touches on it.  I'm having a hard

8   time articulating but I don't want to -- I don't want to say

9   categorically they can't be asked because I can't think of one.

10  You see my point?

11        So I'm going to let the defendant take the deposition.

12  A protective order will be entered to protect the transcript

13  well before.  And then if this topic comes up a lot or, you

14  know, if this issue is front and center, I'll deal with that.

15  I'll take up your point and is either modify the protective

16  order and deal with it.

17        **ATTORNEY BRITO:**  Are you saying take those up in a

18  deposition?

19        **THE COURT:**  Right.  Cause -- and again, if they're just

20  going to spend three hours having him take the Fifth Amendment,

21  there's case law that says when you do that and it's

22  unreasonable to do so, there may be a remedy.  And your

23  suggestion is, well, One remedy would be is don't allow them to

24  ever use it.  Right.  That's a very fair point.  And so I would

25  -- to some extent in the abstract, if they were to do that,

```
 1    take three or seven hours on things that could not possibly be
 2    admissible in the case, well, that supports your theory, right.
 3    What if it's ten minutes?  Right.  What if it's a very narrow
 4    scope?  And what if one of their questions were actually
 5    formulated in a way that would be potentially relevant as it
 6    relates to bias or motive or credibility?  You see my point?  I
 7    have to give them an opportunity to craft the relevant
 8    questions.
 9           So that's a long way of saying I'm not going to grant
10    your relief, your request that I do some kind of order that I
11    have not have done in any other case.  So I will agree with you
12    a misuse of a deposition could be grounds for relief.  Right.
13    The defendant is aware of that.  But there's plenty of fodder
14    here to focus on that's going to consume the deposition.
15           Now, let me -- I will, however, ask you one question
16    because I got to get to my next case.  They're going to have
17    issues as well.
18           So you mentioned that this thing with the Pecker guy.
19           ATTORNEY PERRY:  Yeah.  And with Ms. McDougal as well.
20    He had stated the record --
21           THE COURT:  Because I want to make sure.
22           ATTORNEY PERRY:  Yeah.
23           THE COURT:  If they ask questions relating to that, I
24    don't think that I ruled --
25           ATTORNEY PERRY:  No.
```

1      **THE COURT:** -- that the topic was off limits.

2      **ATTORNEY PERRY:** No, Your Honor.  You did not.

3      **THE COURT:** I ruled the opposite.  I said the topic may

4  be relevant.  But I'm certainly not going to produce, force you

5  to produce a whole slew of documents on something that may be

6  potentially relevant.  And for purposes of the deposition, that

7  may be something that they can get into.

8      So I'm not going -- so on that one, for instance, I'm

9  not sure I would agree, substantively, that has nothing to do

10  with this case because that may very well.  I know the

11  abstract.  You see my point?

12      **ATTORNEY BRITO:** I do.

13      **THE COURT:** On the documents issue, I fully agree with

14  you.  I don't see how anything having to do with misuse of

15  classified information as to that account could possibly be

16  used here.

17      Now, let me give you an example.  What if, you know,

18  there are obstruction of justice issues in that case.  I mean,

19  there's all sorts of potential things that could theoretically

20  coincide.  I don't want to do that in the abstract.  So I'm

21  just going to leave it at that and let the defendant take their

22  seven-hour deposition and not waste time about it.  And I'm

23  sure the defendant's counsel are both very professional lawyers

24  that are going to comply with the rules on relevant discovery

25  because there is -- there is a chattel rule that that's what

1    you're supposed to get into.  But I'm not going to tie their

2    hands if they actually think that they have a legitimate area

3    that could be admissible.  You can't ask questions that could

4    not be possibly be admissible.  That, I think, is the

5    protection.

6         When a lawyer would ask a question of a witness that he

7    or she knows could not possibly be admissible, well, that is a

8    violation of Rule 26.  Right.  I don't want to anticipate them

9    doing that.  So that's the answer.

10        So I will -- I'll simply defer to the enforcement of

11   the rule of the case.  His counsel will be there to represent

12   the defendant and be sure that the defendant doesn't answer a

13   question he shouldn't answer.  And so good luck on that.

14        And then counsel knows that they're supposed to only

15   ask questions that could lead to visible evidence.  And ask if

16   I ask the restriction --

17        **ATTORNEY EICHENBLATT:**  Apologizes, Your Honor.  Is it

18   possible that you will be available by phone during the day of

19   the deposition to potentially resolve, as these issues come up,

20   if they do take up a larger portion of the deposition?

21        **THE COURT:**  Well, no.  I don't think I need to because

22   remember, he's entitled to -- he -- the rule's very clear as to

23   whether the lawyer can do.  You can instruct him not to answer

24   on the grounds of privilege.  Right.  So.

25        **ATTORNEY EICHENBLATT:**  Understood.

1          **THE COURT:**  You instruct the witness not to answer,

2     what's there for me to do?  Right.

3          **ATTORNEY EICHENBLATT:**  Right.

4          **THE COURT:**  So now if he instruct the witness not to

5     answer on the grounds of relevance, well, he knows that that he

6     can't do that.  Right.  He can preserve his objection.  That's

7     what I'm saying.  This case is may, from some perspective, may

8     be extraordinary.  But from the Court's perspective, the rules

9     govern.  The rules govern to protect the plaintiff and as well

10    as the defendant.  The rules govern to not allow, for example,

11    the defendant to ask clearly inadmissible questions just to

12    embarrass somebody.  That's in the text to Rule 26.  You can't

13    do that.  Right.  On the other hand, the rules are there to

14    protect a defendant who believes he could be incriminated

15    against, and there's nothing wrong with invoking the privilege.

16          So that's why I'm saying the rules are there and the

17    normal rules will apply.  So I don't need to be on call.

18    Because, again, I don't do that for any other case.  And I

19    purposefully stay away from my phone when I know depositions

20    are being taken.  Because in federal court, we believe that we

21    are so hung up on rules for a reason, because lawyers who

22    practice in federal court know that we follow those rules.  In

23    state court, maybe a different standard apply.  But those

24    judges are willing to take your calls.  Right.  I get it.  So

25    we won't take your call, at least not in my chambers.  All

1    right, Maedon.  Don't answer the phone.

2           Now, you see my point?

3           Now, as to the location of the deposition, I'm sure

4    Mr. Brodsky and you can work it out.

5           **ATTORNEY PERRY:**  Your Honor, we've agreed to work it

6    out.  So we don't think it's in front of Your Honor.

7           **THE COURT:**  So to some extent, I'd be loathed to offer

8    the courthouse because we have security issues then ourselves.

9    But on the other hand, there is something to be said for that.

10   If that was something that the parties want to consider, the

11   West Palm courthouse.  But ask me first if that -- is the

12   parties are in agreement to that, ask me first because I have

13   to go to Judge Altonaga.  I'm not going to give you leave

14   tickets to the courthouse for just like that because of the

15   security issues.

16          So as a potential issue, a potential resolution.  But

17   I'll let you work it out.  You still have several weeks to do

18   it.  And I'll order next week to make sure you have your

19   protective order.  I'll keep that issue in mind.

20          And then on the protective order, say for example,

21   something happens in the deposition that one party is

22   quarreling over, the protective order should -- will be broad

23   enough to not allow somebody from unilaterally doing something

24   without the Court addressing it.  Does that make sense?

25          So say for example, the situation you envision occurs,

1   and he spends three hours answering no, no, Fifth Amendment,

2   invoked the Fifth Amendment, I should be able to deal with that

3   in this order.  And if not, I can completely modify it.

4          **ATTORNEY PERRY:**  Your Honor.

5          **ATTORNEY BRITO:**  Very well.

6          **THE COURT:**  I'll be available for that purpose because

7   I obviously know that that topic may be relevant.

8          **ATTORNEY PERRY:**  Your Honor, just one quick issue with

9   respect to the are anticipated protective order.

10          **THE COURT:**  Yes.

11          **ATTORNEY PERRY:**  I don't believe this specific -- I

12   understand Mr. Brito's relief requested today to include

13   protection of the fact -- of -- if Mr. Trump does end up

14   invoking, he wants to restrain Mr. Cohen from publicizing that

15   fact.  We would like to be heard on that.  We don't think

16   that's at all appropriate.  And in fact, if we do move for

17   dismissal --

18          **THE COURT:**  I'm not -- of course I will let you -- of

19   course that topic will come up.  I'll simply, just for purposes

20   of this deposition, I'm going to include it in the protective

21   order a protection of the deposition, which is actually pretty

22   common.  It's nothing unique to this case.  Again, I'm not

23   going to do anything to this case that isn't unique to this

24   case because I don't believe in that.  This is a civil action

25   between a plaintiff, an aggrieved plaintiff, and a defendant,

1    right.  Rules apply.  And so I think there is a rule that deals

2    with that issue.  So I'm going to incorporate that.  If you're

3    going to request a modification of it because you think that

4    it's tying somebody's First Amendment hands unduly, absolutely.

5    But that way, we can litigate it.  I can argue -- I can think

6    about it.  We can make agree or disagree.  And then I'll deal

7    with this.  But that way, nobody is doing anything that jumps

8    the gun.

9         Does that make sense?

10        **ATTORNEY PERRY:**  Understood, Your Honor.

11        **THE COURT:**  So, yes.  I'll hear you out on that.  If

12   you think that the protections that I'm going to include in the

13   -- for depositions is too broad because it's unfair for First

14   Amendment purposes, there's a ton of law on this, and so, yes,

15   absolutely.

16        The other thing I'm going to probably do is give the

17   defendant -- the plaintiff a little more protection at the

18   beginning so that nobody does anything in the interim until we

19   have an opportunity ourselves to flesh this out properly.  Does

20   that make sense?

21        **ATTORNEY PERRY:**  It does, Your Honor.

22        **THE COURT:**  That's all I'm saying.

23        So it will probably be broader in that respect.  But

24   you can then come back and say, well, here's how we need to

25   modify it.

1          And again, again, on that topic, what happens at the

2    deposition may actually be very relevant to that.  Right.  And

3    so that's thing another reason why I don't want to make

4    abstract rulings that tie your hands.  Because if he's right,

5    you're going to ask a five hours worth of inadmissible

6    questions, which shouldn't I deal with that?  Right.  Of course

7    I know you're not at all going to do that.  So the protection

8    is there for everybody.  And I'll enforce it.  Okay.

9          **ATTORNEY PERRY:**  Thank you, Your Honor.

10          **THE COURT:**  All right.  Thank you y'all very much.

11          **ATTORNEY EICHENBLATT:**  Thank you, Your Honor.

12          **ATTORNEY BRITO:**  Thank you for your generous time.

13          (Proceedings concluded at 6:07 p.m.).

14          (Whereupon, this concludes the transcription of the

15    electronic recording of the above-styled proceedings.)

16

17

18

19

20

21

22

23

24

25

## <u>CERTIFICATE OF TRANSCRIBER</u>

I certify that the foregoing pages represent a true and correct transcript, to the best of my ability, of the official electronic sound recording as provided to me by the U.S. District Court, Southern District of Florida, of the proceedings as taken on the date and time previously stated in the above matter.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which this hearing was dictated, and further that I am not financially nor otherwise interested in the outcome of the above-entitled matter.


Date:  Monday, August 28th,2023


<u>/s/Quanincia S. Hill, RPR</u>
Quanincia S. Hill, RPR
Federal Official Court Reporter
Southern District of Florida

## $

**$500** [1] - 4:12

## '

**'06** [1] - 48:21
**'07** [1] - 19:9
**'17** [1] - 46:20
**'catch** [1] - 61:15
**'catch-and-kill** [1] - 61:15
**'Inc** [1] - 16:8
**'this** [1] - 45:7

## 1

**1** [6] - 21:24, 25:20, 25:21, 25:22, 27:13
**100** [1] - 86:13
**101** [2] - 64:1, 64:22
**109** [1] - 30:13
**111** [7] - 33:23, 34:11, 44:12, 44:21, 44:23, 47:20, 52:11
**119** [1] - 38:4
**123** [1] - 91:1
**124** [1] - 38:20
**130** [2] - 37:20, 37:25
**16** [1] - 85:2
**18** [1] - 17:8
**18th** [2] - 8:15, 10:24
**1989** [1] - 84:23
**1994** [1] - 83:23
**1st** [3] - 25:21, 28:1, 28:4

## 2

**2** [11] - 6:24, 7:24, 8:3, 8:23, 9:6, 12:11, 13:19, 14:12, 14:15, 14:17, 25:6
**20** [1] - 83:6
**2006** [6] - 7:3, 9:7, 19:4, 48:9, 48:14, 50:14
**2007** [4] - 19:1, 19:10, 19:15, 19:23
**2008** [1] - 47:2
**2016** [4] - 46:19, 46:20, 48:13, 49:7
**2018** [3] - 47:9, 47:18, 49:3
**2019** [5] - 26:24, 27:2, 27:13, 49:22, 50:9
**2020** [3] - 50:1, 50:3, 50:15
**2021** [2] - 74:2, 75:7
**2022** [1] - 87:22

**2023** [4] - 21:24, 27:11, 27:13, 28:4
**20th** [1] - 76:20
**21** [1] - 15:10
**23-21377** [1] - 3:4
**25** [4] - 6:7, 47:1, 47:5, 53:12
**26** [5] - 21:8, 26:6, 26:12, 26:13, 94:8, 95:12
**26A** [3] - 71:5, 71:10, 71:13
**26B** [1] - 86:7
**27** [4] - 21:8, 26:7, 26:12, 26:14
**28** [4] - 33:2, 33:22, 34:8, 34:9
**29** [1] - 47:7
**2nd** [1] - 73:13

## 3

**3** [1] - 8:11
**30** [2] - 47:7, 57:16
**30(b)6** [1] - 81:16
**31** [6] - 33:22, 34:9, 34:10, 34:14, 47:7, 50:15
**32** [1] - 53:12
**34** [5] - 26:9, 28:10, 28:23, 30:6, 30:7
**35** [4] - 26:9, 28:10, 30:9, 32:9
**37** [6] - 32:16, 35:12, 39:9, 39:13, 39:21
**38** [4] - 39:22, 39:23, 40:5, 41:5
**39** [11] - 40:2, 40:4, 41:5, 41:8, 46:11, 46:12, 46:13, 46:15, 50:18, 50:20, 50:21

## 4

**4** [9] - 6:25, 7:25, 8:3, 13:19, 14:15, 14:17, 14:18, 15:6, 16:5
**40** [5] - 32:16, 41:5, 50:23, 58:18
**44** [7] - 32:16, 51:4, 58:12, 58:14, 58:15, 58:18, 59:9
**45** [6] - 51:4, 58:13, 58:15, 58:16, 58:19, 59:7
**46** [7] - 32:16, 51:4, 58:15, 58:17, 58:22, 59:8, 59:17
**48** [3] - 32:16, 60:6, 60:10, 60:24

**49** [1] - 61:13

## 5

**5** [2] - 13:21, 16:21
**50** [1] - 63:7
**50-something** [1] - 11:13
**52** [3] - 32:16, 60:6, 63:7
**53** [1] - 63:14
**54** [1] - 72:6
**55** [2] - 63:14, 72:6
**59** [3] - 70:18, 70:23, 72:8

## 6

**6** [2] - 13:21, 16:21
**60** [2] - 70:18, 72:8
**603** [2] - 86:23, 87:24
**605** [2] - 86:23, 87:24
**61** [1] - 72:8
**64** [2] - 70:18, 72:9
**65** [1] - 72:9
**69** [1] - 72:9
**6:07** [1] - 99:13
**6th** [9] - 4:16, 4:17, 7:23, 72:17, 74:2, 75:7, 76:20, 80:1, 90:11

## 7

**7** [1] - 50:14
**7th** [1] - 19:10

## 8

**8th** [1] - 50:3

## 9

**90.504** [1] - 43:11
**92** [3] - 63:25, 64:20, 64:24
**99** [1] - 38:24

## A

**ability** [1] - 24:10
**able** [9] - 4:24, 20:20, 20:21, 53:25, 67:21, 87:11, 87:16, 88:10, 97:2
**above-styled** [2] - 3:2, 99:15
**absolutely** [2] - 98:4, 98:15
**abstract** [6] - 75:12,

75:18, 91:25, 93:11, 93:20, 99:4
**abusive** [1] - 85:3
**accept** [3] - 12:25, 13:13, 46:9
**access** [1] - 90:2
**accomplish** [1] - 70:16
**account** [1] - 93:15
**accused** [3] - 64:18, 66:8, 69:7
**acted** [2] - 45:3, 52:21
**action** [4] - 14:22, 26:19, 27:8, 81:20, 97:24
**actual** [4] - 14:22, 15:9, 25:12, 84:4
**additional** [1] - 7:18
**address** [2] - 4:5, 59:6
**addressed** [1] - 74:7
**addressing** [2] - 52:23, 96:24
**adjournment** [1] - 73:9
**admissible** [7] - 40:12, 40:21, 87:23, 92:2, 94:3, 94:4, 94:7
**admission** [2] - 86:22, 87:1
**admonished** [1] - 22:9
**advance** [6] - 7:22, 61:24, 72:25, 73:8, 82:20, 83:7
**advanced** [1] - 90:14
**advice** [4] - 45:2, 52:20, 53:3, 60:17
**affair** [4] - 48:8, 48:14, 48:24
**affairs** [1] - 61:22
**aggrieved** [1] - 97:25
**ago** [2] - 18:23, 74:7
**agree** [8] - 8:11, 42:4, 49:2, 71:17, 73:22, 75:11, 75:18, 86:9, 89:24, 90:20, 92:11, 93:9, 93:13, 98:6
**agreed** [1] - 96:5
**agreement** [28] - 4:23, 6:20, 7:10, 9:5, 9:17, 10:5, 10:7, 11:8, 11:11, 11:12, 11:19, 12:1, 12:2, 12:13, 13:14, 15:24, 17:15, 18:18, 19:7, 19:17, 19:25, 35:21, 46:22, 61:20, 65:5, 65:20, 96:12
**Agreement** [1] - 12:5
**agreements** [8] - 7:3,

