# EXHIBIT 1



Alina Habba, Esq.
Managing Partner
ahabba@habbalaw.com
Admitted to practice in NJ, NY & CT

May 6, 2022

**<u>Via NYSCEF</u>**
Hon. Arthur F. Engoron, J.S.C.
Supreme Court of the State of New York
60 Centre Street, Room 519
New York, NY 10007

   Re: *People v. Trump, et. al.*
     Docket No.: 451685/2020

Dear Judge Engoron,

  We write in accordance with the Decision and Order dated April 29, 2022 (the "Order") (NYSCEF No. 768), which directed respondent, Donald J. Trump ("Respondent") to comply with the Office of the Attorney General's ("OAG") subpoena and provide additional affidavits evidencing that a detailed search to locate and produce responsive documents.

  Without waiving any rights to contest the validity of the above-referenced Order on appeal, enclosed herein, please find the following:

  (i)  Affidavit of Compliance of Alina Habba, Esq. dated 5/6/22;
  (ii)  Affidavit of Compliance of Michael T. Madaio, Esq. dated 5/6/22;
  (iii)  Affidavit of Donald J. Trump dated 5/6/22 and a Certificate of Conformity;
  (iv)  Affidavit of Eric Brunnett dated 5/6/22[1];
  (v)  Affidavit of Chris Herndon dated 5/6/22; and
  (vi)  Schedule A (revised).

  In accordance and compliance with the Order, we respectfully renew our request that this Court purge the finding of civil contempt.

  We thank the Court for its attention to this matter.


Dated: May 6, 2022      Respectfully submitted,
   New York, New York

         By: _____
         Alina Habba, Esq.
         For HABBA MADAIO & ASSOCIATES LLP

Encl.
cc:  Kevin Wallace (kevin.wallace@ag.ny.gov)
   Colleen Faherty (colleen.faherty@ag.ny.gov)

---

[1] To be supplemented with a notarized copy on or before Monday, May 9, 2022.

Ex. 1_001

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York, | Index No.: 451685/2020 |
| Petitioner, | |
| v. | **AFFIDAVIT OF COMPLIANCE WITH SUBPOENA** |
| THE TRUMP ORGANIZATION, INC., DJT HOLDINGS LLC, DJT HOLDINGS MANAGING MEMBER LLC, SEVEN SPRINGS LLC, ERIC TRUMP, CHARLES MARTABANO, MORGAN, LEWIS & BOCKIUS, LLP, SHERI DILLON, DONALD J. TRUMP, IVANKA TRUMP, DONALD TRUMP, JR., and CUSHMAN AND WAKEFIELD, INC., | |
| Respondents. | |

I, Alina Habba, Esq., being duly sworn, state as follows:

1.     My office represents the respondent, Donald J. Trump ("Respondent"), in connection with the above-referenced action and is responsible for preparing and assembling Respondent's production and response to the *Subpoena Duces Tecum* dated December 1, 2021 (the "Subpoena"). My office also represents the respondent, The Trump Organization, Inc. (the "Trump Organization") in this action.

2.     I submit this affirmation in further compliance with Instruction C14 of the Subpoena and in accordance with the Court's Order dated April 29, 2022.

3.     Respondent previously submitted a Response and Objections to the Subpoena dated March 31, 2022 (the "Response"). Consistent with the Court's Order dated April 26, 2022, Respondent hereby withdraws all objections raised in the Response.

1

**Ex. 1_002**

4.     Respondent's productions and responses to the Subpoena are complete and correct to the best of my knowledge and belief.

5.     No documents or information responsive to the Subpoena have been withheld from Respondent's production and response.

6.     Attached as Schedule A is a true and accurate record of all persons who prepared and assembled any productions and responses to the Subpoena, all persons under whose personal supervision the preparation and assembly of productions and responses to the Subpoena occurred, and all persons able competently to testify: (a) that such productions and responses are complete and correct to the best of such person's knowledge and belief; and (b) that any Documents produced are authentic, genuine and what they purport to be.

7.     As described herein, I made or caused to be made a diligent, complete and comprehensive search for all documents and information requested by the Subpoena, in full accordance with the instructions and definitions set forth in the Subpoena.

**<u>Overview of Search Efforts</u>**

8.     Commencing in January 2022, my office undertook significant, diligent, and comprehensive search efforts in response to the Subpoena.

9.     Our search efforts consisted of a two-pronged approach to ensure that all responsive documents have been produced to the OAG: <u>first</u>, in coordination with co-counsel for the Trump Organization, LaRocca Hornik Rosen & Greenberg LLP ("TTO Co-Counsel"), the Trump Organization legal team including its General Counsel, Alan Garten, Esq. (the "TTO Legal Dept."), and the Trump Organization IT Department (the "Trump IT Dept.") my office performed a thorough review of the prior document productions and search efforts undertaken by the Trump Organization in response to prior subpoenas served the OAG, for the purpose of cross-checking

for responsive documents that had already been produced by the Trump Organization; second, my office, in coordination with prior counsel for Respondent, Van der Veen, O'Neill, Hartshorn, and Levin ("Prior Counsel") and co-counsel for Respondent, Fischetti & Malgieri LLP ("Co-Counsel"), conducted full, complete and comprehensive searches for any and all responsive documents that had not previously been produced by the Trump Organization to the OAG.

10. The steps taken by my office in furtherance of these search efforts are outlined herein.

11. From January 2022 through March 2022, I had numerous in-person meetings, phone calls, and communications with TTO Co-Counsel, the TTO Legal Dept, and the TTO IT Dept., for the purpose of assessing and verifying the extent of the searches performed in connection with the Trump Organization's prior document productions and determining which documents responsive to the Subpoena have already been produced by the Trump Organization.

12. My office had numerous phone calls and communications with Prior Counsel concerning their search efforts that had been undertaken in connection with the Subpoena.

13. Prior Counsel confirmed that their office had interviewed all of Respondent's executive assistants as to whether they had any documents or communications responsive to the Subpoena and that no such responsive documents were identified.

14. Prior Counsel further informed that their office conducted a search of Respondent's correspondence files (the "chron files") and produced relevant portions thereof to the NYDA. The Trump Organization then caused all of those same documents to be produced to the OAG on February 9, 2022. The production to the NYDA included the following custodial documents for Respondent: TTO_05439138, TTO_05439139 through TTO_05439275, TTO_05439276 through TTO_05439412, TTO_05439413 through TTO_05439654, TTO_05439655, TTO_05439656

through TTO_05439675, and TTO_05439676. TTO Counsel further advised that the Trump Organization's production to the NYDA was re-produced to the OAG in its entirety.[1]

15.     My office also had numerous phone calls and communications with co-counsel for Respondent, Fischetti & Malgieri LLP ("Co-Counsel"), concerning their office's search efforts undertaken in connection with the Subpoena.

16.     From January 2022 through March 2022, my office reviewed the prior document productions produced by the Trump Organization to the OAG.

17.     From January 2022 through March 2022, my office reviewed attorney work product provided by TTO Co-Counsel which summarized, organized and identified with particularity the documents produced by the Trump Organization to the OAG, which I personally cross-checked for responsive documents as to each individual demand of the Subpoena.

18.     From January 2022 through March 2022, I personally reviewed portions of Respondent's chron files as to whether they contained any documents responsive to the Subpoena. Collectively, my firm performed a full, complete, and diligent search of the chron files. After the search, it was determined that any documents in the chron files that are responsive to the Subpoena had already been produced to the OAG.

19.     From January 2022 through March 2022, I had numerous conversations with Respondent by telephone concerning the Subpoena, his electronic devices, the locations likely to house responsive documents, and whether he had any responsive documents in his possession, custody, or control.

---

[1] The chron files produced to the OAG is comprised of 542 pages of documents and can be found at TTO_05439134 through TTO_05439676.

4

20.     On March 17, 2022, I met with Respondent in-person at Mar-a-Lago and reviewed the Subpoena with him, including each individual demand contained therein. As to each demand, he verified that he did not have any responsive documents in his personal possession and that, if there were any responsive documents, they would be in the possession, custody, or control of the Trump Organization.

21.     On April 8, 2022, Mr. Madaio and I conducted a telephone interview with Respondent, as per Haystack ID's request. After completion, the completed HaystackID interview forms were submitted to HaystackID.

22.     In addition, in accordance with the Order of the Hon. Arthur Engoron, J.S.C. dated April 29, 2022, I personally performed several additional searches to further ensure that there are no documents responsive to the Subpoena that have not been previously produced by the Trump Organization:

    a.     On May 2, 2022, I interviewed Eric Brunnett, the Vice President of Information Technology of the Trump Organization, to review and verify the specific phones, computers and other devices that have been issued to Respondent by the Trump Organization. A separate affidavit of Mr. Brunnett is attached hereto. Based on my conversation with Mr. Brunnett, I understand that Respondent does not have any Trump Organization-issued phones, computers, or devices in his personal possession. Respondent only has two phones in his personal possession: (i) an iPhone; and (ii) a new phone he was recently given by TruthSocial which is used exclusively for posting on that site. Respondent's iPhone been searched and imaged twice by Chris Herndon of TechCentrics, Inc., once in March 21, 2022 and again on May 4, 2022. A separate affidavit of Mr. Herndon is attached hereto.

b.  On May 4, 2022, I diligently searched each and every room of Respondent's private residence located at Trump National Golf Club Bedminster, including all desks, drawers, nightstands, dressers, closets, etc. I was unable to locate any documents responsive to the Subpoena that have not already been produced to the OAG by the Trump Organization.

c.  On May 4, 2022, I diligently searched Respondent's personal office located at Trump National Golf Club Bedminster, including all desks, drawers, file cabinets, etc. I was unable to locate any documents responsive to the Subpoena that have not already been produced to the OAG by the Trump Organization.

d.  On May 5, 2022, I diligently searched each and every room of Respondent's private residence located at Mar-a-Lago, including all desks, drawers, nightstands, dressers, closets, etc. I was unable to locate any documents responsive to the Subpoena that have not already been produced to the OAG by the Trump Organization.

e.  On May 5, 2022, I diligently searched Respondent's personal office located at Mar-a-Lago, including all desks, drawers, file cabinets, etc. I was unable to locate any documents responsive to the Subpoena that have not already been produced to the OAG by the Trump Organization.

f.  On May 5, 2022, I coordinated and communicated with Alan Garten via telephone with regard to his search of Respondent's private residence in Trump Tower including all desks, drawers, file cabinets, and similar locations likely to house files or documents. The search did not identify any documents responsive to the Subpoena.

23.     Further, it was agreed by all parties at the April 26, 2022 hearing that Haystack would perform an additional follow-up search for responsive documents stored in: (i) the file cabinets located outside Respondent's office the Trump Organization's corporate offices in Trump Tower; (ii) file cabinets located outside Respondent's office the Trump Organization's corporate offices in Trump Tower; (iii) the file cabinets located on the 25th and 26th floors of the Trump Organization's corporate offices in Trump Tower; (iv) Respondent's hard copy calendar files located in the Trump Organization's corporate offices in Trump Tower; and (iv) off-site storage.

