# EXHIBIT 2



805 Fifteenth Street NW, Suite 800
Washington, DC 20005
202.833.1200

www.commoncause.org

*Holding Power Accountable*

# BEFORE THE FEDERAL ELECTION COMMISSION

COMMON CAUSE
805 Fifteenth Street, NW, Suite 800
Washington, DC 20005
(202) 833-1200

Amendment

**MUR #** ⟨7313⟩

PAUL S. RYAN
805 Fifteenth Street, NW, Suite 800
Washington, DC 20005
(202) 833-1200

v.                                                      MUR No. 7313

PRESIDENT DONALD J. TRUMP
The White House
1600 Pennsylvania Avenue NW
Washington, DC 20500

DONALD J. TRUMP FOR PRESIDENT, INC.
725 Fifth Avenue
New York, NY 10022

THE TRUMP ORGANIZATION
725 Fifth Avenue
New York, NY 10022

MICHAEL D. COHEN
c/o Michael D. Cohen & Associates, PC
30 Rockefeller Plaza, 23rd Floor
New York, NY 10112-0015

ESSENTIAL CONSULTANTS, LLC
160 Greentree Drive
Suite #101
Dover, DE 19904

JOHN DOE, unknown person that reimbursed Michael D. Cohen for payment to Stephanie Clifford via Essential Consultants LLC

## COMPLAINT (AMENDED)

1.  This complaint is filed pursuant to 52 U.S.C. § 30109(a)(1) and is based on information providing reason to believe that Donald J. Trump, Donald J. Trump for President, Inc. (FEC I.D.#C00580100), the Trump Organization, Michael D. Cohen, Essential Consultants LLC and/or unknown persons ("John Doe") violated reporting requirements and contribution limits and restrictions of the Federal Election Campaign Act (FECA), 52 U.S.C. § 30101, *et seq.* and Commission regulations.

2.  Specifically, based on publicly available data and published reports, complainants have reason to believe that the payment of $130,000 from Michael D. Cohen through Essential Consultants LLC to Ms. Stephanie Clifford was an unreported in-kind contribution to Donald J. Trump and Donald J. Trump for President, Inc., and an unreported expenditure by Donald J. Trump and Donald J. Trump for President, Inc.—because the payment was made for the purpose of influencing the 2016 presidential general election and the payment was made by Donald J. Trump, or an employee and agent of Donald J. Trump (Michael D. Cohen), or in coordination with Donald J. Trump. *See* 52 U.S.C. §§ 30101(8)(A) (defining "contribution"), 30101(9)(A) (defining "expenditure") and 30116(a)(7) (coordinated "expenditure" a "contribution"); *see also* 52 U.S.C. § 30104(b) (requiring reporting of "contributions" and "expenditures" by political committees).

3.     Regardless of the source of the funds paid to Ms. Stephanie Clifford (including, *e.g.*, if Donald J.

Trump provided the funds), complainants have reason to believe that Donald J. Trump for

President, Inc. failed to report its receipt of the $130,000 in-kind contribution and failed to

report its $130,000 expenditure to Ms. Stephanie Clifford in violation of 52 U.S.C. § 30104(b).

4.     Complainants have reason to believe that Michael D. Cohen made, and Donald J. Trump and

Donald J. Trump for President, Inc. received, an excessive in-kind contribution in violation of

52 U.S.C. § 30116(a)(1)(A).

5.     Complainants have reason to believe that Essential Consultants LLC made, and Donald J.

Trump and Donald J. Trump for President, Inc. received, an excessive in-kind contribution in

violation of 52 U.S.C. § 30116(a)(1)(A) or a corporate contribution in violation of 52 U.S.C.

§ 30118(a).

6.     Complainants have reason to believe that the Trump Organization facilitated a contribution to

Donald J. Trump and Donald J. Trump for President, Inc. in violation of 11 C.F.R. § 114.2(f)(1)

and 52 U.S.C. § 30118(a).

7.     Complainants have reason to believe that the Trump Organization made, and Donald J. Trump

and Donald J. Trump for President, Inc. received, a corporate contribution in violation of 52

U.S.C. § 30118(a).

8.     Complainants have reason to believe that John Doe made, and Donald J. Trump and Donald J.

Trump for President, Inc. received, an excessive in-kind contribution in violation of 52 U.S.C.

§ 30116(a)(1)(A) or a corporate contribution in violation of 52 U.S.C. § 30118(a).

9. "If the Commission, upon receiving a complaint . . . has reason to believe that a person has committed, or is about to commit, a violation of [the FECA] . . . [t]he Commission shall make an investigation of such alleged violation . . . ." 52 U.S.C. § 30109(a)(2) (emphasis added); *see also* 11 C.F.R. § 111.4(a).

10. "A 'reason to believe' finding followed by an investigation would be appropriate when a complaint credibly alleges that a significant violation may have occurred, but further investigation is required to determine whether a violation in fact occurred and, if so, its exact scope." FEC, Statement of Policy Regarding Commission Action in Matters at the Initial Stage in the Enforcement Process, 72 Fed. Reg. 12545 (March 16, 2007).

## FACTS

11. President Donald J. Trump was a candidate for election to the office of President in the 2016 election and ran the Trump Organization as its chairman and president until January 19, 2017.[1]

12. Donald J. Trump for President, Inc. was the principal campaign committee of candidate Donald J. Trump in the 2016 presidential election.[2]

13. The Trump Organization is a privately held corporation owned nearly entirely by Donald J. Trump.[3]

---

[1] Donald J. Trump, FEC Form 2 Statement of Candidacy, filed June 22, 2015, *available at* http://docquery.fec.gov/pdf/291/15031432291/15031432291.pdf; *see also* Jill Disis, Drew Griffin, Curt Devine and Scott Bronstein, "Trump Organization documents say he has resigned from more than 400 businesses," CNN MONEY, January 23, 2017, *available at* http://money.cnn.com/2017/01/23/news/donald-trump-resigns-business/index.html.

[2] Donald J. Trump for President, Inc., FEC Form 1 Statement of Organization, filed June 29, 2015, *available at* http://docquery.fec.gov/pdf/501/201506299000000501/201506299000000501.pdf.

