1    **THE UNITED STATES DISTRICT COURT**
     **SOUTHERN DISTRICT OF FLORIDA**
2
           **MIAMI DIVISION**
3
        **CASE NO.:  23-cv-21377-DPG**
4

5

6

7  PRESIDENT DONALD J. TRUMP,      )
                                   )
8            Plaintiff,            )        September 28, 2023
                                   )
9  v.                              )
                                   )        Pages 1 - 75
10 MICHAEL D. COHEN,               )
                                   )
11           Defendant.            )
   _____/
12

13

14
               DISCOVERY HEARING
15
        BEFORE THE HONORABLE EDWIN G. TORRES
16      UNITED STATES CHIEF MAGISTRATE JUDGE
17

18

19

20

21 APPEARANCES:

22 Counsel on behalf of the Plaintiff:

23                 BRITO, PLLC
                   2121 Ponce de Leon Boulevard
24                 Suite 650,
                   Coral Gables, FL 33134
25                 BY:  ALEJANDRO BRITO, ESQ.

```
 1

 2   APPEARANCES CONTINUED:

 3   Counsel on behalf of the Defendant:

 4                         BRODSKY FOTIU-WOJTOWICZ PLLC
                           169 E. Flagler Street
 5   ,                     Suite 1224,
                           Miami, FL 33133
 6                         BY:  BENJAMIN H. BRODSKY, ESQ.
                           BY:  MAX A. EICHENBLATT, ESQ.
 7

 8

 9
                           E. DANYA PERRY PLLC
10                         157 East 86th Street,
                           4th Floor,
11                         New York, NY 10028.
                           BY:  LILIAN M. TIMMERMAN, ESQ.
12                         BY:  E. DANYA PERRY, ESQ. (Telephonically)
                           BY:  ALEXANDER NOCKS, ESQ. (Pro hac vice)
13

14

15

16   Transcribed By:

17                         BONNIE JOY LEWIS, R.P.R.
                           7001 SW 13 Street
18                         Pembroke Pines, FL  33023
                           954-985-8875
19                         caselawrptg@gmail.com

20

21

22

23

24

25
```

1              (Thereupon, the following proceeding was held:)

2              THE COURTROOM DEPUTY:  Calling case of Donald J. Trump

3    versus Michael D. Cohen.

4              I don't have the case number, Judge.  I'm sorry.

5              Counsel, please state your appearances for the record

6    starting with the Plaintiff and I will get the case number,

7    Judge.

8              MR. BRITO:  Good afternoon.  Alejandro Brito on behalf

9    of the Plaintiff.

10             MR. BRODSKY:  Good afternoon, Your Honor.

11             Ben Brodsky and Max Eichenblatt from the law firm of

12   Brodsky Fotiu-Wojtowicz on behalf of the Defendant.

13             With the Court's permission at counsel table with us

14   today is Alexander Nocks from the Perry Law Firm.

15             Mr. Nocks is a member of the Florida Bar, but not yet

16   a member of the Bar of the Southern District of Florida.  He

17   has moved for *pro hac vice* admission.

18             With the Court's permission pending the granting of

19   that application -- sorry.  New York Bar, but not yet Florida

20   Bar.  With the Court's permission he will sit at counsel table.

21   If the Court has any issue with it, he is happy to go back into

22   the gallery.

23             THE COURT:  That's fine.  Thank you.

24             MR.  BRODSKY:  Thank you, Your Honor.

25             MS. TIMMERMANN:  Good afternoon, Your Honor.

1          This is Lilian Timmermann from Perry Law on behalf of

2  Michael Cohen.  And by phone we have Danya Perry also on behalf

3  of Mr. Cohen.

4          THE COURT:  Very good.  Good afternoon.

5          MS. PERRY:  Good afternoon, Your Honor.

6          THE COURTROOM DEPUTY:  And the Case Number, Judge is

7  21377-cv-Judge Gayles.

8          THE COURT:  Good afternoon, everybody.  I reviewed

9  your materials.  Let me pull up the docket here real quick.

10  Let me turn to counsel for the Defendant.

11          Has there been any resolution of anything at this

12  point or where do you want to start?

13          MS. TIMMERMANN:  No, Your Honor.  There has not been a

14  resolution as yet.

15          THE COURT:  Okay.

16          MS. TIMMERMANN:  We are here on our motion to resolve

17  three general discovery violations as well as some of the

18  Court's orders with respect to those discovery violations.

19          However, we did just, a couple of hours ago, hear from

20  counsel that he intends to re-raise the issue of Plaintiff's

21  deposition.  A matter that we think is closed.  There is a

22  court order with respect to it, but we understand from counsel

23  that he intends to raise it again and so we wanted to front

24  load and deal with that first if it is going to be an issue.

25          Of course it is our position that there is no basis

1  for moving the deposition at this point.  It has already been

2  moved twice.  Both times to Plaintiff's preferred date.  The

3  date was set.  As you know, on September 5th we were here

4  before the Court and Your Honor said hell or high water we were

5  going to move forward on this deposition on October 3rd.  That

6  was by agreement.

7       And now we've gotten a couple of indications from

8  counsel that Mr. Trump is getting -- well, squarely about

9  showing up on this date and we just want to make sure that that

10  is still the plan.  We have made our arrangements to be there

11  and the location is set.

12       Fees are paid.  The location venue is paid for, but we

13  still heard from counsel that the trial that has been set since

14  November of 2022, a trial date that has not moved is now going

15  be to used potentially to justify trying to get the October 3rd

16  date moved.

17       If Your Honor prefers we can address that issue first

18  or we can get start with our motion as intended.

19       THE COURT:  You can start on your issue and we will

20  get to that after.

21       MS. TIMMERMANN:  Okay.  Thank you, Your Honor.

22       So as I mentioned, we are here on sort of the four or

23  three issues framed in our motion and we can walk through each.

24       The basic point that we want to address here is that

25  discovery that we have received is deficient and they haven't

 1  followed any of the rules of discovery either in spirit or to

 2  the letter.

 3           We have tried to address these issues.  As you know we

 4  have attempted e-mails back and -- well, mostly forth and not

 5  receiving any responses and so the issues that were live two

 6  weeks ago continue to be so.

 7           And essentially, we are here because we are back in

 8  the same place we were on September 5th.  We don't have

 9  compliant initial disclosures.  We don't have compliant

10  declarations that were ordered on September 11th.

11           THE COURT:  Did the initial disclosures ever come up

12  before?

13           MS. TIMMERMANN:  Yes.  It did come up because we were

14  trying to set a date for them to be exchanged and we by

15  agreement set a date.  The initial disclosures were exchanged

16  but they were deficient.

17           THE COURT:  Okay.  Oh, I see.  They were dated

18  September 5th.  So you have a problem with the disclosure?

19           MS. TIMMERMANN:  If you pull them up, Your Honor, I

20  think it is number two.

21           THE COURT:  Okay.

22           MS. TIMMERMANN:  You can see that on their face they

23  are deficient.  The two witnesses named are the Plaintiff and

24  Defendant, but more just to get to the point, concretely

25  damages, there is no calculation of damages whatsoever.

1   Obviously --

2          THE COURT:  Take one at a time.

3          MS. TIMMERMANN:  Okay.

4          THE COURT:  What is the problem with the designation

5   of the witnesses?

6          MS. TIMMERMANN:  They are incomplete.  There are two

7   witnesses named in the 500 million dollar case.

8          THE COURT:  Isn't that better for you?

9          MS. TIMMERMANN:  It would be.

10         What we are trying to guard against is surprise

11  because here what we are being told is, you know, these are

12  current lists and if others come up we will supplement and we

13  are more than halfway through discovery.  Our trial

14  disclosures, our initial trial disclosures are due in a week, I

15  believe.

16         THE COURT:  I think we are set for fact discovery

17  closes February 14th and dispositive motions are April 12th.

18         MS. TIMMERMANN:  So that's the witnesses.

19         You know, if we have an understanding that that is

20  going to be the totality and there is only going to be new

21  witnesses if they come up now or after this point that is fine,

22  but again it seems plainly deficient.  They did include in

23  their initial disclosures that they would also use any our

24  witnesses.  We disclosed many, many more.

25         The next issue, though, is the damages.

1      THE COURT:  Well, let me deal with that first.  You

2 are only going to have two witnesses at trial?

3      MR. BRITO:  As of right now, Your Honor, the way that

4 I explained it to counsel was in light of the nature of this

5 case, which is in essence, a breach of a contract between two

6 parties.

7           One of which was a lawyer and one of which was the

8 client and the lawyer disclosed information about the client

9 that was either untrue or subject to privilege and

10 confidentiality.  Not only privilege as a matter of law by

11 virtue of the attorney/client relationship, but confidential as

12 a matter of law also by virtue of the written agreement between

13 the parties.

14           The case can be distilled to essentially that.  The

15 Plaintiff acknowledging that there were statements that --

16      THE COURT:  But how do you prove a breach?  Unless, of

17 course, the Defendant admits to certain things, but absent the

18 Defendant admitting something how do you prove breach?

19      MR. BRITO:  Well, I can prove breach because the

20 Defendant not only has to admit it.  He has admitted it.  He

21 has written two books about it.  He issued podcasts about it

22 and has repeated media appearances where he has disclosed such

23 information.

24           We have articulated in the complaint the specific

25 instances of communications that he has divulged that were

1  either confidential, privileged, or simply untrue that those

2  are going to be -- I don't think he can disavow his own books

3  or his own words on his own podcast.

4        And then the Plaintiff will come in and verify that

5  that information was either provided to this Defendant through

6  a relationship of confidentiality, which is going to be easy to

7  establish, or relationship attorney/client privilege which

8  would likewise be easy to establish.

9        And so as I mentioned to counsel --

10       THE COURT:  And as to damages your witness is going to

11 be Mr. Trump?

12       MR. BRITO:  In terms of a fact witness, yes, we have

13 not yet solidified the expert witness.

14       And as I mentioned to counsel, not only do we

15 anticipate the possibility of supplementing, we are required

16 under the rule to supplement if, in fact, there are additional

17 witnesses that we need to supply.

18       And I have mentioned this to the Court on numerous

19 occasions.  We have no intention on turning this into many

20 trials within a trial.  And we do think that the Plaintiff and

21 Defendant could be sufficient in terms of fact witnesses, which

22 is my understanding of what's required to be supplied in the

23 initial disclosures to the extent that you don't already have

24 your expert lined up and ready to go.

25       That is what we did.  They are uncomfortable with that

1   because they have every intention of trying to make this not

2   only many trials within a trial, but to make this as public as

3   possible.

4          And by way of example, Your Honor, when I mentioned to

5   counsel for the Defendant yesterday -- not a few hours ago --

6   about the possibility of the trial in New York posing a problem

7   for our deposition, it took eleven minutes for the New York

8   Post to call me.

9          This was an e-mail from my office to Defendant's

10  office and I have an e-mail from the New York Post within

11  eleven minutes of that asking me if I would like to comment on

12  the fact that we have a hearing before you today where I am

13  going to be bringing up the possibility of moving the

14  deposition.