9:7, 10:25, 13:24, 17:11, 17:21, 20:23, 20:24
**ahead** [1] - 70:9
**aimed** [1] - 62:17
**Alejandro** [1] - 3:8
**allegation** [15] - 5:24, 45:1, 47:11, 49:6, 52:18, 52:24, 53:9, 56:23, 64:2, 64:17, 66:21, 68:15, 69:3, 69:25, 70:3
**allegations** [29] - 5:15, 15:2, 33:6, 33:19, 34:20, 38:12, 38:21, 45:10, 47:23, 48:25, 50:7, 51:23, 52:14, 53:13, 54:7, 54:18, 57:25, 60:8, 61:22, 61:24, 62:11, 62:18, 63:15, 63:21, 65:14, 66:1, 66:9, 68:10, 74:3
**alleged** [6] - 35:21, 48:8, 49:17, 61:22, 70:24, 74:2, 74:4, 74:5
**allegedly** [1] - 46:20
**alleges** [1] - 32:23
**alleging** [4] - 35:24, 47:4, 57:18
**alligation** [1] - 91:2
**allocution** [1] - 49:20
**allotted** [1] - 88:12
**allow** [4] - 83:15, 91:23, 95:10, 96:23
**allowed** [1] - 45:17
**allowing** [1] - 3:18
**allows** [1] - 62:14
**almost** [1] - 86:13
**alternative** [1] - 90:1
**Altonaga** [1] - 96:13
**ambiguous** [1] - 14:5
**amend** [1] - 38:16
**Amendment** [17] - 24:21, 75:4, 79:2, 79:12, 82:12, 84:2, 84:5, 84:16, 85:16, 87:4, 87:13, 89:7, 91:20, 97:1, 97:2, 98:4, 98:14
**amendment** [2] - 86:9, 87:14
**American** [1] - 61:19
**amount** [1] - 77:21
**animal** [1] - 70:5
**animus** [1] - 68:1
**answer** [27] - 24:12, 31:12, 31:13, 53:8, 58:3, 58:7, 75:21,

76:3, 76:6, 79:2,
79:8, 79:10, 79:15,
79:18, 82:11, 82:12,
85:20, 86:10, 88:7,
94:9, 94:12, 94:13,
94:23, 95:1, 95:5,
96:1
**answer's** [2] - 31:10,
74:13
**answering** [3] - 76:17,
83:12, 97:1
**answers** [4] - 78:19,
85:22, 89:12, 91:2
**ante** [1] - 42:8
**anticipate** [1] - 94:8
**anticipated** [1] - 97:9
**anyway** [1] - 69:4
**apart** [1] - 9:17
**apologies** [1] - 23:22
**apologize** [3] - 49:12,
60:2, 84:8
**apologizes** [1] - 94:17
**appear** [3] - 3:18,
73:3, 73:5
**appearances** [2] - 3:6,
38:6
**Appearing** [1] - 22:3
**appearing** [1] - 22:4
**applies** [3] - 43:10,
45:23, 45:25
**apply** [8] - 41:24,
43:16, 43:21, 82:15,
89:14, 95:17, 95:23,
98:1
**applying** [1] - 43:10
**appreciate** [2] - 26:21,
72:13
**approach** [1] - 68:16
**appropriate** [7] -
24:10, 59:9, 73:15,
73:19, 78:14, 81:7,
97:16
**April** [4] - 28:2, 47:2,
47:9, 47:18
**area** [1] - 94:2
**argue** [6] - 25:6, 41:6,
42:6, 42:21, 42:23,
98:5
**argued** [3] - 34:21,
46:3, 53:5
**arguing** [2] - 5:19,
65:18
**argument** [8] - 17:19,
44:7, 44:22, 46:2,
55:17, 56:16, 57:3,
57:17
**arguments** [1] - 64:6
**arranged** [1] - 34:23
**arrangement** [1] -
14:22

**articulate** [1] - 72:2
**articulated** [2] - 10:21,
32:5
**articulates** [1] - 8:7
**articulating** [1] - 91:8
**aspects** [4] - 75:2,
75:3, 80:18, 80:25
**asserting** [1] - 85:17
**assess** [1] - 67:21
**associated** [1] - 88:23
**Associates** [1] - 13:25
**assume** [6] - 28:13,
51:12, 56:12, 56:18,
61:9, 74:13
**assumes** [1] - 56:15
**assuming** [2] - 44:23,
73:7
**attacks** [2] - 64:22,
64:23
**attempts** [1] - 85:4
**attention** [1] - 77:22
**Attorney** [5] - 21:12,
21:24, 26:14, 26:19,
27:1
**attorney** [14] - 5:18,
7:1, 7:4, 8:24, 9:8,
9:11, 9:16, 9:21,
10:1, 10:13, 11:1,
25:13, 31:25, 33:13
**ATTORNEY** [341] -
3:8, 3:10, 3:12, 3:15,
3:17, 4:8, 4:18, 4:20,
5:13, 6:6, 6:10, 6:15,
6:20, 6:24, 7:7, 7:9,
8:4, 8:10, 8:18, 8:22,
9:2, 10:4, 10:10,
10:16, 10:21, 11:5,
11:7, 11:10, 11:25,
12:4, 12:7, 12:19,
12:24, 13:2, 13:21,
13:23, 14:3, 14:6,
14:12, 14:23, 14:25,
15:2, 15:8, 16:1,
16:3, 16:11, 16:23,
16:25, 17:4, 17:7,
17:10, 17:17, 17:19,
18:1, 18:6, 18:8,
18:19, 19:1, 19:2,
19:4, 19:6, 19:9,
19:10, 19:12, 19:19,
19:24, 20:10, 20:13,
20:17, 21:1, 21:8,
21:10, 22:3, 22:5,
22:7, 22:15, 22:20,
22:23, 23:13, 23:15,
23:17, 23:22, 24:3,
24:5, 24:8, 24:15,
24:23, 25:5, 25:8,
25:16, 26:7, 26:9,
26:13, 26:18, 26:25,

27:4, 27:16, 27:21,
27:24, 28:10, 28:14,
28:15, 28:18, 28:25,
29:6, 29:12, 29:15,
29:19, 29:21, 29:23,
30:2, 30:6, 30:9,
30:15, 30:18, 31:2,
31:11, 31:19, 31:22,
31:25, 32:3, 32:11,
32:14, 32:18, 32:20,
32:24, 33:5, 33:11,
33:22, 34:1, 34:6,
34:7, 34:9, 34:11,
34:19, 35:10, 36:10,
36:14, 36:25, 37:3,
37:9, 37:13, 37:15,
37:25, 38:3, 38:7,
38:11, 38:18, 38:23,
39:3, 39:5, 39:9,
39:18, 39:22, 39:25,
40:2, 40:3, 40:5,
40:13, 41:1, 41:4,
41:8, 41:12, 41:18,
42:1, 42:4, 42:10,
42:12, 42:16, 42:18,
43:2, 43:5, 43:17,
43:22, 44:1, 44:6,
44:9, 44:25, 45:12,
45:20, 46:7, 46:12,
46:16, 46:21, 46:23,
47:1, 47:3, 47:5,
47:13, 47:17, 47:20,
48:4, 48:6, 48:11,
48:14, 48:16, 48:19,
49:7, 49:10, 49:19,
49:22, 49:24, 50:1,
50:3, 50:6, 50:11,
50:19, 50:20, 50:22,
50:23, 51:3, 51:6,
51:11, 51:22, 52:5,
52:8, 52:13, 52:17,
53:15, 53:18, 53:23,
54:15, 54:19, 55:9,
55:14, 55:19, 55:23,
56:2, 56:4, 56:9,
56:25, 58:6, 58:13,
58:15, 58:18, 58:22,
59:4, 59:11, 59:14,
59:24, 60:1, 60:5,
60:16, 61:8, 61:12,
61:18, 62:5, 62:8,
62:10, 62:22, 63:4,
63:9, 63:14, 63:21,
64:21, 65:3, 65:9,
65:16, 65:18, 66:4,
66:16, 66:25, 67:8,
67:23, 68:14, 69:11,
69:18, 69:21, 70:6,
70:8, 70:10, 70:22,
71:6, 71:8, 71:20,
71:25, 72:5, 72:11,

72:13, 72:15, 73:6,
73:12, 74:15, 75:23,
76:4, 76:12, 76:19,
76:23, 77:16, 78:21,
79:4, 79:7, 79:16,
79:20, 80:11, 81:18,
81:21, 82:5, 82:17,
82:22, 83:3, 83:9,
83:11, 83:19, 84:8,
84:21, 85:1, 85:8,
85:11, 85:15, 86:2,
86:5, 87:8, 88:2,
88:5, 88:10, 88:15,
88:19, 89:15, 89:19,
89:24, 90:12, 91:17,
92:19, 92:22, 92:25,
93:2, 93:12, 94:17,
94:25, 95:3, 96:5,
97:4, 97:5, 97:8,
97:11, 98:10, 98:21,
99:9, 99:11, 99:12
**Attorney's** [3] - 21:18,
26:13, 28:6
**attorney's** [1] - 35:16
**attorney-client** [1] -
7:1, 7:4, 8:24, 9:8,
9:11, 10:1, 10:13,
11:1, 25:13, 31:25,
33:13
**attracting** [1] - 77:22
**audio** [1] - 90:3
**August** [1] - 73:13
**authenticity** [1] - 18:2
**authority** [1] - 85:2
**automatic** [1] - 84:14
**automatically** [1] -
84:17
**available** [3] - 23:20,
94:18, 97:6
**avoid** [7] - 54:15,
67:15, 72:22, 73:9,
78:16, 83:14, 85:4
**award** [1] - 35:16
**aware** [3] - 48:23,
54:8, 92:13

## B

**balance** [3] - 9:6, 72:8,
80:25
**base** [1] - 44:14
**based** [3] - 4:4, 53:2,
87:25
**baseline** [1] - 71:15
**bases** [1] - 28:21
**basis** [9] - 7:19, 15:7,
36:23, 48:7, 53:21,
57:1, 68:6, 68:18,
79:10
**bearing** [1] - 81:25

**began** [3] - 27:1, 27:2,
49:13
**begin** [2] - 18:25,
25:20
**beginning** [2] - 50:13,
98:18
**begins** [1] - 33:2
**behalf** [3] - 3:9, 3:11,
3:13
**behind** [1] - 85:13
**belief** [3] - 66:5, 66:12,
68:6
**believes** [2] - 18:20,
95:14
**Ben** [1] - 44:6
**ben** [1] - 3:17
**benefit** [2] - 63:5,
81:14
**better** [2] - 6:8, 32:9
**between** [28] - 4:2,
8:25, 9:10, 10:2,
11:1, 12:12, 12:13,
12:16, 13:16, 13:24,
25:12, 26:12, 35:15,
36:6, 37:11, 40:9,
40:24, 41:8, 41:18,
43:15, 45:15, 47:9,
48:2, 56:15, 58:16,
58:24, 74:6, 97:25
**beyond** [1] - 61:3
**bias** [1] - 92:6
**bigot** [2] - 64:23, 66:5
**bigoted** [1] - 64:11
**bit** [2] - 15:8, 29:15
**blanket** [1] - 46:4
**blend** [1] - 44:2
**board** [1] - 89:14
**boil** [1] - 68:4
**boils** [1] - 67:17
**book** [10] - 5:24,
11:15, 29:4, 29:8,
29:19, 39:2, 39:5,
49:25, 50:3, 66:6
**books** [3] - 7:16,
28:11, 28:19
**bottom** [2] - 10:23,
25:2
**breach** [10] - 5:25,
33:9, 34:2, 46:20,
47:12, 62:18, 65:4,
65:19, 65:21
**breached** [7] - 5:17,
33:13, 37:21, 47:4,
62:15, 63:22
**breaches** [3] - 5:20,
65:10, 78:8
**breadth** [2] - 23:11,
69:15
**breath** [1] - 6:10
**bridge** [1] - 4:2

**brief** [2] - 44:7, 45:24
**briefed** [2] - 3:24, 42:19
**briefly** [1] - 45:24
**bring** [3] - 21:19, 72:5, 78:15
**bringing** [2] - 21:15, 70:3
**brings** [1] - 67:12
**BRITO** [164] - 3:8, 8:4, 8:10, 8:18, 8:22, 9:2, 10:4, 10:10, 10:16, 10:21, 11:10, 12:4, 14:3, 14:6, 15:8, 16:1, 16:3, 16:11, 19:2, 19:10, 20:10, 22:23, 23:13, 23:15, 23:17, 23:22, 24:3, 24:5, 24:8, 24:15, 24:23, 25:5, 25:8, 27:4, 27:21, 28:14, 29:21, 29:23, 30:2, 30:6, 30:18, 31:2, 31:11, 31:19, 31:22, 31:25, 32:3, 32:11, 32:18, 35:10, 36:10, 36:14, 36:25, 37:3, 37:9, 37:13, 37:15, 37:25, 38:3, 38:7, 38:11, 38:18, 38:23, 39:3, 39:5, 39:9, 39:18, 39:25, 40:3, 40:5, 40:13, 41:1, 41:8, 41:12, 41:18, 42:10, 43:5, 43:17, 43:22, 44:1, 45:12, 45:20, 46:7, 46:12, 46:16, 47:1, 47:5, 47:13, 47:17, 50:3, 50:20, 50:22, 52:8, 52:13, 52:17, 53:15, 53:18, 53:23, 54:15, 54:19, 55:9, 55:14, 55:19, 55:23, 56:2, 56:4, 56:9, 56:25, 58:6, 58:13, 58:22, 66:4, 66:16, 66:25, 67:8, 67:23, 68:14, 69:11, 71:8, 71:25, 72:5, 72:13, 73:12, 74:15, 75:23, 76:4, 76:12, 76:19, 76:23, 77:16, 78:21, 79:7, 79:16, 79:20, 80:11, 81:18, 81:21, 82:5, 82:17, 82:22, 83:3, 83:9, 83:11, 83:19, 84:21, 85:1, 85:8, 85:11, 85:15, 86:2, 86:5, 87:8, 88:2,

**brief** [2] - 44:7, 45:24
88:5, 88:10, 88:15, 88:19, 89:15, 89:19, 89:24, 91:17, 93:12, 97:5, 99:12
**Brito** [11] - 3:9, 7:9, 14:2, 15:4, 19:8, 50:19, 69:14, 70:25, 72:18, 72:25, 73:10
**Brito's** [1] - 97:12
**broad** [17] - 4:12, 6:2, 23:8, 23:12, 35:11, 36:4, 36:7, 36:8, 46:25, 60:10, 61:5, 62:11, 68:9, 70:4, 96:22, 98:13
**broader** [6] - 9:25, 59:20, 61:25, 62:18, 90:23, 98:23
**broadly** [4] - 5:9, 57:7, 61:14, 63:9
**BRODSKY** [5] - 3:15, 3:17, 44:6, 44:9, 44:25
**Brodsky** [10] - 3:17, 8:6, 8:13, 9:14, 11:18, 31:5, 44:6, 73:13, 96:4
**Brodsky's** [1] - 10:22
**broke** [1] - 65:13
**broken** [1] - 65:13
**brought** [7] - 4:11, 21:12, 21:23, 22:15, 23:3, 26:19, 28:2
**built** [1] - 81:24
**bulk** [1] - 4:25
**bury** [1] - 45:6
**business** [1] - 56:14

## C

**calculated** [1] - 71:1
**campaign** [5] - 7:2, 13:24, 15:3, 15:24, 16:10
**Campaign** [7] - 14:19, 14:22, 15:11, 15:12, 15:14, 15:17, 15:22
**campaign'** [1] - 45:6
**candidly** [1] - 57:11
**candor** [1] - 12:4
**cannot** [2] - 5:9, 91:3
**capture** [4] - 13:3, 15:19, 16:25, 59:17
**captured** [2] - 23:4, 23:6
**captures** [1] - 10:12
**case** [85] - 3:3, 3:4, 3:20, 4:4, 4:13, 5:3, 5:7, 5:16, 13:12, 13:18, 21:12, 21:18,