24.     Based upon the foregoing, it is my understanding that, between the collective efforts of my office, Co-Counsel, Prior Counsel, and TTO Counsel, as well as the independent searches of HaystackID, the following searches have been performed of the Respondent's physical documents and files at these relevant locations:

a.     <u>Cabinets Outside of Respondent's Office (Trump Tower)</u>

i.     On July 19, 2021, Owen Reidy, an attorney with the Trump Legal Dept., searched the physical documents and files located in the file cabinets located outside Respondent's office the Trump Organization's corporate offices in Trump Tower. These file cabinets have, at all relevant times, been maintained by Respondent's executive assistants, including Jessica Macchia, Chelsea Frommer, Holly Lorenzo, Kelly Malley, Katie Murphy, Kelli Rose, Thuy Colayco, Cammie Artusa, and Meredith McIver. As a result of Mr. Reidy's collective search efforts on that date, the following custodial documents for Respondent were identified and subsequently produced to the OAG: TTO_214579, TTO_214580, TTO_214581 through

7

TTO_214583.

    ii.   On November 12, 2021, Cynthia Arce, a paralegal with the Trump Legal Dept., searched the physical documents and files located in the file cabinets located outside Respondent's office the Trump Organization's corporate offices in Trump Tower. These file cabinets have, at all relevant times, been maintained by Respondent's executive assistants, including Jessica Macchia, Chelsea Frommer, Holly Lorenzo, Kelly Malley, Katie Murphy, Kelli Rose, Thuy Colayco, Cammie Artusa, and Meredith McIver. No custodial documents for Respondent were identified as a result of this search.

    iii.   From late April through May 6, 2022, HaystackID searched the file cabinets located outside Respondent's office the Trump Organization's corporate offices in Trump Tower. Based on my review of HaystackID's report regarding this search, I understand that no custodial documents for Respondent were identified.

  b.  <u>Executive Office Storage Closet / Storage Room by Respondent's Office (Trump Tower)</u>

    i.   On July 19, 2021, Owen Reidy searched the physical documents and files located in the file cabinets in the Executive Office storage closet and the storage room by Respondent's office in the Trump Organization's corporate offices in Trump Tower for all of Respondent's executive assistants. As a result of Mr. Reidy's collective search efforts on that date, the following custodial documents for Respondent were identified and subsequently produced to the OAG: TTO_214579, TTO_214580, TTO_214581 through

TTO_214583.

ii.   On November 12, 2021, Cynthia Arce searched the physical documents and files located in the file cabinets in the Executive Office storage closet and the storage room by Respondent's office in the Trump Organization's corporate offices in Trump Tower, including the file cabinets maintained by Respondent's executive assistants, Jessica Macchia, Chelsea Frommer, Holly Lorenzo, Kelly Malley, Katie Murphy, Kelli Rose, Thuy Colayco, Cammie Artusa, and Meredith McIver. No custodial documents for Respondent were identified as a result of this search.

iii.   On November 23, 2021, Cynthia Arce searched the physical documents and files located in the file cabinets in the Executive Office storage closet and the storage room by Respondent's office in the Trump Organization's corporate offices in Trump Tower, including the file cabinets maintained by Respondent's executive assistants, Randi Gleason, Laurden Kelly, Casey Kennedy, and Jaquiline Fini. No custodial documents for Respondent were identified as a result of this search.

iv.   From late April through May 6, 2022, HaystackID searched the physical documents and files located in the file cabinets in the Executive Office storage closet and the storage room by Respondent's office in the Trump Organization's corporate offices in Trump Tower for all of Respondent's executive assistants. Based on my review of HaystackID's report regarding this search, I understand that no custodial documents for Respondent were identified.

**Ex. 1_010**

c. <u>File Cabinets located on the 25th and 26th Floors</u>

   i. On or about January 24, 2020, Maria Enriquez, an attorney with the Trump Legal Dept., searched the physical documents and files located in the file cabinets located on the 25th and 26th floors of the Trump Organization's corporate offices in Trump Tower. Any documents responsive to those searches were produced to the OAG by the Trump Organization. No custodial documents for Respondent were identified as a result of this search.

   ii. From late April through May 6, 2022, HaystackID searched physical files and documents contained in file cabinets located on the 25th and 26th floors of the Trump Organization's corporate offices in Trump Tower. Based on my review of HaystackID's report regarding this search, I understand that no custodial documents for Respondent were identified.

d. <u>Hard Copy Calendars</u>

   i. On July 19, 2021, Owen Reidy searched all of the hard copy calendars maintained by Respondent. These hard copy calendars are located the Trump Organization's corporate offices in Trump Tower. As a result of Mr. Reidy's collective search efforts on that date, the following custodial documents for Respondent were identified and subsequently produced to the OAG: TTO_214579, TTO_214580, TTO_214581 through TTO_214583.

   ii. From late April through May 6, 2022, HaystackID searched the hard copy

10

calendars maintained by Respondent in the Trump Organization's corporate offices in Trump Tower. Based on my review of HaystackID's report regarding this search, I understand that no custodial documents for Respondent were identified.

e.   <u>Off-site Storage</u>

   i.   In mid-January, 2020, Adam Rosen, Alex Cannon, and Maria Enriquez, all attorneys with the Trump Legal Dept., conducted searches of inventories the off-site storage files for any documents responsive to the OAG's December 2019 subpoena. The files that were identified as potentially responsive were shipped from the off-site storage facility to the Trump Organization's corporate offices at Trump Tower, where they were received on or about January 15, 2020. The files were thereafter reviewed by the Trump Organization's General Counsel and all non-privileged documents that were located were produced to the OAG. No custodial documents for Respondent were identified as a result of this search.

   ii.   On November 23, 2021, Cynthia Arce reviewed and assessed the off-site storage log and verified that the off-site stored files did not include any custodial documents for Respondent.

   iii.   From late April through May 6, 2022 and continuing, HaystackID searched physical files and documents contained in off-site storage. Based on my review of HaystackID's report regarding this search, I understand that no custodial documents for Respondent have been identified to date.

f.   <u>Chron Files</u>

**Ex. 1_012**

i.  On July 19, 2021, Owen Reidy searched all of the hard copy calendars maintained by Respondent. These hard copy calendars are located the Trump Organization's corporate offices in Trump Tower. As a result of Mr. Reidy's collective search efforts on that date, the following custodial documents for Respondent were identified and subsequently produced to the OAG: TTO_214579, TTO_214580, TTO_214581 through TTO_214583.

ii.  In or around early 2022, Prior Counsel searched Respondent's chron file for any and all responsive documents to the NYDA's subpoena requests. In response to those searches, on February 9, 2022, Prior Counsel produced to the NYDA, the following documents custodial documents for Respondent: TTO_05439138,     TTO_05439139     through     TTO_05439275, TTO_05439276   through   TTO_05439412,   TTO_05439413   through TTO_05439654,     TTO_05439655,     TTO_05439656     through TTO_05439675, and   TTO_05439676. The   Trump   Organization's production to the NYDA was re-produced to the OAG in its entirety.

iii.  Commencing in January 2022, my office performed a full, complete, and diligent search of the chron files. After the search, it was determined that any documents in the chron files that are responsive to the Subpoena had already been produced to the OAG.

iv.  From late April through May 6, 2022, HaystackID searched Respondent's chron files. Based on my review of HaystackID's report regarding this search, I understand that no custodial documents for Respondent were

12

identified.

g.  Trump National Golf Club Bedminster

i.  On May 5, 2022, I personally searched each and every room of Respondent's private residence located at Trump National Golf Club Bedminster, including all desks, drawers, file cabinets, etc. No documents responsive to the Subpoena were identified other than those that had already been produced by the Trump Organization.

ii.  On May 5, 2022, I personally searched Respondent's personal office located at Trump National Golf Club Bedminster, including all desks, drawers, file cabinets, etc. No documents responsive to the Subpoena were located or identified.

h.  Mar-a-Lago

i.  On May 5, 2022, I personally searched each and every room of Respondent's private residence located at Mar-a-Lago, including all desks, drawers, file cabinets, and similar locations likely to house files or documents. No documents responsive to the Subpoena were located or identified.

ii.  On May 5, 2022, I personally searched Respondent's personal office located at Mar-a-Lago, including all desks, drawers, file cabinets, etc. No documents responsive to the Subpoena were located or identified.

i.  Trump Tower Apartment

i.  On May 5, 2022, Alan Garten searched each and every room of Respondent's private apartment located at Trump Tower, including all

13

desks, drawers, file cabinets, etc. No documents responsive to the Subpoena were located or identified.

### Demand No. 1

25.     With respect to Demand No. 1, I personally reviewed and analyzed the following files, logs and/or documents for the purpose of searching for documents responsive to Demand No. 1 and/or cross-checking whether any documents responsive to Demand No. 1 had been previously produced by the Trump Organization to the OAG: (i) Respondent's chron files; (ii) attorney work product provided by TTO Co-Counsel and the TTO Legal Dept. which summarized, organized and identified with particularity the documents produced by the Trump Organization to the OAG; (iii) relevant search terms utilized in the Trump Organization's prior searches; (iv) prior subpoenas served upon the Trump Organization by the OAG; and (v) weekly status reports provided by TTO Co-Counsel to the OAG.

26.     I had numerous discussions with TTO Co-Counsel, the TTO Legal Dept., and the TTO IT Dept., for the purpose of reviewing the documents produced in connection with the Prior Searches, identifying documents potentially responsive to Demand No. 1 and verifying whether potentially responsive documents had previously been produced to the OAG.

27.     I searched for responsive documents at the following locations: (i) Respondent's private residence located at Trump National Golf Club Bedminster; (ii) Respondent's personal office located at Trump National Golf Club Bedminster Mar-a-Lago; (iii) Respondent's private residence located at Mar-a-Lago; and (iv) Respondent's personal office located at Trump National Golf Club Bedminster.

28.     I personally interviewed Respondent as to whether he had any responsive documents in his possession, custody or control responsive to Demand No. 1.

14

29.     In addition, Demand No. 1 of the Subpoena calls for "all documents and communications concerning any Statement of Financial Condition." I cross-checked the search terms used by the Trump Organization in connection with its searches in response to the OAG's 2019 Subpoena, which included, without limitation, the following search terms:

Statement of Financial Condition
Personal financial statement
PFS
DJTFS
DJT FS
Personal financial
SOFC
DJT SOFC
DJT W/5 SOFC
f/s
Financial statement;
Compilation
balance sheet
Blakely
Cushman
Mazars
Weiser
Trump National AND (LA or Los Angeles)
TNGCLA or TNGC LA
Palos
Verdes
*@cushmanwakefield.com
*@cushwake.com
Tower w/5 worth, valu*
TWT w/5 worth, valu*
Trump Park" w/5 valu*
555 Cal*" w/5 valu*
Nike w/5 valu*
502 Park" w/5 valu* S
cotland w/5 worth, valu*
40 Wall" w/5 valu*
Mar-a-lago" w/5 worth, valu*
Trump Parc" w/5 valu*
845* w/5 worth, valu*
Aberdeen w/5 worth, valu*
Bedminster w/5 worth, valu*
Charlotte w/5 worth, valu*
Colts Neck w/5 worth, valu*

15

Doral w/5 worth, valu*
Washington DC w/5 worth, valu*
Ferry Point w/5 worth, valu*
Las Vegas w/5 worth, valu*
Turnberry w/5 worth, valu*
Doonbeg w/5 worth, valu*
Hawaii w/5 worth, valu*
TIHT w/5 worth, valu*
OPO w/5 worth, valu*
Pine Hill w/5 worth, valu*
Philadelphia w/5 worth, valu*
Winery w/5 worth, valu*

Based on the use of these search terms, the documents responsive to Demand No. 1 of the Subpoena would have been produced to the OAG in connection with the Trump Organization's prior searches.