[3] *See, e.g.*, Megan Twohey, Russ Buettner and Steve Eder, "Inside the Trump Organization, the Company That Has Run Trump's Big World," NEW YORK TIMES, December 25, 2016, *available at*

14.     Michael D. Cohen is an attorney licensed to practice law in the State of New York and, in 2016,

        was employed by the Trump Organization as executive vice president and counsel to Trump

        Organization chairman and president Donald J. Trump.[4]

15.     Essential Consultants LLC is a limited liability company created by Mr. Cohen in the State of

        Delaware on October 17, 2016.[5]

16.     On January 12, 2018, the *Wall Street Journal* reported that Mr. Cohen arranged for a payment

        of $130,000 to adult film actress Stephanie Clifford, known professionally as "Stormy

        Daniels."[6]

17.     Mr. Cohen worked as "top attorney" at the Trump Organization "from 2007 until after the

        election," serves as Donald J. Trump's personal attorney, and referred to himself in a January

---

https://www.nytimes.com/2016/12/25/us/politics/trump-organization-business.html; *see also* Trump Organization LLC, New York State Department of State, Division of Corporations Entity Information, *available at* https://appext20.dos.ny.gov/corp_public/CORPSEARCH.ENTITY_INFORMATION?p_token=BB2254921C9A677 4118FF322870EBFF5B7047890C19A60AE8F7339397146C73F88AEB3F466B181345BF425299FAA4917&p_na meid=412D34A4B6E8C483&p_corpid=E8EB48F78472048A&p_captcha=17512&p_captcha_check=BB225492 1C9A6774118FF322870EBFF5B7047890C19A60AE8F7339397146C73F6B4DBE74546CDD460032599C1CF0E 2A5&p_entity_name=trump%20organization&p_name_type=A&p_search_type=BEGINS&p_srch_results_pag e=0.

[4] *See* Attorney Detail, New York State Unified Court System, Michael Dean Cohen, *available at* http://iapps.courts.state.ny.us/attorney/AttorneyDetails?attorneyId=ROkQI3NU31LJo1kGBolG4Q%3D%3D; *see also* Rosalind S. Helderman, "Michael Cohen will stay Trump's personal attorney — even in the White House," NEW YORK TIMES, January 19, 2017, *available at* https://www.washingtonpost.com/news/post-politics/wp/2017/01/19/michael-cohen-special-counsel-to-donald-trump-will-follow-him-to-washington/?utm_term=.aeb9eefa22d3.

[5] *See* Essential Consultants LLC, State of Delaware Limited Liability Company Certificate of Formation, October 17, 2016, *available at* http://online.wsj.com/public/resources/documents/Essential_Consultants_01_12_17.pdf.
[6] Michael Rothfeld and Joe Palazzolo, "Trump Lawyer Arranged $130,000 Payment for Adult-Film Star's Silence," WALL STREET JOURNAL, January 12, 2018, *available at* https://www.wsj.com/articles/trump-lawyer-arranged-130-000-payment-for-adult-film-stars-silence-1515787678 .

2017 interview as the "fix-it guy."[7] Mr. Cohen was an agent of Mr. Trump and the Trump

Organization in October 2016.

18.    According to the *Wall Street Journal*, Ms. Clifford has alleged that she had a sexual encounter

with Mr. Trump in 2006 and "had been in talks with ABC's 'Good Morning America' in the fall

of 2016 about an appearance to discuss Mr. Trump."[8]

19.    This payment of $130,000 was part of a nondisclosure agreement by which Ms. Clifford would

be precluded from publicly discussing the alleged sexual encounters between her and Mr.

Trump.[9]

20.    Although the alleged sexual affair between Mr. Trump and Ms. Clifford occurred in 2006, the

nondisclosure agreement was reached less than one month before the 2016 Presidential

election.[10]

21.    The *Wall Street Journal* explained:

> The agreement with Ms. Clifford came as the Trump campaign confronted allegations
> from numerous women who described unwanted sexual advances and alleged assaults
> by Mr. Trump. In October 2016, the Washington Post published a videotape made, but
> never aired, by NBC's "Access Hollywood" in which Mr. Trump spoke of groping
> women.[11]

22.    On February 13, 2018, the *New York Times* reported that Mr. Cohen told the newspaper he

"had paid $130,000 out of his own pocket" and that "[n]either the Trump Organization nor the

---

[7] *Id.*

[8] *Id.*

[9] *Id.*

[10] *Id.*

[11] *Id.*

Trump campaign was a party to the transaction with Ms. Clifford, and neither reimbursed [him]

for the payment, either directly or indirectly[.]"[12]

23. On February 14, 2018, the *Washington Post* quoted Mr. Cohen's statement, first reported by

the *New York Times*, as:

> I am Mr. Trump's longtime special counsel and I have proudly served in that role for
> more than a decade[.] . . . In a private transaction in 2016, I used my own personal funds
> to *facilitate* a payment of $130,000 to Ms. Stephanie Clifford. Neither the Trump
> Organization nor the Trump campaign was a party to the transaction with Ms. Clifford,
> and neither reimbursed me for the payment, either directly or indirectly.[13]

24. In a February 14, 2018, follow-up story the *New York Times* reported that Mr. Cohen had told

the newspaper that "he had used his own funds to *facilitate* the payment to the actress."[14] Mr.

Cohen "declined to answer questions about whether Mr. Trump had reimbursed him [or]

whether the two men had made any arrangement at the time of the payment[.]"[15]

25. On March 5, 2018, the *Wall Street Journal* reported that Mr. Cohen's payment to Ms. Clifford

was received by Ms. Clifford on October 27, 2016—12 days before the presidential election—

and that "Mr. Cohen said he missed two deadlines earlier that month to make the $130,000

payment to Ms. Clifford *because he couldn't reach Mr. Trump in the hectic final days of the*

---

[12] Maggie Haberman, "Michael D. Cohen, Trump's Longtime Lawyer, Says He Paid Stormy Daniels Out of His Own Pocket," NEW YORK TIMES, February 13, 2018, *available at*
https://www.nytimes.com/2018/02/13/us/politics/stormy-daniels-michael-cohen-trump.html.

[13] Mark Berman, "Longtime Trump attorney says he made $130,000 payment to Stormy Daniels with his money," WASHINGTON POST, February 14, 2018 (emphasis added), *available at*
https://www.washingtonpost.com/news/post-nation/wp/2018/02/14/longtime-trump-attorney-says-he-made-130000-payment-to-stormy-daniels-with-his-money/?utm_term=.a308d0220a5f.

[14] Maggie Haberman and Charlie Savage, "Trump Lawyer's Payment to Porn Star Raises New Questions," NEW YORK TIMES, February 14, 2018 (emphasis added), *available at*
https://www.nytimes.com/2018/02/14/us/politics/stormy-daniels-michael-cohen-trump.html.

[15] *Id.*

***presidential campaign***."[16] And "[a]fter Mr. Trump's victory, Mr. Cohen complained to friends

that ***he had yet to be reimbursed*** for the payment to Ms. Clifford[.]"[17]

26.     On March 6, 2018, Stephanie Clifford filed a complaint for declaratory relief against Donald J.

Trump and Essential Consultants LLC in California superior court in Los Angeles County,

challenging the validity of the October 2016 nondisclosure agreement between Ms. Clifford,

Essential Consultants LLC and Donald J. Trump—on the ground that Donald J. Trump had not

signed the agreement.[18]

27.     In the complaint, Ms. Clifford alleges that in October 2016, around the time that the *Access*

*Hollywood* tape was made public, she "sought to share details concerning her relationship and

encounters with Mr. Trump with various media outlets."[19]

28.     Ms. Clifford further alleges: "As a result of Ms. Clifford's efforts aimed at publicly disclosing her

story and her communications with various media outlets, Ms. Clifford's plans came to the

attention of Mr. Trump and his campaign, including Mr. Michael Cohen[.]"[20]

> After discovering Ms. Clifford's plans, ***Mr. Trump***, with the assistance of his attorney
> Mr. Cohen, ***aggressively sought to silence Ms. Clifford*** as part of an effort to avoid her
> telling the truth, ***thus helping to ensure he won the Presidential Election***. Mr. Cohen

---

[16] Joe Palazzolo and Michael Rothfeld, "Trump Lawyer's Payment to Stormy Daniels Was Reported as Suspicious by Bank," WALL STREET JOURNAL, March 5, 2018 (emphasis added), *available at*

https://www.wsj.com/articles/trump-lawyers-payment-to-porn-star-was-reported-as-suspicious-by-bank-1520273701.