15         That is what I am confronted with.  And I don't want

16  to make this into a sideshow, but the media is getting fed

17  information routinely about this case which, again, I know I

18  have banged this drum in front of Your Honor proverbially since

19  I was in this case.

20         I am not trying to make this into a media display and

21  this is not supposed to be a sideshow, but that is one of

22  several reasons as to why we are trying to focus on the facts

23  of this case and the facts are such that it is Plaintiff versus

24  Defendant.  We think we can put on that case under those

25  limited parameters.

1        Should the need arise to include more witnesses, we
2  will do what we are required to do under the rules, but right
3  now we believe that it is inappropriate disclosure.  We have
4  commented that to the Defendant.
5        THE COURT:  Okay.  Well, I will accept the
6  representation, but just so you understand, I enforce it pretty
7  strictly on the disclosure for persons with knowledge.
8        And so, for instance, if your expert files a report
9  where he is talking to third parties about damage issues, for
10  example, I am going to strike him if they were not disclosed
11  when they should have been disclosed.  So the expert will be
12  precluded from, in that example hypothetically, the expert will
13  be precluded from talking about that evidence.
14        So I enforce the rule.  So with that caveat if you
15  want to stand on your disclosure, that is fine with me and then
16  whatever happens, it happens.
17        Next topic.
18        MS. TIMMERMANN:  Yes.  Just briefly on the New York
19  Post point, we also got an e-mail from the New York Post asking
20  about this.
21        THE COURT:  Okay.
22        MS. TIMMERMANN:  Just to make that clear.  I am not
23  sure if it was within eleven minutes of its e-mail, but it did
24  happen.
25        THE COURT:  What is the next issue?

1    MS. TIMMERMANN:  The next issue is, you know, the same

2    applies to the documents that they said that they supplied all

3    the documents they are going to supply.  I think if Mr. Brito

4    is standing on this is all he needs to disclose, then that's

5    fine with us.  As you said, Your Honor is going to enforce it

6    strictly.

7    THE COURT:  Yes.  For purposes of my enforcing it, I

8    believe since he is referring to documents produced by the

9    Defendant, there was a production of some 200 pages that you

10   referenced at the last hearing.

11   MS. TIMMERMANN:  Yes.  That was produced by the

12   Plaintiff, yes.

13   THE COURT:  So other than that there is no other

14   responses to be?

15   MR. BRITO:  There are none at this time.  No, Your

16   Honor.

17   THE COURT:  So with that same caveat.

18   What is the next issue?

19   MS. TIMMERMANN:  The next issue is the damages.

20   And on this I think that they are obligated to provide

21   more information than 500 million or substantially more than

22   500 million.  They have to provide a basis for that

23   calculation.  They have given us, you know, their economic

24   damages is divided into actual incidental series of categories,

25   but no numbers or supportive documentation for that.

1          In addition, there is a very clear $74,000 amount that

2    they have identified as a conversion.

3          MR. BRITO:  $74,000.

4          MS. TIMMERMANN:  $74,000 that is also not

5    substantiated and not explained.  The latest e-mail we have

6    from Mr. Brito says that they haven't done any further -- there

7    has been no further particularity given to those.  That's why

8    there is no information, but that sort of suggests that there

9    has been any particularity and there hasn't been.

10          THE COURT:  Okay.  As to C, Mr. Brito?

11          MR. BRITO:  I don't have anything further to add on

12    that point other than what counsel articulated to the Court.

13    We are where we are as it relates to the computation of

14    damages.

15          As I was candid with the Court earlier and I always am

16    with you, we have not gotten to the point where we have an

17    expert to be able to articulate that with any further

18    particularity.  We are in the process of doing that.

19          One of the issues that we are confronted with as it

20    relates to damages is in relation to the case that has been

21    brought by the New York Attorney General as a result of

22    allegations that have been made against Mr. Trump personally as

23    well as his family and his organizations.

24          That having an impact on some of these damages coming

25    -- they stem from some of the disclosures that were made by Mr.

1  Cohen.  Mr. Cohen, essentially, engaging a victory lap this

2  week after the decision by the Justice in New York with respect

3  to summary judgment on those claims.  And essentially, I think

4  his words were you're welcome.  I think that's what he posted

5  on Twitter as a result of that decision.

6          And so we believe based on the information that has

7  been supplied by Mr. Cohen and his own words to that effect

8  that his own testimony has and will continue to impact our

9  damage analysis.

10          Longwinded answer to your very short question, Your

11  Honor, but in essence that is where we are.  It's a work in

12  progress that is being impacted by daily events and

13  ultimately --

14          THE COURT:  I recognize that.

15          But technically, though, now I recognize this as

16  somewhat of an unusual case, you could or can't for purposes of

17  seeing you have to be able to identify a methodology that you

18  would if I called you to trial tomorrow how would you

19  articulate the damages.

20          And so, obviously, you are not going to be able to

21  just say at trial it is 500 million dollars without identifying

22  how the types of categories of damages, the method of injury,

23  and how you come up with that calculation, right?

24          So it is clearly deficient, isn't it?  So what you are

25  saying is you need more time.  Is that what you are saying?

1   MR. BRITO:  I do and I am saying that.

2       And I think consistent with what the Court is allowing

3   us for purposes of expert discovery as well, I think that that

4   is going to have an interplay with that.  But, yes, in a very

5   succinct fashion I think I just need a little bit more time

6   while this is all being flushed out.

7       I think the disclosure is intended to at least

8   generally provide the Defendant with notice of what the value

9   of the claim is from the Plaintiff's perspective and not a

10  premature or early onset of expert disclosure.  We have

11  deadline for expert disclosure.  So those are two different

12  things.

13  THE COURT:  Yes, it is deficient.  You have to break

14  it down in a manner in which you would in front of the jury.

15  That is basically my ruling.

16      So, for example, here you do have some categories in

17  fairness to talk about restitution of profits of compensation,

18  to the extent you know what that is you should identify what

19  that is.  To the extent that you identified the $74,000

20  conversion, you need to explain how that is calculated and what

21  the source of that is.

22  MR. BRITO:  It is in the complaint, but I am happy to

23  articulate that again.

24  THE COURT:  That needs to done.  And as to the actual

25  compensatory damages and certainly can break out the punitive

1  damages, but with respect to actual compensatory and

2  incidentals you have to do that with more specificity.  So

3  Subsection C is clearly deficient.  Under the circumstances

4  expert discovery is ripe now.  It expires March 14th, which

5  means it has to start by the beginning of 2024.

6          And this is not asking for necessarily an expert's

7  final conclusion, but it is a fact question as to what the

8  Plaintiff believes are the damages in the case.  So he has to

9  do that well before the expert period.  And that can be

10  amended, but he has to do that.  So I find that C is sufficient

11  and I will give you another 30 days from today to amend C as

12  well.

13          Now if you want to amend any part of it, obviously you

14  can do that, but the only part that I am specifically finding

15  deficient is C at this point.

16          MR. BRITO:  Your Honor --

17          THE COURT:  So I will grant the motion to compel as to

18  C.

19          MR. BRITO:  Your Honor, may I pick up just where you

20  left off as it relates to the expert?  Because I did notice in

21  the scheduling order, Your Honor did set -- I think it is March

22  that you mentioned for the end of expert discovery.

23          THE COURT:  Right.

24          MR. BRITO:  You listed the expert disclosures in

25  October as opposed to, as you just mentioned, presumably some

1  time in early January.  Is that something that the Court would

2  consider revisiting?  I mean, I can make a motion we can come

3  before you specifically on that and I don't want to sandbag --

4      THE COURT:  Did I set an expert disclosure in October

5  or did Judge Gayles?  I don't remember doing that.

6      MR. BRODSKY:  Your Honor, Judge Gayles, he did

7  schedule.

8      THE COURT:  And he now has it for what?  It's for

9  October?

10      MR. BRITO:  October 18th if memory serves me correct.

11      THE COURT:  Okay.

12      MR. BRITO:  October 18th or October of 16th.

13      THE COURT:  Okay.

14      MR. BRITO:  But we don't have expert discovery

15  deadlines until March.

16      THE COURT:  So your disclosure is October 16th.

17      MR. BRITO:  It is.

18      THE COURT:  So, then, you will know when that is and

19  so then I am giving you 30 days.  So doesn't that jive with

20  that?

21      MR. BRITO:  Well it jives now that we are talking

22  about it.  What I was asking in light of any general

23  understanding is that it would have been pushed back in light

24  of the deadline that we would have had a shorter window for

25  expert discovery to take place as opposed to this six-month

1   period that we presently have under the current scheduling

2   order.

3           THE COURT:  Oh, well, if you want to --

4           MR. BRITO:  I just want to push back the disclosure

5   and 30 days I am not wrestling with at all.

6           THE COURT:  Right.

7           MR. BRITO:  I'm talking about the expert --

8           THE COURT:  Obviously you need to comply now, but if

9   you want to file a motion -- this is a Judge Gayles issue.  He

10  set this schedule.  So if you want to file a motion with Judge

11  Gayles, I wouldn't stop you to modify any deadline.  You know,

12  set forth good cause and I am sure he will consider it.

13          MR. BRITO:  Very well.

14          THE COURT:  Or refer it.  But, generally speaking, he

15  handles the schedule 99 percent of the time.  And he does that

16  because if you think about it from his perspective, as the

17  trial Judge on the case, right, if he sets an expert deadline

18  of March 14th that means that -- talking off the top of my

19  head, that means that you've got to begin expert discovery

20  probably two months before.

21          And so, therefore, if you factor that in then you need

22  disclosure to make sure that the parties get their experts

23  lined up two or three months before that, right?

24          So, hence, an October deadline kind of works because

25  that means the parties need to get their ducks in a row in

1  terms of retaining people by mid-October to therefore get their

2  reports then done and then get expert discovery done.  So I

3  think it kind of works and I think that way it is October, but

4  if you want to modify that because you need more time, I am

5  sure he will consider it.

6          MR. BRITO:  Thank you.

7          THE COURT:  Okay.  So that certainly jives with my

8  current order.  So I will keep it at that.

9          What is the next issue for the Plaintiff?

10          MS. TIMMERMANN:  Can I just address two issues ensuite

11  with that one?

12          THE COURT:  Okay.

13          MS. TIMMERMANN:  Can we also require that documents be

14  provided for the $74,000.  Something that substantiates it.  I

15  believe that is required for the initial disclosure.  Just

16  something to substantiates it.  I believe that's required for

17  the initial disclosure.  Just something to substantiate the

18  very specific $74,000.

19          THE COURT:  Is there any documentation?  There must

20  be, right?  If you are relying upon a specific fraudulent

21  representation by Defendant that led to an unlawful conversion.

22  What is that about?  Didn't you produce documents?  Wouldn't

23  you have produced documents already about it?

24          MR. BRITO:  I presume that we did.  I don't have it at

25  my fingertips, Judge.  I didn't anticipate this particular

1  question, but if we had not I don't think it is an unfair

2  request.