22:8, 22:17, 22:18, 25:18, 25:20, 32:4, 37:5, 42:10, 42:18, 42:22, 48:7, 53:11, 56:7, 60:22, 62:24, 65:13, 66:10, 66:20, 67:15, 68:12, 74:20, 74:24, 75:6, 75:16, 75:19, 76:21, 76:25, 77:1, 77:2, 77:3, 77:20, 78:3, 78:13, 79:23, 80:20, 82:2, 82:3, 82:6, 83:20, 83:21, 83:24, 84:3, 84:4, 84:7, 84:17, 84:25, 85:7, 85:11, 85:23, 86:18, 87:10, 87:11, 87:12, 88:6, 88:9, 89:1, 89:2, 91:3, 91:21, 92:2, 92:11, 92:16, 93:10, 93:18, 94:11, 95:7, 95:18, 97:22, 97:23, 97:24
**case-by-case** [1] - 48:7
**cases** [11] - 14:11, 67:15, 74:9, 82:5, 82:8, 82:23, 83:11, 83:15, 83:16, 84:21, 86:17
**catch** [1] - 61:17
**categorically** [1] - 91:9
**categorization** [1] - 13:14
**category** [1] - 66:17
**catering** [2] - 56:13, 56:20
**caused** [2] - 64:3, 70:24
**caveat** [1] - 26:6
**center** [2] - 33:19, 91:14
**certain** [11] - 4:25, 7:9, 7:20, 8:1, 18:9, 29:6, 35:19, 77:6, 80:21, 84:13, 86:13
**certainly** [3] - 18:19, 65:9, 93:4
**challenge** [2] - 67:3, 80:21
**challenging** [1] - 51:21
**chambers** [1] - 95:25
**chance** [1] - 32:4
**change** [1] - 27:15
**changes** [1] - 80:13
**charge** [2] - 18:14, 68:1

**charged** [1] - 14:8
**charges** [3] - 67:12, 74:2, 77:18
**chattel** [1] - 93:25
**check** [3] - 59:15, 59:16, 60:1
**check's** [1] - 44:11
**checking** [1] - 35:19
**child** [1] - 48:20
**chose** [1] - 21:18
**Circuit** [1] - 84:10
**circuit** [1] - 84:23
**circumstances** [1] - 4:5
**circus** [1] - 77:24
**citation** [1] - 84:9
**citations** [1] - 28:20
**cited** [4] - 30:2, 82:5, 83:12, 83:23
**citizen** [1] - 43:22
**civil** [15] - 3:4, 26:18, 43:7, 43:18, 45:25, 74:9, 81:20, 82:3, 82:6, 83:15, 85:5, 85:7, 86:6, 86:10, 97:24
**claim** [7] - 5:16, 33:9, 35:18, 60:16, 65:10, 79:11, 80:21
**claimed** [1] - 35:2
**claiming** [2] - 33:12, 56:6
**claims** [8] - 22:18, 28:21, 33:1, 37:4, 45:4, 52:22, 65:21, 72:21
**clarification** [1] - 16:20
**classified** [6] - 74:8, 75:9, 77:1, 79:1, 80:1, 93:15
**clear** [12] - 7:14, 8:5, 16:7, 30:4, 55:12, 68:21, 72:1, 72:2, 76:24, 81:3, 82:17, 94:22
**clearly** [5] - 40:19, 76:21, 76:25, 85:6, 95:11
**client** [30] - 4:12, 7:1, 7:4, 8:24, 9:8, 9:11, 10:1, 10:13, 11:1, 11:16, 25:13, 29:9, 31:25, 33:13, 35:24, 38:9, 66:5, 66:7, 66:12, 66:13, 67:12, 67:19, 75:1, 77:6, 77:10, 78:3, 79:8, 80:19, 83:21, 89:5
**client's** [1] - 78:22

**Clifford** [30] - 32:16, 32:17, 32:23, 33:7, 33:15, 34:16, 35:15, 35:17, 36:1, 36:6, 36:21, 37:7, 37:10, 38:12, 38:13, 38:22, 39:15, 39:16, 41:10, 45:4, 52:22, 58:24, 60:8, 60:13, 60:20, 61:2, 61:6, 74:3, 74:5
**clifford** [1] - 40:1
**clock** [1] - 70:10
**closed** [2] - 15:11, 85:23
**CNN** [1] - 78:10
**cocounsel** [1] - 44:9
**cocounsel's** [1] - 59:16
**Cohen** [62] - 3:4, 3:11, 3:13, 5:8, 5:17, 5:20, 5:22, 8:25, 9:15, 9:16, 9:21, 10:2, 10:6, 11:15, 11:22, 12:12, 12:14, 12:16, 13:25, 15:25, 17:11, 17:14, 18:4, 21:19, 22:2, 23:18, 24:1, 24:25, 26:20, 27:1, 27:10, 28:2, 30:14, 33:1, 33:7, 33:12, 37:10, 38:14, 39:24, 40:9, 40:10, 45:1, 47:23, 49:16, 50:8, 51:8, 51:14, 51:23, 51:25, 55:10, 57:4, 58:24, 61:6, 62:15, 63:16, 64:3, 64:10, 64:18, 69:24, 77:4, 88:10, 97:14
**Cohen's** [11] - 5:24, 6:25, 7:16, 10:11, 21:11, 21:22, 22:13, 22:16, 34:14, 34:22, 60:17
**coincide** [1] - 93:20
**coming** [1] - 78:5
**commences** [1] - 3:1
**commentary** [1] - 88:23
**common** [1] - 97:22
**communicate** [1] - 39:15
**communicated** [3] - 9:14, 24:6, 30:21
**communication** [14] - 9:10, 22:1, 24:24, 26:3, 27:9, 36:1, 40:9, 41:14, 45:5, 45:17, 49:4, 56:13,

56:19
**communications** [32] - 9:9, 21:21, 22:11, 22:24, 23:9, 23:24, 24:16, 25:13, 28:1, 30:19, 32:15, 35:13, 36:20, 39:14, 39:16, 39:23, 41:8, 42:14, 43:14, 43:24, 44:17, 45:15, 48:2, 48:11, 53:7, 54:13, 54:23, 56:10, 58:1, 59:18, 61:1, 61:6
**company** [2] - 55:24, 55:25
**compel** [8] - 12:22, 26:6, 50:17, 58:12, 59:8, 69:16, 71:12
**compelled** [9] - 36:16, 41:3, 41:22, 60:12, 60:19, 60:24, 60:25, 61:7, 85:18
**compelling** [4] - 39:21, 39:23, 40:18, 54:12
**compels** [1] - 85:22
**complaint** [30] - 29:4, 30:3, 32:21, 32:22, 33:3, 33:6, 33:20, 33:22, 34:21, 35:8, 37:8, 37:20, 38:13, 38:16, 38:21, 39:12, 46:24, 47:22, 49:17, 51:21, 52:14, 54:7, 57:18, 57:24, 63:20, 66:9, 66:21, 67:7, 69:13, 70:24
**complaints** [1] - 67:11
**completely** [1] - 97:3
**comply** [2] - 42:9, 93:24
**complying** [1] - 44:16
**component** [2] - 31:12, 32:6
**components** [1] - 44:4
**computer** [1] - 65:13
**conceive** [1] - 28:1
**concern** [6] - 23:10, 81:1, 81:5, 83:15, 88:5, 89:21
**concerned** [2] - 78:21, 78:22
**concerning** [1] - 10:5
**concerns** [2] - 69:22, 84:5
**concluded** [1] - 99:13
**concludes** [1] - 99:14
**conclusion** [1] - 68:13
**conclusionary** [1] - 66:12

**concocting** [1] - 22:7
**conduct** [2] - 53:1, 73:19
**conducted** [1] - 73:21
**confer** [4] - 8:7, 69:21, 70:15, 72:8
**conferred** [2] - 4:24, 7:24
**confidence** [1] - 77:5
**confidences** [1] - 63:16
**confident** [1] - 43:14
**confidential** [9] - 5:6, 5:9, 26:2, 30:16, 36:3, 37:22, 45:14, 45:17, 64:8
**Confidentiality** [1] - 12:6
**confidentiality** [28] - 4:3, 5:5, 5:17, 7:10, 9:4, 11:12, 12:2, 12:8, 16:14, 16:16, 17:11, 17:21, 26:1, 31:12, 32:6, 33:13, 34:3, 35:20, 37:22, 40:23, 46:22, 62:15, 62:19, 63:22, 65:5, 65:11, 65:19, 88:21
**confirm** [4] - 22:25, 24:15, 35:19, 73:1
**connection** [1] - 49:19
**consent** [1] - 45:16
**consequence** [1] - 88:6
**consequences** [1] - 85:18
**consider** [2] - 30:10, 96:10
**consideration** [2] - 40:20, 90:21
**considered** [1] - 65:24
**considering** [1] - 64:6
**consist** [1] - 7:15
**constituted** [1] - 38:9
**constitutes** [2] - 5:25, 65:19
**Consultant** [1] - 63:8
**Consultants** [13] - 51:7, 51:15, 51:17, 53:20, 55:20, 56:11, 57:2, 57:5, 57:8, 58:19, 58:20, 58:25
**consume** [1] - 92:14
**contained** [2] - 38:5, 39:1
**contention** [2] - 8:4, 20:4
**context** [11] - 6:8, 16:12, 35:11, 35:23, 43:7, 43:18, 43:19,

45:25, 86:11, 88:24
**continually** [2] - 78:10
**continue** [2] - 25:16, 27:25
**continued** [2] - 77:24, 78:9
**continuing** [1] - 25:18
**contract** [7] - 8:23, 9:3, 11:16, 62:19, 63:23, 65:21, 78:8
**contracts** [4] - 7:3, 9:7, 10:25, 13:23
**contradicted** [1] - 52:8
**contrary** [1] - 11:13
**control** [1] - 57:21
**controversial** [1] - 9:20
**conversation** [2] - 40:13, 47:9
**cooperate** [1] - 27:1
**copy** [2] - 11:20, 13:9
**core** [1] - 65:20
**corporate** [2] - 22:1, 81:15
**correct** [8] - 22:3, 29:5, 38:7, 39:25, 43:6, 43:9, 45:22, 72:10
**Correct** [2] - 22:5, 27:21
**corresponded** [1] - 31:5
**correspondence** [7] - 21:21, 23:21, 25:11, 25:12, 30:19, 35:13, 58:20
**corrupt** [1] - 64:24
**costello** [5] - 47:10, 49:17, 53:16, 57:22, 57:23
**Costello** [2] - 38:15, 47:8
**counsel** [17] - 3:6, 4:6, 9:18, 11:13, 14:8, 30:21, 35:9, 40:10, 53:5, 53:19, 55:10, 57:3, 72:5, 74:15, 93:23, 94:11, 94:14
**count** [1] - 65:1
**counter** [2] - 45:13, 67:13
**counts** [5] - 34:2, 65:3, 65:5, 65:23, 65:25
**couple** [3] - 44:14, 70:11, 79:7
**course** [16] - 4:3, 6:11, 6:15, 17:11, 18:11, 30:22, 34:16, 44:19,

45:9, 56:15, 62:13, 65:22, 72:24, 97:18, 97:19, 99:6
**COURT** [317] - 3:14, 3:16, 3:19, 4:17, 4:19, 5:11, 6:4, 6:9, 6:13, 6:16, 6:23, 7:3, 7:8, 8:2, 8:8, 8:16, 8:19, 9:1, 9:24, 10:9, 10:15, 10:19, 11:4, 11:6, 11:24, 12:18, 12:20, 13:1, 13:4, 13:22, 14:1, 14:4, 14:14, 14:24, 15:1, 15:6, 15:23, 16:2, 16:5, 16:18, 16:24, 17:2, 17:6, 17:9, 17:13, 17:18, 17:20, 18:4, 18:7, 18:17, 18:24, 19:3, 19:5, 19:7, 19:11, 19:14, 19:21, 20:8, 20:12, 20:14, 20:19, 21:3, 21:9, 21:20, 22:4, 22:6, 22:12, 22:19, 22:21, 23:12, 23:14, 23:16, 23:18, 23:24, 24:4, 24:7, 24:14, 24:22, 24:24, 25:7, 25:10, 25:19, 26:8, 26:11, 26:16, 26:21, 27:3, 27:6, 27:19, 27:22, 28:3, 28:12, 28:16, 28:24, 29:3, 29:10, 29:14, 29:17, 29:20, 29:22, 29:25, 30:4, 30:7, 30:13, 30:16, 30:22, 31:8, 31:14, 31:20, 31:24, 32:2, 32:8, 32:13, 32:17, 32:19, 32:22, 33:4, 33:8, 33:21, 33:24, 34:4, 34:8, 34:10, 34:18, 35:9, 36:8, 36:13, 36:19, 37:2, 37:6, 37:12, 37:14, 37:19, 38:2, 38:4, 38:8, 38:16, 38:19, 38:24, 39:4, 39:7, 39:11, 39:21, 39:23, 40:1, 40:4, 40:11, 40:17, 41:2, 41:6, 41:11, 41:17, 41:20, 42:2, 42:9, 42:15, 42:17, 42:25, 43:16, 43:20, 43:24, 44:8, 44:22, 45:19, 46:1, 46:8, 46:13, 46:17, 46:22, 47:11, 47:16, 47:19, 47:25, 48:5, 48:10, 48:13,

48:15, 48:18, 49:2, 49:9, 49:16, 49:21, 49:23, 49:25, 50:5, 50:10, 50:12, 50:21, 51:1, 51:5, 51:10, 51:20, 52:4, 52:7, 52:12, 52:16, 53:12, 53:17, 53:21, 54:1, 54:17, 55:4, 55:13, 55:16, 55:22, 55:25, 56:3, 56:8, 56:12, 57:14, 58:7, 58:14, 58:16, 58:21, 59:1, 59:8, 59:12, 59:22, 59:25, 60:3, 60:10, 60:19, 61:9, 61:17, 62:2, 62:6, 62:9, 62:20, 63:1, 63:8, 63:11, 63:20, 64:16, 65:1, 65:6, 65:12, 65:17, 66:3, 66:14, 66:22, 67:6, 67:20, 68:8, 68:19, 69:12, 69:20, 69:23, 70:7, 70:9, 70:21, 71:3, 71:7, 71:10, 71:22, 72:4, 72:10, 72:12, 72:14, 73:5, 73:10, 74:13, 75:11, 76:2, 76:9, 76:18, 76:22, 77:13, 78:17, 78:23, 79:5, 79:14, 79:17, 80:9, 81:8, 81:19, 81:23, 82:8, 82:19, 83:1, 83:6, 83:10, 83:17, 83:20, 84:20, 84:25, 85:6, 85:10, 85:14, 86:1, 86:4, 86:19, 87:9, 88:4, 88:8, 88:14, 88:18, 89:11, 89:16, 89:20, 90:5, 90:13, 91:19, 92:21, 92:23, 93:1, 93:3, 93:13, 94:21, 95:1, 95:4, 96:7, 97:6, 97:10, 97:18, 98:11, 98:22, 99:10
**court** [4] - 85:2, 95:20, 95:22, 95:23
**Court** [19] - 14:10, 24:6, 27:5, 40:14, 47:6, 50:11, 56:5, 67:24, 74:21, 80:5, 80:15, 80:25, 85:15, 86:3, 86:15, 88:11, 88:16, 90:1, 96:24
**Court's** [3] - 25:8, 83:13, 95:8
**courthouse** [3] - 96:8, 96:11, 96:14

**COURTROOM** [1] - 3:3
**courts** [2] - 83:13, 86:17
**cover** [2] - 42:13, 90:25
**CPLR50-4502(b** [1] - 45:13
**craft** [1] - 92:7
**crafted** [1] - 10:24
**created** [5] - 13:15, 53:4, 55:10, 55:11, 58:4
**creation** [2] - 10:1, 10:4
**credibility** [9] - 75:15, 75:22, 77:8, 77:11, 80:21, 80:24, 82:1, 92:6
**crime** [1] - 42:12
**criminal** [35] - 21:12, 21:22, 23:10, 24:18, 24:19, 26:17, 28:5, 34:15, 43:8, 43:19, 45:25, 61:20, 74:9, 74:15, 74:25, 75:3, 76:1, 77:12, 77:22, 78:5, 79:10, 79:21, 79:22, 80:18, 80:24, 81:22, 82:2, 82:7, 83:14, 83:16, 83:21, 84:25, 85:4, 85:23, 86:17
**criminality** [1] - 86:22
**cumulative** [1] - 60:25
**current** [1] - 48:1
**CVS** [2] - 83:17, 83:22

**D**

**damage** [6] - 33:16, 64:3, 66:19, 67:1, 67:2, 68:3
**damages** [13] - 35:3, 65:7, 66:14, 66:23, 67:20, 69:13, 70:20, 70:25, 71:2, 71:4, 71:14, 71:18, 81:20
**damaging** [1] - 84:1
**Daniels** [17] - 32:18, 38:12, 38:22, 39:6, 39:8, 39:13, 44:13, 47:24, 49:10, 50:24, 51:16, 54:24, 56:11, 57:9, 57:10, 62:1, 87:15
**daniels** [1] - 32:23
**Danya** [1] - 3:10
**data** [1] - 57:16
**date** [17] - 7:17, 7:19,

19:7, 19:25, 20:1, 25:15, 26:23, 26:24, 26:25, 27:4, 27:10, 27:18, 27:21, 27:24, 77:7, 79:22
**dated** [1] - 8:15
**dates** [2] - 44:3, 44:4
**David** [2] - 74:4, 85:13
**days** [1] - 21:17
**deadline** [2] - 7:19, 7:21
**deal** [16] - 13:18, 28:16, 46:6, 61:10, 73:16, 75:7, 75:8, 79:14, 84:7, 89:23, 90:16, 91:14, 91:16, 97:2, 98:6, 99:6
**dealing** [6] - 60:12, 60:20, 67:2, 67:9, 74:22, 80:3, 84:4
**dealings** [1] - 51:18
**deals** [2] - 86:21, 98:1
**December** [1] - 50:15
**decide** [1] - 90:7
**decides** [2] - 79:15, 79:17
**decision** [1] - 85:15
**declare** [1] - 82:20
**decline** [1] - 76:3
**declining** [1] - 79:2
**deem** [1] - 24:10
**defamation** [1] - 35:18
**defend** [3] - 33:18, 62:14, 63:15
**defendant** [44] - 3:21, 4:7, 8:14, 35:25, 37:21, 38:5, 38:25, 47:8, 47:10, 52:24, 53:3, 53:5, 53:16, 55:8, 58:9, 60:22, 64:22, 64:25, 66:5, 66:7, 66:10, 67:11, 67:17, 75:16, 76:1, 80:20, 83:25, 84:1, 84:3, 84:4, 85:23, 88:25, 90:24, 91:4, 91:11, 92:13, 93:21, 94:12, 95:10, 95:11, 95:14, 97:25, 98:17
**defendant's** [8] - 4:1, 8:17, 14:8, 14:12, 28:11, 38:8, 52:20, 93:23
**defendants** [2] - 24:9, 52:19
**defense** [11] - 5:7, 5:25, 6:2, 23:3, 24:18, 37:4, 41:25, 57:5, 62:16, 65:21, 76:7