30.     Based on the foregoing, together with my firm's collective search efforts, I determined that Respondent was not in possession of any documents responsive to Demand No. 1, other than those documents that had already been produced by the Trump Organization.

## **Demand No. 2**

31.     Demand No. 2 calls for "[a]ll documents and communications concerning any valuation of any asset whose value is identified or incorporated into any Statement of Financial Condition." This identical demand was set forth in a subpoena dated December 27, 2019 that was previously served upon the Trump Organization by the OAG; therefore, the Trump Organiation's prior searches wholly encompassed the items responsive to this demand.

32.     With respect to Demand No. 2, I personally reviewed and analyzed the following files, logs and/or documents for the purpose of searching for documents responsive to Demand No. 2 and/or cross-checking whether any documents responsive to Demand No. 2 had been previously produced by the Trump Organization to the OAG: (i) Respondent's chron files; (ii) attorney work product provided by TTO Co-Counsel and the TTO Legal Dept. which summarized,

16

organized and identified with particularity the documents produced by the Trump Organization to the OAG; (iii) relevant search terms utilized in the Trump Organization's prior searches; (iv) prior subpoenas served upon the Trump Organization by the OAG; and (v) weekly status reports provided by TTO Co-Counsel to the OAG.

33.     I had numerous discussions with TTO Co-Counsel, the TTO Legal Dept., and the TTO IT Dept., for the purpose of reviewing the documents produced in connection with the Prior Searches, identifying documents potentially responsive to Demand No. 2 and verifying whether potentially responsive documents had previously been produced to the OAG.

34.     I searched for responsive documents at the following locations: (i) Respondent's private residence located at Trump National Golf Club Bedminster; (ii) Respondent's personal office located at Trump National Golf Club Bedminster Mar-a-Lago; (iii) Respondent's private residence located at Mar-a-Lago; and (iv) Respondent's personal office located at Trump National Golf Club Bedminster.

35.     I personally interviewed Respondent as to whether he had any responsive documents in his possession, custody or control responsive to Demand No. 2.

36.     Based on the foregoing, together with my firm's collective search efforts, I determined that Respondent was not in possession of any documents responsive to Demand No. 2, other than those documents that had already been produced by the Trump Organization.

## **Demand No. 3**

37.     Demand No. 3 calls for "[a]ll documents reviewed, used, or relied on in the preparation of the Statements of Financial Condition, and all communications relating to any of the foregoing." This identical demand was set forth in a subpoena dated December 27, 2019 that was previously served upon the Trump Organization by the OAG; therefore, the Prior Searches

17

encompassed the items responsive to this demand.

38.     With respect to Demand No. 3, I personally reviewed and analyzed the following files, logs and/or documents for the purpose of searching for documents responsive to Demand No. 3 and/or cross-checking whether any documents responsive to Demand No. 3 had been previously produced by the Trump Organization to the OAG: (i) Respondent's chron files; (ii) attorney work product provided by TTO Co-Counsel and the TTO Legal Dept. which summarized, organized and identified with particularity the documents produced by the Trump Organization to the OAG; (iii) relevant search terms utilized in the Trump Organization's prior searches; (iv) prior subpoenas served upon the Trump Organization by the OAG; and (v) weekly status reports provided by TTO Co-Counsel to the OAG.

39.     I had numerous discussions with TTO Co-Counsel, the TTO Legal Dept., and the TTO IT Dept., for the purpose of reviewing the documents produced in connection with the Prior Searches, identifying documents potentially responsive to Demand No. 3 and verifying whether potentially responsive documents had previously been produced to the OAG.

40.     I searched for responsive documents at the following locations: (i) Respondent's private residence located at Trump National Golf Club Bedminster; (ii) Respondent's personal office located at Trump National Golf Club Bedminster Mar-a-Lago; (iii) Respondent's private residence located at Mar-a-Lago; and (iv) Respondent's personal office located at Trump National Golf Club Bedminster.

41.     I personally interviewed Respondent as to whether he had any responsive documents in his possession, custody or control responsive to Demand No. 3.

42.     Based on the foregoing, together with my firm's collective search efforts, I determined that Respondent was not in possession of any documents responsive to Demand No.

18

3, other than those documents that had already been produced by the Trump Organization.

**Demand No. 4**

43.     Demand No. 4 calls for "[a]ll documents and communications concerning any financing or debt related to Trump International Hotel and Tower Chicago or Chicago Unit Acquisition LLC." This identical demand was set forth in a subpoena dated December 27, 2019 that was previously served upon the Trump Organization by the OAG; therefore, the Prior Searches encompassed the items responsive to this demand.

44.     With respect to Demand No. 4, I personally reviewed and analyzed the following files, logs and/or documents for the purpose of searching for documents responsive to Demand No. 4 and/or cross-checking whether any documents responsive to Demand No. 4 had been previously produced by the Trump Organization to the OAG: (i) Respondent's chron files; (ii) attorney work product provided by TTO Co-Counsel and the TTO Legal Dept. which summarized, organized and identified with particularity the documents produced by the Trump Organization to the OAG; (iii) relevant search terms utilized in the Trump Organization's prior searches; (iv) prior subpoenas served upon the Trump Organization by the OAG; and (v) weekly status reports provided by TTO Co-Counsel to the OAG.

45.     I had numerous discussions with TTO Co-Counsel, the TTO Legal Dept., and the TTO IT Dept., for the purpose of reviewing the documents produced in connection with the Prior Searches, identifying documents potentially responsive to Demand No. 4 and verifying whether potentially responsive documents had previously been produced to the OAG.

46.     I searched for responsive documents at the following locations: (i) Respondent's private residence located at Trump National Golf Club Bedminster; (ii) Respondent's personal office located at Trump National Golf Club Bedminster Mar-a-Lago; (iii) Respondent's private

residence located at Mar-a-Lago; and (iv) Respondent's personal office located at Trump National Golf Club Bedminster.

47.     I personally interviewed Respondent as to whether he had any responsive documents in his possession, custody or control responsive to Demand No. 4.

48.     Based on the foregoing, together with my firm's collective search efforts, I determined that Respondent was not in possession of any documents responsive to Demand No. 4, other than those documents that had already been produced by the Trump Organization.

### Demand No. 5

49.     Demand No. 5 calls for "[a]ll documents and communications concerning the donation or potential donation of a conservation or preservation easement by [Respondent]." This identical demand was set forth in a subpoena dated December 27, 2019 that was previously served upon the Trump Organization by the OAG; therefore, the Prior Searches encompassed the items responsive to this demand.

50.     With respect to Demand No. 5, I personally reviewed and analyzed the following files, logs and/or documents for the purpose of searching for documents responsive to Demand No. 5 and/or cross-checking whether any documents responsive to Demand No. 5 had been previously produced by the Trump Organization to the OAG: (i) Respondent's chron files; (ii) attorney work product provided by TTO Co-Counsel and the TTO Legal Dept. which summarized, organized and identified with particularity the documents produced by the Trump Organization to the OAG; (iii) relevant search terms utilized in the Trump Organization's prior searches; (iv) prior subpoenas served upon the Trump Organization by the OAG; and (v) weekly status reports provided by TTO Co-Counsel to the OAG.

51.     I had numerous discussions with TTO Co-Counsel, the TTO Legal Dept., and the

TTO IT Dept., for the purpose of reviewing the documents produced in connection with the Prior Searches, identifying documents potentially responsive to Demand No. 5 and verifying whether potentially responsive documents had previously been produced to the OAG.

52.     I searched for responsive documents at the following locations: (i) Respondent's private residence located at Trump National Golf Club Bedminster; (ii) Respondent's personal office located at Trump National Golf Club Bedminster Mar-a-Lago; (iii) Respondent's private residence located at Mar-a-Lago; and (iv) Respondent's personal office located at Trump National Golf Club Bedminster.

53.     I personally interviewed Respondent as to whether he had any responsive documents in his possession, custody or control responsive to Demand No. 5.

54.     Based on the foregoing, together with my firm's collective search efforts, I determined that Respondent was not in possession of any documents responsive to Demand No. 5, other than those documents that had already been produced by the Trump Organization.

### Demand No. 6

55.     Demand No. 6 calls for "[a]ll documents and communications concerning any planned or potential development or alteration of the Seven Springs Estate." This identical demand was set forth in a subpoena dated December 27, 2019 that was previously served upon the Trump Organization by the OAG; therefore, the Prior Searches encompassed the items responsive to this demand.

56.     With respect to Demand No. 6, I personally reviewed and analyzed the following files, logs and/or documents for the purpose of searching for documents responsive to Demand No. 5 and/or cross-checking whether any documents responsive to Demand No. 6 had been previously produced by the Trump Organization to the OAG: (i) Respondent's chron files; (ii)

**Ex. 1_022**

attorney work product provided by TTO Co-Counsel and the TTO Legal Dept. which summarized, organized and identified with particularity the documents produced by the Trump Organization to the OAG; (iii) relevant search terms utilized in the Trump Organization's prior searches; (iv) prior subpoenas served upon the Trump Organization by the OAG; and (v) weekly status reports provided by TTO Co-Counsel to the OAG.

57.     I had numerous discussions with TTO Co-Counsel, the TTO Legal Dept., and the TTO IT Dept., for the purpose of reviewing the documents produced in connection with the Prior Searches, identifying documents potentially responsive to Demand No. 6 and verifying whether potentially responsive documents had previously been produced to the OAG.

58.     I searched for responsive documents at the following locations: (i) Respondent's private residence located at Trump National Golf Club Bedminster; (ii) Respondent's personal office located at Trump National Golf Club Bedminster Mar-a-Lago; (iii) Respondent's private residence located at Mar-a-Lago; and (iv) Respondent's personal office located at Trump National Golf Club Bedminster.

59.     I personally interviewed Respondent as to whether he had any responsive documents in his possession, custody or control responsive to Demand No. 6.

60.     Based on the foregoing, together with my firm's collective search efforts, I determined that Respondent was not in possession of any documents responsive to Demand No. 6, other than those documents that had already been produced by the Trump Organization.

### Demand No. 7

61.     With respect to Demand No. 7, I personally reviewed and analyzed the following files, logs and/or documents for the purpose of searching for documents responsive to Demand No. 7 and/or cross-checking whether any documents responsive to Demand No. 7 had been

Ex. 1_023

previously produced by the Trump Organization to the OAG: (i) Respondent's chron files; (ii) attorney work product provided by TTO Co-Counsel and the TTO Legal Dept. which summarized, organized and identified with particularity the documents produced by the Trump Organization to the OAG; (iii) relevant search terms utilized in the Trump Organization's prior searches; (iv) prior subpoenas served upon the Trump Organization by the OAG; and (v) weekly status reports provided by TTO Co-Counsel to the OAG.