[17] *Id.* (emphasis added).

[18] Complaint, *Clifford v. Trump*, March 6, 2018, Superior Court for the State of California for the County of Los Angeles, *available at* https://assets.documentcloud.org/documents/4403879/Filed-Complaint.pdf (Attached as APPENDIX 1).

[19] *Id.* at ¶14.

[20] *Id.* at ¶15.

> subsequently prepared a draft non-disclosure agreement and presented it to Ms.
> Clifford . . . .[21]

29.   According to Ms. Clifford's complaint, Essential Consultants LLC "was created by Mr. Cohen

*with Mr. Trump's knowledge* for one purpose—to hide the true source of funds to be used to

pay Ms. Clifford, thus further insulating Mr. Trump from later discovery and scrutiny."[22]

30.   According to Ms. Clifford's complaint, the nondisclosure agreement, as drafted, was between

three parties, Ms. Clifford (using the alias Peggy Peterson), Essential Consultants LLC and

Donald J. Trump (using the alias David Dennison). The agreement "imposed various conditions

and obligations not only on Ms. Clifford, but also on Mr. Trump" and the agreement "required

the signatures of all parties to the agreement, including that of Mr. Trump."[23]

> On or about October 28, 2016, only days before the election, two of the parties signed
> the Hush Agreement—Ms. Clifford and Mr. Cohen (on behalf of [Essential Consultants
> LLC]). Mr. Trump, however, did not sign the agreement, thus rendering it legally null
> and void and of no consequence. On information and belief, despite having detailed
> knowledge of the Hush Agreement and its terms, including the proposed payment of
> monies to Ms. Clifford and the routing of those monies through [Essential Consultants
> LLC], Mr. Trump purposely did not sign the agreement so he could later, if need be,
> publicly disavow any knowledge of the Hush Agreement and Ms. Clifford.[24]

31.   Ms. Clifford's complaint explains that, under Rule 1.4 of New York Rules of Professional

Conduct governing attorneys, Mr. Cohen was required "*at all times* to promptly communicate

all material information relating to the [nondisclosure agreement] to Mr. Trump" and to

"reasonably consult with [Mr. Trump] about the means by which [his] objectives are to be

---

[21] *Id.* at ¶16 (emphasis added).

[22] *Id.* at ¶17 (emphasis added).

[23] *Id.* at ¶21.

[24] *Id.* at ¶22.

accomplished" and to "keep [Mr. Trump] reasonably informed about the status of the

matter."[25]

> Accordingly, unless Mr. Cohen flagrantly violated his ethical obligations and the most
> basic rules governing his license to practice law (which is highly unlikely), there can be
> no doubt that Mr. Trump *at all times* has been fully aware of the negotiations with Ms.
> Clifford, the existence and terms of the Hush Agreement, the payment of the
> \$130,000.00, the use of [Essential Consultants LLC] as a conduit, and the recent
> attempts to intimidate and silence Ms. Clifford by way of the bogus arbitration
> proceeding.[26]

32.    On March 9, 2018, *NBC News* reported that Ms. Clifford's attorney had provided the news

outlet with an email showing that Mr. Cohen used his Trump Organization corporate email, not

his personal email account, to communicate with First Republic Bank to arrange the \$130,000

payment to Ms. Clifford through Essential Consultants LLC.[27]

33.    On March 9, 2018, Mr. Cohen reportedly explained the October 2016 financial transaction to

*ABC News* as follows: "I transferred money from one account at [my] bank into my LLC and

then wired said funds to Ms. Clifford's attorney in Beverly Hills, California" and that "the funds

were taken from my home equity line and transferred internally to my LLC account in the same

bank."[28]

---

[25] *Id.* at ¶31.

[26] *Id.* at ¶32.

[27] Sarah Fitzpatrick and Tracy Connor, "Michael Cohen used Trump Org. email in Stormy Daniels arrangements," NBC NEWS, March 9, 2018, *available at* https://www.nbcnews.com/news/us-news/michael-cohen-used-trump-org-email-stormy-daniels-arrangements-n855021?cid=sm_npd_nn_tw_ma (Cohen email attached as APPENDIX 2).

[28] Tom Llamas, Zunaira Zaki, Katherine Faulders, Christina Peck, "Michael Cohen dismisses claims of email as proof that Trump knew about payment to porn star to buy her silence," ABC NEWS, March 9, 2018, *available at* http://abcnews.go.com/Politics/michael-cohen-dismisses-claims-email-proof-trump-knew/story?id=53642094.

## SUMMARY OF THE LAW

### "CONTRIBUTION" AND "EXPENDITURE" DEFINITIONS AND RESTRICTIONS

34.    The term "contribution" is defined in FECA to mean "any gift, subscription, loan, advance, or
       deposit of money or anything of value made by any person *for the purpose of influencing any
       election for Federal office*." 52 U.S.C. § 30101(8)(A)(i) (emphasis added); *see also* 11 C.F.R.
       §§ 100.51–100.56.

35.    As used in the definition of "contribution," the phrase "anything of value" includes "all in-kind
       contributions." The "provision of any goods or services without charge or at a charge that is
       less than the usual and normal charge for such goods or services is a contribution." 11 C.F.R. §
       100.52(d)(1).

36.    The term "expenditure" is defined in FECA to mean "any purchase, payment, distribution, loan,
       advance, deposit, or gift or money or anything of value, made by any person *for the purpose of
       influencing any election for Federal office*." 52 U.S.C. § 30101(9)(A)(i) (emphasis added); *see
       also* 11 C.F.R. §§ 100.110–100.114.

37.    As used in the definition of "expenditure," the phrase "anything of value" includes "all in-kind
       contributions." The "provision of any goods or services without charge or at a charge that is
       less than the usual and normal charge for such goods or services is an expenditure." 11 C.F.R. §
       100.111(e)(1).

38.     FECA limits to $2,700 per election the amount of a contribution that a person can make to a

        federal candidate. 52 U.S.C § 30116(a)(1).[29]

39.     FECA prohibits a corporation or labor union from making a contribution to a federal candidate

        and prohibits a candidate from accepting or receiving a contribution from a corporation or

        labor union. 52 U.S.C. § 30118(a).

40.     Commission regulation makes clear that the prohibition on corporate contributions includes a

        prohibition on the use of corporate resources to facilitate the making of contributions:

> Corporations and labor organizations (including officers, directors or other
> representatives acting as agents of corporations and labor organizations) are
> prohibited from facilitating the making of contributions to candidates or political
> committees . . . . Facilitation means using corporate or labor organization resources or
> facilities to engage in fundraising activities in connection with any federal election[.]