3          THE COURT:  I will add that, then.  Any documentation

4  that supports the numbers outlined in C must be either

5  referenced by Bates numbers or attached.  How is that?

6          MR. BRITO:  Very well.  Thank you.

7          THE COURT:  Okay.

8          MS. TIMMERMANN:  So that is actually a perfect segway

9  into the next issue.

10          THE COURT:  Okay.

11          MS. TIMMERMANN:  Which is the answer to our request

12  and I just want to --

13          THE COURT:  What request?

14          MS. TIMMERMANN:  To our RFPs.  Sorry.  Our request for

15  production.

16          THE COURT:  Okay.

17          MS. TIMMERMANN:  They provided a response that didn't

18  identify which documents were responsive to which requests.

19          THE COURT:  Okay.

20          MS. TIMMERMANN:  And you know, of course all of this

21  is a bigger picture when we think discovery isn't being done

22  correctly.  And so we are left scrambling trying to identify

23  what's sufficient, what's missing, and where can we find it.

24          But on this issue specifically, you know, there is

25  only 200 documents produced and we both -- just to give you an

1   example, we have two requests.  One for documents supporting

2   the conversion claim and the second is for documents related to

3   payments to Mr. Cohen for his legal services.  Those are two

4   distinct requests.

5           THE COURT:  What is the second one?  What number is

6   that?

7           MS. TIMMERMANN:  Let me pull it up real quick.

8           So 62 requests the basis of the conversion claim and

9   number 11 requests any payments for legal services.

10          We requested both of those because they are both

11  relevant to the claims in the complaint, but because the

12  responses didn't identify any document, which is responsive to

13  a specific request.  We don't know which is which.  So we have

14  a series of a payments to Mr. Cohen.

15          THE COURT:  But at the time this was the original

16  response, right?  And so when you got the documents was there a

17  log attached to the documents?

18          MS. TIMMERMANN:  There is nothing.  It was just one

19  big PDF with --

20          THE COURT:  Okay.

21          MS. TIMMERMANN:  You know, no, yes, and I have no way

22  of knowing where it came from.

23          THE COURT:  Okay.  So, Mr. Brito, how do you want to

24  handle it?  Normally I require people to file an amended

25  response once they actually produce because, remember, we have

1  a local rule that requires substantial production to be

2  certified.  So especially in light of that, I find that it is

3  easier to then have the specification on a document request by

4  document request basis.

5      So, in this case, obviously the certification is not

6  due for some time, but should I not do that now in terms of

7  having you, now that you have produced and since it is only

8  binders for the documents, shouldn't I just have you do an

9  amended response that outlines that?

10      MR. BRITO:  The binder is full of documents was

11  essentially my position, but I ask Defendant in terms of why

12  are we having this conversation, but if this --

13      THE COURT:  Because they want to be able to pin down

14  because this is going to come up at the dispositive motion.  So

15  they want to be able to pin down what you did or didn't produce

16  that you believed -- because you have here, understandably,

17  documents will be produced, but you didn't actually say many of

18  these you ended up not finding anything.

19      MR. BRITO:  The ones that I said that we didn't find

20  anything, I specifically told him there are no documents.

21      THE COURT:  And how did you do that?  How did you tell

22  him?

23      MR. BRITO:  In the response itself.

24      THE COURT:  Oh, give me an example.

25      In that case, then, maybe I can have you do a log

```
1   instead.  That is fine with me, but if you did that here show
2   it to me.
3          MS. TIMMERMANN:  Your Honor, there was an amended
4   response provided, but it still didn't identify which --
5          THE COURT:  I thought I located the amended response
6   dated -- I have it dated September 5th.
7          MS. TIMMERMANN:  That's right.  That's the one.
8          MR. BRITO:  And so, Your Honor, those amended
9   responses were the ones where Your Honor overruled our
10  objection.
11         THE COURT:  Right.
12         MR. BRITO:  And we agreed to produce those responsive
13  documents.  What I am referring to would have been in the
14  initial response there would be no need for an amendment
15  because I had originally told him in relation to certain
16  categories there are no responsive documents.
17         THE COURT:  Correct.
18         MR. BRITO:  I don't believe that I took the position
19  of -- there may have been one instance in particular.  I do
20  recall where I took the position of I am going to object simply
21  because I think I need to, but there are subsequently once Your
22  Honor overruled the objection there were no documents --
23         THE COURT:  Okay.
24         MR. BRITO:  -- that related to certain categories.
25         THE COURT:  That's fine.
```

1          MR. BRITO:  That was it.  I think what they are

2   articulating, Your Honor, what they are asking for is for me to

3   go through that 200 and say document one, two, and four are

4   responsive to category one.  If that's what the Court is asking

5   me to do, I will accept that responsibility and I will take

6   that on because I don't think --

7          THE COURT:  It is in the rule.  In other words, I am

8   not asking you but --

9          MR. BRITO:  I didn't mean it that way, Judge.  I think

10   you understood what I meant.  If it is in the ordinary course

11   or if it is on a request by request basis, we are happy to do

12   the labor, but I don't think it is an inordinate amount of

13   work.

14          THE COURT:  Let's see here.

15          A party must produce documents and label them to

16   correspond to the categories in the request.  So that's in

17   34(e)(i), right?

18          MR. BRITO:  Or produce in the ordinary course.

19          And my understanding was it wasn't the ordinary

20   course, but --

21          THE COURT:  Ordinary course means that when I have a

22   Plaintiff's lawyer go to the Everglades and look for the

23   documents and form her sleeping quarters of cane cutters that's

24   the ordinary course because that's where we kept them, right?

25   So we spent a day in the Everglades looking through dusty boxes

1  and then that's what the ordinary course is.

2          Here you decided to produce a PDF and that's not in

3  the ordinary course.  You decided to produce them specifically.

4  So that triggers a second part of that.

5          So, yes, I think the better way to do it, though, and

6  just mechanically apply to the rule is you will serve a second

7  amended.  In the second amended you should put in documents

8  will be produced.  And then the next sentence, those are

9  documents blankety-blank Bates numbers.

10          And that way for purposes of dispositive motions and

11  other things they will be able to use that response and see

12  they didn't produce anything because nothing was identified.

13  Okay.  So, yes, that has to be done.  So I will give you

14  another 30 days to do that.  Okay.

15          MR. BRITO:  Very well.

16          THE COURT:  Next issue?

17          MS. TIMMERMANN:  So the next one is the deficient

18  searches.  This one is so we are in the same position we were

19  in again on a September 5th.  We asked the Court for -- the

20  Court granted declarations from the attorneys actually involved

21  in the --

22          THE COURT:  I have it here.

23          MS. TIMMERMANN:  Yes.  Actually involved in the

24  searches and --

25          THE COURT:  That's Mr. Yarowitz, right?

1        MS. TIMMERMANN:  And when we initially discussed this

2   it was Mr. Garten.  Mr. Brito told us that he was the person

3   who was the point of contact.  It turns out that a different

4   attorney, Mr. Yarowitz was the one who one who produced the

5   declaration.

6        THE COURT:  And who does he work for?

7        MR. BRITO:  The Trump organization, Your Honor.

8        THE COURT:  He is in-house counsel.

9        MR. BRITO:  Mr. Garten is general counsel for the

10  Trump organization.

11        THE COURT:  Okay.

12        MR. BRITO:  Mr. Yarowitz is the individual who

13  conducted the search.

14        And just for the interest of clarity since we are on

15  the record, September 5th of 2023 at the hearing before Your

16  Honor, my words were "there is another gentleman that works

17  with him" and that was in reference to Mr. Alan Garten.

18        THE COURT:  Okay.

19        MR. BRITO:  They work hand-in-hand, but Mr. Garten is

20  the person and why communicate with for purposes of...

21        THE COURT:  Okay.

22        MR. BRITO:  So I wasn't hiding the fact that Mr.

23  Yarowitz was involved.  Simply he is not the person I deal with

24  on a regular basis.  Mr. Garten, who is the general counsel for

25  the Trump organization --

1          THE COURT:  Okay.

2          MR. BRITO:  Mr. Yarowitz, to comply with the Court's

3    directive of the person who is actually conducting the search,

4    it was Mr. Yarowitz.  And we provided the declaration when Your

5    Honor asked us to at the last hearing before you entered a

6    written order to that effect.

7          THE COURT:  Right.  I have it here.

8          MS. TIMMERMANN:  That wasn't directly on the point

9    that we are trying to get to, but since he is bringing up the

10   declaration, the declarations themselves are not compliant with

11   the entered order.

12          They don't provide answers to the information that we

13   are seeking that would be necessary to determine whether or not

14   the searches are deficient.  It is sort of a piecemeal answer

15   to some things, some questions, but not others and it is sort

16   of a shell game of Mr. Brito gives us one answer and we get a

17   separate answer from Mr. Yarowitz.  They don't align.

18          THE COURT:  This is the one you can rely upon because

19   it is under oath and document by document or at least category

20   by category.

21          MS. TIMMERMANN:  So that's the --

22          THE COURT:  So working off of this?

23          MS. TIMMERMANN:  Off of that one.

24          THE COURT:  So what is the problem?

25          MS. TIMMERMANN:  I will come back to the deficiency of

1   the searches themselves.  The deficiency of the declaration is

2   that it does not address a lot of the basics, right?  When was

3   the preservation notice?  When was the search done?

4           There are lots of RFPs that the not addressed in the

5   declaration itself and there is sort of an incomplete picture

6   of what was actually done.  That is the problem with the

7   declaration.  So there was, the Court's order, explains these

8   are the six things you have to do.

9           THE COURT:  Right.

10          MS. TIMMERMANN:  He did, let's call it, three and only

11  halfway through.

12          THE COURT:  Okay.

13          MS. TIMMERMANN:  On the actual searches even just

14  based looking at that declaration itself identifies within sort

15  of the four corners of that the deficiencies that we can

16  identify already.

17          That is not all of them, but many RFPs were not

18  searched for at all.  He identifies some of them, but even ones

19  that the objections were overruled and there were no

20  objections, he does not specify what was done to search for

21  those.

22          THE COURT:  Okay.

23          MS. TIMMERMANN:  Many repositories were not searched.

24  At least the ones identify by Mr. Brito before Your Honor

25  included Mr. Trump's personal files.  Mr. Yarowitz only speaks

1  to Trump work files that were searched.  The searches are

2  plainly too narrow.  You see there is a search for Michael

3  Cohen in quotation marks that is going to artificially narrow

4  any conversation or e-mails about Michael Cohen.

5         THE COURT:  Give me them by category.

6         MS. TIMMERMANN:  And then, the last is another way

7  that you can identify that the searches are deficient is that

8  they plainly contradict what Mr. Brito said before the Court as

9  to what had been done.  So there are sort of four ways in which

10  you can tell that, even with what he has said, it identifies

11  deficiencies in the searches.

12         THE COURT:  Give me an example.

13         MS. TIMMERMANN:  Okay.  So I am just looking at the

14  actual declaration.