**defenses** [3] - 5:19, 56:22, 57:2
**defer** [2] - 71:23, 94:10
**deferring** [3] - 71:23, 72:3, 90:22
**defined** [2] - 14:19, 14:24
**definitely** [1] - 90:6
**definition** [2] - 15:10, 57:18
**delay** [1] - 72:23
**delve** [3] - 68:3, 80:23, 81:21
**delves** [1] - 47:5
**demonstrate** [1] - 66:7
**denial** [3] - 52:25, 53:10, 53:21
**denied** [1] - 88:1
**deny** [3] - 18:17, 36:9, 70:7
**denying** [1] - 52:14
**dep** [1] - 90:20
**depose** [2] - 13:5, 13:6
**deposed** [1] - 80:9
**deposition** [36] - 4:15, 7:22, 63:6, 69:6, 70:13, 71:24, 72:16, 73:1, 73:2, 73:17, 73:18, 73:19, 73:21, 73:23, 73:24, 74:20, 81:11, 83:1, 88:12, 88:22, 90:2, 90:10, 90:25, 91:11, 91:18, 92:12, 92:14, 93:6, 93:22, 94:19, 94:20, 96:3, 96:21, 97:20, 97:21, 99:2
**depositions** [5] - 81:16, 89:17, 90:19, 95:19, 98:13
**DEPUTY** [1] - 3:3
**derived** [1] - 85:22
**described** [1] - 35:7
**designation** [1] - 81:16
**desire** [1] - 52:21
**details** [1] - 55:15
**determination** [1] - 68:5
**detrimental** [1] - 37:24
**develops** [1] - 21:2
**differed** [1] - 24:5
**difference** [2] - 26:12, 58:16
**different** [12] - 15:8, 17:2, 26:23, 27:20, 27:23, 27:25, 57:16, 62:3, 67:4, 67:10,

70:5, 95:23
**difficult** [3] - 20:7, 43:3, 62:16
**directly** [2] - 33:11, 65:23
**disagree** [1] - 98:6
**disagreement** [1] - 6:22
**disclose** [3] - 43:13, 45:17, 72:24
**disclosed** [8] - 37:16, 37:17, 40:21, 49:3, 49:5, 49:9, 64:8, 88:23
**disclosing** [4] - 37:22, 41:2, 43:13, 57:22
**disclosure** [7] - 17:15, 18:18, 20:23, 20:24, 40:19, 47:12, 49:17, 71:4, 71:13
**disclosures** [6] - 38:5, 38:25, 47:23, 52:19, 70:24, 71:6
**discoverable** [1] - 86:6
**discovery** [17] - 3:20, 4:9, 4:14, 4:15, 4:22, 5:2, 25:20, 38:20, 66:1, 71:9, 71:15, 74:21, 77:14, 85:3, 85:5, 93:24
**discovery's** [1] - 66:2
**discrimination** [2] - 65:14, 67:12
**discriminatory** [1] - 64:9
**discuss** [2] - 34:14, 66:19
**discussed** [7] - 5:23, 8:7, 8:13, 36:1, 40:15, 47:21, 83:5
**discussing** [5] - 41:9, 59:4, 59:5, 60:7, 70:19
**discussion** [2] - 7:11, 73:20
**discussions** [1] - 49:19
**disloyal** [1] - 50:4
**dismiss** [3] - 34:4, 87:16, 87:24
**dismissal** [2] - 87:19, 97:17
**dismissed** [2] - 77:18, 84:17
**dispositive** [1] - 87:25
**disproportionate** [1] - 68:18
**dispute** [6] - 9:15, 9:16, 19:21, 54:16,

86:18, 90:14
**disputes** [1] - 38:20
**distinction** [3] - 5:14, 12:15, 15:15
**District** [5] - 21:12, 21:18, 21:24, 26:13, 85:12
**district** [1] - 85:2
**divulging** [1] - 45:21
**document** [17] - 4:14, 8:3, 9:22, 12:6, 13:17, 16:8, 18:4, 26:4, 36:17, 40:16, 41:24, 42:7, 55:21, 59:16, 69:9
**document's** [1] - 12:5
**documents** [65] - 4:22, 6:21, 6:25, 7:15, 7:18, 8:2, 9:7, 9:12, 9:19, 10:20, 11:3, 12:12, 12:22, 13:15, 15:5, 15:10, 20:4, 20:15, 21:10, 24:16, 25:7, 31:4, 35:12, 36:4, 36:11, 36:15, 36:19, 39:14, 39:19, 40:6, 40:18, 40:19, 46:10, 46:14, 48:22, 50:23, 51:7, 52:10, 53:18, 53:25, 54:1, 54:2, 54:5, 54:23, 58:1, 58:20, 59:2, 59:5, 59:18, 60:12, 60:19, 61:1, 61:13, 63:15, 66:18, 70:23, 74:8, 75:9, 77:1, 79:1, 80:2, 87:7, 87:8, 93:5, 93:13
**Donald** [3] - 3:3, 15:13, 15:16
**done** [4] - 18:10, 40:19, 89:22, 92:11
**doubt** [1] - 7:11
**down** [5] - 20:20, 67:17, 68:4, 78:5, 80:12
**draft** [2] - 19:16, 54:18
**drafted** [2] - 17:14, 18:5
**drafter** [1] - 18:9
**drafting** [1] - 18:14
**draw** [1] - 80:5
**due** [2] - 32:3, 71:12
**during** [7] - 38:15, 40:10, 43:12, 45:18, 56:20, 57:8, 94:18
**duty** [7] - 5:17, 33:9, 33:13, 34:3, 37:21, 65:4, 65:11

# E

**e-mail** [10] - 8:6, 8:8, 8:15, 10:22, 10:23, 12:20, 25:11, 30:23, 31:16, 73:13
**e-mailed** [1] - 72:18
**e-mails** [2] - 8:12, 23:24
**early** [2] - 43:1, 48:17
**easier** [4] - 27:12, 27:14, 28:7, 29:25
**echo** [1] - 44:9
**effect** [1] - 83:23
**effectively** [1] - 34:21
**EICHENBLATT** [17] - 3:12, 14:12, 33:22, 34:1, 34:6, 34:9, 34:11, 64:21, 65:3, 65:9, 65:16, 65:18, 84:8, 94:17, 94:25, 95:3, 99:11
**Eichenblatt** [1] - 3:13
**either** [12] - 28:20, 32:15, 36:3, 37:17, 56:22, 57:9, 58:8, 63:2, 72:6, 81:7, 87:19, 91:15
**election** [4] - 49:8, 50:2, 75:7, 79:25
**electronic** [2] - 3:2, 99:15
**Eleventh** [1] - 84:10
**elicit** [1] - 91:2
**embarrass** [1] - 95:12
**embarrassing** [1] - 37:24
**employee** [4] - 8:24, 10:6, 13:16, 18:15
**employment** [14] - 7:1, 7:5, 9:17, 10:13, 11:1, 11:8, 11:11, 11:19, 12:7, 17:12, 19:25, 20:1, 20:16
**Employment** [1] - 12:5
**encompass** [1] - 66:23
**encompassing** [1] - 36:5
**end** [2] - 35:23, 97:13
**ended** [2] - 29:1, 87:22
**enforce** [1] - 99:8
**enforcement** [2] - 26:19, 94:10
**engage** [1] - 24:18
**engaged** [3] - 37:21, 53:2, 57:12
**ensues** [1] - 77:19
**enter** [2] - 4:3, 18:24

**entered** [3] - 17:24, 18:17, 91:12
**entire** [2] - 13:9, 81:11
**entirely** [2] - 54:8
**entirety** [2] - 29:8, 54:20
**entities** [2] - 7:2, 10:2
**entitled** [11] - 12:5, 20:3, 33:16, 33:17, 35:2, 35:4, 35:6, 66:1, 71:3, 71:18, 94:22
**entitlement** [1] - 84:15
**entity** [33] - 14:22, 14:24, 14:25, 15:16, 15:17, 15:24, 51:8, 51:14, 51:18, 52:2, 52:3, 53:4, 53:7, 53:8, 54:14, 54:24, 54:25, 55:5, 55:6, 55:10, 55:21, 56:13, 56:15, 56:16, 56:18, 56:19, 56:24, 57:4, 57:12, 58:2, 58:4
**envision** [1] - 96:25
**epithets** [1] - 63:17
**er** [1] - 14:2
**essence** [1] - 86:16
**Essential** [13] - 51:6, 51:7, 51:15, 51:17, 53:20, 55:20, 56:11, 57:2, 57:5, 57:8, 58:19, 58:20, 58:24
**essentially** [3] - 9:20, 51:14, 61:23
**establish** [4] - 8:23, 9:19, 9:22, 77:8
**establishing** [2] - 9:12, 67:16
**ethnic** [1] - 63:18
**evening** [1] - 89:6
**event** [6] - 12:8, 42:1, 42:5, 64:15, 78:1, 80:1
**events** [7] - 74:1, 76:21, 77:6, 78:1, 79:22, 79:24, 80:22
**evidence** [5] - 58:1, 70:23, 85:22, 86:22, 94:15
**evidencing** [1] - 27:9
**evidentiary** [1] - 67:3
**evolves** [1] - 62:24
**ex** [1] - 42:8
**exactly** [5] - 8:7, 10:22, 19:24, 49:15, 81:4
**examination** [2] - 86:16, 89:25
**example** [24] - 6:4,

21:25, 32:22, 33:2, 35:12, 38:2, 48:1, 49:5, 68:13, 68:23, 69:7, 75:13, 77:18, 78:25, 81:16, 86:21, 87:3, 87:4, 87:14, 90:19, 93:17, 95:10, 96:20, 96:25
**examples** [1] - 5:21
**excellent** [1] - 17:9
**except** [1] - 60:23
**exception** [1] - 42:13
**executed** [2] - 50:24, 52:1
**exist** [1] - 31:3
**existed** [1] - 37:11
**existence** [6] - 7:4, 8:24, 9:8, 10:25, 35:13, 39:14
**existent** [1] - 42:8
**existing** [1] - 69:16
**exists** [4] - 11:9, 32:10, 46:14, 73:17
**expense** [1] - 75:24
**explore** [4] - 5:2, 20:6, 33:18, 35:4
**exploring** [1] - 20:3
**extend** [1] - 88:21
**extension** [1] - 86:8
**extent** [18] - 10:12, 23:2, 28:22, 31:22, 40:7, 41:14, 66:4, 66:8, 66:13, 69:14, 70:19, 75:9, 78:20, 78:24, 79:8, 81:8, 91:25, 96:7
**extraordinary** [1] - 95:8
**extremely** [3] - 23:8, 35:11, 36:7
**extrinsic** [1] - 86:22
**eye** [1] - 24:9

# F

**face** [2] - 46:1, 52:18
**facing** [1] - 21:16
**fact** [27] - 8:6, 9:20, 23:13, 24:17, 24:19, 35:7, 35:14, 35:24, 36:17, 40:9, 43:17, 45:10, 50:13, 52:19, 55:5, 55:7, 64:10, 64:14, 67:4, 75:6, 80:12, 82:6, 87:22, 97:13, 97:15, 97:16
**facts** [1] - 68:6
**factual** [3] - 38:21, 66:1, 91:1
**fail** [2] - 73:3, 73:5

**failed** [2] - 42:23, 45:1
**fair** [5] - 9:2, 25:8, 75:16, 77:17, 91:24
**fairness** [1] - 14:1
**fake** [1] - 56:17
**fall** [1] - 25:2
**false** [3] - 45:4, 52:22, 64:22
**falsehoods** [1] - 65:19
**familiar** [2] - 16:12, 83:19
**family** [2] - 45:3, 52:21
**fan** [1] - 44:14
**far** [4] - 50:6, 53:11, 66:17, 88:21
**fashioned** [1] - 40:15
**February** [7] - 21:24, 25:21, 26:23, 27:11, 27:13, 28:4
**federal** [7] - 41:21, 43:8, 43:9, 43:10, 45:23, 95:20, 95:22
**feed** [1] - 78:13
**fees** [1] - 35:16
**few** [2] - 60:5, 74:7
**fiat** [1] - 82:20
**fiduciary** [5] - 5:18, 33:9, 34:3, 38:10, 65:4, 65:11
**Fifth** [17] - 24:20, 75:4, 79:2, 79:12, 82:12, 84:2, 84:5, 84:16, 85:16, 86:9, 87:4, 87:13, 87:14, 89:7, 91:20, 97:1, 97:2
**fight** [5] - 25:1, 25:3, 29:23, 78:16
**figure** [1] - 26:4
**figuring** [1] - 81:10
**file** [2] - 10:11, 18:16
**filed** [1] - 22:10
**files** [1] - 13:9
**filing** [6] - 21:17, 25:15, 27:8, 40:11, 67:7, 67:25
**final** [1] - 30:12
**fine** [7] - 13:19, 16:5, 16:11, 25:9, 27:6, 54:22
**first** [14] - 4:20, 5:5, 6:21, 7:6, 25:6, 25:7, 26:4, 44:10, 47:12, 49:16, 50:7, 82:2, 96:11, 96:12
**First** [2] - 98:4, 98:13
**five** [2] - 7:14, 99:5
**fix** [1] - 45:8
**flesh** [1] - 98:19
**Florida** [8] - 43:11, 43:16, 43:20, 43:23,

44:2, 44:4, 45:21, 85:12
**fly** [2] - 42:22, 43:3
**focus** [1] - 92:14
**focussed** [1] - 28:5
**fodder** [3] - 74:21, 77:24, 92:13
**follow** [1] - 95:22
**following** [5] - 34:14, 52:12, 62:20, 89:6, 89:15
**follows** [2] - 13:14, 45:15
**force** [1] - 93:4
**forever** [1] - 80:7
**forgot** [1] - 3:16
**form** [1] - 29:16
**formal** [2] - 13:17, 14:6
**formally** [2] - 14:4, 71:22
**formats** [1] - 18:9
**former** [1] - 38:9
**formulate** [1] - 75:20
**formulated** [1] - 92:5
**Fort** [2] - 87:6, 87:10
**forth** [1] - 35:22
**forum** [3] - 32:7, 78:7, 88:25
**forwarded** [1] - 14:10
**four** [3] - 5:2, 9:7, 34:17
**framed** [2] - 35:11, 66:2
**frankly** [1] - 84:6
**fraud** [1] - 42:12
**fro** [1] - 61:1
**front** [6] - 11:20, 19:6, 43:4, 72:22, 91:14, 96:6
**fully** [2] - 71:1, 93:13
**function** [2] - 66:25, 67:1
**fundamentally** [2] - 17:3, 17:4
**future** [1] - 79:11

# G

**gag** [1] - 22:9
**gain** [1] - 82:6
**game** [6] - 9:2, 19:20, 71:13, 72:23, 75:16, 77:18
**gap** [1] - 4:2
**Gayles** [1] - 3:5
**General** [2] - 26:19, 28:6
**general** [4] - 45:19, 45:20, 64:2, 76:13

**General's** [2] - 26:14, 27:1
**generally** [6] - 5:2, 47:22, 63:14, 75:11, 75:18, 90:19
**generated** [1] - 36:15
**generous** [1] - 99:12
**gentleman** [1] - 68:5
**get-go** [1] - 67:7
**given** [10] - 7:19, 22:8, 30:20, 37:7, 39:12, 52:2, 57:25, 73:17, 77:21, 80:16
**glossed** [1] - 71:9
**gotcha** [1] - 70:22
**govern** [4] - 4:4, 95:9, 95:10
**Government** [1] - 88:8
**governs** [1] - 43:7
**grade** [1] - 25:5
**grant** [3] - 68:10, 91:5, 92:9
**granted** [1] - 46:23
**great** [1] - 46:23
**gripe** [1] - 22:17
**ground** [2] - 82:11, 87:2
**grounds** [7] - 37:1, 79:3, 82:10, 87:16, 92:12, 94:24, 95:5
**group** [1] - 6:21
**guess** [19] - 14:15, 14:18, 15:6, 19:14, 23:20, 24:2, 27:7, 27:10, 30:14, 36:13, 46:2, 47:25, 64:5, 64:16, 66:15, 68:19, 78:17, 78:24, 89:22
**guilty** [1] - 50:9
**gun** [1] - 98:8
**guy** [2] - 19:15, 92:18

**H**

**half** [1] - 59:12
**hand** [2] - 95:13, 96:9
**handle** [1] - 48:7
**handling** [1] - 74:7
**hands** [3] - 94:2, 98:4, 99:4
**hang** [1] - 57:4
**happy** [3] - 11:20, 24:11, 31:3
**hard** [6] - 42:21, 79:24, 80:14, 81:10, 82:13, 91:7
**harm** [1] - 78:9
**hat** [1] - 57:5
**head** [2] - 49:14, 61:19
**headed** [1] - 88:11