62.     I had numerous discussions with TTO Co-Counsel, the TTO Legal Dept., and the TTO IT Dept., for the purpose of reviewing the documents produced in connection with the Prior Searches, identifying documents potentially responsive to Demand No. 7 and verifying whether potentially responsive documents had previously been produced to the OAG.

63.     I searched for responsive documents at the following locations: (i) Respondent's private residence located at Trump National Golf Club Bedminster; (ii) Respondent's personal office located at Trump National Golf Club Bedminster Mar-a-Lago; (iii) Respondent's private residence located at Mar-a-Lago; and (iv) Respondent's personal office located at Trump National Golf Club Bedminster.

64.     I personally interviewed Respondent as to whether he had any responsive documents in his possession, custody or control responsive to Demand No. 7.

65.     Further, with respect to Demand No. 7 of the Subpoena, which calls for "all documents and communications with Forbes Magazine…," my office confirmed that all communications and documents with Forbes Magazine had been produced to the OAG through August 14, 2021.

66.     In particular, through conversations with Prior Counsel, TTO Legal Dept., and TTO IT Dept., my office confirmed that the Trump Organization had performed searches for all

communications and documents with Forbes Magazine in response to the NYDA subpoena, which covered through the period of August 14, 2021. The custodial documents for Respondent produced to the NYDA on February 2, 2022 were the following: TTO_05324574 through TTO_05347249. These documents were subsequently reproduced to the OAG by the Trump Organization.

67.     To supplement this search, on March 16, 2022, Mr. Madaio coordinated with the Trump Organization's IT team to commence a search for any responsive documents to Demand No. 7 (regarding Forbes Magazine) for the time period from January 1, 2021 through March 16, 2022. Search parameters included the term "forbes" and communications with "forbes.com" e-mail addresses, and the e-mail addresses of ten Trump Organization individuals were searched, including Alan Garten, Eric Trump, Donald Trump, Jr., Allen Weisselberg, Amanda Miller, Kim Benza, Jeffrey McCooney, Patrick Birney, Ray Flores and Deborah Tarasoff.

68.     The search returned 1,386 documents and/or communications. Three employees of my firm, in coordination with HaystackID, reviewed these items as to whether they were responsive to Demand No. 7. After a full, complete and diligent search, it was determined that none of the documents were responsive.

69.     Additionally, I searched the chron files and did not find any documents responsive to the Subpoena which had not already been produced by the Trump Organization to the NYDA and, subsequently, to the OAG.

70.     Based on the foregoing, together with my firm's collective search efforts, I determined that Respondent was not in possession of any documents responsive to Demand No. 7, other than those documents that had already been produced by the Trump Organization.

### **Demand No. 8**

71.     With respect to Demand No. 8, I personally reviewed and analyzed the following

Ex. 1_025

files, logs and/or documents for the purpose of searching for documents responsive to Demand No. 7 and/or cross-checking whether any documents responsive to Demand No. 7 had been previously produced by the Trump Organization to the OAG: (i) Respondent's chron files; (ii) attorney work product provided by TTO Co-Counsel and the TTO Legal Dept. which summarized, organized and identified with particularity the documents produced by the Trump Organization to the OAG; (iii) relevant search terms utilized in the Trump Organization's prior searches; (iv) prior subpoenas served upon the Trump Organization by the OAG; and (v) weekly status reports provided by TTO Co-Counsel to the OAG

72.     I searched for responsive documents at the following locations: (i) Respondent's private residence located at Trump National Golf Club Bedminster; (ii) Respondent's personal office located at Trump National Golf Club Bedminster Mar-a-Lago; (iii) Respondent's private residence located at Mar-a-Lago; and (iv) Respondent's personal office located at Trump National Golf Club Bedminster.

73.     I personally interviewed Respondent as to whether he had any responsive documents in his possession, custody or control with respect to Demand No. 8.

74.     Based on my discussions with Respondent and communications with the Trump Legal Dept., I confirmed that insurance procurement, both personal and business-related, were coordinated through the Trump Organization and handled by individuals other than Respondent or his executive assistants.

75.     Demand No. 8 of the Subpoena calls for "[a]ll documents relating to your financial condition or that of the Trump Organization reviewed, used, shared, or relied on in obtaining or renewing insurance coverage for you and/or the Trump Organization, including without limitation all Statements of Financial Condition disclosed to insurance underwriters or insurance brokers,

and all communications relating to any of the foregoing." I cross-checked the search terms used

by the Trump Organization in connection with its searches in response to the prior OAG

subpoenas, which included, without limitation, the following search terms:

> Statement of Financial Condition
> Personal financial statement
> PFS
> DJTFS
> DJT FS
> Personal financial
> SOFC
> DJT SOFC
> DJT W/5 SOFC
> f/s
> Financial statement
> Compilation
> balance sheet
> Trump National AND (LA or Los Angeles)
> TNGCLA or TNGC LA
> Palos
> Verdes
> Tower w/5 worth, valu*
> TWT w/5 worth, valu*
> Trump Park" w/5 valu*
> 555 Cal*" w/5 valu*
> Nike w/5 valu*
> 502 Park" w/5 valu* S
> cotland w/5 worth, valu*
> 40 Wall" w/5 valu*
> Mar-a-lago" w/5 worth, valu*
> Trump Parc" w/5 valu*
> 845* w/5 worth, valu*
> Aberdeen w/5 worth, valu*
> Bedminster w/5 worth, valu*
> Charlotte w/5 worth, valu*
> Colts Neck w/5 worth, valu*
> Doral w/5 worth, valu*
> Washington DC w/5 worth, valu*
> Ferry Point w/5 worth, valu*
> Las Vegas w/5 worth, valu*
> Turnberry w/5 worth, valu*
> Doonbeg w/5 worth, valu*
> Hawaii w/5 worth, valu*
> TIHT w/5 worth, valu*

OPO w/5 worth, valu*
Pine Hill w/5 worth, valu*
Philadelphia w/5 worth, valu*
Winery w/5 worth, valu*

In addition, specific searches were previously performed by the Trump Organization with respect to the following items:

- Budgets, income statements, financial statements, balance sheets, and similar documents reflecting the financial performance of, or financial projections for, TTO golf or other club properties whose value is incorporated into SOFC produced by TTO to the DANY.

- Documents reflecting financial performance of, or financial projections for, Trump Organization club properties.

- All documents and communications relating to the negotiation, closing, or modification of any loan secured by any property identified on the SoFC

Based on the use of these search terms and parameters, the documents responsive to Demand No. 8 of the Subpoena would have been produced to the OAG in connection with the Trump Organization's prior searches.

76.    Based on the foregoing, together with my firm's collective search efforts, I determined that Respondent was not in possession of any documents responsive to Demand No. 8, other than those documents that had already been produced by the Trump Organization.

### **Stipulation**

77.    On behalf of Respondent, I hereby stipulate that the Trump Organization-produced documents can be used as if those documents were produced by Respondent because they were under Respondent's "control," in that they were documents in the possession of a company owned or controlled by a Respondent or a Trust owned by him, to the extent allowable by law. In so stipulating, Respondent does not waive any objections to such documents or the introduction of those documents in evidence that he would otherwise have if he had produced those documents solely because they were in the custody or control of a company owned or controlled by him or a Trust owned by him.

Ex. 1_028

_____
ALINA HABBA

May 6th, 2022
_____
DATE

STATE OF Florida )
COUNTY OF Palm Beach )

On this 6th day of May in the year 2022, before me, the undersigned, a notary public in and for said state, personally appeared Alina Habba personally known to be or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person or entity upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

JOSE PAULO LOZANO
MY COMMISSION EXPIRES
JANUARY 8, 2026
#HH 192014
Bonded thru
Notary Public Underwriters
NOTARY PUBLIC, STATE OF FLORIDA

Ex. 1_029

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York, | Index No.: No.: 451685/2020 |
| Petitioner, |  |
| v. | **AFFIDAVIT OF COMPLIANCE WITH SUBPOENA** |
| THE TRUMP ORGANIZATION, INC., DJT HOLDINGS LLC, DJT HOLDINGS MANAGING MEMBER LLC, SEVEN SPRINGS LLC, ERIC TRUMP, CHARLES MARTABANO, MORGAN, LEWIS & BOCKIUS, LLP, SHERI DILLON, DONALD J. TRUMP, IVANKA TRUMP, DONALD TRUMP, JR., and CUSHMAN AND WAKEFIELD, INC., |  |
| Respondents. |  |

I, Michael T. Madaio, Esq., being duly sworn, state as follows:

1.     My office represents the respondent, Donald J. Trump ("Respondent"), in connection with the above referenced action and is responsible for preparing and assembling Respondent's production and response to the *Subpoena Duces Tecum* dated December 1, 2021 (the "Subpoena"). My office also represents the respondent, The Trump Organization, Inc. (the "Trump Organization") in this action.

2.     I submit this affirmation in further compliance with Instruction C14 of the Subpoena and in accordance with the Court's Order dated April 29, 2022.

3.     Respondent previously submitted a Response and Objections to the Subpoena dated March 31, 2022 (the "Response"). Consistent with the Court's Order dated April 26, 2022, Respondent hereby withdraws all objections raised in the Response.

1

4.      Respondent's productions and responses to the Subpoena are complete and correct to the best of my knowledge and belief.

5.      No documents or information responsive to the Subpoena have been withheld from Respondent's production and response.

6.      Attached as Schedule A is a true and accurate record of all persons who prepared and assembled any productions and responses to the Subpoena, all persons under whose personal supervision the preparation and assembly of productions and responses to the Subpoena occurred, and all persons able competently to testify: (a) that such productions and responses are complete and correct to the best of such person's knowledge and belief; and (b) that any Documents produced are authentic, genuine and what they purport to be.

7.      As described herein, I made or caused to be made a diligent, complete and comprehensive search for all documents and information requested by the Subpoena, in full accordance with the instructions and definitions set forth in the Subpoena.

## **Overview of Search Efforts**

8.      Commencing in January 2022, my office undertook significant, diligent, and comprehensive search efforts in response to the Subpoena.

9.      Our search efforts consisted of a two-pronged approach to ensure that all responsive documents have been produced to the OAG: first, in coordination with co-counsel for the Trump Organization, LaRocca Hornik Rosen & Greenberg LLP ("TTO Co-Counsel"), the Trump Organization legal team including its General Counsel, Alan Garten, Esq. (the "TTO Legal Dept."), and the Trump Organization IT Department (the "TTO IT Dept.") my office performed a thorough review of the prior document productions and search efforts undertaken by the Trump Organization in response to prior subpoenas served the OAG, for the purpose of cross-checking

for responsive documents that had already been produced by the Trump Organization; second, my office, in coordination with prior counsel for Respondent, Van der Veen, O'Neill, Hartshorn, and Levin ("Prior Counsel") and co-counsel for Respondent, Fischetti & Malgieri LLP ("Co-Counsel"), conducted full, complete and comprehensive searches for any and all responsive documents that had not previously been produced by the Trump Organization to the OAG.