        11 C.F.R. § 114.2(f)(1).[30]

41.     Commission regulation provides that a contribution by a limited liability company (LLC) that

        elects to be treated as a partnership by the Internal Revenue Service shall be considered a

        partnership for the purpose of the FECA contribution limits. 11 C.F.R. § 110.1(g)(2). An LLC that

        elected to be treated as a corporation by the Internal Revenue Service shall be considered a

        corporation for the purpose of the FECA corporate contribution prohibition. 11 C.F.R. §

        110.1(g)(3).

---

[29] The statutory limits are $2,000 and $25,000, respectively, and are indexed for inflation in odd-numbered
years. *See* 52 U.S.C. § 30116(c); *see also* FEC, "Price Index Adjustments for Contribution and Expenditure
Limitations and Lobbyist Bundling Disclosure Threshold," 80 Fed. Reg. 5750, 5752, February 3, 2015 (adjusting
contribution limit to $2,700 for 2015-16 election cycle), *available at*
https://transition.fec.gov/law/cfr/ej_compilation/2015/notice2015-01.pdf.

[30] Commission regulation exempts from the definition of "contribution" certain **uncompensated** Internet
activities, including "sending or forwarding electronic messages." *See* 11 C.F.R. § 100.94.

42.     Generally, federal candidates may make "unlimited expenditures from personal funds." 11

        C.F.R. § 100.10.

43.     When a federal candidate receives a contribution or makes any disbursement in connection

        with her campaign, the candidate "shall be considered as having received such

        contribution . . . or made such disbursement as an agent of his or her authorized

        committee(s)." 11 C.F.R. § 101.2(a); see also 11 C.F.R. §§ 102.7(d), 109.3(b) and 300.2(b).

44.     Candidates and political committees are prohibited from knowingly accepting any

        contribution or making any expenditure in violation of federal law. 11 C.F.R. § 110.9. Similarly,

        officers and employees of political committees are prohibited from knowingly accepting a

        contribution made for the benefit or use of a candidate, or making any expenditure on behalf of

        a candidate, in violation of any limitation imposed on contributions and expenditures. 11 C.F.R.

        § 110.9.

## COORDINATED SPENDING

45.     Any expenditure "made by any person in cooperation, consultation, or concert, with, or at the

        request or suggestion of, a candidate, his authorized political committees, or their agents" is

        considered a contribution to such candidate. 52 U.S.C. 30116(a)(7)(B)(i).

46.     Similarly, any expenditure made by any person, other than a candidate or candidate's

        committee, "in cooperation, consultation, or concert with, or at the request or suggestion of, a

        national, State, or local committee of a political party" is considered a contribution to such

        party committee. 52 U.S.C. 30116(a)(7)(B)(ii).

47.    "Coordinated" means made in cooperation, consultation or concert with, or at the request or

suggestion of, a candidate, a candidate's authorized committee or an agent thereof. 11 C.F.R. §

109.20(a). ***Any expenditure that is "coordinated" with a candidate*** or political party

committee, but that is not made for a "coordinated communication" under 11 C.F.R. § 109.21,

***is an in-kind contribution to the "candidate*** or political party committee with whom or with

which it was coordinated ***and must be reported as an expenditure made by that candidate*** or

political party committee" unless otherwise exempted. 11 C.F.R. § 109.20(b) (emphasis

added).

48.    In its 2003 *Explanation and Justification* for 11 C.F.R. § 109.20, the Commission made clear

that, whereas coordinated expenditures for communications—*i.e.,* political ads—are regulated

by 11 C.F.R. § 109.21, coordinated expenditures for things other than political ads are regulated

by 11 C.F.R. § 109.20. The Commission explained:

> One commenter asserted that only express advocacy communications can constitute
> coordination, and urged the Commission to provide explicitly that non-communication
> expenditures will not be considered to be coordination. The Commission disagrees with
> the commenter's assertion because Congress has not so limited the statutory
> provisions relating to coordination.[31]

49.    Commission regulations provide that "agent" means "any person who has actual authority,

either express or implied," to engage in campaign spending and other specified campaign-

related activities. *See* 11 C.F.R. §§ 109.3 and 300.2(b).

---

[31] FEC, *Coordinated and Independent Expenditures*, Final Rules and Explanation and Justification, 68 Fed. Reg.
421, 425-26 (January 3, 2003).

## REPORTING AND DISCLOSURE REQUIREMENTS

50.   The authorized committee of a candidate for federal office must report to the Commission the

   identification of each person who makes a contribution to the committee with an aggregate

   value in excess of $200 within an election cycle. 52 U.S.C. § 30104(b)(3)(A).

51.   The authorized committee of a candidate for federal office must report as a designated

   category of receipt "contributions from the candidate." 11 C.F.R. § 104.3(a)(3)(ii).

52.   The authorized committee of a candidate for federal office must report to the Commission the

   name and address of each person to whom an expenditure in an aggregate amount in excess of

   $200 within the calendar year is made by the committee. 52 U.S.C. § 30104(b)(5)(A).

53.   Expenditures of a candidate's personal funds must be reported to the Commission as in-kind

   contributions to the candidate's campaign. *See, e.g.,* FEC Advisory Opinion 1990-09.

## CAUSES OF ACTION

## COUNT ONE:

## DONALD J. TRUMP FOR PRESIDENT, INC. FAILED TO REPORT RECEIPT OF A $130,000 IN-KIND CONTRIBUTION AS WELL AS A $130,000 EXPENDITURE IN VIOLATION OF FECA

54.   Paragraphs 1 through 53 are incorporated herein.

55.   In October 2016, Michael D. Cohen was an employee and agent of Donald J. Trump. Based on

   published reports, there is reason to believe that Mr. Cohen's payment of $130,000 to Ms.

   Stephanie Clifford was for the purpose of influencing the 2016 presidential election and,

   therefore, constituted an "expenditure" by Mr. Trump or an "expenditure" coordinated with

Mr. Trump—and, therefore, constituted an in-kind "contribution" to and an "expenditure" by Donald J. Trump and Donald J. Trump for President, Inc.

56. When a federal candidate receives a contribution or makes any disbursement in connection with his campaign, the candidate is considered to have received such contribution or made such disbursement as an agent of his authorized committee. 11 C.F.R. § 101.2(a).

57. Under FECA, Donald J. Trump for President, Inc. was required to report to the Commission the identification of each person who makes a contribution to the committee with an aggregate value in excess of $200 within an election cycle. 52 U.S.C. § 30104(b)(3)(A).

58. Under FECA, Donald J. Trump for President, Inc. was required to report to the Commission the name and address of each person to whom an expenditure in an aggregate amount in excess of $200 within the calendar year is made by the committee. 52 U.S.C. § 30104(b)(5)(A).

59. Based on published reports and review of FEC records, there is reason to believe that Donald J. Trump for President, Inc. failed to report its receipt of this $130,000 contribution in violation of 52 U.S.C. § 30104(b)(3)(A).