15         THE COURT:  Okay.

16         MS. TIMMERMANN:  So the Court overruled Mr. Trump's

17  objections to these RFPs that Mr. Yarowitz did not search for;

18  numbers 26 and 27, numbers 34 and 35, number 59.

19         THE COURT:  Okay.  Can you give me that?  26 and --

20         MS. TIMMERMANN:  And 27.

21         THE COURT:  Okay.

22         MS. TIMMERMANN:  34 and 35.

23         THE COURT:  Okay.

24         MS. TIMMERMANN:  39.

25         THE COURT:  Okay.  Hold on.

1          Okay.  Let me pull up the response and figure that

2     out.  Okay.  As to 34 and 35 didn't we deal with that in the

3     last hearing?

4          MS. TIMMERMANN:  In the hearing in August we dealt

5     with whether or not the requests could be dealt with through

6     interrogatories, but it was overruled.  The objection was

7     overruled.

8          THE COURT:  Is that in the order, though?

9          MS. TIMMERMANN:  Yes.  It looks like it is Docket

10    Entry 65.

11         THE COURT:  65.

12         MS. TIMMERMANN:  Section E.

13         THE COURT:  Okay.  Let me pull that up.

14         Oh, here it is.  I've got it.  Here it is.

15         Okay.  Number 39.  And remind me which one is the one

16    that required the custodian or the lawyer to certify.  Which

17    order was that?  Is that the same order?

18         MS. TIMMERMANN:  Yes.

19         THE COURT:  Okay.  I have it here.  I refer to Mr.

20    Garten, but I understand.

21         MS. TIMMERMANN:  Yes.

22         THE COURT:  I've got it.  Okay.

23         MS. TIMMERMANN:  I have additional ones if you want me

24    to keep going.

25         THE COURT:  Well, let's stop there.

1          MS. TIMMERMANN:  Okay.

2          THE COURT:  Let me turn to you.

3          As those two issues, one whether or not on the face of

4  the affidavit as a whole it complied with my order and, two,

5  specifically with respect to 26, 27, 34, 35, and 39 since I

6  compelled those, why aren't they here and don't I have to

7  compel them?

8          MR. BRITO:  Just to put things in context, the

9  declaration pre-dated Your Honor's order.  We had submitted the

10  declaration before Your Honor entered the written order.

11          THE COURT:  Oh, you did it based upon what I said at

12  the hearing.

13          MR. BRITO:  Correct.

14          THE COURT:  Okay.

15          MR. BRITO:  That's why I think there's a little bit of

16  a --

17          THE COURT:  Fair enough.

18          MR. BRITO:  And as it relates to, for example, 26,

19  what Your Honor led 26 to, Your Honor modified the date range.

20          THE COURT:  Right.

21          MR. BRITO:  So it was now from February 1 to June 1 of

22  2023.

23          THE COURT:  Right.

24          MR. BRITO:  And only as it related to internal

25  communications.

1     THE COURT:  Right.  Within the order?

2     MR. BRITO:  Correct.  And so we do believe we have

3  complied.

4     THE COURT:  I don't think it is in here.  Her point is

5  there is no reference to 26 or 27 here.

6     MR. BRITO:  Bear with me, Your Honor.  I had it just a

7  second ago.

8     THE COURT:  Or for that matter for 34, 35, and 39.

9     MR. BRITO:  Well, to get to -- you're saying in the

10  declaration?

11     THE COURT:  Right.

12     MR. BRITO:  Well, from my understanding what we needed

13  to do was to serve the amended responses related to those

14  requests, which we did.  We did that timely.

15     THE COURT:  Okay.

16     MR. BRITO:  And we provided them.  For example, 34 and

17  35, just to take those two that we are talking about.

18     THE COURT:  Right.

19     MR. BRITO:  Both were pages from the two books that

20  Mr. Cohen, himself, wrote which contained disclosures that

21  violated the fiduciary duty.

22     We said to the Court we have already provided the

23  actual pages from the books back to Mr. Cohen of the book that

24  he wrote.  So we provided 34.  And then, as it related to 35,

25  we communicated to the Court there will be no documents that we

1   have related to a podcast that Mr. Cohen puts on and that I can

2   go back to the transcript where we had this conversation.

3          So those of the amended responses communicate our

4   position as it relates to all of these because all of them --

5          THE COURT:  But, in other words, you represented that

6   all of the documents responsive to 34 were produced, right?

7          MR. BRITO:  Correct.

8          THE COURT:  Plaintiff was ordered to serve a

9   supplemental response confirming same, which you did.

10         MR. BRITO:  We did.

11         THE COURT:  You complied with that.  The objection of

12  35 was overruled and you were ordered to produce all materials

13  responsive to 35, if any exist, right?

14         MR. BRITO:  And I am trying to finding my amended

15  response and I believe my answer was none.  Here it is.

16         THE COURT:  I don't see an amended response to 35.

17  So, yes, that's right.  There is no amended response to 35 to

18  comply with that order.  So that is one problem.

19         And the second problem is I do think his declaration

20  needed to go to the ones that I have compelled.  So especially

21  because you are representing that there were no documents

22  responsive.  At least as to 34 and the point of the declaration

23  was that we have some confidence that, in fact -- this was the

24  sworn verification to support your answers because I think --

25  this is now coming back to me.  I try to put all my hearings in

1  the back of my mind, but this one in particular, but now that

2  it is coming back to me, you acknowledged that you didn't

3  personally supervise the production.

4          MR. BRITO:  Correct.

5          THE COURT:  You were live in-house counsel and that's

6  how this affidavit came into play.

7          MR. BRITO:  It did.

8          THE COURT:  Right.

9          MR. BRITO:  And that came in after we had already

10  communicated to the Court.

11          THE COURT:  That's fine.

12          MR. BRITO:  And I acknowledge I must have missed 35.

13          THE COURT:  That's okay.

14          MR. BRITO:  But I said to the Court there's nothing I

15  can do about documents related to a podcast because a podcast

16  is not a document or any type of --

17          THE COURT:  Right.

18          MR. BRITO:  -- information, but I acknowledge 35 I

19  missed that one.

20          THE COURT:  That's fine.  So we need an amended

21  response to 35 to comply with my order, right?  So that's the

22  first thing.

23          The second thing is we need an amended declaration

24  that cures the noncompliance with 26, 27, 34, 35, and 39.  And

25  I grant you, you were working off of the declaration that may

1  have been before the order.  That's fine.

2      MR. BRITO:  And I am just asking for a little bit of

3  clarification on that.  I apologize.  I am not grasping --

4      THE COURT:  So as to 26, 27, 34, 35, and 39 there is

5  no reference in the affidavit to those requests.  I clearly

6  compelled them in the order.

7      MR. BRITO:  Right.

8      THE COURT:  So either by omission, or whatever, they

9  were not included.  So he needs to do the certification as to

10  those requests.

11      MR. BRITO:  This certification applies across the

12  board.  I will do what Your Honor is asking me to, but this

13  declaration was not intended and clearly was not -- I am only

14  applying to certain requests and not others.  It was --

15      THE COURT:  I understand that, but then he properly in

16  compliance with my order he then broke out different categories

17  of things because the searches were different based upon the

18  type of category of documents.

19      MR. BRITO:  Right.

20      THE COURT:  In that sense it was proper to identify

21  the request that he did and this is the search that was

22  relevant to that request.  He may quibble with that and we may

23  deal with that, but he did that properly.  And so because he

24  didn't do that for 26, 27, 34, 35, and 39, I have a hole in the

25  sworn evidence to support the production, right?

1         Now the answer may be whatever the answer is, but

2  those categories needed to have them included in the

3  declaration.

4         MR. BRITO:  Understood.

5         THE COURT:  And so, for example, the book 35, remember

6  I compelled it, right?  The objection to 35 was overruled and

7  the objection relates to the identification of content and

8  disclosures related to the podcast or the book, right?

9         So that is not an e-mail search.  So in order for me

10  as a custodian to certify that, how would I do that?  Well, I

11  would have to identify these were the repositories places that

12  I looked.  Here is who I talked to and this is why I am

13  swearing under oath that there is none, right?

14         Do you see what I am saying?

15         MR. BRITO:  I do.

16         THE COURT:  So that's an example of one that you can't

17  just generally say it because the whole point of the exercise

18  was to be more specific and he was more specific in other

19  categories.  He just needs to be complete.  So it is

20  incomplete, number one.  Number two, I do believe an amended

21  response to 35 was required by the order.

22         Were there any amendments to the response, other than

23  35, that he didn't do so that we can put that aside as far as

24  you know?

25         MS. TIMMERMANN:  I think that there was -- what we

 1  already discussed the breaking out of --

 2          THE COURT:  When I say he, I'm sorry.  Mr. Brito.

 3          MS. TIMMERMANN:  Okay.

 4          THE COURT:  Mr. Brito is ordered, for example, to file

 5  a supplemental response related to 35.  He didn't do that.  You

 6  know, by omission he didn't do it.

 7          MS. TIMMERMANN:  Right.

 8          THE COURT:  Other than 35 is there anything else that

 9  I should include in my order that Mr. Brito didn't file the

10  supplemental?

11          MS. TIMMERMANN:  I understand.  No.  No, Your Honor.

12          THE COURT:  Okay.  So it is only as to 35.

13          As to Mr. Yarowitz, or whoever the custodian was -- it

14  may have been a different custodian.  I don't care.  Whoever

15  the custodian is, it is the one who put their neck out when

16  everything hits the fan.

17          If it is Mr. Yarowitz it's fine.  He needs to file a

18  supplemental declaration related to how the scope of the search

19  was for 26, 27, 34, 35, and 39.

20          The other part of the order related to a broader issue

21  which is the --

22          MS. TIMMERMANN:  Your Honor --

23          THE COURT:  The general categorization -- not the

24  categorization, but the general preservation of documents.

25          Do you have my order, Mr. Brito?  It would be Page 7

1    of the September 19th order.

2           Some of this was not included in the -- when I

3    reviewed the declaration it wasn't included either.  Although,

4    in some respects they were included, but it is somewhat

5    incomplete.

6           The preservation issue was the one issue that I

7    thought was never addressed, right?  He didn't discuss the

8    specific review process in terms of categories of documents.

9           Now one thing he didn't do -- and I think this is

10   important.  This is probably more substantively important than

11   anything else.  He never identified that he either, by specific

12   or generally, that he communicated with anybody.

13          Do you see that, Mr. Brito?

14          MR. BRODSKY:  I do, Your Honor.

15          THE COURT:  And given the nature of the case how would

16   you search for documents like these types of things without

17   doing that?  How would you do that?

18          Not for everything, but for many types of things and

19   the whole point of the declaration was that this was going to

20   be a complete reliable way of verifying the responses that were

21   made.

22          And so that seems to have been omitted throughout.

23   Don't I have to fix that?

24          MR. BRITO:  Here's the answer, Judge.

25          THE COURT:  Unless the answer is I didn't talk to

1 anybody, but then I would want to know that, right?  Because

2 then if they come back and, see, you didn't talk to anybody.