**hear** [4] - 5:3, 30:24, 90:6, 98:11
**heard** [7] - 15:9, 31:17, 53:19, 55:9, 66:10, 66:11, 97:15
**hearing** [2] - 3:20, 57:3
**heart** [1] - 34:20
**held** [1] - 35:25
**help** [2] - 13:12, 18:5
**hence** [3] - 15:19, 16:14, 86:15
**hesitating** [1] - 91:5
**hiding** [1] - 79:1
**highest** [1] - 20:25
**highly** [2] - 41:15, 51:19
**himself** [5] - 19:17, 23:19, 34:23, 64:8, 76:11
**Hold** [1] - 30:13
**hold** [1] - 6:14
**Honor** [105] - 3:8, 3:10, 3:12, 3:15, 4:8, 4:11, 4:18, 4:20, 5:3, 5:13, 6:6, 7:7, 7:21, 8:4, 8:10, 8:18, 11:7, 12:24, 14:3, 14:13, 15:21, 16:1, 16:11, 16:12, 16:23, 19:4, 20:17, 22:20, 22:23, 26:7, 26:18, 26:25, 27:4, 27:16, 28:14, 30:6, 30:18, 32:3, 34:7, 34:11, 34:19, 35:10, 39:10, 39:22, 40:6, 40:14, 41:4, 42:1, 42:11, 42:12, 43:5, 44:6, 45:12, 45:22, 45:24, 46:16, 47:1, 49:12, 50:20, 51:11, 52:8, 52:13, 54:15, 58:6, 58:13, 59:11, 59:15, 60:2, 61:12, 62:5, 62:22, 63:4, 64:21, 65:16, 66:4, 69:11, 69:18, 69:22, 70:6, 70:16, 71:8, 71:20, 72:3, 72:11, 72:15, 72:22, 73:4, 73:12, 74:5, 74:7, 74:24, 84:8, 84:21, 85:1, 90:12, 93:2, 94:17, 96:5, 96:6, 97:4, 97:8, 98:10, 98:21, 99:9, 99:11
**Honor's** [7] - 43:9, 50:24, 53:8, 64:6, 81:1, 86:9, 88:20

**hopefully** [1] - 70:14
**hour** [3] - 59:12, 90:25, 93:22
**hours** [5] - 78:18, 91:20, 92:1, 97:1, 99:5
**House** [1] - 74:8
**house** [1] - 79:1
**HR** [1] - 13:7
**hundred** [2] - 35:18, 38:20
**hung** [1] - 95:21
**hurt** [1] - 64:12
**husband** [6] - 41:13, 41:18, 42:15, 43:6, 43:15, 45:15
**husband-wife** [1] - 41:13

**I**

**ice** [1] - 21:2
**idea** [7] - 34:23, 51:25, 52:1, 53:13, 57:22, 57:24, 65:8
**identification** [1] - 40:18
**identified** [4] - 10:2, 24:1, 74:18, 77:16
**identify** [4] - 11:15, 20:22, 25:7, 68:11
**identifying** [1] - 30:11
**ignore** [1] - 79:18
**ignoring** [2] - 52:19, 80:12
**imagine** [1] - 50:25
**impeach** [8] - 53:17, 53:24, 54:6, 54:12, 55:8, 58:8, 58:9, 86:23
**impeaching** [2] - 56:22
**impeachment** [2] - 25:24, 72:21
**implicate** [2] - 77:11, 80:24
**implicates** [1] - 80:18
**implications** [1] - 74:25
**important** [1] - 12:14
**improper** [1] - 38:8
**in-the-weeds** [1] - 51:12
**inadmissible** [2] - 95:11, 99:5
**Inc** [2] - 15:13, 15:16
**incident** [1] - 47:3
**incidents** [1] - 5:22
**inclined** [3] - 80:15, 88:16, 89:24

**include** [7] - 14:2, 25:10, 25:11, 89:18, 97:12, 97:20, 98:12
**included** [2] - 14:7, 14:10
**including** [4] - 36:20, 39:15, 83:4, 85:4
**incorporate** [1] - 98:2
**incorporated** [4] - 34:1, 65:4, 65:23, 65:25
**incorrect** [1] - 13:8
**incriminate** [1] - 76:11
**incriminated** [2] - 85:17, 95:14
**incrimination** [2] - 85:16, 86:6
**incumbent** [1] - 42:5
**indictment** [3] - 21:17, 61:20, 78:12
**indictments** [4] - 78:5, 79:10, 79:21, 79:22
**individual** [3] - 34:20, 67:4, 67:13
**information** [14] - 13:3, 30:16, 36:3, 37:16, 37:17, 37:22, 45:22, 64:7, 71:18, 82:7, 86:5, 87:18, 93:15
**information's** [1] - 5:5
**informed** [1] - 72:20
**infringement** [1] - 84:11
**initial** [1] - 19:24
**injected** [1] - 55:21
**instance** [4] - 64:21, 69:6, 89:17, 93:8
**instances** [2] - 70:2, 86:19
**instant** [1] - 84:13
**instruct** [4] - 82:12, 94:23, 95:1, 95:4
**instructing** [1] - 82:10
**insults** [1] - 64:24
**insurrection** [1] - 75:8
**intend** [3] - 72:20, 73:25, 90:13
**intended** [2] - 43:14, 72:19
**interest** [2] - 16:4, 72:7
**interests** [1] - 73:17
**interim** [1] - 98:18
**internal** [8] - 22:1, 23:21, 23:24, 24:8, 24:16, 24:24, 25:11, 49:4
**interpret** [1] - 14:16
**interrogatories** [1] -

29:11
**interrogatory** [2] - 28:13, 29:13
**interrupt** [1] - 23:23
**interrupting** [1] - 84:9
**interview** [1] - 30:20
**intimidating** [1] - 22:10
**investigation** [3] - 26:14, 26:15, 34:15
**invocation** [3] - 84:12, 87:25, 88:9
**invoke** [7] - 31:23, 31:25, 42:7, 75:4, 84:2, 87:1, 87:3
**invoked** [4] - 41:13, 76:18, 87:12, 88:15, 89:7, 97:2
**invokes** [1] - 76:16, 87:3, 87:14
**invoking** [6] - 42:2, 43:18, 76:14, 84:16, 95:15, 97:14
**involve** [2] - 34:16, 61:1
**involved** [4] - 74:4, 74:16, 74:18, 82:3
**involvement** [5] - 21:11, 21:22, 22:13, 22:16, 23:9
**involving** [5] - 18:7, 33:7, 54:21, 74:4, 74:10
**iPhone** [1] - 7:16
**irrelevant** [2] - 37:7, 57:7
**irrespective** [1] - 68:2
**issue** [59] - 3:22, 3:24, 4:7, 4:20, 5:12, 8:21, 8:22, 10:20, 10:23, 11:6, 13:20, 15:23, 16:14, 23:15, 23:17, 31:4, 33:17, 39:12, 40:3, 40:5, 40:12, 42:20, 44:12, 44:19, 44:21, 48:3, 48:8, 52:6, 52:23, 53:10, 53:11, 54:10, 62:10, 63:1, 63:13, 65:17, 66:23, 67:6, 67:16, 68:3, 69:2, 69:5, 70:18, 71:24, 73:6, 73:11, 73:12, 73:16, 77:1, 81:9, 89:13, 89:14, 90:8, 91:14, 93:13, 96:16, 96:19, 97:8, 98:2
**issued** [2] - 22:8, 83:6, 83:7
**issues** [20] - 5:3,

13:18, 20:3, 21:15,
40:23, 54:11, 61:14,
68:15, 70:13, 74:9,
76:24, 76:25, 77:1,
86:24, 91:1, 92:17,
93:18, 94:19, 96:8,
96:15

**issuing** [2] - 3:24,
29:13

**itself** [2] - 13:18, 35:21

## J

**janitor** [2] - 20:25,
24:25
**January** [6] - 19:9,
74:2, 75:7, 76:20,
80:1
**jibe** [1] - 55:16
**job** [1] - 18:21
**Judge** [3] - 3:4, 57:11,
96:13
**judge** [3] - 12:5, 22:8,
83:7
**judges** [1] - 95:24
**judgment** [2] - 84:14,
84:18
**July** [2] - 8:15, 10:24
**jump** [1] - 17:7
**jumped** [1] - 71:9
**jumps** [1] - 98:7
**June** [5] - 19:10,
25:20, 25:21, 25:22,
28:1
**jurors** [1] - 76:13
**jury** [1] - 67:21
**justice** [1] - 93:18

## K

**Karen** [1] - 74:6
**keep** [3] - 34:24,
90:17, 96:19
**keeping** [1] - 35:14
**key** [1] - 5:3
**kill** [1] - 61:15
**kind** [12] - 15:25, 33:5,
51:9, 51:17, 51:23,
52:5, 61:25, 62:23,
72:18, 82:14, 83:18,
92:10
**knowing** [1] - 67:21
**knowledge** [3] - 13:6,
51:12, 59:19
**knowledgeable** [1] -
68:12
**known** [4] - 5:10, 5:21,
6:2, 51:15
**knows** [6] - 65:7, 68:9,
69:7, 94:7, 94:14,

95:5

## L

**labelling** [1] - 11:25
**lack** [1] - 37:11
**laid** [1] - 81:4
**landscape** [1] - 80:13
**larger** [1] - 94:20
**last** [4] - 3:22, 40:14,
73:9, 86:2
**latest** [1] - 78:11
**law** [14] - 42:18, 42:22,
43:7, 43:8, 43:9,
43:10, 43:16, 43:21,
54:10, 84:4, 84:6,
91:21, 98:14
**laws** [1] - 45:13
**lawsuit** [9] - 21:15,
21:19, 22:10, 22:15,
25:15, 28:2, 40:11,
55:20, 84:1
**lawsuits** [1] - 67:23,
67:25, 68:1
**lawyer** [4] - 19:18,
57:21, 94:6, 94:23
**lawyers** [1] - 19:22,
93:23, 95:21
**lay** [1] - 76:15
**lead** [1] - 94:15
**least** [9] - 11:13, 25:2,
27:17, 42:23, 61:20,
69:14, 70:1, 85:21,
95:25
**leave** [3] - 32:4, 93:21,
96:13
**left** [4] - 29:1, 29:7,
40:20, 74:8
**leg** [1] - 90:7
**legal** [3] - 45:2, 52:20,
60:17
**legitimate** [2] - 22:17,
94:2
**legs** [1] - 57:17
**less** [1] - 34:12
**letter** [2] - 10:5, 10:7
**level** [1] - 20:25
**lie** [2] - 37:17, 48:25
**lied** [2] - 33:1, 33:14
**lies** [1] - 37:12
**light** [2] - 24:19, 50:24
**likelihood** [1] - 86:13
**likely** [1] - 37:23
**limit** [8] - 56:4, 56:5,
56:10, 76:24, 76:25,
82:23, 88:17, 89:25
**limitation** [1] - 46:18,
74:17
**limitations** [1] - 50:14,
77:14, 85:4

**limited** [11] - 15:20,
23:14, 38:11, 55:1,
55:2, 55:17, 56:8,
56:9, 57:15, 57:18
**limits** [7] - 25:14,
68:21, 68:25, 81:11,
82:21, 90:24, 93:1
**line** [6] - 8:5, 24:19,
25:2, 30:3, 79:24,
80:4
**link** [1] - 28:8
**listed** [1] - 65:25
**litigate** [1] - 98:5
**litigation** [7] - 35:15,
35:21, 54:21, 87:10,
87:17, 87:20, 88:24
**live** [2] - 42:19, 63:22
**living** [1] - 45:17
**loathed** [1] - 96:7
**location** [2] - 73:16,
96:3
**log** [7] - 42:6, 42:20,
42:24, 44:11, 44:17,
44:20, 46:7
**logged** [2] - 46:14,
50:16
**logic** [2] - 27:7
**logically** [1] - 27:7
**look** [5] - 8:16, 8:20,
39:13, 44:3, 48:12
**looking** [5] - 6:18,
23:20, 37:20, 47:6,
54:22
**loss** [1] - 84:14
**lost** [1] - 51:10
**loud** [1] - 67:25
**luck** [1] - 94:13
**lying** [1] - 63:16

## M

**machinations** [1] -
57:21
**Maedon** [1] - 96:1
**magnitude** [1] - 42:21
**mail** [10] - 8:6, 8:8,
8:15, 10:22, 10:23,
12:20, 25:11, 30:23,
31:16, 73:13
**mailed** [1] - 72:18
**mails** [2] - 8:12, 23:24
**maintaining** [1] - 36:6
**malicious** [3] - 38:9,
45:4, 52:21
**man** [1] - 51:18
**Manhattan** [5] - 21:13,
21:18, 21:23, 24:1,
24:25, 28:5
**marital** [1] - 43:12
**marriage** [1] - 45:18

**material** [2] - 8:16,
65:24
**materials** [9] - 6:5,
8:14, 8:17, 14:2,
14:8, 14:10, 14:13,
84:22, 85:13
**matter** [11] - 13:13,
28:5, 35:19, 37:18,
43:7, 69:15, 75:10,
75:25, 80:3, 83:14,
84:13
**matters** [7] - 47:21,
74:17, 76:19, 77:22,
81:22, 83:21, 88:5
**Max** [1] - 3:12
**McDougal** [5] - 61:16,
62:7, 74:6, 75:8,
92:19
**mean** [29] - 5:22,
12:19, 14:21, 17:1,
17:2, 19:12, 20:20,
20:21, 20:22, 23:22,
25:16, 27:25, 28:18,
28:22, 33:12, 33:16,
42:23, 47:22, 54:4,
57:16, 59:4, 60:16,
62:23, 67:24, 68:9,
81:8, 82:3, 84:17,
93:18
**meant** [1] - 16:25
**media** [23] - 23:1,
23:4, 23:5, 23:19,
38:6, 61:19, 74:22,
76:13, 77:24, 77:25,
78:4, 88:25
**meet** [2] - 69:21, 70:15
**memorial** [1] - 85:13
**memory** [2] - 18:22,
43:5
**mention** [1] - 34:12
**mentioned** [2] - 72:1,
92:18
**merely** [1] - 44:13
**merits** [1] - 90:21
**met** [3] - 4:24, 7:24,
47:8
**Michael** [1] - 3:4
**middle** [2] - 51:18,
52:5
**middle-man** [1] -
51:18
**might** [5] - 6:6, 20:21,
20:22, 27:8, 75:14
**mildly** [1] - 35:8
**million** [1] - 4:12
**mind** [6] - 27:17,
35:14, 44:5, 68:18,
90:17, 96:19
**mindful** [3] - 18:21,
24:23, 70:10

**minimum** [1] - 44:3
**minor** [1] - 69:5
**minute** [1] - 73:9
**minutes** [2] - 74:7,
92:3
**misconduct** [1] -
37:21
**misrepresentations**
[1] - 37:23
**misstate** [1] - 7:25
**misstatements** [1] -
37:23
**misuse** [2] - 92:12,
93:14
**mitigate** [1] - 73:1
**modification** [5] -
10:1, 10:9, 10:11,
27:15, 98:3
**modifications** [1] -
26:22
**modified** [1] - 4:4
**modify** [4] - 13:15,
91:15, 97:3, 98:25
**moment** [1] - 59:11
**money** [1] - 61:23
**months** [3] - 48:20,
77:7, 78:6
**morning** [6] - 3:8,
3:10, 3:12, 3:14,
3:15, 3:19
**most** [2] - 7:15, 13:6
**motion** [2] - 34:4, 70:7
**motions** [1] - 3:23
**motivations** [1] -
45:10
**motive** [4] - 21:14,
22:20, 72:21, 92:6
**motives** [2] - 22:11,
27:9
**mount** [1] - 62:16
**move** [4] - 16:19,
87:11, 87:16, 97:16
**moving** [1] - 63:5
**MSNBC** [2] - 78:10,
89:6
**multiple** [1] - 57:12

## N

**name** [3] - 34:13,
38:22, 39:1
**narrow** [5] - 21:5,
25:22, 27:12, 69:24,
92:3
**narrowed** [2] - 63:3,
68:24
**narrower** [1] - 69:8
**narrowing** [1] - 63:3
**national** [1] - 63:19
**nature** [6] - 7:25, 8:12,

8:20, 23:25, 31:7, 31:15
**NBC** [1] - 89:6
**NDA** [10] - 7:10, 18:2, 20:2, 20:5, 31:17, 50:23, 58:23, 59:7, 59:19, 59:23
**NDAs** [1] - 18:9
**necessarily** [6] - 8:11, 37:10, 37:15, 54:4, 54:20, 77:11
**necessary** [2] - 80:10, 88:16
**need** [15] - 9:19, 9:21, 17:25, 20:6, 24:23, 31:23, 44:18, 46:2, 61:10, 64:4, 71:15, 82:14, 94:21, 95:17, 98:24
**needed** [1] - 31:22
**needs** [1] - 16:5
**negative** [1] - 20:7
**never** [6] - 45:7, 66:10, 66:11, 83:6, 83:7
**nevertheless** [1] - 9:4
**New** [9] - 26:15, 26:19, 42:13, 42:22, 43:21, 44:2, 45:13, 45:21, 74:2
**new** [1] - 69:23
**next** [19] - 13:20, 13:21, 16:21, 17:6, 17:7, 21:7, 21:8, 28:9, 30:8, 32:13, 41:4, 51:3, 59:10, 61:11, 63:13, 66:17, 90:13, 92:16, 96:18
**ninety** [1] - 64:1
**nobody** [2] - 98:7, 98:18
**non** [13] - 9:20, 11:12, 17:15, 18:18, 20:23, 20:24, 21:20, 23:25, 24:17, 25:12, 31:1, 42:8, 59:5
**non-confidentiality** [1] - 11:12
**non-controversial** [1] - 9:20
**non-disclosure** [4] - 17:15, 18:18, 20:23, 20:24
**non-existent** [1] - 42:8
**non-privilege** [1] - 21:20
**non-privileged** [4] - 23:25, 25:12, 31:1, 59:5
**nondisclosure** [1] - 17:21