10.     The steps taken by my office in furtherance of these search efforts are outlined herein.

11.     From January 2022 through March 2022, I had numerous phone calls and communications with Prior Counsel concerning their search efforts that had been undertaken in connection with the Subpoena.

12.     Prior Counsel confirmed that their office had interviewed all of Respondent's executive assistants as to whether they had any documents or communications responsive to the Subpoena and that no such responsive documents were identified.

13.     Prior Counsel further informed that their office conducted a search of Respondent's correspondence files (the "chron files") and produced relevant portions thereof to the NYDA. The Trump Organization then caused all of those same documents to be produced to the OAG on February 9, 2022. The production to the NYDA included the following custodial documents for Respondent: TTO_05439138, TTO_05439139 through TTO_05439275, TTO_05439276 through TTO_05439412, TTO_05439413 through TTO_05439654, TTO_05439655, TTO_05439656 through TTO_05439675, and TTO_05439676. TTO Counsel further advised that the Trump Organization's production to the NYDA was re-produced to the OAG in its entirety.[1]

---

[1] The chron files produced to the OAG is comprised of 542 pages of documents and can be found at TTO_05439134 through TTO_05439676.

14.     I also had numerous phone calls and communications with co-counsel for Respondent, Fischetti & Malgieri LLP ("Co-Counsel"), concerning their office's search efforts undertaken in connection with the Subpoena.

15.     Co-Counsel confirmed that he personally reviewed the Subpoena with Respondent over the telephone as to whether he was in possession, custody or control of any responsive documents to the Subpoena.

16.     Further, I had numerous phone calls and communications with TTO Co-Counsel, the TTO Legal Dept., and the TTO IT Dept. for the purpose of assessing and verifying the extent of the searches performed in relation to the Trump Organization's prior document productions.

17.     I personally reviewed attorney work product provided by TTO Co-Counsel which summarized, organized and identified with particularity the documents produced by the Trump Organization to the OAG, which I personally cross-checked for responsive documents as to each individual demand of the Subpoena. I also reviewed each individual demand contained in the Subpoena with TTO Co-Counsel as to whether any responsive documents pertaining to Respondent had been previously produced by the Trump Organization to the OAG.

18.     From January 2022 through March 2022, I personally reviewed portions of Respondent's chron files as to whether they contained any documents responsive to the Subpoena. Collectively, my firm performed a full, complete, and diligent search of the chron files. After the search, it was determined that any documents in the chron files that are responsive to the Subpoena had already been produced to the OAG.

19.     I personally reviewed the weekly status reports provided by TTO Co-Counsel to the OAG.

20.     I personally reviewed the prior subpoenas served upon the Trump Organization by

Ex. 1_033

the OAG.

21.     I personally reviewed relevant portions of the Trump Organization's prior document productions to the OAG.

22.     My office had numerous conversations with Respondent by telephone concerning the Subpoena, his electronic devices, the locations likely to house responsive documents, and whether he had any responsive documents in his possession, custody, or control.

23.     On March 17, 2022, Alina Habba met with Respondent in-person at Mar-a-Lago and reviewed the Subpoena with him, including each individual demand contained therein.

24.     On April 8, 2022, Alina Habba and I conducted a telephone interview with Respondent, as per Haystack ID's request. After completion, the completed HaystackID interview forms were submitted to HaystackID.

25.     In addition, in accordance with the Order of the Hon. Arthur Engoron, J.S.C. dated April 29, 2022, my office performed several additional searches to further ensure that there are no documents responsive to the Subpoena that have not been previously produced by the Trump Organization:

a. On May 2, 2022, Alina Habba interviewed Eric Brunnett, the Vice President of Information Technology of the Trump Organization, to review and verify the specific phones, computers and other devices that have been issued to Respondent by the Trump Organization. A separate affidavit of Mr. Brunnett is attached hereto. Based on Alina Habba's conversation with Mr. Brunnett, A separate affidavit of Mr. Brunnett is attached hereto. Based on my conversation with Mr. Brunnett, I understand that Respondent does not have any Trump Organization-issued phones, computers, or devices in his personal possession. Respondent only has two phones

Ex. 1_034

in his personal possession: (i) an iPhone; and (ii) a new phone he was recently given by TruthSocial which is used exclusively for posting on that site. Respondent's iPhone been searched and imaged twice by Chris Herndon of TechCentrics, Inc., once in March 21, 2022 and again on May 4, 2022. A separate affidavit of Mr. Herndon is attached hereto.

b.  On May 4, 2022, Alina Habba diligently searched each and every room of Respondent's private residence located at Trump National Golf Club Bedminster, including all desks, drawers, nightstands, dressers, closets, etc.

c.  On May 4, 2022, Alina Habba diligently searched Respondent's personal office located at Trump National Golf Club Bedminster, including all desks, drawers, file cabinets, etc.

d.  On May 5, 2022, Alina Habba diligently searched each and every room of Respondent's private residence located at Mar-a-Lago, including all desks, drawers, nightstands, dressers, closets, etc.

e.  On May 5, 2022, Alina Habba diligently searched Respondent's personal office located at Mar-a-Lago, including all desks, drawers, file cabinets, etc.

f.  On May 5, 2022, Alina Habba coordinated and communicated with Alan Garten via telephone with regard to his search of Respondent's private residence in Trump Tower including all desks, drawers, file cabinets, and similar locations likely to house files or documents.

26.     Further, it was agreed by all parties at the April 26, 2022 hearing that Haystack would perform an additional follow-up search for responsive documents stored in: (i) the file cabinets located outside Respondent's office the Trump Organization's corporate offices in Trump

Ex. 1_035

Tower; (ii) file cabinets located outside Respondent's office the Trump Organization's corporate offices in Trump Tower; (iii) the file cabinets located on the 25th and 26th floors of the Trump Organization's corporate offices in Trump Tower; (iv) Respondent's hard copy calendar files located in the Trump Organization's corporate offices in Trump Tower; and (iv) off-site storage.

27. Based upon the foregoing, it is my understanding that, between the collective efforts of my office, Co-Counsel, Prior Counsel, and TTO Counsel, as well as the independent searches of HaystackID, the following searches have been performed of the Respondent's physical documents and files at these relevant locations:

    a. <u>Cabinets Outside of Respondent's Office (Trump Tower)</u>

        i. On July 19, 2021, Owen Reidy, an attorney with the TTO Legal Dept., searched the physical documents and files located in the file cabinets located outside Respondent's office the Trump Organization's corporate offices in Trump Tower. These file cabinets have, at all relevant times, been maintained by Respondent's executive assistants, including Jessica Macchia, Chelsea Frommer, Holly Lorenzo, Kelly Malley, Katie Murphy, Kelli Rose, Thuy Colayco, Cammie Artusa, and Meredith McIver. As a result of Mr. Reidy's collective search efforts on that date, the following custodial documents for Respondent were identified and subsequently produced to the OAG: TTO_214579, TTO_214580, TTO_214581 through TTO_214583.

        ii. On November 12, 2021, Cynthia Arce, a paralegal with the TTO Legal Dept., searched the physical documents and files located in the file cabinets located outside Respondent's office the Trump Organization's corporate

7

offices in Trump Tower. These file cabinets have, at all relevant times, been maintained by Respondent's executive assistants, including Jessica Macchia, Chelsea Frommer, Holly Lorenzo, Kelly Malley, Katie Murphy, Kelli Rose, Thuy Colayco, Cammie Artusa, and Meredith McIver. No custodial documents for Respondent were identified as a result of this search.

iii. From late April through May 6, 2022, HaystackID searched the file cabinets located outside Respondent's office the Trump Organization's corporate offices in Trump Tower. Based on my review of HaystackID's report regarding this search, I understand that no documents responsive to the Subpoena were identified.

b. <u>Executive Office Storage Closet / Storage Room by Respondent's Office (Trump Tower)</u>

i. On July 19, 2021, Owen Reidy searched the physical documents and files located in the file cabinets in the Executive Office storage closet and the storage room by Respondent's office in the Trump Organization's corporate offices in Trump Tower for all of Respondent's executive assistants. As a result of Mr. Reidy's collective search efforts on that date, the following custodial documents for Respondent were identified and subsequently produced to the OAG: TTO_214579, TTO_214580, TTO_214581 through TTO_214583.

ii. On November 12, 2021, Cynthia Arce searched the physical documents and files located in the file cabinets in the Executive Office storage closet and the storage room by Respondent's office in the Trump Organization's

8

corporate offices in Trump Tower, including the file cabinets maintained by Respondent's executive assistants, Jessica Macchia, Chelsea Frommer, Holly Lorenzo, Kelly Malley, Katie Murphy, Kelli Rose, Thuy Colayco, Cammie Artusa, and Meredith McIver. No custodial documents for Respondent were identified as a result of this search.

iii. On November 23, 2021, Cynthia Arce searched the physical documents and files located in the file cabinets in the Executive Office storage closet and the storage room by Respondent's office in the Trump Organization's corporate offices in Trump Tower, including the file cabinets maintained by Respondent's executive assistants, Randi Gleason, Laurden Kelly, Casey Kennedy, and Jaquiline Fini. No custodial documents for Respondent were identified as a result of this search.

iv. From late April through May 6, 2022, HaystackID searched the physical documents and files located in the file cabinets in the Executive Office storage closet and the storage room by Respondent's office in the Trump Organization's corporate offices in Trump Tower for all of Respondent's executive assistants. Based on my review of HaystackID's report regarding this search, I understand that no custodial documents for Respondent were identified.

c.  File Cabinets located on the 25th and 26th Floors

i. On or about January 24, 2020, Maria Enriquez, an attorney with the TTO Legal Dept., searched the physical documents and files located in the file cabinets located on the 25th and 26th floors of the Trump Organization's

Ex. 1_038

corporate offices in Trump Tower. Any documents responsive to those searches were produced to the OAG by the Trump Organization. No custodial documents for Respondent were identified as a result of this search.

ii. From late April through May 6, 2022, HaystackID searched the physical documents and files located in the file cabinets located on the 25th and 26th floors of the Trump Organization's corporate offices in Trump Tower. Based on my review of HaystackID's report regarding this search, I understand that no custodial documents for Respondent were identified.

d. Hard Copy Calendars

i. On July 19, 2021, Owen Reidy searched all of the hard copy calendars maintained by Respondent. These hard copy calendars are located the Trump Organization's corporate offices in Trump Tower. As a result of Mr. Reidy's collective search efforts on that date, the following custodial documents for Respondent were identified and subsequently produced to the OAG: TTO_214579, TTO_214580, TTO_214581 through TTO_214583.

ii. From late April through May 6, 2022, HaystackID searched the hard copy calendars maintained by Respondent in the Trump Organization's corporate offices in Trump Tower. Based on my review of HaystackID's report regarding this search, I understand that no custodial documents for Respondent were identified.

e. Off-site Storage

10

i.   In mid-January, 2020, Adam Rosen, Alex Cannon, and Maria Enriquez, all attorneys with the Trump Legal Dept., conducted searches of inventories the off-site storage files for any documents responsive to the OAG's December 2019 subpoena.  The files that were identified as potentially responsive were shipped from the off-site storage facility to the Trump Organization's corporate offices at Trump Tower, where they were received on or about January 15, 2020.  The files were thereafter reviewed by the Trump Organization's General Counsel and all non-privileged documents that were located were produced to the OAG. No custodial documents for Respondent were identified as a result of this search.