60. Based on published reports and review of FEC records, there is reason to believe that Donald J. Trump for President, Inc. failed to report this $130,000 expenditure in violation of 52 U.S.C. § 30104(b)(5)(A).

## COUNT TWO:

## MICHAEL D. COHEN MADE, AND DONALD J. TRUMP AND DONALD J. TRUMP FOR PRESIDENT, INC. RECEIVED, A CONTRIBUTION IN VIOLATION OF FECA

61. Paragraphs 1 through 53, and 55 through 60 are incorporated herein.

62.     In October 2016, Michael D. Cohen was an agent and employee of Donald J. Trump. Based on
        published reports, there is reason to believe that Donald J. Trump was a party to the
        nondisclosure agreement negotiated with Ms. Stephanie Clifford that led to the payment of
        $130,000 to Ms. Clifford.

63.     Based on published reports, there is reason to believe that Mr. Cohen's payment of $130,000
        to Ms. Stephanie Clifford was for the purpose of influencing the 2016 presidential election and,
        therefore, constituted an "expenditure" by Mr. Trump or an "expenditure" coordinated with
        Mr. Trump—and, therefore, constituted an in-kind "contribution" to and an "expenditure" by
        Donald J. Trump and Donald J. Trump for President, Inc.

64.     When a federal candidate receives a contribution or makes any disbursement in connection
        with his campaign, the candidate is considered to have received such contribution or made
        such disbursement as an agent of his authorized committee. 11 C.F.R. § 101.2(a).

65.     Federal law prohibits individuals from making contributions to federal candidates in excess of
        $2,700 per election. 52 U.S.C. § 30116(a)(1)(A).

66.     Based on published reports, there is reason to believe that Michael D. Cohen was the source of
        the $130,000 paid to Ms. Clifford.

67.     Based on published reports, there is reason to believe that Michael D. Cohen made, and Donald
        J. Trump and Donald J. Trump for President, Inc. received, a contribution in violation of the
        $2,700 limit established by 52 U.S.C. § 30116(a)(1)(A).

## COUNT THREE:

## ESSENTIAL CONSULTANTS LLC MADE, AND DONALD J. TRUMP AND DONALD J. TRUMP FOR PRESIDENT, INC. RECEIVED, A CORPORATE CONTRIBUTION IN VIOLATION OF FECA

68.  Paragraphs 1 through 53, 55 through 60, and 62 through 67 are incorporated herein.

69.  In October 2016, Michael D. Cohen was an agent and employee of Donald J. Trump. Based on

published reports, there is reason to believe that Donald J. Trump was a party to the

nondisclosure agreement negotiated with Ms. Stephanie Clifford that led to the payment of

$130,000 to Ms. Clifford.

70.  Based on published reports, there is reason to believe that Mr. Cohen's payment of $130,000

to Ms. Clifford was for the purpose of influencing the 2016 presidential election and, therefore,

constituted an "expenditure" by Mr. Trump or an "expenditure" coordinated with Mr. Trump—

and, therefore, constituted an in-kind "contribution" to and an "expenditure" by Donald J.

Trump and Donald J. Trump for President, Inc.

71.  When a federal candidate receives a contribution or makes any disbursement in connection

with his campaign, the candidate is considered to have received such contribution or made

such disbursement as an agent of his authorized committee. 11 C.F.R. § 101.2(a).

72.  Federal law prohibits individuals from making contributions to federal candidates in excess of

$2,700 per election. 52 U.S.C. § 30116(a)(1)(A).

73.  Federal law prohibits corporations from making contributions to federal candidates. 52 U.S.C.

§ 30118(a).

74.   Based on published reports, there is reason to believe that Essential Consultants paid

$130,000 to Ms. Clifford.

75.   Pursuant to 11 C.F.R. § 110.1(g), if Essential Consultants LLC elects to be treated as a

partnership by the Internal Revenue Service, then Essential Consultants LLC made, and Donald

J. Trump and Donald J. Trump for President, Inc. received, a contribution in violation of the

$2,700 limit established by 52 U.S.C. § 30116(a)(1)(A).

76.   Pursuant to 11 C.F.R. § 110.1(g), if Essential Consultants LLC elects to be treated as a

corporation by the Internal Revenue Service, then Essential Consultants LLC made, and Donald

J. Trump and Donald J. Trump for President, Inc. received, a corporate contribution in violation

of 52 U.S.C. § 30118(a).

## COUNT FOUR:

## THE TRUMP ORGANIZATION FACILITATED A CONTRIBUTION TO DONALD J. TRUMP AND DONALD J. TRUMP FOR PRESIDENT, INC. IN VIOLATION OF FECA

77.   Paragraphs 1 through 53, 55 through 60, 62 through 67, and 69 through 76 are incorporated

herein.

78.   In October 2016, Michael D. Cohen was an agent and employee of Donald J. Trump and the

Trump Organization. Based on published reports, there is reason to believe that Donald J.

Trump was a party to the nondisclosure agreement negotiated with Ms. Stephanie Clifford that

led to the payment of $130,000 to Ms. Clifford.

79.   Based on published reports, there is reason to believe that Mr. Cohen's payment of $130,000

to Ms. Stephanie Clifford was for the purpose of influencing the 2016 presidential election and,

therefore, constituted an "expenditure" by Mr. Trump or an "expenditure" coordinated with

Mr. Trump—and, therefore, constituted an in-kind "contribution" to and an "expenditure" by

Donald J. Trump and Donald J. Trump for President, Inc.

80.    Based on published reports, there is reason to believe that Michael D. Cohen made the

payment of $130,000 to Ms. Stephanie Clifford in his paid capacity as the Trump

Organization's executive vice president and counsel to Trump Organization chairman and

president Donald J. Trump including, but not limited to, the fact that Michael D. Cohen used his

Trump Organization email to facilitate the payment to Ms. Clifford.

81.    Based on published reports, there is reason to believe that the Trump Organization, through its

executive vice president and counsel to Trump Organization chairman and president Donald J.

Trump, facilitated the making of a contribution to Donald J. Trump and Donald J. Trump for

President, Inc., through its payment of salary to Mr. Cohen and through Mr. Cohen's use of

Trump Organization resources, in violation of 11 C.F.R. § 114.2(f)(1) and 52 U.S.C. § 30118(a).

## COUNT FIVE:

## THE TRUMP ORGANIZATION MADE, AND DONALD J. TRUMP AND DONALD J. TRUMP FOR PRESIDENT, INC. RECEIVED, A CORPORATE CONTRIBUTION IN VIOLATION OF FECA

82.    Paragraphs 1 through 53, 55 through 60, 62 through 67, 69 through 76, and 78 through 81 are

incorporated herein.

83.    In October 2016, Michael D. Cohen was an agent and employee of Donald J. Trump. Based on

published reports, there is reason to believe that Donald J. Trump was a party to the

nondisclosure agreement negotiated with Ms. Stephanie Clifford that led to the payment of

$130,000 to Ms. Clifford.