3 He just kind of like did, you know -- and I don't know, for

4 example, I don't know how long he has been with the company,

5 right?  Do you see my point?

6           MR. BRITO:  I do.

7           THE COURT:  I don't know if he is a first year

8 associate or a 15.  Does that make sense?  So if he is a first

9 year associate how would he possibly know without asking

10 people.  So he didn't do that.

11           And so since I don't have any information about him

12 and you told me it was Alan Garten initially, but it turned out

13 to be this individual, right?

14           MR. BRITO:  Well, I had said that Alan Garten is the

15 first one I did speak to.

16           THE COURT:  I understand.

17           MR. BRITO:  So the gentleman who was involved and that

18 I knew and I represented that to the Court.

19           THE COURT:  So since I don't have a declaration from

20 Mr. Garten and I have a declaration from Mr. Yarowitz, who I

21 don't know how involved he has been in the company.  I don't

22 know anything about him because it is not in here.

23           Don't I have to enforce that because if he is like a

24 fifth-year associate who was never involved in any of this

25 because these documents are basically, what, ten years old,

1   roughly, 15, 20, 10.  Somewhere in that category.

2           Mr. Cohen is no longer with the company, right?  But

3   some of these documents go back a number of years.  Some of

4   them are more recent.

5           Do you see my point?

6           MR. BRITO:  I do.

7           THE COURT:  The order I thought I dealt with that by

8   requiring him to tell us to satisfy me that we have compliance

9   because he says I have met with these people, or this office,

10  or whatever he did, but that part wasn't in there.

11          And don't I have to enforce my order there?  Because

12  how else would I be able to be comfortable that this unknown

13  individual did what I required him to do?

14          MR. BRITO:  To allay concerns and I know that this is

15  just argument of counsel that I could represent to the Court

16  that Mr. Yarowitz is not a first-year associate.  He is a

17  gentleman of mature age that has been involved for quite some

18  time and understands the construct of what the Court required.

19          THE COURT:  Right.

20          MR. BRITO:  And my understanding is we are talking

21  about electronic documents solely because of what Your Honor

22  just mentioned of the age of some of these documents and

23  communications.

24          So these were e-mail searches that were run.  There is

25  no physical documents to speak of.

```
1         THE COURT:  How do I know that?
2         MR. BRITO:  You don't know that.
3         THE COURT:  Right.
4         MR. BRITO:  I understand.
5         THE COURT:  Right.
6         MR. BRITO:  I get it.  I am going --
7         THE COURT:  I got you.  So bottom line is I want to
8   enforce my order especially since I would rely on your
9   representation much more easily because you could say, hey, I
10  searched and I can tell you, you can't do that.
11        I am relying on a third party that is not here.  And
12  so I kind of have to be pretty diligent about that because of
13  that hole.  And so it is the unique nature of this case and I
14  get it, but I want to enforce that.
15        MR. BRITO:  So to answer your question, I think the
16  answer will be other than speaking to Mr. Garten, who Mr.
17  Yarowitz was receiving direction from --
18        THE COURT:  Right.
19        MR. BRITO:  I don't think there is going to be much in
20  the way of communication, but I need to verify that because I
21  am not there.
22        THE COURT:  Right.  Because then at least when I have
23  something specific about that, then they can develop in
24  discovery other things and, you know, either Mr. Trump or other
25  witnesses that can undermine that or verify that.  That is the
```

1  whole purpose of the exercise.

2         MR. BRITO:  Understood.

3         THE COURT:  So I need to enforce -- the point the

4  Defendant is making is that the declaration only partially

5  complies with my order.  I think that's ripe.

6         Okay.  Next issue.

7         MS. TIMMERMANN:  So because you called out the

8  colloquy you did with numbers 26, 27, and all that, I did want

9  to point out that also numbers 2 and 4 was one that the Court

10  accepted Mr. Brito's representation that there was no

11  responsive documents, but Mr. Yarowitz does not identify that

12  they looked at all.

13         THE COURT:  Okay.  Numbers 2 and 4.

14         MS. TIMMERMANN:  Yes, 2 and 4.  And then there is

15  another category that I want to identify.

16         THE COURT:  2 and 4.  Okay.  Well, it's probably

17  included in 3-A, since he didn't identify it I will include

18  that.

19         MS. TIMMERMANN:  And --

20         THE COURT:  2 and 4.

21         MS. TIMMERMANN:  The other types of RFPs that were not

22  mentioned is that there were no objections to certain RFPs that

23  they also didn't identify having looked for any documents and

24  that's numbers 41, 58, 62 and 63 and --

25         THE COURT:  Hold on.  Numbers 41, 58, 62 and 63?

1      MS. TIMMERMANN:  That's right.

2      THE COURT:  Okay.  Well, to some extent since he is

3  representing that documents would be produced to 41, it is

4  possible that that's the reason -- in other words, the purpose

5  of the declaration was to verify largely when they claimed

6  there was nothing, but if they are producing things to 41, it

7  is not necessarily relevant to the declaration.

8      Does that make sense?

9      MS. TIMMERMANN:  I understand.

10     But I think initially the declaration was to ensure

11  that the searches were complete as to, you know, because Mr.

12  Brito hadn't supervised it to make sure that all responsive

13  documents had been identified.

14     THE COURT:  Right.

15     MS. TIMMERMANN:  And so there is a separate issue of

16  whether the searches are deficient, which we can get to, but as

17  to the declaration we just want to know what their position is

18  as to each of the searches that they were required to do to

19  ensure that they were done, or to know how they were done so we

20  can quibble with it if we need to.

21     THE COURT:  Okay.  All right.  That's fine.  Okay.

22     MS. TIMMERMANN:  And I think importantly --

23     THE COURT:  I will include that.

24     MS. TIMMERMANN:  Thank you.

25     Importantly the representation that we have received

 1  from counsel is that everything has been produced.  So there

 2  should be no additional searches and that's why we think that

 3  the searches are also deficient in addition to the declaration

 4  being deficient.  There is no identification of repositories

 5  that we know would have --

 6          THE COURT:  Remember, I agreed with you in part, but

 7  that is why I am ordering an amended declaration.

 8          MS. TIMMERMANN:  Okay.

 9          THE COURT:  So some of that we may need to table for

10  the next hearing.

11          MS. TIMMERMANN:  Understood.  So we will hold those

12  until --

13          THE COURT:  Right.  So let's see where we are after

14  the amended declaration.  And since Mr. Brito will report back

15  to Mr. Yarowitz, I am sure that I am being picky about how it

16  is being done, I am sure we will be in a better position.

17  Okay.

18          MS. TIMMERMANN:  And it is our expectation that the

19  renewed, the compliant one, will identify the other

20  repositories that would have also been searched.

21          THE COURT:  If it's in the order.

22          MS. TIMMERMANN:  If there are any.

23          So the last issue we had for Your Honor was renewing

24  the motion to compel on several of our requests that were held

25  sort of in abeyance pending the initial disclosure given that

1  Your Honor is giving them another 30 days to comply with proper

2  initial disclosure.  I'm not sure if you want to continue to

3  hold those.  I just didn't want to waive anything by not

4  addressing it here.  There was a handful of RFPs that, you

5  know, we were dealing with a lot at the time and they were held

6  off as, well, let's wait until we get some damages information

7  before we compel this information that you are seeking for the

8  purposes of damages.

9        THE COURT:  Remind me.  Give me an example of it and

10  it will come back to me.  What is in that category?

11        MS. TIMMERMANN:  It is essentially all the documents

12  we requested with respect to damages, which I can identify.  I

13  can identify it by request.

14        THE COURT:  Oh, 64 was that one?

15        MS. TIMMERMANN:  Yes.  64, 59 and 60.

16        THE COURT:  Okay.  Yes.  I assume you agree that, Mr.

17  Brito, that we toll the period for compelling that until at

18  least the amended disclosures?

19        MR. BRODSKY:  Yes, Your Honor.

20        THE COURT:  Okay.  All right.  So they are tolled.

21        MS. TIMMERMANN:  Until the amended disclosures in 30

22  days.  Understood.  Thank you.

23        THE COURT:  So you are not waiving anything.

24        MS. TIMMERMANN:  Thank you.

25        THE COURT:  Okay.

1         MS. TIMMERMANN:  With that I think we are just at

2    ensuring that our October 3rd deposition goes forward as

3    planned.

4         THE COURT:  Okay.  All right.  At least we made some

5    progress.

6         Now turning back, Mr. Brito, you wanted to raise that

7    issue?

8         MR. BRITO:  I did, Your Honor.

9         And I was in a challenging situation to bring it to

10   the Court's attention timely because what I am presenting to

11   the Court and I spoke to counsel about just occurred two days

12   ago.  The Court may or may not be familiar with.  I know Your

13   Honor is big on world events and so you probably heard about --

14        THE COURT:  Actually, no.  I watch dog videos now.  So

15   you will have to remind me.

16        MR. BRITO:  Two days ago Justice Bergeron in New York,

17   in the lawsuit that was brought by the New York Attorney

18   General against Mr. Trump, his sons, his organizations and

19   various companies, entered a summary judgment ruling.

20        The Judge was addressing competing summary judgment

21   motions and denied the Defendant's motion for summary judgment

22   and granted the Plaintiff, the New York Attorney General's

23   motion as to liability with respect to broad based claims.

24        And which my client's position as to the action,

25   itself, is documented and I won't belabor that, but the ruling

1  of the Justice in New York further cemented my client's

2  position which required to those claims being alleged against

3  him.  But the long and short of it is that the Court granted

4  summary judgment and the parties were sitting around waiting

5  for some time for that ruling to come down.  The Court in its

6  ruling --

7       THE COURT:  My understanding was that it was supposed

8  to have been gone to trial next week, or the week after, some

9  time in October.

10      MR. BRITO:  But now in the Court's ruling it did a

11  couple of things.  It granted summary judgment as to liability

12  in the Attorney General's favor.  Essentially for the most part

13  limiting the case to damages, but even after a subsequent

14  hearing, the Court issued its ruling on Tuesday and appearing

15  on Wednesday if I've got the dates right, where the Court was

16  asked by Mr. Trump's counsel where does that leave us and the

17  Court said I'm not really sure just yet.

18      THE COURT:  Okay.

19      MR. BRITO:  They need the Attorney General to make

20  certain determinations as to whether they are going to proceed

21  with are all claims for certain based upon the ruling, which

22  was substantially I think it was a 35-page order.

23      THE COURT:  They couldn't waive damages, too, right?

24      MR. BRITO:  Pardon me?

25      THE COURT:  They couldn't waive more damages, right?

1          MR. BRITO:  I am not following you.

2          THE COURT:  In other words, given the remedy that you

3  are describing wouldn't the Attorney General consider just

4  waiving any additional claim for damages?

5          MR. BRITO:  I think that that's the last thing that

6  the Attorney General seeks to do at this point.

7          THE COURT:  Okay.  Am I right that it is set for trial

8  in October?