**none** [7] - 24:13, 30:23, 31:10, 32:11, 58:4, 78:19
**nonparty** [1] - 77:24
**normal** [2] - 81:18, 95:17
**Northern** [1] - 85:11
**noted** [1] - 72:18
**nothing** [17] - 5:19, 12:18, 12:20, 26:5, 34:22, 48:25, 56:23, 57:19, 58:23, 76:20, 76:21, 78:4, 87:20, 93:9, 95:15, 97:22
**notice** [1] - 44:16
**noticed** [1] - 73:18
**notorious** [1] - 50:8
**number** [31] - 3:4, 4:9, 4:13, 4:23, 6:21, 8:11, 8:23, 9:6, 12:11, 13:5, 13:21, 14:18, 15:6, 15:10, 16:5, 25:6, 29:8, 35:12, 44:19, 46:11, 47:21, 68:24, 73:16, 74:1, 74:18, 74:19, 74:23, 74:24, 79:7
**numbers** [2] - 72:6
**numerous** [1] - 63:21

# O

**object** [7] - 10:17, 10:24, 11:2, 16:6, 36:16, 68:18
**objected** [4] - 15:6, 30:10, 36:25, 41:12
**objection** [22] - 7:8, 7:25, 8:5, 8:12, 9:5, 14:16, 14:18, 15:20, 16:7, 16:15, 17:1, 21:3, 21:5, 25:25, 31:9, 31:11, 36:23, 58:12, 63:2, 63:11, 68:23, 95:6
**objections** [3] - 16:6, 36:23, 44:15
**obligation** [2] - 19:16, 75:2
**obligations** [5] - 5:18, 5:20, 38:10, 44:16, 63:23
**obstruction** [1] - 93:18
**obtain** [1] - 24:10
**obtaining** [1] - 10:17
**Obukwelu** [1] - 85:12
**obviate** [1] - 48:24
**obviously** [21] - 12:21, 13:17, 14:21, 22:25,

23:19, 25:11, 25:13, 26:1, 27:24, 41:3, 42:19, 57:17, 60:20, 61:2, 69:24, 73:14, 78:18, 90:15, 91:2, 97:7
**occurred** [1] - 87:21
**occurs** [1] - 96:25
**odd** [2] - 11:14, 29:15
**oddly** [1] - 34:25
**offer** [2] - 44:7, 96:7
**office** [1] - 73:18
**Office** [1] - 27:2
**old** [1] - 48:20
**once** [4] - 4:3, 21:4, 71:15, 77:20
**one** [81] - 5:19, 6:2, 6:14, 7:6, 7:14, 8:3, 10:4, 10:23, 11:14, 11:21, 13:5, 13:21, 14:16, 16:3, 16:21, 16:22, 17:6, 17:7, 17:23, 18:22, 19:16, 20:3, 21:1, 22:21, 25:10, 26:23, 27:13, 27:25, 28:9, 30:8, 30:20, 31:4, 32:13, 38:2, 45:18, 50:17, 51:3, 52:1, 54:3, 54:11, 54:18, 57:12, 58:18, 59:10, 59:11, 59:19, 59:20, 60:6, 61:6, 61:11, 62:23, 62:25, 63:25, 64:17, 65:22, 68:24, 69:25, 70:4, 71:3, 73:16, 74:1, 74:18, 74:23, 75:13, 75:19, 79:7, 79:11, 82:10, 84:22, 85:17, 87:6, 91:9, 91:23, 92:4, 92:15, 93:8, 96:21, 97:8
**ones** [4] - 21:7, 21:8, 61:7, 83:11
**ongoing** [3] - 35:25, 56:14, 78:8
**open** [3] - 29:1, 29:7, 50:8
**opening** [1] - 57:11
**opinion** [1] - 64:11
**opportunities** [1] - 77:9
**opportunity** [5] - 71:16, 78:1, 78:3, 92:7, 98:19
**opposed** [12] - 17:23, 24:9, 29:11, 43:7, 43:18, 43:21, 45:7, 45:10, 49:3, 76:17, 81:14, 83:5

**opposite** [1] - 93:3
**oral** [1] - 30:20
**order** [29] - 3:23, 3:24, 4:3, 5:12, 22:9, 40:23, 51:8, 51:15, 74:16, 82:6, 82:22, 83:2, 83:3, 83:7, 89:13, 89:17, 89:22, 90:10, 90:13, 91:12, 91:16, 92:10, 96:18, 96:19, 96:20, 96:22, 97:3, 97:9, 97:21
**ordered** [1] - 35:17
**orders** [1] - 82:25
**organization** [7] - 7:2, 13:7, 16:9, 23:21, 23:25, 55:7, 55:11
**Organization** [7] - 5:23, 12:14, 13:24, 18:25, 22:2, 70:3, 74:10
**origin** [2] - 63:18, 63:19
**original** [1] - 20:11
**otherwise** [6] - 11:17, 23:5, 25:23, 36:3, 68:3, 87:23
**ought** [1] - 9:15
**ourselves** [5] - 33:18, 62:14, 63:15, 96:8, 98:19
**out-of-control** [1] - 57:21
**outlets** [1] - 23:4
**outside** [4] - 27:17, 27:18, 88:6, 88:24
**overall** [1] - 31:9
**overbreadth** [2] - 36:23, 36:24
**overbroad** [6] - 11:3, 12:23, 36:21, 39:17, 55:17, 68:22
**overrule** [2] - 16:7, 58:12
**overruled** [1] - 25:25
**overstep** [1] - 24:19
**overview** [1] - 6:11
**own** [4] - 18:12, 34:25, 51:24, 85:18

# P

**p.m.)** [1] - 99:13
**packer** [2] - 61:18, 75:8
**packet** [1] - 14:9
**page** [3] - 10:23, 42:7
**pages** [12] - 7:15, 11:14, 11:17, 28:18, 29:3, 29:7, 29:8,

29:19, 30:1, 30:2, 34:17
**paid** [3] - 35:17, 44:13, 61:23
**Palm** [1] - 96:11
**paragraph** [22] - 30:13, 32:25, 33:2, 33:10, 33:21, 33:23, 34:11, 37:20, 38:4, 38:24, 44:12, 44:21, 47:1, 47:5, 47:7, 47:20, 52:11, 63:25, 64:1, 64:22, 64:24
**paragraphs** [3] - 34:14, 53:12, 91:1
**parcel** [1] - 51:22
**part** [14] - 12:22, 18:20, 19:13, 45:13, 46:25, 51:22, 61:15, 62:1, 62:10, 64:2, 67:9, 74:14, 82:13, 89:1
**participated** [3] - 30:14, 54:3, 54:8
**particular** [10] - 14:20, 20:22, 28:21, 36:16, 53:14, 56:7, 68:11, 69:8, 69:25, 88:24
**particularly** [1] - 47:23
**parties** [12] - 3:24, 9:5, 11:2, 13:16, 40:25, 41:2, 54:21, 66:9, 71:8, 85:3, 96:10, 96:12
**partly** [1] - 68:19
**parts** [1] - 25:25
**party** [6] - 26:2, 81:12, 81:14, 85:18, 85:19, 96:21
**past** [2] - 78:6, 80:2
**pay** [2] - 25:5, 45:5
**payment** [9] - 52:15, 52:17, 52:23, 52:25, 53:10, 53:13, 55:3, 56:2, 57:9
**payments** [16] - 33:2, 34:22, 34:23, 34:24, 35:6, 35:22, 49:13, 51:9, 51:15, 51:16, 51:21, 58:1, 58:19, 60:8, 62:3, 74:3
**payoff** [1] - 49:6
**pecker** [3] - 61:21, 74:4, 92:18
**pending** [8] - 3:22, 34:4, 54:11, 77:21, 82:1, 83:14, 86:17
**people** [6] - 20:25, 64:10, 76:13, 76:14, 76:15

**per** [2] - 22:9, 27:4
**percent** [2] - 35:18, 86:13
**perhaps** [5] - 22:7, 42:8, 48:16, 69:18, 70:11
**peril** [2] - 88:13
**period** [9] - 25:14, 25:20, 25:22, 50:16, 54:25, 56:20, 57:8, 57:10, 58:2
**permissive** [1] - 4:1
**PERRY** [155] - 3:10, 4:8, 4:18, 4:20, 5:13, 6:6, 6:10, 6:15, 6:20, 6:24, 7:7, 7:9, 11:5, 11:7, 11:25, 12:7, 12:19, 12:24, 13:2, 13:21, 13:23, 14:23, 14:25, 15:2, 16:23, 16:25, 17:4, 17:7, 17:10, 17:17, 17:19, 18:1, 18:6, 18:8, 18:19, 19:1, 19:4, 19:6, 19:9, 19:12, 19:19, 19:24, 20:13, 20:17, 21:1, 21:8, 21:10, 22:3, 22:5, 22:7, 22:15, 22:20, 25:16, 26:7, 26:9, 26:13, 26:18, 26:25, 27:16, 27:24, 28:10, 28:15, 28:18, 28:25, 29:6, 29:12, 29:15, 29:19, 30:9, 30:15, 32:14, 32:20, 32:24, 33:5, 33:11, 34:7, 34:19, 39:22, 40:2, 41:4, 42:1, 42:4, 42:12, 42:16, 42:18, 43:2, 46:21, 46:23, 47:3, 47:20, 48:4, 48:6, 48:11, 48:14, 48:16, 48:19, 49:7, 49:10, 49:19, 49:22, 49:24, 50:1, 50:6, 50:11, 50:19, 50:23, 51:3, 51:6, 51:11, 51:22, 52:5, 58:15, 58:18, 59:4, 59:11, 59:14, 59:24, 60:1, 60:5, 60:16, 61:8, 61:12, 61:18, 62:5, 62:8, 62:10, 62:22, 63:4, 63:9, 63:14, 63:21, 69:18, 69:21, 70:6, 70:8, 70:10, 70:22, 71:6, 71:20, 72:11, 72:15, 73:6, 79:4, 90:12, 92:19,

92:22, 92:25, 93:2, 96:5, 97:4, 97:8, 97:11, 98:10, 98:21, 99:9
**Perry** [1] - 3:10
**person** [8] - 13:6, 18:7, 18:10, 18:12, 62:3, 62:6, 69:8, 82:1
**person's** [1] - 63:18
**personal** [2] - 36:20, 39:15
**personnel** [2] - 10:11, 13:9
**perspective** [4] - 22:14, 86:11, 95:7, 95:8
**phone** [3] - 94:18, 95:19, 96:1
**photos** [1] - 7:16
**picked** [1] - 74:24
**picking** [1] - 38:2
**Pierce** [2] - 87:6, 87:10
**pin** [4] - 62:24, 70:15, 71:3, 71:17
**pinpoint** [1] - 28:10
**pinpointed** [1] - 62:12
**place** [4] - 25:6, 77:23, 79:24, 90:10
**placing** [1] - 50:14
**plain** [1] - 45:1
**plaintiff** [52] - 3:7, 3:9, 3:21, 4:13, 10:24, 11:4, 12:17, 17:22, 18:2, 21:18, 30:9, 32:21, 32:25, 34:19, 34:21, 37:24, 38:4, 38:24, 52:17, 52:20, 53:2, 55:8, 56:23, 57:19, 57:20, 57:23, 58:9, 60:23, 61:21, 61:23, 64:23, 64:25, 68:20, 71:16, 75:16, 75:17, 75:24, 77:20, 81:12, 81:18, 82:15, 84:5, 84:12, 95:9, 97:25, 98:17
**plaintiff's** [7] - 3:25, 21:14, 33:12, 58:3, 70:25, 75:21, 84:17
**plaintiffs** [1] - 87:12
**plan** [2] - 7:12, 71:14
**platforms** [2] - 23:1, 23:5
**play** [2] - 82:25, 83:16
**playing** [1] - 72:23
**plea** [1] - 49:20
**pleadings** [2] - 57:7, 66:2

**pled** [1] - 50:8
**plenty** [3] - 60:11, 60:12, 92:13
**podcast** [13] - 28:11, 28:21, 30:11, 30:14, 30:20, 30:25, 31:4, 31:17, 35:25, 38:6, 38:15, 64:19
**podcasts** [3] - 33:7, 36:2, 47:21
**point** [34] - 5:1, 9:25, 10:19, 19:20, 20:6, 23:7, 28:4, 28:17, 40:23, 46:4, 54:6, 55:9, 56:12, 56:21, 56:25, 57:6, 58:3, 58:5, 69:15, 70:25, 81:22, 81:23, 86:12, 86:21, 89:14, 90:8, 91:10, 91:15, 91:24, 92:6, 93:11, 96:2
**portion** [1] - 94:20
**portions** [1] - 30:11
**posed** [1] - 79:21
**position** [4] - 18:12, 30:18, 80:12, 82:3
**positions** [1] - 16:4
**possesses** [1] - 53:19
**possibility** [2] - 75:24, 80:13
**possible** [2] - 81:25, 94:18
**possibly** [5] - 91:3, 92:1, 93:15, 94:4, 94:7
**post** [2] - 77:7, 79:22
**potential** [3] - 93:19, 96:16
**potentially** [8] - 25:23, 40:12, 55:5, 58:11, 80:19, 92:5, 93:6, 94:19
**PR** [1] - 59:6
**practical** [2] - 68:16, 69:15
**practice** [1] - 95:22
**precisely** [1] - 82:8
**preclude** [1] - 88:20
**precluded** [1] - 87:17
**prejudice** [1] - 70:7
**prejudicial** [2] - 80:19, 87:9
**premature** [2] - 86:25, 87:2
**premise** [1] - 78:17
**prepared** [4] - 17:11, 20:15, 21:1, 84:7
**preparing** [1] - 73:2
**prescreening** [1] - 72:19

**present** [3] - 7:4, 9:8, 21:24
**presented** [1] - 18:21
**presently** [1] - 86:17
**preserve** [2] - 39:20, 95:6
**president** [2] - 3:3, 73:25
**President** [5] - 15:12, 15:13, 15:14, 15:16, 15:17
**presidential** [3] - 16:10, 49:8, 50:2
**press** [1] - 62:25
**pressing** [1] - 25:17
**presumably** [1] - 53:19
**pretty** [3] - 18:21, 42:21, 97:21
**prevent** [3] - 43:13, 54:12, 84:11
**previous** [2] - 35:14, 52:9
**principle** [1] - 85:9
**privilege** [45] - 5:25, 21:20, 25:1, 31:25, 32:5, 33:14, 39:20, 40:11, 41:14, 41:17, 41:21, 41:22, 42:2, 42:5, 42:6, 42:8, 42:15, 42:20, 42:24, 43:6, 43:12, 43:18, 45:19, 45:20, 46:5, 46:7, 46:9, 76:16, 76:18, 77:5, 82:9, 82:10, 82:11, 82:12, 84:13, 85:16, 85:17, 85:19, 85:20, 86:5, 87:4, 88:15, 89:7, 94:24, 95:15
**privileged** [18] - 23:25, 24:17, 25:4, 25:12, 31:1, 31:15, 31:18, 31:21, 36:3, 40:7, 40:8, 44:10, 44:18, 45:14, 46:10, 59:5, 86:14, 89:5
**privileges** [1] - 25:6
**privy** [1] - 57:20
**probative** [1] - 80:19
**problem** [10] - 12:1, 23:6, 46:25, 75:12, 78:20, 78:22, 79:6, 86:19, 90:5
**problematic** [1] - 80:18
**problems** [1] - 44:15
**procedural** [1] - 44:15
**procedure** [1] - 82:7
**procedures** [1] - 85:3

**proceed** [1] - 72:17
**proceeding** [5] - 24:1, 24:25, 26:17, 72:7, 86:7
**Proceedings** [1] - 99:13
**proceedings** [9] - 3:2, 21:23, 23:3, 23:10, 24:20, 28:6, 34:15, 83:13, 99:15
**process** [1] - 10:17
**produce** [12] - 7:10, 7:13, 11:23, 17:25, 20:24, 24:16, 28:17, 28:19, 42:6, 53:22, 93:4, 93:5
**produced** [20] - 7:12, 8:2, 9:3, 9:4, 9:18, 10:3, 10:15, 10:16, 11:10, 11:12, 18:2, 20:12, 20:13, 29:17, 29:20, 30:5, 42:20, 42:24, 44:20, 46:13
**producible** [1] - 50:25
**producing** [7] - 30:10, 40:24, 60:21, 60:22, 65:14, 69:1, 69:3
**production** [15] - 6:19, 7:14, 15:10, 28:12, 28:16, 29:11, 29:16, 32:9, 41:24, 57:15, 59:23, 60:4, 66:18, 68:22, 69:9
**professional** [2] - 59:6, 93:23
**proffer** [2] - 46:9, 68:8
**program** [4] - 61:15, 61:17, 61:25, 63:10
**prohibiting** [1] - 85:3
**promote** [1] - 64:14
**proof** [1] - 62:22
**properly** [1] - 98:19
**proportional** [2] - 37:4, 69:2
**proportionality** [1] - 41:13
**proportionate** [3] - 37:6, 69:2, 69:4
**proportionment** [1] - 4:22
**proposal** [3] - 3:25, 4:1, 90:18
**prosecute** [1] - 25:18
**prosecutors** [1] - 79:11
**protect** [6] - 44:13, 45:3, 52:21, 91:12, 95:9, 95:14
**protected** [4] - 85:19, 85:20, 85:21, 86:5