ii.   On November 23, 2021, Cynthia Arce reviewed and assessed the off-site storage log and verified that the off-site stored files did not include any custodial documents for Respondent.

iii.   From late April through the present and continuing, HaystackID searched physical files and documents contained in off-site storage. Based on my review of HaystackID's report regarding this search, I understand that no custodial documents for Respondent were identified.

f.   <u>Chron Files</u>

i.   On July 19, 2021, Owen Reidy searched all of the hard copy calendars maintained by Respondent. These hard copy calendars are located the Trump Organization's corporate offices in Trump Tower. As a result of Mr. Reidy's collective search efforts on that date, the following custodial documents for Respondent were identified and subsequently produced to

11

the OAG: TTO_214579, TTO_214580, TTO_214581 through TTO_214583.

ii. In or around early 2022, Prior Counsel searched Respondent's chron file for any and all responsive documents to the NYDA's subpoena requests. In response to those searches, on February 9, 2022, Prior Counsel produced to the NYDA, the following custodial documents for Respondent: TTO_05439138, TTO_05439139 through TTO_05439275, TTO_05439276 through TTO_05439412, TTO_05439413 through TTO_05439654, TTO_05439655, TTO_05439656 through TTO_05439675, and TTO_05439676. The Trump Organization's production to the NYDA was re-produced to the OAG in its entirety.

iii. Commencing in January 2022, my office performed a full, complete, and diligent search of the chron files. After the search, it was determined that any documents in the chron files that are responsive to the Subpoena had already been produced to the OAG.

iv. From late April through May 6, 2022, HaystackID searched Respondent's chron files. Based on my review of HaystackID's report regarding this search, I understand that no custodial documents for Respondent were identified.

g. <u>Trump National Golf Club Bedminster</u>

i. On May 5, 2022, Alina Habba searched each and every room of Respondent's private residence located at Trump National Golf Club Bedminster, including all desks, drawers, file cabinets, etc. No documents

12

responsive to the Subpoena were located or identified.

ii. On May 5, 2022, Alina Habba searched Respondent's personal office located at Trump National Golf Club Bedminster, including all desks, drawers, file cabinets, etc. No documents responsive to the Subpoena were located or identified.

h. Mar-a-Lago

i. On May 5, 2022, Alina Habba searched each and every room of Respondent's private residence located at Mar-a-Lago, including all desks, drawers, file cabinets, etc. No documents responsive to the Subpoena were located or identified.

ii. On May 5, 2022, Alina Habba searched Respondent's personal office located at Mar-a-Lago, including all desks, drawers, file cabinets, etc. No documents responsive to the Subpoena were located or identified.

i. Trump Tower Apartment

i. On May 5, 2022, Alan Garten searched each and every room of Respondent's private apartment located at Trump Tower, including all desks, drawers, file cabinets, etc. No documents responsive to the Subpoena were identified.

**Demand No. 1**

28.     With respect to Demand No. 1, I personally reviewed and analyzed the following files, logs and/or documents for the purpose of searching for documents responsive to Demand No. 1 and/or cross-checking whether any documents responsive to Demand No. 1 had been previously produced by the Trump Organization to the OAG: (i) Respondent's chron files; (ii)

13

attorney work product provided by TTO Co-Counsel and the TTO Legal Dept. which summarized, organized and identified with particularity the documents produced by the Trump Organization to the OAG; (iii) relevant search terms utilized in the Trump Organization's prior searches; (iv) prior subpoenas served upon the Trump Organization by the OAG; (v) relevant portions of the Trump Organization's prior document productions to the OAG; and (vi) weekly status reports provided by TTO Co-Counsel to the OAG.

29.     I had numerous discussions with TTO Co-Counsel, Prior Counsel, Co-Counsel, and the TTO Legal Dept. for the purpose of reviewing the documents produced in connection with the Trump Organization's prior searches and productions, identifying documents potentially responsive to Demand No. 1 and verifying whether potentially responsive documents had previously been produced to the OAG.

30.     In addition, Demand No. 1 of the Subpoena calls for "all documents and communications concerning any Statement of Financial Condition." I cross-checked the search terms used by the Trump Organization in connection with its searches in response to the OAG's 2019 Subpoena, which included, without limitation, the following search terms:

> Statement of Financial Condition
> Personal financial statement
> PFS
> DJTFS
> DJT FS
> Personal financial
> SOFC
> DJT SOFC
> DJT W/5 SOFC
> f/s
> Financial statement;
> Compilation
> balance sheet
> Blakely
> Cushman
> Mazars

Weiser
Trump National AND (LA or Los Angeles)
TNGCLA or TNGC LA
Palos
Verdes
*@cushmanwakefield.com
*@cushwake.com
Tower w/5 worth, valu*
TWT w/5 worth, valu*
Trump Park" w/5 valu*
555 Cal*" w/5 valu*
Nike w/5 valu*
502 Park" w/5 valu* S
cotland w/5 worth, valu*
40 Wall" w/5 valu*
Mar-a-lago" w/5 worth, valu*
Trump Parc" w/5 valu*
845* w/5 worth, valu*
Aberdeen w/5 worth, valu*
Bedminster w/5 worth, valu*
Charlotte w/5 worth, valu*
Colts Neck w/5 worth, valu*
Doral w/5 worth, valu*
Washington DC w/5 worth, valu*
Ferry Point w/5 worth, valu*
Las Vegas w/5 worth, valu*
Turnberry w/5 worth, valu*
Doonbeg w/5 worth, valu*
Hawaii w/5 worth, valu*
TIHT w/5 worth, valu*
OPO w/5 worth, valu*
Pine Hill w/5 worth, valu*
Philadelphia w/5 worth, valu*
Winery w/5 worth, valu*

Based on the use of these search terms, the documents responsive to Demand No. 1 of the

Subpoena would have been produced to the OAG in connection with the Trump Organization's

prior searches.

31.    Based on the foregoing, together with my firm's collective search efforts, I

determined that Respondent was not in any possession of any documents responsive to Demand

No. 1, other than those documents that had already been produced by the Trump Organization.

15

**Demand No. 2**

32.     Demand No. 2 calls for "[a]ll documents and communications concerning any valuation of any asset whose value is identified or incorporated into any Statement of Financial Condition." This identical demand was set forth in a subpoena dated December 27, 2019 that was previously served upon the Trump Organization by the OAG; therefore, the Trump Organization's prior searches and productions encompassed the items responsive to this demand.

33.     With respect to Demand No. 2, I personally reviewed and analyzed the following files, logs and/or documents for the purpose of searching for documents responsive to Demand No. 2 and/or cross-checking whether any documents responsive to Demand No. 2 had been previously produced by the Trump Organization to the OAG: (i) Respondent's chron files; (ii) attorney work product provided by TTO Co-Counsel and the TTO Legal Dept. which summarized, organized and identified with particularity the documents produced by the Trump Organization to the OAG; (iii) relevant search terms utilized in the Prior Searches; (iv) prior subpoenas served upon the Trump Organization by the OAG; (v) relevant portions of the Trump Organization's prior document productions to the OAG; and (vi) weekly status reports provided by TTO Co-Counsel to the OAG.

34.     In addition, I had numerous discussions with TTO Co-Counsel, Prior Counsel, Co-Counsel, and the TTO Legal Dept. for the purpose of reviewing the documents produced in connection with the Prior Searches, identifying documents potentially responsive to Demand No. 2 and verifying that all potentially responsive documents had previously been produced to the OAG.

35.     Based on the foregoing, together with my firm's collective search efforts, I

Ex. 1_045

determined that Respondent was not in any possession of any documents responsive to Demand No. 2, other than those documents that had already been produced by the Trump Organization.

### Demand No. 3

36.     Demand No. 3 calls for "[a]ll documents reviewed, used, or relied on in the preparation of the Statements of Financial Condition, and all communications relating to any of the foregoing." This identical demand was set forth in a subpoena dated December 27, 2019 that was previously served upon the Trump Organization by the OAG; therefore, the Trump Organization's prior searches and productions encompassed the items responsive to this demand.

37.     With respect to Demand No. 3, I personally reviewed and analyzed the following files, logs and/or documents for the purpose of searching for documents responsive to Demand No. 3 and/or cross-checking whether any documents responsive to Demand No. 3 had been previously produced by the Trump Organization to the OAG: (i) Respondent's chron files; (ii) attorney work product provided by TTO Co-Counsel and the TTO Legal Dept. which summarized, organized and identified with particularity the documents produced by the Trump Organization to the OAG; (iii) relevant search terms utilized in the Prior Searches; (iv) prior subpoenas served upon the Trump Organization by the OAG; (v) relevant portions of the Trump Organization's prior document productions to the OAG; and (vi) weekly status reports provided by TTO Co-Counsel to the OAG.

38.     In addition, I had numerous discussions with TTO Co-Counsel, Prior Counsel, Co-Counsel, and the TTO Legal Dept. for the purpose of reviewing the documents produced in connection with the Prior Searches, identifying documents potentially responsive to Demand No. 3 and verifying that all potentially responsive documents had previously been produced to the OAG.

39.     Based on the foregoing, together with my firm's collective search efforts, I determined that Respondent was not in any possession of any documents responsive to Demand No. 3, other than those documents that had already been produced by the Trump Organization.

**Demand No. 4**

40.     Demand No. 4 calls for "[a]ll documents and communications concerning any financing or debt related to Trump International Hotel and Tower Chicago or Chicago Unit Acquisition LLC." This identical demand was set forth in a subpoena dated December 27, 2019 that was previously served upon the Trump Organization by the OAG; therefore, the Trump Organization's prior searches and productions encompassed the items responsive to this demand.

41.     With respect to Demand No. 4, I personally reviewed and analyzed the following files, logs and/or documents for the purpose of searching for documents responsive to Demand No. 4 and/or cross-checking whether any documents responsive to Demand No. 4 had been previously produced by the Trump Organization to the OAG: (i) Respondent's chron files; (ii) attorney work product provided by TTO Co-Counsel and the TTO Legal Dept. which summarized, organized and identified with particularity the documents produced by the Trump Organization to the OAG; (iii) relevant search terms utilized in the Prior Searches; (iv) prior subpoenas served upon the Trump Organization by the OAG; (v) relevant portions of the Trump Organization's prior document productions to the OAG; and (vi) weekly status reports provided by TTO Co-Counsel to the OAG.

42.     In addition, I had numerous discussions with TTO Co-Counsel, Prior Counsel, Co-Counsel, and the TTO Legal Dept. for the purpose of reviewing the documents produced in connection with the Prior Searches, identifying documents potentially responsive to Demand No. 4 and verifying that all potentially responsive documents had previously been produced to the

18

OAG.

43.     Based on the foregoing, together with my firm's collective search efforts, I determined that Respondent was not in any possession of any documents responsive to Demand No. 4, other than those documents that had already been produced by the Trump Organization.