84.    Based on published reports, there is reason to believe that Mr. Cohen's payment of $130,000

to Ms. Stephanie Clifford was for the purpose of influencing the 2016 presidential election and,

therefore, constituted an "expenditure" by Mr. Trump or an "expenditure" coordinated with

Mr. Trump—and, therefore, constituted an in-kind "contribution" to and an "expenditure" by

Donald J. Trump and Donald J. Trump for President, Inc.

85.    In October 2016, Michael D. Cohen was an employee and agent of the Trump Organization.

Based on published reports, there is reason to believe that the Trump Organization reimbursed

Michael D. Cohen for the $130,000 paid to Ms. Clifford.

86.    Federal law prohibits corporations from making contributions to federal candidates. 52 U.S.C.

§ 30118(a).

87.    When a federal candidate receives a contribution or makes any disbursement in connection

with his campaign, the candidate is considered to have received such contribution or made

such disbursement as an agent of his authorized committee. 11 C.F.R. § 101.2(a).

88.    If the Trump Organization reimbursed Michael D. Cohen the $130,000 paid to Ms. Clifford, the

Trump Organization made, and Donald J. Trump and Donald J. Trump for President, Inc.

received, a corporate contribution in violation of 52 U.S.C. § 30118(a).

## COUNT SIX:

## JOHN DOE MADE, AND DONALD J. TRUMP AND DONALD J. TRUMP FOR PRESIDENT, INC. RECEIVED, AN EXCESSIVE OR CORPORATE CONTRIBUTION IN VIOLATION OF FECA

89.   Paragraphs 1 through 53, 55 through 60, 62 through 67, 69 through 76, 78 through 81 and 83 through 88 are incorporated herein.

90.   In October 2016, Michael D. Cohen was an agent and employee of Donald J. Trump. Based on published reports, there is reason to believe that Donald J. Trump was a party to the nondisclosure agreement negotiated with Ms. Stephanie Clifford that led to the payment of $130,000 to Ms. Clifford.

91.   Based on published reports, there is reason to believe that Mr. Cohen's payment of $130,000 to Ms. Stephanie Clifford was for the purpose of influencing the 2016 presidential election and, therefore, constituted an "expenditure" by Mr. Trump or an "expenditure" coordinated with Mr. Trump—and, therefore, constituted an in-kind "contribution" to and an "expenditure" by Mr. Trump's authorized campaign committee, Donald J. Trump for President, Inc.

92.   When a federal candidate receives a contribution or makes any disbursement in connection with his campaign, the candidate is considered to have received such contribution or made such disbursement as an agent of his authorized committee. 11 C.F.R. § 101.2(a).

93.   Federal law prohibits individuals from making contributions to federal candidates in excess of $2,700 per election. 52 U.S.C. § 30116(a)(1)(A).

94.   Federal law prohibits corporations from making contributions to federal candidates. 52 U.S.C. § 30118(a).

95.    Based on published reports, there is reason to believe that John Doe reimbursed Michael D.
       Cohen the $130,000 paid to Ms. Clifford.

96.    If John Doe reimbursed Michael D. Cohen the $130,000 paid to Ms. Clifford and John Doe is an
       individual, then John Doe made, and Donald J. Trump and Donald J. Trump for President, Inc.
       received, a contribution in violation of the $2,700 limit established by 52 U.S.C.
       § 30116(a)(1)(A).

97.    If John Doe reimbursed Michael D. Cohen the $130,000 paid to Ms. Clifford and John Doe is a
       corporation, then John Doe made, and Donald J. Trump and Donald J. Trump for President, Inc.
       received, a corporate contribution in violation of 52 U.S.C. § 30118(a).

## PRAYER FOR RELIEF

98.    Wherefore, the Commission should find reason to believe that Donald J. Trump, Donald J.
       Trump for President, Inc., the Trump Organization, Michael D. Cohen, Essential Consultants LLC
       and/or John Doe violated 52 U.S.C. § 30101, *et seq.*, and conduct an immediate investigation
       under 52 U.S.C. § 30109(a)(2). Further, the Commission should determine and impose
       appropriate sanctions for any and all violations, should enjoin respondent(s) from any and all
       violations in the future, and should impose such additional remedies as are necessary and
       appropriate to ensure compliance with the FECA.

March 12, 2018

                                        Respectfully submitted,

                                        _____

                                        Common Cause, by

Paul S. Ryan
805 Fifteenth Street, NW, Suite 800
Washington, DC 20005
(202) 833-1200


_____

Paul S. Ryan
805 Fifteenth Street, NW, Suite 800
Washington, DC 20005
(202) 833-1200

## VERIFICATION

The complainants listed below hereby verify that the statements made in the attached

Complaint are, upon their information and belief, true. Sworn pursuant to 18 U.S.C. § 1001.

**For Complainants Common Cause and Paul S. Ryan**

Paul S. Ryan

Sworn to and subscribed before me this 12th day of March 2018.

Karen B. Watson

Notary Public



# APPENDIX 1

MUR731300047

COPY

1  Michael J. Avenatti, Bar No. 206929
2  AVENATTI & ASSOCIATES, APC
   mavenatti@eoalaw.com
3  520 Newport Center Drive, Suite 1400
   Newport Beach, CA 92660
4  Tel:  (949) 706-7000
   Fax:  (949) 706-7050
5
6  Attorneys for Plaintiff Stephanie Clifford
   a.k.a. Stormy Daniels a.k.a. Peggy Peterson
7

CONFORMED COPY
ORIGINAL FILED
Superior Court of California
County of Los Angeles

MAR 0 6 2018

Sherri R. Carter, Executive Officer/Clerk
By: Glorietta Robinson, Deputy

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                    **FOR THE COUNTY OF LOS ANGELES**

10

11 | STEPHANIE CLIFFORD a.k.a. STORMY          Case No.        BC 6 9 6 5 6 8
   | DANIELS a.k.a. PEGGY PETERSON, an
12 | individual,
                                                **COMPLAINT FOR DECLARATORY**
13 |          Plaintiff,                         **RELIEF**
14
   |          vs.
15
   | DONALD J. TRUMP a.k.a. DAVID DENNISON,
16 | an individual, ESSENTIAL CONSULTANTS,
   | LLC, a Delaware Limited Liability Company, and
17 | DOES 1 through 10, inclusive
18
   |          Defendants.
19
20
21
22
23
24
25
26
27
28

Ex. 2_027

Plaintiff Stephanie Clifford a.k.a. Stormy Daniels a.k.a. Peggy Peterson ("Ms. Clifford" or "Plaintiff") hereby alleges the following:

## THE PARTIES

1. Plaintiff Ms. Clifford, an individual, is a resident of the State of Texas.

2. Defendant Donald J. Trump a.k.a. David Dennison ("Mr. Trump"), an individual, is a resident of the District of Columbia (among other places).