9          MR. BRITO:  It is and now as I was getting there now

10 the Court said trial starts on Monday.

11         THE COURT:  Okay.

12         MR. BRITO:  And one of the things that is at issue in

13 that case is obviously the baseline damages are 250 million

14 dollars and are upwards of that in terms of what we are hearing

15 to what New York Attorney General intends to pursue in that

16 case.

17             In addition to that, the Court has revoked the

18 business licenses of several of Mr. Trump's business

19 organizations in the State of New York.

20         THE COURT:  Okay.

21         MR. BRITO:  That was not expected.

22             And to my understanding, I am not involved in that

23 case, but to my understanding some of the remedies that the

24 Court granted were even in excess of what the New York Attorney

25 General was pursuing.

1          So as I mentioned to counsel, the landscape has

2   changed drastically in relation to that case by virtue of the

3   fact that they are now going to trial in front of the Judge.

4   It is a nonjury trial starting on Monday where the stakes are

5   considerably different.

6          And counsel responded back to me saying, well, no, the

7   landscape has not changed.  You knew or should have known that

8   this trial potentially could be going.  We have been waiting

9   for summary judgment to be ruled upon and there was no

10  certainty as to when the trial was going to take place.

11         Now we are put on specific notice that the trial

12  starts on Monday.  The consequences of the Court's decision are

13  substantial enough where my client needs to be available to

14  address the decisions that are being made that the intention is

15  that Mr. Trump --

16         THE COURT:  Well, what does that mean he needs to be

17  available to address the decisions being made?  What does that

18  mean?

19         MR. BRITO:  What that means is two things.

20         Number one, my understanding is Mr. Trump is going to

21  be in attendance at the trial because of the consequences -- or

22  I don't want to say the consequences.  The allegations that are

23  being made by the Attorney General in that case are such that

24  he intends to appear at that trial.

25         THE COURT:  But wouldn't that have been true six

1  months ago?  In other words, he didn't intend the trial six

2  months ago?

3          MR. BRITO:  I don't want to say he didn't intend, but

4  I will put it to you this way.  We wouldn't have offered that

5  date.  If that date was offered by us admittedly the

6  October 3rd date because there was not as much of a complete

7  certainty that the trial was going to take place during that

8  week.  And even if it did that Mr. Trump would be in

9  attendance.  Why?  Because as I mentioned, summary judgment

10 motions were pending and there were a lot of factors in play.

11         Now that has been essentially changed without our

12 doing and this was a ruling that came down when the Judge

13 decided to issue the ruling and also said we are starting trial

14 on Monday.

15         So the point that I was making when I said to counsel

16 that the landscape has changed, I wasn't just making that up.

17 These were essentially the Court's words.  The Judge in New

18 York where he said the contour of the case has changed

19 significantly since yesterday.

20         This was on Wednesday when I first reached out to

21 counsel and I said I have an issue with a client who has a

22 significant case with significant dollars that are being

23 alleged to be due and he is, in all likelihood, going to be

24 attending this trial.

25         I appreciate the fact that we have this deposition if

1  the position of the Defendant is, well, we incurred certain

2  costs for reserving a hotel, assuming those costs to be

3  reasonable, we will pay for those costs because I understand,

4  but it is not our doing.  It is not a tactic.  It is not a

5  game.

6          THE COURT:  But how does the fact that you already

7  kind of lost half the loaf and now you are only on the trial on

8  damages make it more necessary as opposed to less necessary?

9          MR. BRITO:  It's not that it was less necessary,

10 Judge, and if I made it sound that way that is not what I

11 intended.  What I am saying is I there was more uncertainty as

12 to when that trial would take place and what that trial would

13 look like.

14         THE COURT:  Did he move up the date?

15         MR. BRITO:  He fixed the date.  I don't know if it was

16 moving it up or not.  If we're talking about it, it was a trial

17 period that would have captured next week as well.

18         THE COURT:  Right.

19         MR. BRITO:  But from my understanding the summary

20 judgment fixed a date.

21         THE COURT:  Why did they move the deposition date

22 again in September?  What was the reason for the move again?

23 What was the reason?

24         MS. TIMMERMANN:  The reason for the move from the

25 September 6th date was that criminal counsel's was going to

1  have a granddaughter and that since criminal counsel needed to

2  be present for --

3       THE COURT:  Okay.

4       MS. TIMMERMANN:  -- the deposition.

5       MR. BRITO:  He was having a grandchild and was

6  traveling and the -- I'm not even bringing him up at this

7  point, but he is going to be present, my understanding again,

8  in the New York trial.

9       But Mr. Trump is also going to be attending that

10 trial.  It did present a significant problem for him to

11 essentially have to dedicate the time and his counsel to

12 dedicate time to the defense of this deposition.

13      THE COURT:  How long is that trial supposed to last?

14      MR. BRITO:  According to the Judge -- and this

15 somewhat surprised me because it is a nonjury trial.  They said

16 eight weeks, but I find that under the circumstances of the

17 Court's order, I can't speak too much about that and I don't

18 want to overstep my -- I just found it surprising for that to

19 be the case.

20      THE COURT:  But doesn't that undercut it, though?

21 Because if it is eight weeks and he misses a day or two days,

22 what difference does it make?

23      MR. BRITO:  It makes a difference because of the

24 nature of the claims and the nature of the --

25      THE COURT:  How does his presence -- obviously the

1  Judge -- I will protect Mr. Trump by saying that I am ordering

2  -- if I order or deny your motion and order him to appear, I

3  would protect him from prejudice in New York by entering an

4  order that required him to be here.  And so that way I am sure

5  the Judge wouldn't hold him in contempt for not appearing or

6  anything like that.  I mean, the issue you are raising is he

7  wants to be at the trial.

8        MR. BRITO:  As I mentioned to counsel, the course of

9  conduct, if you will, and the typical procedures, trials take

10 precedence over a deposition.  I am not trying to disregard

11 this Court's order clearly, but we are confronted with

12 something that just landed on our lap this week.

13        Going back to what you asked me about the length of

14 the trial, I don't see how it could last eight weeks.  But,

15 again, I am not involved in that case and I certainly don't

16 want to comment on another Judge's rulings or calendar.

17        I assume it is going to be less than that, but the

18 issue is we have a presently scheduled deposition on Tuesday

19 which is going to now require Mr. Trump to essentially focus

20 his efforts on this deposition for the next several days.

21        If not at a minimum, Monday and all of Tuesday,

22 because they, being the Defendants, have articulated that they

23 want to take their seven hours when he has a substantial trial

24 taking place at the same time.

25        What I am asking of the Court and I am asking the

1   Court's indulgence is I will communicate to the Court.  I will

2   communicate to counsel if it is required on a weekly basis

3   every several days as a status update so the Defendants are

4   made aware of the progress.

5        They know about the progress a lot more of that case

6   than I do, but I will do that to the Court to the Defendants.

7   I know the Court does not want to be wrapped up in minutia.

8        But I am willing to do that so as that advances, we

9   can schedule this deposition in a way that is not going to

10  create prejudice to Mr. Trump because requiring him to be in a

11  deposition in this civil case here is a significant prejudice

12  to him in the defense of the action brought against him by the

13  New York Attorney General in the State of New York.

14       THE COURT:  I guess the reason I am going to deny your

15  motion is because nothing has really changed other than

16  arguably that case is being constricted now to just a damages

17  case, but at the time that this deposition was set we all knew

18  that that trial was looming in October, right?

19       And it is not as if Mr. Trump has to testify on

20  Tuesday.  If it's an eight-week trial and I am sure he will

21  testify at least weeks into the trial.

22       MR. BRITO:  And it is not just testifying.  It is

23  being present at a trial where the nature of the claims that

24  are being alleged and the remedies that are being sought are

25  significant.

1        THE COURT:  Right.  But, see, if it is an eight-week

2   trial, why wouldn't it be an eight-week trial?  Why wouldn't it

3   be an eight-day trial?  You don't have to answer.  But you see

4   my point?  In other words --

5        MR. BRITO:  But I don't anticipate it being eight

6   weeks.  I don't think Your Honor anticipates it being eight

7   weeks.

8        THE COURT:  How does its physical presence on missing

9   a particular day?  Now obviously, he doesn't have to miss both

10  days.  He can be there for the start of the trial and just fly

11  back Tuesday or Monday night.

12       MR. BRITO:  We are going to probably need to do a

13  little bit of preparation.

14       THE COURT:  You can prep in New York.  He will take

15  you there.

16       MR. BRITO:  He's going to be in the courtroom --

17       THE COURT:  Right.

18       MR. BRITO:  -- to my understanding.

19       At least dealing with the questions and the issues

20  that are present in a trial as opposed to being required to

21  testify --

22       THE COURT:  He doesn't have to testify on Monday.

23       MR. BRITO:  I'm not saying he does.  What I am saying

24  is he needs to be available for his attorneys for purposes of

25  decisions effecting strategy and for --

1          THE COURT:  But I am assuming they have been making

2   strategy decisions with him for years.  I mean --

3          MR. BRITO:  But now it's a trial, Judge.  The trial is

4   the trial.

5          THE COURT:  Right.

6          MR. BRITO:  This is a big event.

7          THE COURT:  The problem is we knew about the existence

8   of that trial long ago.  Including when you proposed

9   October 3rd.

10         MR. BRITO:  The alternative for me would have been to

11  come to the Court and come to the Defendants and say we will

12  have the deposition in June of 2024 when --

13         THE COURT:  The alternative would have been

14  September 10th.  In other words, the alternative would have

15  been to get -- was it because of the criminal defense lawyer,

16  right?  It wasn't even counsel of record.

17          It wasn't you.  Yeah, the alternative would have been

18  to move up the deposition following that continuance.  The date

19  of October 3rd was picked by the Plaintiff as an accommodation

20  for all that.

21          So the solution would have been to schedule a trial

22  sooner because if you know that there's an October trial in

23  New York that would have made more sense, right?  But to some

24  extent maybe you didn't think the trial would go forward.

25         MR. BRITO:  It may not have gone forward.

1    THE COURT:  Right.

2    MR. BRITO:  It may not have gone forward in October.

3    THE COURT:  Right.

4    MR. BRITO:  The two most likely scenarios at the time

5    that I come before the Court.

6    THE COURT:  Right.

7    MR. BRITO:  And I provide dates to the Defendant.

8    Those were the two more realistic options and not what we are

9    dealing with now that just happened this week and --

10   THE COURT:  If he was testifying on Tuesday, well,

11   then that would be a reason for moving it up or moving it back,

12   but he is not.  And he can attend the trial on the first day of

13   trial, fly back and go back on Wednesday.  And so that part

14   doesn't strike me as compelling given that we all knew that the

15   trial could be in October.

16   You see my point?

17   MR. BRITO:  I do, Judge.

18   THE COURT:  And now that he has lost on liability and

19   the issue is only damages, one could argue that it is even less

20   now because he has already lost, according to this Judge,

21   summary judgment on a fraud case.  Is that what you did,

22   basically?