**protection** [6] - 81:24, 94:5, 97:13, 97:21, 98:17, 99:7
**protections** [2] - 88:19, 98:12
**protective** [18] - 3:23, 5:12, 74:16, 82:22, 82:25, 83:2, 83:3, 89:13, 89:16, 89:22, 90:9, 91:12, 91:15, 96:19, 96:20, 96:22, 97:9, 97:20
**protects** [1] - 41:22
**prove** [1] - 20:7
**provided** [1] - 29:6
**provides** [2] - 43:11, 45:14
**providing** [2] - 10:25, 18:14
**proving** [1] - 65:20
**public** [8] - 21:16, 23:1, 23:2, 24:9, 32:7, 49:24, 67:4, 88:25
**publication** [2] - 49:25, 50:7
**publicize** [1] - 61:24
**publicizing** [1] - 97:14
**publicly** [8] - 5:9, 5:21, 6:1, 23:20, 49:3, 49:5, 49:9, 64:10
**published** [2] - 50:4, 66:6
**pull** [3] - 6:4, 6:13, 33:24
**purported** [2] - 7:1, 7:10
**purportedly** [1] - 20:2
**purpose** [3] - 52:2, 53:6, 97:6
**purposefully** [1] - 95:19
**purposes** [21] - 12:4, 16:12, 25:24, 28:7, 40:17, 48:1, 50:12, 53:5, 55:7, 56:14, 57:14, 59:13, 67:15, 68:21, 69:1, 77:7, 77:14, 90:8, 93:6, 97:19, 98:14
**pursue** [2] - 72:19, 72:20
**pursuing** [1] - 87:17
**put** [14] - 4:13, 21:1, 33:17, 34:20, 35:7, 35:23, 44:11, 62:24, 70:15, 71:3, 71:17, 71:21, 75:5, 88:19
**putting** [2] - 18:15,

44:21

# Q

**quarreling** [1] - 96:22
**questioned** [1] - 78:12
**questioning** [2] - 18:1, 88:17
**questions** [25] - 6:12, 72:3, 72:24, 73:14, 73:25, 74:23, 76:5, 76:6, 77:6, 80:17, 81:25, 83:4, 83:13, 86:12, 86:14, 88:13, 89:4, 91:2, 92:4, 92:8, 92:23, 94:3, 94:15, 95:11, 99:6
**quick** [1] - 97:8
**quickly** [5] - 59:15, 70:12, 70:14, 70:17, 71:9
**quite** [1] - 58:25
**quote** [12] - 11:2, 15:11, 34:24, 45:15, 51:25, 61:15, 63:23, 64:7, 85:19, 85:24, 86:2
**quotes** [1] - 30:3

# R

**race** [2] - 63:18, 64:18
**racial** [4] - 63:17, 65:14, 67:11, 68:1
**racism** [4] - 68:10, 69:4, 69:7, 70:3
**racist** [10] - 63:24, 64:9, 64:11, 64:18, 64:23, 64:25, 65:7, 66:5, 67:14, 70:1
**raise** [1] - 4:7
**raised** [3] - 37:4, 69:3, 89:4
**raising** [3] - 48:3, 81:9, 84:16
**ran** [1] - 16:10
**re** [1] - 80:9
**re-deposed** [1] - 80:9
**reaction** [2] - 76:12, 76:16
**read** [6] - 9:9, 15:9, 17:14, 24:5, 37:19, 38:13
**reading** [2] - 34:12, 37:8
**real** [7] - 48:24, 56:15, 56:16, 56:18, 56:19, 66:3, 66:21, 58:8, 58:11, 62:9, 63:2, 65:24, 66:14, 69:1, 69:2, 69:4, 69:12,

6:12, 7:17, 19:12, 20:6, 21:14, 32:5, 38:14, 42:17, 46:24, 51:9, 51:24, 54:16, 59:17, 62:12, 62:16, 62:17, 65:1, 66:13, 67:17, 68:4, 68:17, 74:19, 77:23
**reason** [10] - 15:19, 16:14, 45:8, 57:6, 78:9, 86:15, 91:5, 95:21, 99:3
**reasonable** [3] - 4:21, 50:15, 80:11
**reasons** [2] - 69:25, 81:9
**rebut** [1] - 64:4
**receive** [1] - 7:20, 11:8, 86:13
**received** [1] - 16:16
**recently** [1] - 72:18
**reciting** [1] - 38:14
**recollection** [2] - 43:9, 83:24, 90:18
**record** [4] - 3:6, 71:23, 72:2, 92:20
**recording** [2] - 3:2, 99:15
**records** [1] - 69:4
**recycles** [1] - 64:22
**redacted** [1] - 29:10
**refer** [2] - 15:19, 86:3
**reference** [7] - 21:11, 23:9, 23:18, 34:2, 55:19, 63:18, 65:25
**referenced** [1] - 29:4
**references** [3] - 37:7, 37:9, 41:9
**referencing** [4] - 21:22, 54:23, 56:11, 58:20
**Referencing** [1] - 22:13
**referred** [1] - 16:9
**referring** [2] - 59:2, 64:19
**refers** [4] - 15:12, 29:3, 64:17, 64:20
**refine** [1] - 55:1
**refining** [2] - 24:11, 25:8
**reflecting** [8] - 6:25, 7:4, 9:8, 10:25, 22:11, 35:13, 36:19, 39:14
**reflects** [3] - 12:16, 20:1, 53:15
**refuse** [2] - 43:13, 85:20
**refutes** [2] - 38:4,

38:25
**regard** [2] - 18:5, 40:5
**regarding** [5] - 35:21, 36:5, 38:13, 67:11, 75:2
**relate** [18] - 5:12, 5:16, 13:23, 21:11, 32:15, 38:14, 38:21, 51:6, 57:2, 60:8, 61:13, 62:12, 63:14, 65:7, 65:15, 70:18, 71:18, 91:7
**related** [15] - 24:25, 30:20, 38:3, 40:22, 52:10, 54:2, 54:24, 56:20, 66:10, 74:1, 74:9, 74:23, 77:6, 89:4, 89:13
**relates** [26] - 4:21, 8:22, 9:6, 9:22, 15:24, 16:8, 17:10, 26:13, 26:14, 28:15, 30:13, 39:9, 43:6, 55:2, 56:11, 57:9, 58:19, 61:13, 61:20, 61:25, 63:9, 65:2, 79:9, 79:21, 88:22, 92:6
**relating** [9] - 21:10, 21:21, 22:18, 40:1, 41:9, 51:7, 59:23, 86:24, 92:23
**relation** [7] - 47:6, 52:10, 56:10, 57:9, 76:20, 77:5, 79:23
**relationship** [28] - 7:5, 8:24, 9:9, 9:12, 9:13, 10:2, 10:13, 11:1, 12:12, 12:16, 13:16, 18:25, 33:1, 33:14, 35:6, 35:14, 36:6, 36:9, 36:11, 36:20, 37:11, 39:15, 43:12, 50:13, 56:14, 74:6, 74:19, 87:22
**relationships** [1] - 7:1
**relatively** [1] - 48:23
**relevance** [11] - 20:19, 33:9, 37:1, 41:12, 53:7, 55:23, 57:3, 65:22, 66:13, 87:23, 95:5
**relevant** [36] - 5:2, 17:18, 25:23, 33:11, 37:3, 45:9, 46:19, 51:19, 53:6, 55:5, 56:6, 56:21, 58:8, 58:11, 62:9, 63:2, 65:24, 66:14, 69:1, 69:2, 69:4, 69:12,

72:21, 75:21, 78:14, 85:6, 86:20, 87:10, 87:11, 92:5, 92:7, 93:4, 93:6, 93:24, 97:7, 99:2
**reliable** [1] - 17:20
**reliance** [1] - 66:6
**relied** [7] - 14:11, 45:2, 52:20, 60:17, 66:11, 67:17, 68:5
**relief** [8] - 7:21, 74:16, 87:12, 87:25, 91:5, 92:10, 92:12, 97:12
**rely** [1] - 68:7
**relying** [2] - 52:25, 84:22
**remain** [3] - 4:8, 40:6, 40:8
**remedy** [3] - 87:19, 91:22, 91:23
**remember** [8] - 18:19, 40:22, 75:15, 83:20, 83:21, 94:22
**Remember** [1] - 27:19
**remind** [1] - 90:11
**remotely** [1] - 3:18
**repeated** [1] - 38:10
**repeatedly** [2] - 64:25, 65:25
**reported** [1] - 6:1
**reporters** [1] - 58:23
**represent** [1] - 94:11
**representation** [4] - 12:25, 13:13, 13:19, 17:5
**representing** [1] - 83:25
**reproduce** [1] - 30:19
**reputation** [3] - 64:12, 64:13, 64:14
**reputational** [5] - 33:15, 64:3, 67:1, 67:2, 68:3
**request** [57] - 3:23, 6:18, 6:19, 9:6, 10:14, 10:18, 11:2, 12:11, 12:15, 14:19, 14:20, 15:10, 15:20, 15:23, 21:6, 21:20, 23:9, 24:5, 24:11, 24:12, 25:9, 28:12, 28:23, 29:10, 29:16, 35:11, 35:12, 36:16, 39:7, 41:4, 52:9, 53:22, 54:13, 55:21, 57:10, 57:14, 59:9, 59:22, 60:3, 61:5, 63:7, 68:9, 68:21, 69:16, 69:23, 69:24, 72:6, 72:8, 72:18,

87:24, 89:25, 90:1,
92:10, 98:3
**requested** [6] - 3:21,
15:3, 20:11, 26:10,
90:18, 97:12
**Requesting** [1] -
20:10
**requesting** [3] - 17:14,
20:8, 36:5
**requests** [23] - 4:10,
4:22, 5:4, 6:3, 6:7,
6:24, 7:24, 9:22,
11:14, 13:3, 13:15,
13:18, 15:21, 20:17,
23:7, 28:10, 32:14,
59:16, 60:11, 62:23,
66:18, 70:11, 70:16
**require** [3] - 32:9,
36:4, 56:5
**required** [3] - 45:16,
76:6, 76:7
**requires** [4] - 23:18,
54:20, 84:12, 87:1
**resigned** [1] - 10:6
**resistance** [1] - 4:21
**resisted** [1] - 18:23
**resolution** [5] - 83:14,
86:18, 89:21, 96:16
**Resolution** [1] - 63:8
**resolve** [1] - 94:19
**resolved** [4] - 37:18,
68:2, 68:15, 68:16
**respect** [30] - 4:14,
4:15, 4:23, 4:25, 6:3,
9:2, 12:12, 15:3,
16:15, 21:10, 22:24,
26:1, 32:15, 35:5,
36:2, 37:18, 42:11,
43:9, 45:21, 47:24,
49:2, 50:17, 50:18,
50:23, 59:19, 61:14,
72:15, 76:15, 97:9,
98:23
**respond** [5] - 14:4,
24:11, 28:7, 60:15,
62:18
**responding** [1] - 61:3
**response** [18] - 14:2,
14:5, 14:7, 14:11,
14:13, 16:13, 22:22,
28:22, 29:16, 32:1,
32:9, 35:9, 38:19,
39:18, 66:3, 77:6,
86:14, 89:5
**responsibilities** [1] -
19:13
**responsibility** [1] -
14:9
**responsible** [3] -
18:10, 18:13, 79:12

**responsive** [11] - 15:5,
25:14, 46:10, 46:14,
48:3, 48:22, 48:23,
54:5, 55:24, 59:7,
60:24
**restrain** [1] - 97:14
**restriction** [2] - 90:1,
94:16
**restrictive** [1] - 4:1
**resubmitted** [1] - 55:2
**result** [3] - 33:16,
35:3, 84:13
**resulted** [1] - 35:16
**results** [1] - 40:15
**retaliation** [1] - 22:16
**retaliatory** [1] - 27:9
**retention** [1] - 10:5
**retribution** [1] - 22:16
**reveal** [2] - 60:14, 77:4
**revealed** [2] - 30:16,
77:4
**revealing** [2] - 36:2,
63:16
**Revenge** [2] - 39:1
**reviewing** [1] - 16:13
**revisited** [1] - 21:5
**rife** [1] - 47:22
**rightfully** [1] - 85:20
**rights** [2] - 11:16,
77:12
**rise** [1] - 39:12
**risk** [1] - 73:2
**road** [2] - 20:21, 80:13
**roadblocks** [1] - 4:13
**rolling** [1] - 7:19
**room** [1] - 76:15
**Rule** [3] - 86:7, 94:8,
95:12
**rule** [12] - 41:21,
45:23, 46:8, 82:14,
82:18, 84:10, 85:2,
86:21, 86:23, 93:25,
94:11, 98:1
**rule's** [1] - 94:22
**ruled** [3] - 74:5, 92:24,
93:3
**rules** [10] - 93:24,
95:8, 95:9, 95:10,
95:13, 95:16, 95:17,
95:21, 95:22, 98:1
**rulings** [2] - 50:25,
99:4

## S

**saw** [3] - 6:13, 66:10
**scattered** [1] - 33:5
**scheduled** [4] - 4:16,
7:22, 7:23, 72:17
**scheme** [2] - 54:9,

57:19
**scope** [11] - 20:16,
27:20, 27:22, 36:4,
55:2, 55:18, 73:1,
73:24, 88:17, 89:25,
92:4
**se** [1] - 22:9
**seated** [1] - 4:8
**second** [1] - 6:14
**secret** [1] - 34:24
**security** [3] - 73:17,
96:8, 96:15
**see** [30] - 6:20, 6:24,
14:14, 16:15, 21:2,
25:2, 31:3, 33:25,
52:24, 53:1, 54:5,
58:2, 58:5, 58:21,
62:24, 68:14, 70:16,
73:7, 82:13, 83:24,
86:20, 87:13, 88:1,
89:14, 90:8, 91:10,
92:6, 93:11, 93:14,
96:2
**seek** [3] - 7:21, 84:4,
84:6
**seeking** [4] - 6:25,
12:22, 67:20, 78:9
**seeks** [2] - 64:14,
75:21
**segregate** [1] - 76:23
**self** [3] - 38:8, 85:16,
86:6
**sending** [1] - 14:9
**sensationalize** [1] -
74:22
**sense** [7] - 27:11,
27:17, 41:17, 69:10,
96:24, 98:9, 98:20
**sensitive** [3] - 24:17,
67:10, 77:12
**sensitivities** [1] - 32:3
**sensitivity** [1] - 80:16
**sent** [3] - 11:17, 24:24,
73:12
**separate** [4] - 9:17,
10:5, 10:14, 76:19
**September** [5] - 4:16,
4:17, 7:23, 50:3,
72:17
**series** [3] - 32:14,
51:3, 67:13
**seriously** [1] - 20:23
**served** [1] - 14:7
**serves** [2] - 43:5,
79:10
**serving** [3] - 9:18,
38:8, 40:10
**set** [3] - 23:5, 51:8,
51:14
**setting** [1] - 51:23

**settled** [1] - 35:20
**seven** [4] - 78:18,
90:25, 92:1, 93:22
**seven-hour** [2] -
90:25, 93:22
**several** [4] - 29:19,
76:19, 78:6, 96:17
**shall** [1] - 83:8
**share** [1] - 90:2
**sharing** [3] - 51:24,
64:10, 65:18
**shielding** [1] - 87:18
**shields** [1] - 85:17
**short** [2] - 32:5, 53:8
**shortly** [1] - 49:7
**show** [6] - 18:8, 20:20,
22:12, 22:13, 35:6,
84:12
**showing** [4] - 21:4,
63:3, 70:23, 84:18
**shows** [1] - 19:13
**side** [2] - 41:25, 71:21
**sign** [2] - 18:12, 18:22
**signature** [1] - 20:9
**signe** [1] - 20:7
**signed** [4] - 9:5,
18:11, 18:15, 20:5
**similar** [3] - 26:7,
54:1, 62:3
**simple** [1] - 6:6
**simply** [7] - 24:8,
76:17, 78:2, 81:23,
89:5, 94:10, 97:19
**sit** [1] - 58:10
**situation** [5] - 70:5,
75:5, 81:24, 83:18,
96:25
**six** [1] - 74:1
**slew** [1] - 93:5
**slog** [1] - 4:9
**sly** [1] - 51:24
**sneak** [1] - 90:16
**snippets** [1] - 28:20
**so..** [1] - 8:1
**So..** [1] - 27:23
**social** [4] - 23:1, 23:5,
23:19, 88:25
**sole** [1] - 52:2
**someone** [2] - 22:25,
76:14
**sometimes** [1] - 51:11
**sons** [1] - 30:23
**soon** [2] - 3:25, 71:1
**sorry** [16] - 6:14, 10:8,
11:22, 31:2, 32:17,
33:21, 38:12, 45:7,
49:11, 51:10, 51:11,
52:12, 58:14, 58:18,
62:20, 64:1
**sort** [5] - 21:25, 22:8,