### **Demand No. 5**

44.     Demand No. 5 calls for "[a]ll documents and communications concerning the donation or potential donation of a conservation or preservation easement by [Respondent]." This identical demand was set forth in a subpoena dated December 27, 2019 that was previously served upon the Trump Organization by the OAG; therefore, the Trump Organization's prior searches and productions encompassed the items responsive to this demand.

45.     With respect to Demand No. 5, I personally reviewed and analyzed the following files, logs and/or documents for the purpose of searching for documents responsive to Demand No. 5 and/or cross-checking whether any documents responsive to Demand No. 5 had been previously produced by the Trump Organization to the OAG: (i) Respondent's chron files; (ii) attorney work product provided by TTO Co-Counsel and the TTO Legal Dept. which summarized, organized and identified with particularity the documents produced by the Trump Organization to the OAG; (iii) relevant search terms utilized in the Prior Searches; (iv) prior subpoenas served upon the Trump Organization by the OAG; (v) relevant portions of the Trump Organization's prior document productions to the OAG; and (vi) weekly status reports provided by TTO Co-Counsel to the OAG.

46.     In addition, I had numerous discussions with TTO Co-Counsel, Prior Counsel, Co-Counsel, and the TTO Legal Dept. for the purpose of reviewing the documents produced in connection with the Prior Searches, identifying documents potentially responsive to Demand No.

4 and verifying that all potentially responsive documents had previously been produced to the OAG.

47.     Based on the foregoing, together with my firm's collective search efforts, I determined that Respondent was not in any possession of any documents responsive to Demand No. 5, other than those documents that had already been produced by the Trump Organization.

### Demand No. 6

48.     Demand No. 6 calls for "[a]ll documents and communications concerning any planned or potential development or alteration of the Seven Springs Estate." This identical demand was set forth in a subpoena dated December 27, 2019 that was previously served upon the Trump Organization by the OAG; therefore, the Trump Organization's prior searches and productions encompassed the items responsive to this demand.

49.     With respect to Demand No. 6, I personally reviewed and analyzed the following files, logs and/or documents for the purpose of searching for documents responsive to Demand No. 6 and/or cross-checking whether any documents responsive to Demand No. 6 had been previously produced by the Trump Organization to the OAG: (i) Respondent's chron files; (ii) attorney work product provided by TTO Co-Counsel and the TTO Legal Dept. which summarized, organized and identified with particularity the documents produced by the Trump Organization to the OAG; (iii) relevant search terms utilized in the Prior Searches; (iv) prior subpoenas served upon the Trump Organization by the OAG; (v) relevant portions of the Trump Organization's prior document productions to the OAG; and (vi) weekly status reports provided by TTO Co-Counsel to the OAG.

50.     In addition, I had numerous discussions with TTO Co-Counsel, Prior Counsel, Co-Counsel, and the TTO Legal Dept. for the purpose of reviewing the documents produced in

connection with the Prior Searches, identifying documents potentially responsive to Demand No. 6 and verifying that all potentially responsive documents had previously been produced to the OAG.

51.     Based on the foregoing, together with my firm's collective search efforts, I determined that Respondent was not in any possession of any documents responsive to Demand No. 6, other than those documents that had already been produced by the Trump Organization.

### **Demand No. 7**

52.     With respect to Demand No. 7, I personally reviewed and analyzed the following files, logs and/or documents for the purpose of searching for documents responsive to Demand No. 7 and/or cross-checking whether any documents responsive to Demand No. 7 had been previously produced by the Trump Organization to the OAG: (i) Respondent's chron files; (ii) attorney work product provided by TTO Co-Counsel and the TTO Legal Dept. which summarized, organized and identified with particularity the documents produced by the Trump Organization to the OAG; (iii) relevant search terms utilized in the Prior Searches; (iv) prior subpoenas served upon the Trump Organization by the OAG; (v) relevant portions of the Trump Organization's prior document productions to the OAG; and (vi) weekly status reports provided by TTO Co-Counsel to the OAG.

53.     In addition, I had numerous discussions with TTO Co-Counsel, Prior Counsel, and the TTO Legal Dept. for the purpose of reviewing the documents produced in connection with the Prior Searches, identifying documents potentially responsive to Demand No. 7 and verifying whether potentially responsive documents had previously been produced to the OAG.

54.     Further, with respect to item 7 of the Subpoena, which calls for "all documents and communications with Forbes Magazine…," I confirmed that all communications and documents

with Forbes Magazine had been produced to the OAG through August 14, 2021.

55.     In particular, through conversations with Prior Counsel, TTO Legal Dept., and TTO IT Dept., I confirmed that the Trump Organization had performed searches for all communications and documents with Forbes Magazine in response to the NYDA subpoena, which covered through the period of August 14, 2021. The custodial documents for Respondent produced to the NYDA on February 2, 2022 were the following: TTO_05324574 through TTO_05347249. These documents were subsequently reproduced to the OAG by the Trump Organization.

56.     To supplement this search, on March 16, 2022, I coordinated with the Trump Organization's IT team to commence a search for any responsive documents to Demand No. 7 (regarding Forbes Magazine) for the time period from January 1, 2021 through March 16, 2022. Search parameters included the term "forbes" and communications with "forbes.com" e-mail addresses, and the e-mail addresses of ten Trump Organization individuals were searched, including Alan Garten, Eric Trump, Donald Trump, Jr., Allen Weisselberg, Amanda Miller, Kim Benza, Jeffrey McCooney, Patrick Birney, Ray Flores and Deborah Tarasoff.

57.     The search returned 1,386 documents and/or communications. Three employees of my firm, in coordination with HaystackID, reviewed these items as to whether they were responsive to Demand No. 7. After a full, complete and diligent search, it was determined that none of the documents were responsive.

58.     Additionally, I searched the chron files and did not find any documents responsive to the Subpoena which had not already been produced.

59.     Based on the foregoing, together with my firm's collective search efforts, I determined that Respondent was not in any possession of any documents responsive to Demand No. 7, other than those documents that had already been produced by the Trump Organization.

Ex. 1_051

**Demand No. 8**

60.     With respect to Demand No. 8, I personally reviewed and analyzed the following files, logs and/or documents for the purpose of searching for documents responsive to Demand No. 8 and/or cross-checking whether any documents responsive to Demand No. 8 had been previously produced by the Trump Organization to the OAG: (i) Respondent's chron files; (ii) attorney work product provided by TTO Co-Counsel and the TTO Legal Dept. which summarized, organized and identified with particularity the documents produced by the Trump Organization to the OAG; (iii) relevant search terms utilized in the Prior Searches; (iv) prior subpoenas served upon the Trump Organization by the OAG; (v) relevant portions of the Trump Organization's prior document productions to the OAG; and (vi) weekly status reports provided by TTO Co-Counsel to the OAG.

61.     Demand No. 8 of the Subpoena calls for "[a]ll documents relating to your financial condition or that of the Trump Organization reviewed, used, shared, or relied on in obtaining or renewing insurance coverage for you and/or the Trump Organization, including without limitation all Statements of Financial Condition disclosed to insurance underwriters or insurance brokers, and all communications relating to any of the foregoing." I cross-checked the search terms used by the Trump Organization in connection with its searches in response to the prior OAG subpoenas, which included, without limitation, the following search terms:

Statement of Financial Condition
Personal financial statement
PFS
DJTFS
DJT FS
Personal financial
SOFC
DJT SOFC

Ex. 1_052

DJT W/5 SOFC
f/s
Financial statement
Compilation
balance sheet
Trump National AND (LA or Los Angeles)
TNGCLA or TNGC LA
Palos
Verdes
Tower w/5 worth, valu*
TWT w/5 worth, valu*
Trump Park" w/5 valu*
555 Cal*" w/5 valu*
Nike w/5 valu*
502 Park" w/5 valu* S
cotland w/5 worth, valu*
40 Wall" w/5 valu*
Mar-a-lago" w/5 worth, valu*
Trump Parc" w/5 valu*
845* w/5 worth, valu*
Aberdeen w/5 worth, valu*
Bedminster w/5 worth, valu*
Charlotte w/5 worth, valu*
Colts Neck w/5 worth, valu*
Doral w/5 worth, valu*
Washington DC w/5 worth, valu*
Ferry Point w/5 worth, valu*
Las Vegas w/5 worth, valu*
Turnberry w/5 worth, valu*
Doonbeg w/5 worth, valu*
Hawaii w/5 worth, valu*
TIHT w/5 worth, valu*
OPO w/5 worth, valu*
Pine Hill w/5 worth, valu*
Philadelphia w/5 worth, valu*
Winery w/5 worth, valu*

In addition, specific searches were previously performed by the Trump Organization with respect to the following items:

- Budgets, income statements, financial statements, balance sheets, and similar documents reflecting the financial performance of, or financial projections for, TTO golf or other club properties whose value is incorporated into SOFC produced by TTO to the DANY.

- Documents reflecting financial performance of, or financial projections for, Trump Organization club properties.

24

- All documents and communications relating to the negotiation, closing, or modification of any loan secured by any property identified on the SoFC

Based on the use of these search terms and parameters, the documents responsive to Demand No. 8 of the Subpoena would have been produced to the OAG in connection with the Trump Organization's prior searches.

62.     Based on the foregoing, together with my firm's collective search efforts, I determined that Respondent was not in any possession of any documents responsive to Demand No. 8, other than those documents that had already been produced by the Trump Organization.

## **Stipulation**

63.     On behalf of Respondent, I hereby stipulate that the Trump Organization-produced documents can be used as if those documents were produced by Respondent because they were under Respondent's "control," in that they were documents in the possession of a company owned or controlled by a Respondent or a Trust owned by him, to the extent allowable by law. In so stipulating, Respondent does not waive any objections to such documents or the introduction of those documents in evidence that he would otherwise have if he had produced those documents solely because they were in the custody or control of a company owned or controlled by him or a Trust owned by him.

Ex. 1_054



_____     _____
MICHAEL T. MADAIO                        5/6/22
                                                             DATE

STATE OF  _New Jersey_ )
COUNTY OF _Somerset_   )

On this __6th__ day of May in the year 2022, before me, the undersigned, a notary public in and for said state, personally appeared Michael T. Madaio personally known to be or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person or entity upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

26

Ex. 1_055

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York,<br><br>                  Petitioner,<br><br>      v.<br><br>THE TRUMP ORGANIZATION, INC.; DJT HOLDINGS LLC; DJT HOLDINGS MANAGING MEMBER LLC; SEVEN SPRINGS LLC; ERIC TRUMP; CHARLES MARTABANO; MORGAN, LEWIS & BOCKIUS, LLP; SHERI DILLON; DONALD J. TRUMP; IVANKA TRUMP; AND DONALD TRUMP, JR.,<br><br>                Respondents. | Index No. 451685/2020<br><br><br><br>**AFFIDAVIT** |

I, Donald J. Trump, being duly sworn, state as follows:

1.      I am a named Respondent in the above-captioned matter. I submit this affirmation in accordance with the Court's Order dated April 29, 2022 (the "Order").

2.      I have personally reviewed the subpoena issued by the Office of the Attorney General (the "OAG") dated December 1, 2021 (the "Subpoena").

3.      I have had numerous discussions with my attorney, Alina Habba, regarding the Subpoena. We also met in-person at Mar-a-Lago on March 17, 2022 to review and discuss the Subpoena.