3. Defendant Essential Consultants, LLC ("EC") is a Delaware limited liability company formed on October 17, 2016.

4. Mr. Trump and EC together shall be referred to hereafter as "Defendants."

5. The true names and capacities of the defendants DOES 1 through 10, inclusive, whether individual, plural, corporate, partnership, associate or otherwise, are not known to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff will seek leave of court to amend this Complaint to show the true names and capacities of defendants DOES 1 through 10, inclusive, when the same have been ascertained.

6. Plaintiff is also informed and believe and thereon alleges that DOES 1 to 10 were the agents, principals, and/or alter egos of Defendants, at all times herein relevant, and that they are therefore liable for the acts and omissions of Defendants.

## JURISDICTION AND VENUE

7. Jurisdiction for this matter properly lies with this Court because Plaintiff seeks declaratory relief.

8. Venue is appropriate in the County of Los Angeles, and this Court has personal jurisdiction over Defendants and each of them, by reason of the fact that, among other things, (a) the alleged agreement that is at issue in this Complaint was purportedly made and negotiated, at least in substantial part, in the County of Los Angeles, and (b) many of the events giving rise to this action arose in California, including within the County of Los Angeles.

Ex. 2_028

1

## FACTUAL BACKGROUND

2

9.      Ms. Clifford began an intimate relationship with Mr. Trump in the Summer of 2006 in

3

Lake Tahoe and continued her relationship with Mr. Trump well into the year 2007. This relationship

4

included, among other things, at least one "meeting" with Mr. Trump in a bungalow at the Beverly

5

Hills Hotel located within Los Angeles County.

6

10.     In 2015, Mr. Trump announced his candidacy for President of the United States.

7

11.     On July 19, 2016, Mr. Trump secured the Republican Party nomination for President.

8

12.     On October 7, 2016, the Washington Post published a video, now infamously known as

9

the *Access Hollywood Tape*, depicting Mr. Trump making lewd remarks about women. In it, Mr.

10

Trump described his attempt to seduce a married woman and how he may start kissing a woman that

11

he and his companion were about to meet. He then added: "I don't even wait. And when you're a

12

star, they let you do it, you can do anything . . ."

13

13.     Within days of the publication of the *Access Hollywood Tape*, several women came

14

forward publicly to tell their personal stories about their sexual encounters with Mr. Trump.

15

14.     Around this time, Ms. Clifford likewise sought to share details concerning her

16

relationship and encounters with Mr. Trump with various media outlets.

17

15.     As a result of Ms. Clifford's efforts aimed at publicly disclosing her story and her

18

communications with various media outlets, Ms. Clifford's plans came to the attention of Mr. Trump

19

and his campaign, including Mr. Michael Cohen, an attorney licensed in the State of New York. Mr.

20

Cohen worked as the "top attorney" at the Trump Organization from 2007 until after the election and

21

presently serves as Mr. Trump's personal attorney. He is also generally referred to as Mr. Trump's

22

"fixer."

23

16.     After discovering Ms. Clifford's plans, Mr. Trump, with the assistance of his attorney

24

Mr. Cohen, aggressively sought to silence Ms. Clifford as part of an effort to avoid her telling the

25

truth, thus helping to ensure he won the Presidential Election. Mr. Cohen subsequently prepared a

26

draft non-disclosure agreement and presented it to Ms. Clifford and her attorney (the "Hush

27

Agreement"). Ms. Clifford at the time was represented by counsel in California whose office is

28

located in Beverly Hills, California within the County of Los Angeles.

**Ex. 2_029**

17.     The parties named in the Hush Agreement were Ms. Clifford, Mr. Trump, and Essential Consultants LLC.  As noted above, Essential Consultants LLC ("EC") was formed on October 17, 2016, just weeks before the 2016 presidential election.  On information and belief, EC was created by Mr. Cohen with Mr. Trump's knowledge for one purpose – to hide the true source of funds to be used to pay Ms. Clifford, thus further insulating Mr. Trump from later discovery and scrutiny.

18.     By design of Mr. Cohen, the Hush Agreement used aliases to refer to Ms. Clifford and Mr. Trump.  Specifically, Ms. Clifford was referred to by the alias "Peggy Peterson" or "PP."  Mr. Trump, on the other hand, was referred to by the alias "David Dennison" or "DD."

19.     Attached hereto as Exhibit 1 is a true and correct copy of the Hush Agreement, titled Confidential Settlement Agreement and Mutual Release; Assignment of Copyright and Non-Disparagment [sic] Agreement.  Exhibit 1 is incorporated herein by this reference and made a part of this Complaint as if fully set forth herein.

20.     Attached hereto as Exhibit 2 is a true and correct copy of the draft Side Letter Agreement, which was Exhibit A to the Hush Agreement.  Exhibit 2 is incorporated herein by this reference and made a part of this Complaint as if fully set forth herein.

21.     Importantly, the Hush Agreement imposed various conditions and obligations not only on Ms. Clifford, but also on Mr. Trump.  The agreement also required the signature of all parties to the agreement, including that of Mr. Trump.  Moreover, as is customary, it was widely understood at all times that unless all of the parties signed the documents as required, the Hush Agreement, together with all of its terms and conditions, was null and void.

22.     On or about October 28, 2016, only days before the election, two of the parties signed the Hush Agreement - Ms. Clifford and Mr. Cohen (on behalf of EC).  Mr. Trump, however, did not sign the agreement, thus rendering it legally null and void and of no consequence.  On information and belief, despite having detailed knowledge of the Hush Agreement and its terms, including the proposed payment of monies to Ms. Clifford and the routing of those monies through EC, Mr. Trump purposely did not sign the agreement so he could later, if need be, publicly disavow any knowledge of the Hush Agreement and Ms. Clifford.

Ex. 2_030

23.     Despite Mr. Trump's failure to sign the Hush Agreement, Mr. Cohen proceeded to cause $130,000.00 to be wired to the trust account of Ms. Clifford's attorney. He did so even though there was no legal agreement and thus no written nondisclosure agreement whereby Ms. Clifford was restricted from disclosing the truth about Mr. Trump.

24.     Mr. Trump was elected President of the United States on November 8, 2016.

25.     In January 2018, certain details of the draft Hush Agreement emerged in the news media, including, among other things, the existence of the draft agreement, the parties to the draft agreement, and the $130,000.00 payment provided for under the draft agreement. Also in January 2018, and concerned the truth would be disclosed, Mr. Cohen, through intimidation and coercive tactics, forced Ms. Clifford into signing a false statement wherein she stated that reports of her relationship with Mr. Trump were false.

26.     On or about February 13, 2018, Mr. Cohen issued a public statement regarding Ms. Clifford, the existence of the Hush Agreement, and details concerning the Hush Agreement. He did so without any consent by Ms. Clifford, thus evidencing Mr. Cohen's apparent position (at least in that context) that no binding agreement was in place. Among other things, Mr. Cohen stated: "In a private transaction in 2016, I used my own personal funds to facilitate a payment of $130,000 to Ms. Stephanie Clifford. Neither the Trump Organization nor the Trump campaign was a party to the transaction with Ms. Clifford, and neither reimbursed me for the payment, either directly or indirectly." Mr. Cohen concluded his statement with lawyer speak: "Just because something isn't true doesn't mean that it can't cause you harm or damage. *I will always protect Mr. Trump.*" (emphasis added).