23   No comment there.  But, regardless, do you see my

24   point that if anything I think the reasons for him to not

25   appear are diminished because of it as opposed to increased.

1    MR. BRITO:  I understand that some of the claims which

2  is why the Judge --

3    THE COURT:  Isn't possible that he didn't intend to

4  attend the trial to begin with and that's why it wasn't an

5  issue because he wasn't intending to appear at -- originally

6  the trial was supposed to last several months was my

7  understanding.  So he probably didn't intend to appear at the

8  whole trial anyway.

9    Is that fair to say?

10    MR. BRITO:  I don't think it is.  I don't think that

11  he was taking the position that he was not going to attend.

12  And it kind of depends on how the case is framed at the time

13  that you are going to trial.

14    THE COURT:  Right.

15    MR. BRITO:  Is there a need because there is a

16  one-count complaint on an issue that he can't necessarily

17  provide a whole lot of testimony on, or are we talking about a

18  full scale presentation of essentially all claims brought by

19  the New York Attorney General of which he obviously has -- or I

20  shouldn't say obviously.

21    I am presuming that Mr. Trump has some information on

22  the issues that are being litigated.  And not only is it a

23  question of his ability to testify in the case and I can't say

24  that he is not testifying on day one or the two.  I don't know

25  that, but not only is it a function of his ability to

1  testify --

2          THE COURT:  He has not been ordered to testify on day

3  two.  There is no order compelling him to appear that day.

4          MR. BRITO:  He is a party to the action and can be

5  called at any time.

6          THE COURT:  I know that, but a separate question.  He

7  has not at this point been ordered to appear on that day.

8          MR. BRITO:  There is no order that I have seen that

9  reflects that.

10          THE COURT:  Okay.  Because the problem, the other

11  problem is he is in so much litigation that to some extent this

12  would be a rolling problem because if it is not this there's

13  another trial, I'm sure, coming down the pike.  So to some

14  extent we are going to have to deal with.

15          MR. BRITO:  And I am just asking and I know I heard

16  you and I am not -- I am very respectful of your rulings,

17  Judge, but this is an important request on our part not to kick

18  it off for months, but to simply allow me to communicate with

19  Defense counsel.

20          I have offered to speak to Defense counsel about

21  suggested replacement dates.  I am not unreasonable when we had

22  the situation when it comes to criminal counsel.  I did take it

23  down and it was just a couple of weeks down the road and that's

24  all we needed at the time.

25          Now we are confronted with this.  I understand

1   everything you said, but this is an important enough request

2   where I am asking once again because of the fact that it is not

3   just testimony.  It is presence.  It is institutional knowledge

4   of the issues.  It is being able to speak to attorneys that are

5   going to make decisions as to what witnesses are called and

6   what documents are introduced.  What theories to advance.  All

7   of that has a significant relationship to my client's

8   availability to be able to communicate with his lawyers.

9           It is important.  The way I view it, Judge, I think

10  you probably you may -- the beginning of the trial is really,

11  really, important.  A lot of the key issues are framed early on

12  and as the trial goes on you have some of the smaller

13  witnesses, you know, painting the line so to speak and bring

14  the whole picture.

15          It is far more important that Mr. Trump be available

16  at the beginning of the trial.  Hence, why I would offer to

17  communicate to counsel on a weekly basis to say from my

18  understanding there is only a couple of witnesses left or they

19  are scheduled to finish on such and such a date and then work

20  towards, as that is progressing, work towards a date certain as

21  to when that deposition would take place.

22          But to deprive Mr. Trump of the opportunity to be

23  present on day two of that trial is significant as opposed to

24  day ten when we, you know, the issues have already been framed.

25  And that is really all we are asking for.  We are not kicking

1  it down a --

2        THE COURT:  If I moved it to Friday of next week would

3  that accommodate you?

4        MR. BRITO:  Judge, at this point, anything -- I would

5  be intellectually dishonest with you to say no to your answer.

6  It would make a difference.  Anything makes a difference

7  because, as I am mentioning to you, he needs to be there at the

8  beginning of this trial.

9         It may very well be that the trial takes a certain

10  course.  And by the end of the following week there is no trial

11  or there is no concern, but at least it is something and I am

12  asking for something.  My something may be different --

13        THE COURT:  Any problem with moving it to Friday of

14  next week?

15        MS. TIMMERMANN:  Your Honor, if I may?  And I

16  understand --

17        MR. BRITO:  I'm sorry, Your Honor.  Friday of the same

18  week?

19        THE COURT:  Yes.

20        MR. BRITO:  Just a couple of days?

21        THE COURT:  Right.

22        MR. BRITO:  Okay.

23        THE COURT:  Did you misunderstand it?  In other words,

24  does that matter?  Because if it does matter by -- in other

25  words, does that matter to you?

1       MR. BRITO:  I thought you said the next week.  In

2  other words, the Friday of the second week of the trial.

3       THE COURT:  No, the end of next week.

4       MR. BRITO:  I don't know if there is a significance of

5  those days or not.  I would have to ask, but I will do that

6  now.

7       THE COURT:  You don't need to tell me now, but we are

8  going to file it today.

9       MR. BRITO:  I can step outside and make a quick call.

10  If the Court wants me to I am happy to do that.

11       THE COURT:  Sure.  Because if the answer to the

12  question is, no, that is not sufficient, we need whatever and

13  we would rather not do that than to leave it on the second,

14  then that moots my question to the Defendant, right?

15       Do you want to do that?

16       MR. BRITO:  I do, if I may be excused.

17       MS. TIMMERMANN:  Your Honor, can we just step in real

18  quick.  We can't do it on that Friday.

19       THE COURT:  Why can't you?

20       MS. TIMMERMANN:  We have to rearrange three different

21  counsels' schedules.  So we can't do Friday.

22       THE COURT:  Okay.

23       MS. TIMMERMANN:  We can do Monday of Columbus Day.  We

24  can do a Sunday which would avoid trial entirely.

25       THE COURT:  Is that the following Monday, Columbus

1  Day?

2          MS. TIMMERMANN:  Yes.  So we can do October 7th or --

3  sorry.  October 8th or 9th.

4          THE COURT:  8th is the Monday?

5          MS. TIMMERMANN:  9th is the Monday.

6          MR. BRODSKY:  I cannot do the 9th.

7          MS. TIMMERMANN:  We can do the 8th.  The following --

8  we can basically Sundays are available for so we avoid this

9  issue, but we have lots to say of it moving at all.

10          THE COURT:  So Sunday the 8th.  Would that be

11  amenable?  Well, obviously any cost would be borne by the

12  Plaintiff, but putting that aside.

13          MR. BRODSKY:  Well, I am going to defer to Miss

14  Timmermann as to the specifics.  She is going to elucidate to

15  the Court that this notion that the October 2nd date came out

16  of nowhere.

17          THE COURT:  We already argued that.

18          MR. BRODSKY:  I mean, it's just ludicrous.

19          THE COURT:  You don't have to get into that.

20          MR. BRODSKY:  Okay.

21          THE COURT:  I am willing to accommodate.  He is making

22  representation that the beginning of trial makes a real

23  difference.  I don't necessarily agree, but I am willing to

24  accommodate just because I don't think a matter of days makes a

25  difference so long as the Defendant is not prejudiced.  And if

1  you are willing to do the 8th and whatever cost that incurs --

2  did we finalize the location at least?

3       MS. TIMMERMANN:  Yes.

4       THE COURT:  Where is the location?

5       MS. TIMMERMANN:  It is finalized.  We have the venue

6  and we have paid for it and we have given all of the security

7  information to Mr. Brito.

8       But that is not only the point.  This is all a game,

9  right?  None of that has mattered to Mr. Brito.  No one has

10 contacted --

11      THE COURT:  I understand that.

12      MS. TIMMERMANN:  -- the Four Seasons about security

13 accommodations.  This eleventh hour --

14      THE COURT:  Really?  Nobody contacted?  weren't there

15 supposed to be some type of security protocol?

16      MS. TIMMERMANN:  So we provided contact information

17 for the head of security.  I have called him every day this

18 week to see if anyone has reached out to him.  No one has

19 reached out.

20      THE COURT:  Okay.

21      MS. TIMMERMANN:  As of last Friday we were still

22 getting why are you doing this at the Four Seasons e-mail.

23      THE COURT:  Right.

24      MS. TIMMERMANN:  This is just the latest version of

25 why he can't show up.  It has nothing to do with the trial

 1  date.

 2          THE COURT:  Let us test that out.

 3          The first question you want to ask would it matter to

 4  them if they moved it to the 8th, as we all agreed, that is

 5  doable from the Defendants.

 6          So let's see if the answer to that is no, let's see

 7  what the answer to that is because then if that moots the

 8  problem, then what is the problem?

 9          Do you want to do that?

10          MR. BRITO:  I do.

11          THE COURT:  Do you want to consult?

12          MR. BRITO:  Yes.

13          THE COURT:  Okay.  We will take five minutes.

14  (Recess.)

15          THE COURT:  Okay.  Back to Mr. Brito.

16          MR. BRITO:  Thank you, Your Honor.

17          So the short answer is it does make a difference.  I

18  was just informed that the Appellate Division entered an order

19  today, I think this afternoon, lifting the stay requested to

20  the trial is indeed commencing on Monday.  So the 3rd is simply

21  not something that Mr. Trump can do.

22          What we are requesting is one of two options, Your

23  Honor.  If because of the fact that Mr. Trump is going to be

24  traveling, which would be the 8th, if we could do it virtually

25  because he is going to be in New York continuing to attend the

 1  trial.

 2          THE COURT:  They want to take his deposition

 3  personally.

 4          MR. BRITO:  If they want it in person, then the

 5  request would be to do it on the 15th in person, which is a

 6  Sunday, which I understand that is one of the requests that has

 7  been made.

 8          THE COURT:  In other words, I have been told that they

 9  are available on the 8th, right, or is that the Sunday the 8th?

10          MR. BRITO:  It is.

11          MR. BRODSKY:  Or the 9th.

12          THE COURT:  8th or the 9th.

13          MR. BRITO:  Oh, you had said the 9th was not

14  available.

15          MR. BRODSKY:  I will make it available.

16          MR. BRITO:  Well, I didn't make that ask because I was

17  told by Mr. Brodsky that he was not available on the 9th.

18          THE COURT:  Well, since you are saying that he wants

19  to attend the whole trial --

20          MR. BRITO:  -- the same answer.

21          THE COURT:  -- it is better to do it the 8th, then,

22  right?

23          MR. BRITO:  Well, 8th virtually.  I can't commit to

24  getting him back here in person.  That's the problem.

25          THE COURT:  Of course you can.

1    MR. BRITO:  Judge, I know, but you know what I am

2 saying.  I've been told that he needs to dedicate the time.  He

3 can stay in New York on the 8th.

4    THE COURT:  Here's the choice.  We can keep it on the

5 3rd, but I will grant your request to move it to the 8th, which

6 is a Sunday.