43:2, 61:13, 74:16
**sorts** [2] - 84:6, 93:19
**source** [2] - 31:1,
68:12
**speaking** [4] - 5:2,
12:6, 67:25, 79:23
**special** [2] - 82:14,
82:18
**specific** [20] - 5:4,
5:21, 5:22, 6:3, 6:7,
11:17, 23:18, 24:2,
28:18, 28:19, 43:4,
44:4, 58:22, 58:25,
59:20, 60:14, 62:13,
64:5, 86:24, 97:11
**specifically** [4] - 29:1,
32:24, 54:22, 63:24
**specifics** [2] - 9:23,
47:6
**specified** [2] - 46:24,
64:4
**spend** [1] - 91:20
**spends** [1] - 97:1
**spoken** [1] - 78:2
**spouse** [3] - 41:22,
41:23, 43:12
**spouses** [2] - 43:15,
45:15
**square** [1] - 44:21
**squarely** [3] - 33:17,
44:11, 52:5
**stage** [2] - 43:1, 84:18
**stand** [3] - 10:18,
12:15, 90:7
**standard** [1] - 95:23
**standpoint** [5] - 23:2,
43:8, 67:3, 77:2,
83:4
**start** [1] - 20:1
**starting** [5] - 3:7, 23:7,
27:21, 27:24, 85:8
**starts** [1] - 19:15
**state** [8] - 3:6, 43:7,
43:23, 45:13, 53:19,
74:2, 85:25, 95:23
**statement** [6] - 47:14,
58:22, 59:2, 66:6,
66:12, 67:18
**statements** [5] -
11:15, 23:1, 25:17,
38:9, 65:20
**states** [1] - 52:25
**States** [3] - 15:13,
15:15, 15:18
**statute** [1] - 43:11
**stay** [8] - 70:21, 83:15,
84:4, 84:6, 84:10,
86:16, 87:19, 95:19
**stayed** [1] - 83:13
**stem** [1] - 9:11

**step** [2] - 10:14, 14:15
**Stephanie** [3] - 32:16, 32:17, 41:10
**Stewart** [1] - 84:22
**still** [8] - 31:3, 34:4, 34:12, 64:4, 73:20, 77:25, 88:20, 96:17
**Stormy** [4] - 32:18, 38:12, 44:13, 87:15
**strained** [1] - 57:6
**strike** [1] - 81:1
**strong** [1] - 74:19
**structure** [2] - 77:13, 77:15
**stuff** [1] - 51:12
**styled** [2] - 3:2, 99:15
**subject** [8] - 7:11, 13:11, 35:20, 63:2, 75:25, 82:23, 83:1
**submitted** [1] - 8:14
**subsequent** [2] - 77:19, 85:23
**subset** [1] - 69:9
**substance** [1] - 31:9
**substantial** [1] - 38:10
**substantiating** [1] - 60:18
**substantively** [1] - 93:9
**subsumed** [1] - 61:2
**suffered** [1] - 33:15
**suggested** [1] - 73:21
**suggestion** [1] - 91:23
**suing** [1] - 81:19
**summarizing** [1] - 8:6
**summary** [2] - 84:14, 84:18
**support** [2] - 20:4, 57:24
**supports** [1] - 92:2
**suppose** [1] - 29:12
**supposed** [3] - 28:17, 94:1, 94:14
**surmise** [1] - 22:25
**surrounding** [1] - 74:1
**suspect** [1] - 89:3
**suspenders** [1] - 29:12
**sustain** [4] - 21:3, 63:2, 63:11, 68:23
**sweeping** [1] - 4:12
**system** [1] - 81:24

**T**

**tab** [1] - 85:13
**table** [3] - 72:7, 81:6, 90:20
**talks** [4] - 23:8, 39:5, 84:23, 85:1

**Tallahassee** [1] - 85:12
**tangentially** [1] - 79:9
**tax** [1] - 54:10
**technically** [1] - 30:22
**teed** [1] - 16:16
**telephone** [1] - 3:17
**temporal** [4] - 27:19, 27:20, 27:22, 77:2
**ten** [2] - 21:17, 92:3
**tend** [2] - 22:12, 22:13
**tends** [1] - 18:8
**Tenth** [1] - 84:23
**term** [2] - 15:11, 15:15
**terminate** [1] - 13:15
**termination** [4] - 10:1, 10:6, 10:7, 10:8
**terms** [9] - 4:24, 12:7, 12:8, 20:1, 40:24, 47:12, 49:18, 63:17, 73:20
**terrible** [1] - 30:24
**testify** [5] - 41:22, 67:13, 75:2, 75:25, 76:7
**testimony** [3] - 82:23, 85:18, 90:3
**testing** [1] - 45:9
**text** [1] - 95:12
**th** [1] - 20:1
**that..** [1] - 49:9
**THE** [318] - 3:3, 3:14, 3:16, 3:19, 4:17, 4:19, 5:11, 6:4, 6:9, 6:13, 6:16, 6:23, 7:3, 7:8, 8:2, 8:8, 8:16, 8:19, 9:1, 9:24, 10:9, 10:15, 10:19, 11:4, 11:6, 11:24, 12:18, 12:20, 13:1, 13:4, 13:22, 14:1, 14:4, 14:14, 14:24, 15:1, 15:6, 15:23, 16:2, 16:5, 16:18, 16:24, 17:2, 17:6, 17:9, 17:13, 17:18, 17:20, 18:4, 18:7, 18:17, 18:24, 19:3, 19:5, 19:7, 19:11, 19:14, 19:21, 20:8, 20:12, 20:14, 20:19, 21:3, 21:9, 21:20, 22:4, 22:6, 22:12, 22:19, 22:21, 23:12, 23:14, 23:16, 23:18, 23:24, 24:4, 24:7, 24:14, 24:22, 24:24, 25:7, 25:10, 25:19, 26:8, 26:11, 26:16, 26:21, 27:3, 27:6, 27:19,

27:22, 28:3, 28:12, 28:16, 28:24, 29:3, 29:10, 29:14, 29:17, 29:20, 29:22, 29:25, 30:4, 30:7, 30:13, 30:16, 30:22, 31:8, 31:14, 31:20, 31:24, 32:2, 32:8, 32:13, 32:17, 32:19, 32:22, 33:4, 33:8, 33:21, 33:24, 34:4, 34:8, 34:10, 34:18, 35:9, 36:8, 36:13, 36:19, 37:2, 37:6, 37:12, 37:14, 37:19, 38:2, 38:4, 38:8, 38:16, 38:19, 38:24, 39:4, 39:7, 39:11, 39:21, 39:23, 40:1, 40:4, 40:11, 40:17, 41:2, 41:6, 41:11, 41:17, 41:20, 42:2, 42:9, 42:15, 42:17, 42:25, 43:16, 43:20, 43:24, 44:8, 44:22, 45:19, 46:1, 46:8, 46:13, 46:17, 46:22, 47:11, 47:16, 47:19, 47:25, 48:5, 48:10, 48:13, 48:15, 48:18, 49:2, 49:9, 49:16, 49:21, 49:23, 49:25, 50:5, 50:10, 50:12, 50:21, 51:1, 51:5, 51:10, 51:20, 52:4, 52:7, 52:12, 52:16, 53:12, 53:17, 53:21, 54:1, 54:17, 54:4, 55:13, 55:16, 55:22, 55:25, 56:3, 56:8, 56:12, 57:14, 58:7, 58:14, 58:16, 58:21, 59:1, 59:8, 59:12, 59:22, 59:25, 60:3, 60:10, 60:19, 61:9, 61:17, 62:2, 62:6, 62:9, 62:20, 63:1, 63:8, 63:11, 63:20, 64:16, 65:1, 65:6, 65:12, 65:17, 66:3, 66:14, 66:22, 67:6, 67:20, 68:8, 68:19, 69:12, 69:20, 69:23, 70:7, 70:9, 70:21, 71:3, 71:7, 71:10, 71:22, 72:4, 72:10, 72:12, 72:14, 73:5, 73:10, 74:13, 75:11, 76:2, 76:9, 76:18, 76:22, 77:13, 78:17, 78:23, 79:5, 79:14, 79:17,

80:9, 81:8, 81:19, 81:23, 82:8, 82:19, 83:1, 83:6, 83:10, 83:17, 83:20, 84:20, 84:25, 85:6, 85:10, 85:14, 86:1, 86:4, 86:19, 87:9, 88:4, 88:8, 88:14, 88:18, 89:11, 89:16, 89:20, 90:5, 90:13, 91:19, 92:21, 92:23, 93:1, 93:3, 93:13, 94:21, 95:1, 95:4, 96:7, 97:6, 97:10, 97:18, 98:11, 98:22, 99:10
**themselves** [2] - 66:2, 68:1
**theoretically** [2] - 91:6, 93:19
**theory** [5] - 5:7, 28:3, 66:19, 92:2
**therefore** [3] - 46:10, 55:16, 62:16
**therefrom** [1] - 85:22
**thereof** [1] - 37:11
**they've** [5] - 7:12, 8:23, 9:3, 20:12, 29:15
**thinking** [1] - 66:22
**third** [2] - 26:2, 41:2
**third-party** [1] - 26:2
**thousand** [3] - 20:22, 20:24, 29:12
**three** [8] - 4:19, 8:13, 10:2, 34:16, 74:3, 91:20, 92:1, 97:1
**throughout** [2] - 33:6, 39:4
**tickets** [1] - 96:14
**tie** [2] - 94:1, 99:4
**timely** [1] - 14:7
**timing** [2] - 48:1, 59:12
**today** [8] - 3:18, 4:7, 4:11, 4:19, 4:21, 58:10, 78:4, 97:12
**tomorrow** [1] - 71:12
**ton** [1] - 98:14
**tons** [1] - 60:19
**top** [2] - 44:5, 49:14
**topic** [20] - 47:12, 55:18, 68:19, 68:20, 68:25, 69:12, 74:1, 81:11, 82:20, 83:9, 83:10, 87:2, 90:20, 91:13, 93:1, 93:3, 97:7, 97:19, 99:1
**topics** [10] - 72:19, 73:4, 75:14, 77:16, 79:9, 80:6, 81:3,

83:4, 86:16, 89:4
**totality** [1] - 8:11
**touch** [3] - 75:14, 83:9, 83:10
**touches** [1] - 91:7
**touching** [1] - 80:5
**towards** [1] - 27:10
**town** [1] - 19:20
**transaction** [1] - 57:12
**transactions** [3] - 57:12, 57:13, 74:4
**transcript** [3] - 59:2, 88:22, 91:12
**transcription** [2] - 3:1, 99:14
**transpired** [1] - 55:15
**trial** [1] - 77:19
**tried** [2] - 76:23, 77:17
**true** [2] - 71:16, 78:25
**Trump** [46] - 3:4, 5:23, 7:2, 8:25, 12:13, 12:14, 12:17, 13:5, 13:24, 14:19, 14:21, 14:22, 15:11, 15:12, 15:13, 15:14, 15:17, 15:21, 16:10, 18:25, 19:18, 19:22, 22:1, 22:25, 35:5, 35:15, 35:17, 36:7, 40:9, 41:9, 43:22, 45:3, 45:4, 45:5, 48:2, 48:23, 48:25, 51:16, 52:11, 56:13, 63:23, 70:2, 74:10
**trump** [18] - 15:16, 45:2, 54:8, 54:13, 58:23, 62:11, 63:17, 63:22, 64:8, 64:11, 65:19, 69:7, 73:3, 74:6, 74:8, 74:10, 80:23, 97:13
**trump's** [3] - 59:18, 64:12, 78:11
**Trump's** [7] - 5:16, 9:21, 27:9, 34:25, 44:15, 45:2, 48:20
**trust** [1] - 17:4
**truth** [4] - 35:4, 38:4, 38:25, 65:20
**try** [4] - 25:1, 54:6, 72:25, 90:15
**trying** [14] - 4:2, 42:10, 52:11, 54:12, 54:15, 54:21, 59:17, 62:17, 67:15, 76:24, 76:25, 77:8, 80:11
**tune** [1] - 54:22
**turn** [1] - 73:10
**turning** [2] - 4:6, 11:4
**turns** [1] - 13:8

**Twitter** [1] - 23:19
**two** [12] - 4:2, 7:2, 9:11, 13:5, 28:19, 40:24, 44:19, 68:24, 73:15, 74:18, 74:19, 74:24
**tying** [1] - 98:4
**type** [1] - 66:23
**types** [1] - 25:17

## U

**U.S** [1] - 84:22
**ultimately** [3] - 18:13, 35:20, 40:21
**unconstitutional** [1] - 84:11
**under** [5] - 16:9, 41:21, 85:2, 86:7, 87:24
**understood** [6] - 15:4, 69:11, 69:18, 81:4, 94:25, 98:10
**undisputed** [1] - 9:20
**unduly** [1] - 98:4
**unfair** [1] - 98:13
**unilaterally** [1] - 96:23
**unique** [2] - 97:22, 97:23
**United** [3] - 15:12, 15:14, 15:18
**unless** [3] - 84:15, 85:21, 90:9
**unlikely** [1] - 41:15
**unquote** [4] - 51:25, 61:15, 63:24, 64:7
**unreasonable** [1] - 91:22
**unresolved** [1] - 73:6
**up** [26] - 4:13, 6:4, 6:13, 8:20, 16:16, 20:25, 33:24, 51:8, 51:14, 51:23, 57:11, 71:13, 72:5, 74:24, 75:13, 78:2, 90:8, 90:22, 91:13, 91:15, 91:17, 94:19, 94:20, 95:21, 97:13, 97:19
**upcoming** [3] - 4:15, 70:13, 72:16
**useful** [2] - 58:10, 62:13
**utilize** [3] - 24:10, 82:6, 90:2

## V

**vacuum** [2] - 81:2
**value** [2] - 46:1, 80:20
**vanilla** [1] - 77:17

**vantage** [1] - 10:19
**vast** [2] - 33:15, 35:2
**vein** [1] - 60:6
**veracity** [1] - 45:9
**verification** [2] - 13:11, 28:25
**verify** [2] - 12:21, 13:4
**verse** [1] - 30:3
**versus** [5] - 3:4, 83:22, 84:5, 84:22, 85:12
**video** [2] - 88:22, 90:3
**view** [5] - 28:4, 28:17, 58:3, 64:11, 69:15
**viewed** [1] - 64:9
**views** [2] - 64:9
**violates** [1] - 31:17
**violation** [3] - 11:16, 54:10, 94:8
**violations** [1] - 38:10
**virtually** [1] - 44:20
**virtue** [9] - 35:24, 36:15, 36:17, 40:8, 43:17, 44:12, 67:3, 74:22, 75:6
**vis** [2] - 32:23
**vis-a-vis** [1] - 32:23
**visceral** [1] - 76:12
**visible** [1] - 94:15
**vocal** [1] - 23:3

## W

**wait** [2] - 44:22, 62:24
**waive** [1] - 16:4
**waived** [4] - 42:23, 44:20, 44:23, 63:1
**waiver** [3] - 24:20, 44:12, 79:11
**wall** [1] - 44:11
**wants** [4] - 45:24, 78:19, 79:18, 97:14
**waste** [3] - 78:19, 91:3, 93:22
**wasting** [1] - 6:10
**ways** [1] - 22:7
**weeds** [3] - 6:12, 51:12, 55:14
**week** [3] - 21:16, 90:13, 96:18
**weeks** [2] - 4:19, 96:17
**welcome** [1] - 67:8
**Welling(phonetic** [2] - 83:18, 83:22
**West** [1] - 96:11
**whatever's** [1] - 40:20
**whatsoever** [5] - 36:6, 36:12, 36:18, 80:20, 86:11
**whereas** [1] - 5:25

**whichever** [1] - 87:6
**White** [1] - 74:8
**whole** [4] - 52:6, 57:19, 83:1, 93:5
**wholeheartedly** [2] - 11:10, 88:2
**widely** [1] - 5:21
**wife** [8] - 34:25, 41:13, 41:19, 42:15, 43:6, 43:15, 45:16
**willing** [1] - 95:24
**wish** [3] - 4:7, 4:14, 72:19
**withdraw** [1] - 60:2
**witness** [8] - 22:3, 22:4, 22:17, 26:20, 82:10, 94:6, 95:1, 95:4
**witnesses** [2] - 22:10, 67:13
**woman** [1] - 61:14
**women** [1] - 61:22
**worded** [4] - 9:10, 24:3, 57:7, 68:22
**words** [21] - 19:21, 31:16, 36:8, 36:22, 37:20, 39:11, 43:20, 59:1, 60:21, 62:2, 62:21, 67:6, 69:23, 76:9, 76:10, 79:15, 81:13, 82:9, 83:17, 86:21, 89:16
**works** [1] - 12:3
**worry** [1] - 14:20
**worth** [3] - 29:23, 57:16, 99:5
**worthwhile** [1] - 72:25
**wrestling** [1] - 88:20
**written** [3] - 9:17, 23:8, 60:11
**wrongfully** [2] - 64:18, 64:25
**wrote** [3] - 8:6, 30:23, 31:16

## X

**XYZ** [1] - 45:8

## Y

**y'all** [1] - 99:10
**yada** [3] - 8:19
**years** [6] - 21:16, 57:16, 77:7, 83:6, 87:21
**York** [9] - 26:15, 26:19, 42:13, 42:22, 43:21, 44:2, 45:13, 45:21, 74:2

**yourselves** [1] - 71:14

## Z

**ZOOM** [2] - 73:22, 73:23