4.      Since at least January 1, 2010, it has been my customary practice to not keep any documents, files, or papers relating to my business activities in my private residences.

5.      Nevertheless, in an abundance of caution and in accordance with the Order, I authorized the additional, follow-up searches to be performed on my private residences:

      a.  On May 4, 2022, I authorized my attorney, Alina Habba, to search my private

residence and personal office located at Trump National Golf Club in Bedminster, New Jersey for any and all documents responsive to the Subpoena.

b. On May 5, 2022, I authorized Alina Habba to search my private residence and personal office located at The Mar-a-Lago Club in Palm Beach, Florida for any and all documents responsive to the Subpoena.

c. On May 5, 2022, I authorized Alan Garten, General Counsel for the Trump Organization, to search my private apartment located in Trump Tower in New York, New York for any and all documents responsive to the Subpoena.

6. As for documents kept in my regular course of business with the Trump Organization, these documents would be in the possession, custody and/or control of the Trump Organization.

7. Since at least January 1, 2010, it has been my customary practice to delegate document handling and retention responsibilities to my executive assistants.

8. My understanding is that, if any corporate records were kept, they would be exclusively in the corporate offices of the Trump Organization. I believe these documents would be stored in:

a. My 'chron' files;

b. My hard copy calendars;

c. The files in the cabinets located outside my office;

d. The storage room by my office and the Executive Office storage closet; and

e. The file cabinets located on the 26th floor.

9. To the extent there are any documents responsive to the Subpoena, it is my firm belief that they would have been kept in the above-listed locations in the regular course of business.

2

**Ex. 1_057**

10.     It is my understanding that searches of the above-listed locations have been performed by my attorneys, the Trump Organization Legal Department, the Trump Organization IT Department, and others.

11.     I am not currently in possession of any Trump Organization-issued phones, computers or similar devices. I believe the last phone or device I was issued by the Trump Organization was a cell phone in 2015. I no longer have the cell phone in my possession and I am not aware of its current location.

12.     Since January 1, 2010, I previously owned two flip phones and a Samsung mobile phone.

     a.   I do not have the two flips phones in my possession and I do not know their current whereabouts.

     b.   I took the Samsung with me to the White House and it was taken from me at some point while I was President. I do not have the Samsung in my possession and I do not know its current whereabouts.

13.     Currently, I own two personal mobile phones:

     a.   I have an iPhone which I have owned for several years and is for my personal use.

     b.   I also have a new phone which I was recently given by Truth Social just last week. I use this phone exclusively for posting on Truth Social and no other purpose. I have never placed or received a call, sent or received a text message, or used this phone in any other manner.

14.     I previously submitted my iPhone to be searched and imaged on March 21, 2022.

15.     In an abundance of caution, and in accordance with the Order, I recently resubmitted my cell phone to be searched and imaged again in early May 2022.

16.    Since at least January 1, 2010, it has been my customary practice to not communicate via e-mail, text message, or other digital methods of communication. I also do not use a computer for work-related purposes. I confirmed the same on April 8, 2022, when I conducted a telephone interview with my attorneys, Alina Habba and Michael Madaio, pursuant to HaystackID's request.

17.    At all relevant times, I have authorized, and continue to authorize, the release of any documents responsive to the various subpoenas issued by the OAG.

18.    To the best of my knowledge, there are no documents responsive to the Subpoena in my possession, custody or control that have not already been produced by the Trump Organization to the OAG.

_____
DONALD J. TRUMP

May 6, 2022
_____
DATE

STATE OF  Florida  )
COUNTY OF  Palm Beach )

On this 6th day of May in the year 2022, before me, the undersigned, a notary public in and for said state, personally appeared Donald J. Trump personally known to be or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person or entity upon behalf of which the individual acted, executed the instrument.

_____
Notary Public



4

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

|  |  |
|---|---|
| PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York, | Index No.: 451685/2020 |
| Petitioner, | |
| -against- | |
| THE TRUMP ORGANIZATION, INC.; DJT HOLDINGS LLC; DJT HOLDINGS MANAGING MEMBER LLC; SEVEN SPRINGS LLC; ERIC TRUMP; CHARLES MARTABANO; MORGAN, LEWIS & BOCKIUS, LLP; SHERI DILLON; MAZARS USA LLC; DONALD J. TRUMP; DONALD TRUMP, JR.; and IVANKA TRUMP, | **CERTIFICATE OF CONFORMITY** |
| Respondents. | |

ALINA HABBA, ESQ., an attorney duly admitted and licensed to practice law before the Courts of the State of New York, certifies the following under penalties of perjury:

1.      I am the managing partner of Habba Madaio & Associates LLP, counsel of record for respondent, Donald J. Trump, in the above-reference matter. I am an attorney duly admitted to practice in the State of New York.

2.      I make this declaration pursuant to CPLR § 2309(c) to certify that, based upon my review, the attached Affidavit of Donald J. Trump was sworn to before Jose Paulo Lozano, a Notary Public in the State of Florida, in a manner prescribed by the laws of Florida, and that it duly conforms with all such laws and is in all respects valid and effective in Florida.

Dated: May 6, 2022
New York, New York

_____
Alina Habba, Esq.
**HABBA MADAIO & ASSOCIATES LLP**

1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York, | Index No.: 451685/2020 |
| Petitioner, | |
| v. | **AFFIDAVIT OF ERIC BRUNNETT** |
| THE TRUMP ORGANIZATION, INC., DJT HOLDINGS LLC, DJT HOLDINGS MANAGING MEMBER LLC, SEVEN SPRINGS LLC, ERIC TRUMP, CHARLES MARTABANO, MORGAN, LEWIS & BOCKIUS, LLP, SHERI DILLON, DONALD J. TRUMP, IVANKA TRUMP, DONALD TRUMP, JR., and CUSHMAN AND WAKEFIELD, INC., | |
| Respondents. | |

I, Eric Brunnett, being duly sworn, deposes and says:

1.      I am the Senior Vice President of The Trump Organization's ("TTO") Information Technology Department.

2.      I am tasked with overseeing the use, maintenance, and operation of the devices issued by TTO.

3.      Since January 1, 2010, two flip phones and a Samsung Galaxy S4 were issued by TTO to Mr. Trump. These mobile phones are no longer in operation, and I do not know their whereabouts.

4.      TTO has not issued any mobile phones to Mr. Trump since he was elected President of the United States.

ERIC BRUNNETT

STATE OF         )
COUNTY OF     )

On this ___ day of May in the year 2022, before me, the undersigned, a notary public in and for said state, personally appeared Eric Brunnett personally known to be or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person or entity upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York, | Index No.: 451685/2020 |
| Petitioner, | |
| v. | **AFFIDAVIT OF CHRIS HERNDON** |
| THE TRUMP ORGANIZATION, INC., DJT HOLDINGS LLC, DJT HOLDINGS MANAGING MEMBER LLC, SEVEN SPRINGS LLC, ERIC TRUMP, CHARLES MARTABANO, MORGAN, LEWIS & BOCKIUS, LLP, SHERI DILLON, DONALD J. TRUMP, IVANKA TRUMP, DONALD TRUMP, JR., and CUSHMAN AND WAKEFIELD, INC., | |
| Respondents. | |

I, Chris Herndon, being duly sworn, deposes and says:

1.      I am the Chief Operating Officer of TechCentrics, Inc. I previously served as the White House Director of Information Technology from January 20, 2017 through December 18, 2018.

2.      Prior to entering the White House, Mr. Trump utilized a Samsung Galaxy S4 mobile phone. This mobile phone was turned over to me in March of 2017 and remained in my custody until I left my position in 2018. I do not know the current whereabouts or condition of this mobile phone since the time that it was turned over. The standard protocol would have been for the phone to be turned over to the National Archives and Records Administration at the conclusion of Mr. Trump's term of presidency.

3.      I imaged and searched the current iPhone 12 Pro Max used by Mr. Trump, pursuant

1

to a security protocol which is intended to regularly search for malware and other irregularities in the phone used by Mr. Trump.

4.      Following this search, I determined that there were no documents, irregularities or unexpected findings in the device. The device contained only four unread incoming text messages.

5.      At the direction of Mr. Trump's counsel, Alina Habba, I performed an additional detailed search of the image of Mr. Trump's phone on May 4, 2022 with specific reference to the items sought in the subpoena dated December 1, 2022 (the "Subpoena") issued by the Office of the Attorney General.

6.      Following this search, I confirmed that the findings remain the same. There are no additional documents, texts, or emails stored on this mobile device, nor are there any documents or communications that are responsive to the Subpoena.

_____          _____
CHRIS HERNDON                                               6 May 2022
                                                                      DATE


STATE OF Virginia        )
COUNTY OF Fairfax        )

On this 6 day of May in the year 2022, before me, the undersigned, a notary public in and for said state, personally appeared Chris Herndon personally known to be or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person or entity upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

KYLE KENNEDY
NOTARY PUBLIC
REG # 7516972
COMMONWEALTH OF VIRGINIA
MY COMMISSION EXPIRES 08/31/2024

2

Ex. 1_064

## SCHEDULE A
List of Persons Who Supervised/Participated in Subpoena Compliance

1. **Peter W. Gabra, Esq.**
   Associate Attorney
   Habba Madaio & Associates LLP
   1430 U.S. Highway 206, Suite 240
   Bedminster, New Jersey 07921
   Telephone: (908) 869-1188

2. **Randee Ingram**
   Paralegal
   Habba Madaio & Associates LLP
   1430 U.S. Highway 206, Suite 240
   Bedminster, New Jersey 07921
   Telephone: (908) 869-1188

3. **Na'syia Drayton**
   Paralegal
   Habba Madaio & Associates LLP
   1430 U.S. Highway 206, Suite 240
   Bedminster, New Jersey 07921
   Telephone: (908) 869-1188

4. **Alan Garten, Esq.**
   Executive Vice President & Chief Legal Officer
   The Trump Organization
   725 5th Avenue, New York, NY 10022
   Telephone: (212) 836-3203

5. **Ronald P. Fischetti, Esq.**
   Fischetti & Malgieri LLP
   565 5th Avenue, 7th Floor
   New York, New York 10017
   Telephone: (212) 593-7100

6. **Michael T. van der Veen, Esq.**
   Van der Veen, O'Neill, Hartshorn, and Levin
   1219 Spruce Street
   Philadelphia, PA 19107
   Telephone: (215) 546-1000

7. **Lawrence Rosen, Esq.**
   Managing Partner
   LaRocca Hornik Rosen & Greenberg LLP
   The Trump Building
   40 Wall Street, 32nd Floor
   New York, NY 10005
   Telephone: (732) 246-2112

8. **Amy D. Carlin, Esq.**
   Partner
   LaRocca Hornik Rosen & Greenberg LLP
   The Trump Building
   40 Wall Street, 32nd Floor
   New York, NY 10005
   Telephone: (732) 246-2112

9. **Chris Herndon**
   Chief Operating Officer
   TechCentrics, Inc
   1271 La Ronde Ct
   Alexandria, VA 22307

10. **Eric Brunnett**
    Senior Vice President, IT Department
    The Trump Organization
    725 5th Avenue, New York, NY 10022
    Telephone: (212) 836-3203