27.     Importantly, at no time did Mr. Cohen claim Ms. Clifford did not have an intimate relationship with Mr. Trump. Indeed, were he to make such a statement, it would be patently false.

28.     Because the agreement was never formed and/or is null and void, no contractual obligations were imposed on any of the parties to the agreement, including any obligations to keep information confidential. Moreover, to the extent any such obligations did exist, they were breached and/or excused by Mr. Cohen and his public statements to the media.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29.     To be clear, the attempts to intimidate Ms. Clifford into silence and "shut her up" in order to "protect Mr. Trump" continue unabated. For example, only days ago on or about February 27, 2018, Mr. Trump's attorney Mr. Cohen surreptitiously initiated a bogus arbitration proceeding against Ms. Clifford in Los Angeles. Remarkably, he did so without even providing Ms. Clifford with notice of the proceeding and basic due process.

30.     Put simply, considerable steps have been taken by Mr. Cohen in the last week to silence Ms. Clifford through the use of an improper and procedurally defective arbitration proceeding hidden from public view. The extent of Mr. Trump's involvement in these efforts is presently unknown, but it strains credibility to conclude that Mr. Cohen is acting on his own accord without the express approval and knowledge of his client Mr. Trump.

31.     Indeed, Rule 1.4 of New York Rules of Professional Conduct governing attorneys has required Mr. Cohen *at all times* to promptly communicate all material information relating to the matter to Mr. Trump, including but not limited to "any decision or circumstance with respect to which [Mr. Trump's] informed consent [was] required" and "material developments in the matter including settlement or plea offers." Moreover, this same Rule required Mr. Cohen *at all times* to "reasonably consult with [Mr. Trump] about the means by which [his] objectives are to be accomplished" and to "keep [Mr. Trump] reasonably informed about the status of the matter."

32.     Accordingly, unless Mr. Cohen flagrantly violated his ethical obligations and the most basic rules governing his license to practice law (which is highly unlikely), there can be no doubt that Mr. Trump *at all times* has been fully aware of the negotiations with Ms. Clifford, the existence and terms of the Hush Agreement, the payment of the $130,000.00, the use of EC as a conduit, and the recent attempts to intimidate and silence Ms. Clifford by way of the bogus arbitration proceeding.

33.     Because there was never a valid agreement and thus, no agreement to arbitrate, any subsequent order obtained by Mr. Cohen and/or Mr. Trump in arbitration is of no consequence or effect.

**Ex. 2_032**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST CAUSE OF ACTION**

**Declaratory Relief**

**(Against all Defendants)**

34.    Plaintiff restates and re-alleges each and every allegation in Paragraphs 1 through 33 above as if fully set forth herein.

35.    This action concerns the legal significance, if any, of the documents attached hereto as Exhibit 1, entitled Confidential Settlement Agreement and Mutual Release; Assignment of Copyright and Non-Disparagment [sic] Agreement, and Exhibit 2, entitled Side Letter Agreement.

36.    California Code of Civil Procedure section 1060 authorizes declaratory relief for any person who desires a declaration of rights or duties with respect to one another. In cases of actual controversy relating to the legal rights and duties of the respective parties, such a person may seek a judicial declaration of his or her rights and duties relative to an instrument or contract, or alleged contract, including a determination of any question of construction or validity arising under the instrument or contract, or alleged contract. This includes a determination of whether a contract was ever formed.

37.    An actual controversy exists between Plaintiff and Defendants as to their rights and duties to each other. Accordingly, a declaration is necessary and proper at this time.

38.    Specifically, Plaintiff seeks an order of this Court declaring that the agreements in the forms set out in Exhibits 1 and 2 between Plaintiff and Defendants were never formed, and therefore do not exist, because, among other things, Mr. Trump never signed the agreements. Nor did Mr. Trump provide any other valid consideration. He thus never assented to the duties, obligations, and conditions the agreements purportedly imposed upon him. Plaintiff contends that, as a result, she is not bound by any of the duties, obligations, or conditions set forth in Exhibits 1 and 2. Moreover, as a further result, there is no agreement to arbitrate between the parties.

39.    In the alternative, Plaintiff seeks an order of this Court declaring that the agreements in the forms set out in Exhibits 1 and 2 are invalid, unenforceable, and/or void under the doctrine of unconscionability. Plaintiff contends that, as a result, she is not bound by any of the duties,

Ex. 2_033

1    obligations, or conditions set forth in Exhibits 1 and 2.  Moreover, as a further result, there is no

2    agreement to arbitrate between the parties.

3        40.      In the further alternative, Plaintiff seeks an order of this Court declaring that the

4    agreements in the forms set out in Exhibits 1 and 2 are invalid, unenforceable, and/or void because

5    they are illegal and/or violate public policy. Plaintiff contends that, as a result, she is not bound by

6    any of the duties, obligations, or conditions set forth in Exhibits 1 and 2.  Moreover, as a further result,

7    there is no agreement to arbitrate between the parties.

8        41.      Defendants dispute these contentions.

9        42.      Accordingly, Ms. Clifford desires a judicial determination of her rights and duties with

10   respect to the alleged agreements in the forms set out in Exhibits 1 and 2.

11

12                                       **PRAYER FOR RELIEF**

13       WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, declaring

14   that no agreement was formed between the parties, or in the alternative, to the extent an agreement

15   was formed, it is void, invalid, or otherwise unenforceable.

16

17                                    **ON THE FIRST CAUSE OF ACTION**

18       1.      For a judgment declaring that no agreement was formed between the parties, or in the

19   alternative, to the extent an agreement was formed, it is void, invalid, or otherwise unenforceable.

20       2.      For costs of suit; and

21       3.      For such other and further relief as the Court may deem just and proper.

22

23   DATED: March 6, 2018                         AVENATTI & ASSOCIATES, APC

24

25

26                                                MICHAEL J. AVENATTI
                                                  Attorneys for Plaintiff
27

28

                                           -7-
                                       **COMPLAINT**

**Ex. 2_034**

# APPENDIX 2

| From: | Michael Cohen |
| To: | Keith Davidson |
| Subject: | Fwd: FW: First Republic Bank Transfer |
| Date: | October 26, 2016 1:51:11 PM |

---------- Forwarded message ----------
From: **Michael Cohen** <mcohen@trumporg.com>
Date: Wed, Oct 26, 2016 at 4:49 PM
Subject: FW: First Republic Bank Transfer
To: "

**From:** Rappaport, Elizabeth [mailto:erappaport@firstrepublic.com]
**Sent:** Wednesday, October 26, 2016 4:15 PM
**To:** Michael Cohen <mcohen@trumporg.com>
**Subject:** RE: First Republic Bank Transfer

Good Afternoon Mr. Cohen,

The funds have been deposited into your checking account ending in

Best,

Lizzy

**Elizabeth Rappaport**
Assistant to Gary Farro
First Republic Bank

1230 Ave of the Americas, 3rd Floor | New York, NY 10020