7    MR. BRITO:  It is.

8    THE COURT:  Which would accommodate what you are

9 saying is a trial conflict.  He wants to be in court during the

10 course of the trial and especially missing the beginning of the

11 trial would be particularly prejudicial.

12    So using that argument I don't think it materially

13 matters if I push it back and certainly if the Defendant's are

14 willing to accommodate a Sunday, which they don't have to, but

15 if they are willing to that's fine, but the Defendant's are

16 entitled to take him in person.

17    So I am prepared to grant your motion for the 8th in

18 person and then any costs that are borne by the Defendants for

19 the scheduling with the hotel -- there may not be, but

20 obviously the Plaintiff will be ordered to pay them, but then

21 he will be appearing in person on the 8th.

22    MR. BRITO:  I just want to bring this to the Court's

23 attention and they can correct me if I'm wrong, but I believe

24 Miss Perry and Miss Timmermann are from New York.  They are

25 out-of-state counsel.

1          THE COURT:  Who is taking the deposition, though?

2          MR. BRODSKY:  Miss Perry is taking the deposition.

3          THE COURT:  Oh.

4          MR. BRODSKY:  And she is in New York and I am here in

5    Palm Beach, but to be clear and candid, we can potentially take

6    it in New York.  There are so many --

7          THE COURT:  Isn't that better for you in New York?

8          MR. BRITO:  I don't know but --

9          MS. TIMMERMANN:  We sort of have to --

10         THE COURT:  Do you want to confer on that?

11         MS. TIMMERMANN:  We will need to confer and we also

12   need to secure venue and do all the steps that we took to get

13   here.

14         THE COURT:  I think the venue in New York is much more

15   available now than it used to be.  So the venue in New York is

16   not going to be a concern, but in terms of -- because I am

17   perfectly prepared to order him to appear in West Palm because

18   if I put money on it, he is going be to in West Palm that

19   weekend.

20         So, you know, I am perfectly prepared because the

21   deposition isn't -- ordinarily if I rule supposed to be taken

22   in the district.  So I would only agree to New York if you

23   agree to it.

24         So do you want to confer?

25         MR. BRODSKY:  Yes, please.

1      THE COURT:  That's fine.  Why don't we do this.

2      We will have a status conference tomorrow and we will

3   do an order tomorrow because I want to enter the order

4   tomorrow.  And since I am giving you an opportunity to confer

5   and that way you can also make logistical considerations as a

6   part of that, right?

7      It would accommodate the Plaintiff, of course, if we

8   did it in New York because according to you, he would be in New

9   York for this trial.  So that's a fair and if you are willing

10  to accommodate it and it is no prejudice to -- and where does

11  Mr. Cohen live?

12      MS. TIMMERMANN:  He's also I believe in New York.

13      THE COURT:  So that actually has accommodation that

14  has benefits for the Defendant.  So why don't you confer and I

15  will do a telephone hearing, a Zoom hearing tomorrow because I

16  have another matter out, but I can do it by Zoom and then say

17  at -- let's do it tomorrow at noon.

18      Is everybody available for noon?

19      MS. TIMMERMANN:  Yes, Your Honor.

20      MR. BRITO:  I will make myself available.  I've got

21  some other commitments, but I'll move them around.

22      THE COURT:  Okay.

23      MR. BRITO:  I mean, it shouldn't be long.

24      THE COURT:  12:30.

25      MR. BRITO:  No, leave it at noon.

1        THE COURT:  That's fine?

2        MR. BRITO:  I'm fine.

3        THE COURT:  That's fine for you?

4        MS. TIMMERMANN:  Noon tomorrow works if --

5        THE COURT:  Okay.

6        MS. TIMMERMANN:  -- it would be at all possible that

7   this moving of yet again the deposition be accompanied with an

8   order that says that if the Plaintiff fails to show up this

9   time that it is sanctions.  There is no more --

10       THE COURT:  He technically has not failed to appear.

11  So I don't know if that's the case, but I don't intend to move

12  it again.  Does that help you?

13       MS. TIMMERMANN:  It does, Your Honor.

14       THE COURT:  All right.  So hasn't done anything

15  sanctionable.  I moved it once.  He has asked it for another

16  accommodation.  I am denying the request to postpone it

17  indefinitely basically to see how this trial goes.  That's not

18  going to fly.

19       If it helps the Plaintiff do it on a Sunday and it

20  might help the Defendant to do it in New York.  Okay.  And as

21  long as the Defendant is made whole in terms of cost that

22  additional five days is not going to make a difference in the

23  case.  So that is what matters to me.  And the Defendant asked

24  for an early depositions so I am trying to grant it and the

25  Defendant is entitled to that.

1          So I think I am still accommodating that if I give the

2   Plaintiff this accommodation.  So it is fine with me, but go

3   ahead and finalize your logistics and give me a plan so I can

4   put that in the order, right?  So if you know, for example, who

5   that would be, where that would be, I will put it in the order,

6   okay?

7          MR. BRODSKY:  And then, the last point is that Mr.

8   Brito be prepared with dates and times -- clear dates and times

9   for all, you know, for the next two weeks, right, of when his

10  client could supposedly be available so we are not left with an

11  open question as to --

12         THE COURT:  I don't understand your point.  It will be

13  on the 8th.  So I have already ordered that part.  I have

14  granted the accommodation of the Plaintiff.

15         The only issue now that I want to talk to you about is

16  will it be in New York and where will it be in New York?  Will

17  it be in West Palm Beach.  And you already know where that is

18  or you already have that.  We have to confirm, though, that

19  that's still available, right?  So even if it is West Palm, you

20  need to make the phone call, but I doubt that's a problem in a

21  hotel, but it could be, right?  Maybe there's a wedding.

22         So the day of the deposition I have already decided

23  and I am prepared to grant the Plaintiff's request to

24  accommodate it since I don't think it materially prejudices the

25  Defendant and I can cure any remedy in terms of cost.

1          So the only issue now is do we do it in New York,

2    where, or do we do it in West Palm, where?  I will deny the

3    request to do it virtually especially where the Defendants

4    prefer to be in New York.  So it will not be virtual because

5    the Defendant's are entitled to do it in person.  But there are

6    logistics in terms of a court reporter and a videographer.  I

7    get it.  There are things that have to be finalized.

8          So I will give you an opportunity to decide what the

9    preference is for you because I don't consider, just for the

10   record, it will not be prejudicial if I keep it in West Palm

11   because that's where the Plaintiff lives.  And it certainly

12   would not be prejudicial if I do it in New York because that's

13   where the Plaintiff will be and that's where the Defendant

14   is --

15         In fact, isn't there a pending motion to dismiss this

16   case for venue in New York?  It's not pending?

17         MS. TIMMERMANN:  There's no venue.  There is a pending

18   motion to dismiss this case.

19         MR. BRODSKY:  And there are (inaudible) of law

20   questions but not --

21         THE COURT:  But it's not based on venue?

22         MR. BRODSKY:  Correct.

23         THE COURT:  Oh, I see.  Okay.  Is that fair?

24         MR. BRODSKY:  Yes.

25         THE COURT:  Fair enough?

1           MR. BRITO:  Fair enough.  Just one point that I wanted

2     to elaborate on because there was a suggestion that was put as

3     it relates to the security.

4           As I communicated to counsel last week, I have

5     absolutely zero authority to speak on behalf of the Secret

6     Service.  It is a one-person one-voice agency.  I can't say

7     anything to the Court about the security.  I can't speak to the

8     Defense about the --

9           THE COURT:  The reason they brought it up is because

10    their thinking was that it suggested that the Plaintiff never

11    intended to appear because if he intended to appear, given what

12    you told me before, the machinery to accommodate the security

13    concerns would have kicked into place last week.  That's their

14    point.

15          MR. BRITO:  It's the argument.  I don't agree with it,

16    but it's their argument, but I did want to communicate what I

17    said Defense counsel and to the Court that even if we move it

18    to New York or we keep it in Palm Beach, whatever the date is,

19    Secret Service is going to dictate how that security protocol

20    is coordinated.

21          I have zero to do with it.  I don't speak to them.

22    They don't speak to me.  They don't even know I exist.  So I

23    don't say anything on their behalf and I want to make that

24    abundantly clear.  So that's the only point that I wanted to

25    elaborate on.

1        THE COURT: We will revisit this at noon tomorrow.

2        If it advances that you want to go ahead and you are

3 in a position of memorializing what the order will be and you

4 want to send it to us before the hearing, go ahead and file it

5 as a proposed order for that. And that way we can discuss it

6 briefly at the hearing and I will put it on the record. I

7 mean, arguably we don't need the hearing, but I just want to

8 make sure.

9        I just want to make sure I don't lose the thread. So

10 we will finalize that by the time of our hearing of our status

11 conference tomorrow at noon. We will send you the Zoom

12 information and then I will put that in the order tomorrow

13 afternoon. So at least everybody can plan that it will

14 definitely be on the 8th and not move forevermore.

15        Thank you. Oh, with respect to the rulings that we

16 did with respect to the discovery and the other stuff, also

17 file a motion just like last time and a motion for entry of the

18 discovery order by end of business tomorrow and then, I will

19 enter that next week.

20        Okay. Mr. Brito?

21        MR. BRITO: Just for clarification because Mr. Brodsky

22 did introduce October 9th as a possibility, does the Court want

23 me to ask, does Defense counsel want me to ask just in case? I

24 am the one that said the 8th because that is what we talked

25 about before I left the room.

1         THE COURT:  Right.

2         MR. BRITO:  Your Honor said it was the 8th and nothing

3    else.  If they want me to ask about the 9th I will, but I had

4    not asked them about the 9th.

5         THE COURT:  I will let them communicate that to you

6    because at this point --

7         MR. BRODSKY:  The 9th will be fine with us if Mr.

8    Brito can get that.  I mean, I query whether that runs headlong

9    into their purported justification of --

10        THE COURT:  That's why the 8th is better because if he

11   wants to attend the trial --

12        MR. BRITO:  That's Columbus Day.  I'm not sure if

13   there is trial on Columbus Day or not.

14        THE COURT:  Oh, Columbus Day is the 9th.

15        THE COURTROOM DEPUTY:  Yes.  It is the 9th, yes.

16        THE COURT:  I bet there isn't.  All right.  Fair

17   enough.

18        MR. BRITO:  That's the reason I'm bringing it up.  I'm

19   not talking from both sides of my mouth.

20        THE COURT:  If you can call us this afternoon about

21   the answer on the 9th.

22        MR. BRITO:  Absolutely.

23        THE COURT:  I forgot about Columbus Day.  I guarantee

24   you that court is closed on Columbus Day.

25            (Thereupon, the proceedings concluded.)

CERTIFICATE

I hereby certify that the foregoing transcript is an accurate transcript of the audiotape recorded proceedings in the above-entitled matter.

10/06/23                    Bonnie Joy Lewis,
                   Registered Professional Reporter
                      CASE LAW REPORTING, INC.
                      7001 Southwest 13 Street,
                    Pembroke Pines, Florida 33023
                          954-985-8875